**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| Judy Jien, *et al.* | ) |
| | ) |
| | ) |
| Plaintiffs, | ) |
| | ) **CIVIL ACTION** |
| v. | ) **No. 1:19-CV-2521** |
| | ) |
| Perdue Farms, Inc., *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR JOINT
MOTION TO DISMISS AMENDED CONSOLIDATED COMPLAINT**

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................... 1

ARGUMENT ........................................................................................................... 3

I.    PLAINTIFFS DO NOT PLEAD A *PER SE* UNLAWFUL WAGE-FIXING
      AGREEMENT .............................................................................................. 3

      A.    Plaintiffs Offer No Direct Evidence of An Unlawful Agreement. ......... 3

      B.    Plaintiffs Do Not Plead Parallel Conduct and Fail to Allege a
            Circumstantial *Per Se* Case .................................................................. 6

            1.    The Law is Clear that Plaintiffs Must Plead Parallel Conduct. ................ 6

            2.    Plaintiffs Have Not Pled Parallel Conduct .................................... 8

            3.    Plaintiffs Fail to Allege Plus Factors. ....................................... 11

II.   PLAINTIFFS DO NOT PLEAD AN UNLAWFUL INFORMATION
      EXCHANGE ............................................................................................... 14

      A.    Plaintiffs Cannot Support Their Implausible Relevant Market. ........... 14

            1.    A Labor Market Limited to Only Poultry Processing Plant Jobs is
                  Wholly Implausible ......................................................................... 15

            2.    A National Market for Poultry Plant Workers is Implausible. ............... 17

      B.    Plaintiffs Have Failed to Allege Anticompetitive Effects Attributable to
            Information Exchange ........................................................................... 19

III.  PLAINTIFFS' CLAIMS ARE TIME BARRED ........................................ 20

      A.    Plaintiffs Do Not Allege Affirmative Acts of Concealment .................. 20

      B.    Plaintiffs Do Not Allege Due Diligence. ............................................. 23

      C.    Plaintiffs Fail to Allege A Continuing Violation. ................................ 24

CONCLUSION ...................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Labs. v. Adelphia Supply USA*,
  No. 15-CV-5826 (CBA), 2017 WL 5992355, (E.D.N.Y. Aug. 10, 2017)................................7

*Advanced Health-Care Servs., Inc. v. Radford Cmty. Hosp.*,
  910 F.2d 139 (4th Cir. 1990) ........................................................................................15

*Agnew v. Nat'l Collegiate Athletic Ass'n*,
  683 F.3d 328 (7th Cir. 2012) ........................................................................................14

*Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*,
  367 F.3d 212 (4th Cir. 2004) ..........................................................................................3

*Am. Dental Ass'n v. Cigna Corp.*,
  605 F.3d 1283 (11th Cir. 2010) ....................................................................................12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..........................................................................................................4

*In re Animation Workers Antitrust Litig*,
  123 F. Supp. 3d 1175 (N.D. Cal. 2015) ........................................................................22

*In re Baby Food Antitrust Litig.*,
  166 F.3d 112 (3d Cir. 1999) ..........................................................................................11

*Bausch v. Philatelic Leasing*,
  728 F. Supp. 1201 (D. Md. 1989) ..................................................................................23

*In re Beef Indus. Antitrust Litig.*,
  MDL Docket No. 248, 907 F.2d 510 (5th Cir. 1990) ......................................................7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..............................................................................................4, 5, 11

*Berlyn, Inc. v. Gazette Newspapers*,
  223 F. Supp. 2d 718 (D. Md. 2002) ..............................................................................18

*Boland v. Consol. Multiple Listing Serv.*,
  868 F. Supp. 2d 506, (D.S.C. 2011)..............................................................................21

*In re Bldg. Materials Corp. of Am. Asphalt Roofing Shingle Prods. Liab. Litig.*,
  No. 8:11-cv-03085-JMC, 2013 WL 169289 (D.S.C. Jan. 16, 2013)..............................22

iii

*In re Broiler Chicken Antitrust Litig.*,
 290 F. Supp. 3d 772 (N.D. Ill. 2017) ...................................................................................8

*Brown Shoe Co. v .U.S.*,
 370 U.S. 294 (1962) ...........................................................................................................18

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
 429 U.S. 477 (1977) ...........................................................................................................19

*Cal. Dental Ass'n v. FTC*,
 526 U.S. 756 (1999) ...........................................................................................................14

*Carrier Corp. v. Outokumpu Oyj*,
 673 F.3d 430 (6th Cir. 2012) .............................................................................................22

*Cason-Merenda v. Detroit Med. Ctr.*,
 862 F. Supp. 2d 603 (E.D. Mich. 2012)...............................................................................7

*Charlotte Telecasters, Inc. v. Jefferson-Pilot Corp.*,
 546 F.2d 570 (4th Cir. 1976) .............................................................................................23

*In re Citric Acid Litig.*,
 191 F.3d 1090 (9th Cir. 1999) ...........................................................................................11

*In re Compensation of Managerial, Prof'l, & Tech. Employees Antitrust Litig.*,
 No. 02-CV-2924 (GEB), 2008 WL 3887619 (D.N.J. Aug. 20, 2008) .................................14

*Concord Assocs., L.P. v. Ent. Prop. Tr.*,
 817 F.3d 46 (2d Cir. 2016).................................................................................................16

*Conmar Corp. v. Mitsui & Co.*
 858 F.2d 499 (9th Cir. 1988) .............................................................................................22

*Doll v. Ford Motor Co.*,
 814 F. Supp. 2d 526 (D. Md. 2011).....................................................................................23

*E.I. du Pont de Nemours & Co. v. Kolon Indus.*,
 637 F.3d 435 (4th Cir. 2011) .............................................................................................17

*In re Elevator Antitrust Litig.*,
 502 F.3d 47 (2d Cir. 2007) .................................................................................................12

*Five Smiths v. Nat'l Football League Ass'n*,
 788 F. Supp. 1042 (D. Minn. 1992) ...................................................................................11

*Fleischman v. Albany Medical Center*,
 728 F. Supp. 2d 130 (N.D.N.Y. 2013)...................................................................................7

*FTC v. Ind. Fed'n of Dentists*,
   476 U.S. 447 (1986)..........................................................................................................14

*In re Generic Pharm. Pricing Antitrust Litig.*,
   338 F. Supp. 3d 404 (E.D. Pa. 2018) .............................................................................4

*GO Computer, Inc. v. Microsoft Corp.*,
   508 F.3d 170 (4th Cir. 2007) .......................................................................................24

*In re GSE Bonds Antitrust Litig.*,
   No. 19-CV-1704 (JSR) 2019 WL 4071070 (S.D.N.Y. Aug. 29, 2019)...................4

*Haff Poultry, Inc. et al v. Tyson Foods, Inc. et al*,
   No. 6:17-cv-00033-RJS-SPS (E.D. Okla. Jan. 8, 2020) .............................................8

*Hanger v. Berkley Grp., Inc.*,
   No. 5:13-cv-113, 2015 WL 3439255 (W.D. Va. May 28, 2015)...........................16

*IDT Corp. v. Building Owners and Managers Ass'n Intern.*,
   No. Civ.A. 03-4113(JAG), 2005 WL 3447615 (D.N.J. Dec. 15, 2005)...................8

*Int'l Healthcare Mgmt. v. Hawaii Coal for Health*,
   332 F.3d 600 (9th Cir. 2003) .......................................................................................11

*Irizarry v. Abbott Labs.*,
   No. 18-4232, 2019 WL 5061127 (E.D. Pa. Oct. 8, 2019) .......................................10

*Iron Workers, Local Union No. 17 Ins. Fund v. Philip Morris, Inc.*,
   35 F. Supp. 2d 582 (N.D. Ohio 1999)........................................................................25

*It's My Party, Inc. v. Live Nation, Inc.*,
   811 F.3d 676 (4th Cir. 2016) .......................................................................................17

*Lenhoff Enters., Inc. v. United Talent Agency, Inc.*,
   729 Fed. Appx. 528 (9th Cir. 2018)...........................................................................10

*Llacua v. Western Range Ass'n*,
   930 F.3d 1161 (10th Cir. 2019) .....................................................................................4

*LLM Bar Exam, LLC v. Barbri, Inc.*,
   271 F. Supp. 3d 547 (S.D.N.Y. 2017)..........................................................................7

*Macquarie Grp. Ltd. v. Pac. Corp. Grp., LLC*,
   No. 08cv2113-IEG-WMC, 2009 WL 539928 (S.D. Cal. Mar. 2, 2009) ...................9

*Mayor & City Council of Baltimore v. Citigroup, Inc.*,
   709 F.3d 129 (2d Cir. 2013).........................................................................................3

v

*Maple Flooring Mfrs.' Ass'n v. U.S.*,
    268 U.S. 563 (1925)..........................................................................14

*Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*,
    No. DKC 12–0954, 2015 WL 4597529 (D. Md. July 6, 2015) ..................................4

*Mid-State Fertilizer Co. v. Exch. Nat. Bank of Chicago*,
    877 F.2d 1333 (7th Cir. 1989) .............................................................10

*In re Musical Instruments and Equip. Antitrust Litig.*,
    798 F.3d 1186 (9th Cir. 2015) .............................................................12

*Nitsch v. Dreamworks Animation SKG Inc.*,
    315 F.R.D. 270 (N.D. Cal. 2016)...........................................................16

*Ogden v. Little Caesar Enters., Inc.*,
    393 F. Supp. 3d 622 (E.D. Mich. 2019)....................................................17

*Park Irmat Drug Corp. v. Express Scripts Holding Co.*,
    911 F.3d 505 (8th Cir. 2018) ...........................................................6, 11

*Pinney Dock and Transport Co. v. Penn Cent. Corp*,
    838 F.2d 1445 (6th Cir. 1988) .............................................................20

*Pocahontas Supreme Coal Co., Inc. v. Bethlehem Steel Corp.*,
    828 F.2d 211 (4th Cir. 1987) ......................................................22, 23, 25

*In re Pork Antitrust Litig.*,
    No. 18-1776, 2019 WL 3752497 (D. Minn. Aug. 8, 2019)...........................5, 7, 8

*Republic Tobacco Co. v. N. Atl. Trading Co.*,
    381 F.3d 717 (7th Cir. 2004) .............................................................14

*Robertson v. Sea Pines Real Estate Cos.*,
    679 F.3d 278 (4th Cir. 2012) ..........................................................19, 21

*SD3, LLC v. Black & Decker (U.S.)*,
    215 F. Supp. 3d 486 (E.D. Va. 2016) .......................................................22

*SD3, LLC v. Black & Decker (U.S.) Inc.*,
    801 F.3d 412 (4th Cir. 2015) .......................................................1, 3, 6, 12

*In re Titanium Dioxide Antitrust Litig.*,
    959 F. Supp.2d 799 (D. Md. 2013) )....................................................20, 21

*Texas v. Allan Constr. Co.*,
    851 F.2d 1526 (5th Cir. 1988) .............................................................23

*Todd v. Exxon Corp.*,
    275 F.3d 191 (2d Cir. 2001) ...................................................................................16

*In re Travel Agent Comm'n Antitrust Litig.*,
    No. 1:03 CV 30000, 2007 WL 3171675, (N.D. Ohio Oct. 29, 2007) .......................7

*U.S. v. Citizens & S. Nat'l Bank*,
    422 U.S. 86 (1975) ..................................................................................................14

*U.S. v. U.S. Gypsum Co.*,
    438 U.S. 422 (1978) ..........................................................................................14, 19

*U.S. v. Utah Soc'y for Healthcare Human Resources Admin.*,
    No. 94C282G, 1994 WL 729931 (D. Utah Sept. 14, 1994) ...................................11

**Statutes**

Sherman Act Section 1......................................................................................6, 7, 10, 11

**Other Authorities**

Daniel I. Booker, *Antitrust and Employment*
    ANTITRUST (1996)....................................................................................................11

Fed. R. Civ. P. 9(b) ......................................................................................................2, 20

Suresh Naidu et al., *Antitrust Remedies for Labor Market Power*,
    132 Harv. L. Rev. (2018)........................................................................................18

## <u>INTRODUCTION</u>

Plaintiffs do not satisfy the standards for pleading an antitrust claim in several critical areas. They contort their allegations trying to fit within established legal standards, and when their efforts fail, they claim no need to meet the standards at all.  The Amended Consolidated Complaint ("ACC") should be dismissed with prejudice.

*First*, Plaintiffs plead no direct evidence of a *per se* unlawful conspiracy to fix employee compensation.  Direct evidence is a factual allegation requiring no inference – the proverbial "smoking gun" – such as a witness stating that she personally observed an unlawful agreement. Plaintiffs do not point to a single allegation from their purported "confidential witnesses" that any Defendant (much less all) entered into an agreement to fix employee compensation.  While cited repeatedly, the alleged statements merely indicate that certain Defendants participated in meetings and benchmarking services.  These allegations are not direct evidence of a wage-fixing agreement.

*Second*, Plaintiffs have not pled circumstantial evidence of a *per se* unlawful conspiracy, which requires allegations of both parallel conduct and plus factors.  Perhaps recognizing that they cannot actually allege parallel conduct, Plaintiffs remarkably claim they do not need to.  Fourth Circuit precedent belies this assertion and clearly requires allegations of parallel conduct.  *See SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 424 (4th Cir. 2015).  Along with parallel conduct, Plaintiffs also fail to plead the requisite plus factors.  Plaintiffs instead cite surveys and benchmarking as potential plus factors, but these reflect common and procompetitive business conduct.  Plaintiffs point to certain industry characteristics about the production and sale of *poultry* as plus factors, but allege nothing about the market for *labor*.  Finally, Plaintiffs do not explain why it is plausible that a group of chicken processors would meet for six years to fix wages paid

1

by turkey processors that Plaintiffs do not even allege attended.  Nor do they allege how such a cobbled-together conspiracy could have been monitored or enforced.

*Third*, Plaintiffs fail to plead an unlawful information exchange because their proposed relevant market is implausible.  Plaintiffs allege a "national" market for poultry plant workers.  Plaintiffs, therefore, necessarily argue that a janitor at a poultry plant in Georgia would move thousands of miles to be a janitor at a poultry plant in California, but not down the road to work as a janitor at the local Walmart.  Seemingly acknowledging the irrationality of their putative market, Plaintiffs claim that they actually do not need to even properly plead a geographic market.  The Fourth Circuit clearly holds otherwise.  Plaintiffs also fail to plead anticompetitive effects and that those effects were proximately caused by Defendants' conduct, which they are required to do.

*Finally*, Plaintiffs' claims are time-barred.   To overcome the four-year statute of limitations, Plaintiffs must plead fraudulent concealment with particularity under Fed. R. Civ. P. 9(b).  Yet they offer no details of any affirmative acts by Defendants to satisfy the doctrine.  This Court should reject Plaintiffs' repeated attempts to supplant detailed allegations with buzzwords such as "off the books" and "secret," which have consistently been held as insufficient to demonstrate affirmative acts of concealment.  Additionally, Plaintiffs' reliance on dated public sources – including wage data from the 1990s and various books, articles, and reports published long ago – belies their claims of diligence.

Given these many failures, there is only one proper outcome: dismissal with prejudice.  Plaintiffs originally filed separate complaints, then a consolidated complaint, and, almost immediately after Defendants moved to dismiss their consolidated complaint, this amendment.  Plaintiffs have demonstrated they cannot amend to cure the many defects despite the opportunity

they had to do so.  Defendants should not be required to respond to Plaintiffs' inadequate claims again.  The Court should dismiss the ACC with prejudice.

## **ARGUMENT**

## I.     PLAINTIFFS  DO  NOT  PLEAD  A  *PER SE*  UNLAWFUL  WAGE-FIXING AGREEMENT

In order to plead a *per se* violation of the antitrust laws, Plaintiffs must allege either (a) direct evidence of an agreement to fix compensation, or (b) parallel conduct plus "something 'more.'"  *SD3*, 801 F.3d at 427, 452.  Plaintiffs do neither.  They offer purported "secret" witness statements, anecdotal buzzwords (such as "off the books"), and legitimate and quite ordinary business benchmarking and information exchanges.   Despite apparent access to alleged "confidential witnesses," Plaintiffs' complaint contains not even one allegation of a witness claiming to actually have observed ***any*** agreement to fix compensation.  Plaintiffs also cite to no document reflecting an unlawful agreement.  Thus Plaintiffs allege no direct evidence.  Nor do Plaintiffs plead parallel conduct and plus factors from which an unlawful agreement can be inferred.  The allegations of the ACC reveal only that Defendants engaged in benchmarking and information sharing practices, which fall short of pleading a *per se* unlawful wage-fixing agreement.  Plaintiffs' *per se* claim should therefore be dismissed.

### A.     Plaintiffs Offer No Direct Evidence of An Unlawful Agreement.

The law in the Fourth Circuit is clear: direct evidence of conspiracy must be "explicit and require no inferences to establish the proposition being asserted."  *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 226 (4th Cir. 2004).  It is the proverbial "smoking gun" – evidence that, if true, establishes an unlawful agreement.  *Mayor & City Council of Baltimore v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013).  Examples of direct evidence include:

- "[A] recorded phone call in which two competitors agreed to fix prices at a certain level." *Id.* at 136.

- "[A] document or conversation explicitly manifesting the existence of the agreement in question." *In re Generic Pharm. Pricing Antitrust Litig.*, 338 F. Supp. 3d 404, 439 (E.D. Pa. 2018).

- A recorded chat log pled directly in the complaint expressly demonstrating an agreement on prices: "99.985 on the FFCB's?" "Sounds good here." *In re GSE Bonds Antitrust Litig.*, No. 19-CV-1704 (JSR) 2019 WL 4071070, at *2 (S.D.N.Y. Aug. 29, 2019).

Plaintiffs offer no direct evidence. Instead, they offer circumstantial allegations and claim that there is "direct evidence" of those circumstantial allegations. However, direct evidence must be ***of the agreement itself*** (*i.e.*, an agreement to fix compensation), and the ACC contains no such evidence. Plaintiffs claim in a conclusory manner that Defendants "fixed wages," but that is merely a conclusory allegation of "agreement" that the Supreme Court firmly rejected in *Twombly*: "[A] formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Plaintiffs cite over 200 times to a handful of vague statements from alleged "confidential witnesses." Plaintiffs allege that these individuals claim to have knowledge of "confidential" meetings and exchanges of "confidential" information. Yet, the ACC never alleges that any of them observed an unlawful agreement, by any Defendant, to fix or change compensation. The allegations therefore "fall[]short of the standard that [direct evidence] be '***explicit and require no inferences***.'" *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.,* No. DKC 12-0954, 2015 WL 4597529, at *9 (D. Md. July 6, 2015) (emphasis added); *see also Llacua v. Western Range Ass'n*, 930 F.3d 1161, 1178 (10th Cir. 2019) (affirming dismissal where, *inter alia*,

4

plaintiffs alleged "no reports, memoranda, or tapes of meetings," or other allegations "that explicitly establish, without the need for inferences, the existence of an agreement to fix . . . wages").

Plaintiffs also refer to WMS meetings in Sandestin, Florida with buzzwords such as "off the books" or "secret," but adding colorful labels does not turn a meeting into "direct evidence" of an antitrust violation. *See Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions . . . ."). Plaintiffs offer no definition of "off the books," and the allegation that the WMS meetings took place outside of a trade conference's schedule does not constitute evidence – direct or otherwise – that wage-fixing took place.

Plaintiffs also rely heavily on a vague remark attributed to a former Tyson employee (who allegedly made the remark to another person, who then allegedly disclosed it to Plaintiffs or their counsel) that the WMS meetings were "inappropriate." ACC ¶ 151. Yet no allegations accompany this hearsay to explain what was meant by the term "inappropriate." Other allegations ascribed to Plaintiffs' confidential witnesses, such as those stating that Defendants "discussed with each other" various wages, suggest only information sharing, and similarly do not evidence an unlawful agreement to fix wages. Pls.' Opp'n Br. ("Pls.' Br.") at 20.

Finally, Plaintiffs point to Agri Stats and plant-to-plant information exchanges as "direct evidence" of an alleged *per se* unlawful conspiracy. Once again, to plead a *per se* claim, Plaintiffs must allege direct evidence of the conspiracy to **fix wages**. Allegations that producers subscribed to Agri Stats, or that certain producers may have been able to de-anonymize Agri Stats data, is not direct evidence of a conspiracy to fix compensation. *In re Pork Antitrust Litig.*, No. 18-1776, 2019 WL 3752497 (D. Minn. Aug. 8, 2019), at * 7 n.7. (D. Minn. Aug. 8, 2019) (dismissing *per se*

antitrust claim notwithstanding substantially identical allegations regarding information exchange facilitated by Agri Stats).  As to plant-to-plant information exchanges, Plaintiffs focus on an alleged statement from a former chicken plant employee: "We would collaborate.  We would talk among each other to see what they were doing for pay."  Pls.' Br. at 21; ACC ¶ 192.  "Collaborate" does not suggest a conspiracy to fix compensation – if the former employee had actually observed an agreement to fix compensation, Plaintiffs would have alleged as much.  Once again, the fact that Plaintiffs claim to have access to several "confidential witnesses," but none can expressly allege the existence of a wage-fixing conspiracy, is quite telling.  Plaintiffs have not alleged a direct evidence case.

**B.      Plaintiffs Do Not Plead Parallel Conduct and Fail to Allege a Circumstantial *Per Se* Case.**

Plaintiffs also fail to plead an agreement on the basis of circumstantial evidence.  To do so, Fourth Circuit law is clear: Plaintiffs must plead parallel conduct and plus factors.  *SD3*, 801 F.3d at 424.  Plaintiffs do neither.

**1.      The Law is Clear that Plaintiffs Must Plead Parallel Conduct.**

Plaintiffs concede that they pled no facts that compensation levels were the same or similar, or that compensation changed or remained depressed in a similar manner among all Defendants. Pls.' Br. at 23-25.  Likely recognizing the absence of this required element of their claim, Plaintiffs then contend that they are not required to plead parallel conduct.  This argument flies in the face of clear and well-established precedent in the Fourth Circuit and other courts across the country:

- "For a § 1 claim to survive, then, a plaintiff must plead parallel conduct and something 'more.'"  *SD3*, 801 F.3d at 424.

- "Because Irmat fails to plausibly plead parallel conduct, no discussion of any 'plus factors' is necessary.  The district court correctly dismissed Irmat's Section 1 claim."

> *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 517 (8th Cir. 2018).

- "When an antitrust plaintiff relies on circumstantial evidence of conscious parallelism to prove a § 1 claim, he must first demonstrate that the defendants' actions were parallel." *In re Beef Indus. Antitrust Litig.*, 907 F.2d 510, 514 (5th Cir. 1990).

Courts routinely dismiss circumstantial cases lacking the essential allegations of parallel conduct. *See, e.g.*, *In re Pork Antitrust Litig.*, 2019 WL 3752497, at *7 ("In the same way that parallel conduct on its own is insufficient to establish an agreement, plus factors without plausible allegations of parallel conduct are insufficient to establish an inference of an agreement"); *Abbott Labs. v. Adelphia Supply USA*, No. 15-CV-5826 (CBA), 2017 WL 5992355, at *10 (E.D.N.Y. Aug. 10, 2017) ("To plead a horizontal price-fixing conspiracy through circumstantial evidence, a plaintiff must allege parallel conduct and plus factors."); *LLM Bar Exam, LLC v. Barbri, Inc.*, 271 F. Supp. 3d 547, 579 (S.D.N.Y. 2017) ("[C]alling . . . conduct 'parallel' [wa]s a stretch" thus failing to "establish[] even this basic building block of an antitrust conspiracy."); *In re Travel Agent Comm'n Antitrust Litig.*, No. 1:03 CV 30000, 2007 WL 3171675, at *4 (N.D. Ohio Oct. 29, 2007) (dismissing claims because "[p]laintiffs have not put forth 'factual matter' suggesting that [defendants] engaged in parallel conduct").

The cases on which Plaintiffs rely to excuse their default do not support their position. *See* Pls.' Br. at 23-25. In *Cason-Merenda v. Detroit Med. Ctr.*, 862 F. Supp. 2d 603 (E.D. Mich. 2012), the district court granted summary judgment for ***defendants***, noting that "the record reflect[ed] a decided lack of uniformity in the end results" of defendants' wage-setting process. *Id.* at 635. *Fleischman v. Albany Medical Center,* 728 F. Supp. 2d 130 (N.D.N.Y. 2013), is also inapposite

because that court was analyzing the sufficiency of allegations relating to a conspiracy "accomplished[] *not* by coordinating wages." *Id.* at 159 (emphasis added).[1]

Finally, Plaintiffs argue that they need not plead parallel conduct because they claim to have pled the "who, what, where, when and why" of the alleged wage fixing conspiracy. Pls.' Br. at 25. They have not, and in any event, Plaintiffs offer no support in the law for the notion that alleged anecdotes about meetings and communications permit Plaintiffs to sidestep the Fourth Circuit requirement that Plaintiffs *must* plead parallel conduct.

### 2. Plaintiffs Have Not Pled Parallel Conduct.

Plaintiffs assert that they do not need to plead parallel conduct, and they do not do so. Other than the allegation that the "fully loaded wage" for the lowest paid worker at one Defendant's processing plant for an unspecified job on an unspecified date in 2016, the ACC is bereft of any allegations of Defendants' wage levels or trends – including whether any wages changed when the alleged conspiracy started.

---

[1] The *Fleischman* court also appears to have conflated the *per se* and rule of reason standards. Having acknowledged that the plaintiffs were *not* alleging that the defendants had coordinated wages, the court incorrectly assumed that plaintiffs could pursue their information exchange claim under the *per se* standard. *Id.* at 157-62. It is well established, however, that when a Sherman Act Section 1 claim does not allege an agreement to fix wages, but instead alleges an agreement to exchange information, the claim is not a *per se* claim. *In re Pork Antitrust Litig.*, 2019 WL 3752497, at *7 n.7.

Plaintiffs' comparisons to other cases concerning the poultry industry are similarly misplaced. Pls.' Br. at 23 n.7. In *In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 788 (N.D. Ill. 2017), plaintiffs alleged parallel conduct of a type wholly lacking here: "specific production cuts from specific individual defendants," often at specific times. *See In re Pork Antitrust Litig.*, 2019 WL 3752497, at *8 (discussing *Broilers* case). And in *Haff Poultry*, the court found that plaintiffs had alleged "parallel conduct." Tr. at 37:24-38:4, *Haff Poultry, Inc. et al v. Tyson Foods, Inc. et al*, No. 6:17-cv-00033-RJS-SPS, ECF No. 268 (E.D. Okla. Jan. 8, 2020).

The absence of allegations of parallel conduct is even more remarkable given Plaintiffs' access to their own compensation histories, and alleged "extraordinary access" to "multiple confidential witnesses" with information about Defendants' compensation and benchmarking practices.  Plaintiffs' ACC is replete with vague comparative adjectives related to compensation, but lacks facts about actual compensation levels.  For example:

- Plaintiffs plead that some "salary-paid positions . . . were paid higher salaries than other salary-paid positions," ACC ¶ 112, ***but do not state what these salaries were.***

- Plaintiffs plead that deboners received "higher wages" than other hourly-paid positions, *id.* ¶ 111, but Plaintiffs do not allege any wage rate, or how much more deboners are paid, ***despite four of the Plaintiffs having been employed as deboners.***

- Plaintiffs refer repeatedly to "aligned" compensation schedules, *id.*, ***but Plaintiffs provide no facts suggesting alignment of any compensation schedules.***

- Plaintiffs allege the "fully loaded wage" for the lowest paid worker at one Defendant's processing plant for an unspecified job on an unspecified date in 2016, *id.* ¶ 110, but Plaintiffs tellingly fail to do so for any other Defendant (***even though each of the Plaintiffs worked at other Defendants).***

- Plaintiffs allege the content of WMS reports, vaguely mentioning "entry level start rates," "base rates," and "average weights" for the 10th, 50th, and 90th percentiles. Id. ¶ 142-45, ***but the rates – which presumably should be "similar" – are absent.***

Other allegations in the ACC similarly fail to plead the requisite parallel conduct.  Plaintiffs claim that Pilgrim's sought to be "in the middle" of Agri Stats' wage data, ACC ¶ 173, but this does not suggest that any two or more Defendants set or moved their compensation in a parallel fashion.  Plaintiffs also say that Butterball sought to be within a wage range, ACC ¶ 175, but that says nothing about how any other Defendant behaved, and the fact that there was a range demonstrates that there were disparities among the Defendants' wages.  These anecdotes are also unremarkable because any rational employer would account for existing compensation levels when making its own compensation decisions.

Plaintiffs' assertion that Defendants' participation in benchmarking services and trade association meetings constitutes "parallel conduct" is wholly unsupported and contrary to common sense. "Parallel conduct" allegations for Plaintiffs' *per se* claim must go to "the inference of [the] ***agreement or concerted action***" that Plaintiffs plead. *See Macquarie Grp. Ltd. v. Pac. Corp. Grp., LLC*, No. 08cv2113-IEG-WMC, 2009 WL 539928, at *5 n.2 (S.D. Cal. Mar. 2, 2009) ("'Parallel conduct' refers to the inference of agreement or concerted action which a Court may draw from . . . ***price cutting and the like.***" (emphasis added)). In other words, Plaintiffs must allege that the purportedly fixed compensation levels were parallel, but they have said "nothing more than an allegation that defendants participated in a lawful trade organization," *Lenhoff Enters., Inc. v. United Talent Agency, Inc.*, 729 Fed. Appx. 528, 530 (9th Cir. 2018). Additionally, if taken as true, Plaintiffs' theory would lead to the result that every person attending any trade show across the United States is engaged in "parallel behavior" with other attendees for purposes of establishing an unlawful agreement under Section 1 of the Sherman Act.

The same is true for Plaintiffs' aggregate, undisclosed "expert analysis," which offers no indication of parallel conduct, and advances nothing but conclusory statements. "The Court can only consider ***facts*** at the motion to dismiss stage, not ***opinions***." *Irizarry v. Abbott Labs.*, No. 18-4232, 2019 WL 5061127, at *1 n.1 (E.D. Pa. Oct. 8, 2019) (emphasis added). Furthermore, "[a]n expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." *Mid-State Fertilizer Co. v. Exch. Nat'l Bank of Chicago*, 877 F.2d 1333, 1339 (7th Cir. 1989).[2]

---

[2] Plaintiffs' opposition brief also refers to recent indictments of certain executives for a purported conspiracy involving the ***sale of chicken*** (not compensation for poultry plant employees). Pls.' Br. at 42. Those indictments are not referenced in the ACC, and are irrelevant to the claims here.

Put simply, Plaintiffs fail to plead facts that Defendants' compensation was the same or similar during the supposed conspiracy.  The ACC does not compare the compensation of any two named Plaintiffs, much less that of any alleged conspirators.  Plaintiffs therefore fail to plead parallel conduct, which dooms any circumstantial wage-fixing claim.

### 3.  Plaintiffs Fail to Allege Plus Factors.

Since Plaintiffs have not pled parallel conduct, their *per se* claim fails and "no discussion of any 'plus factors' is necessary." *Park Irmat Drug Corp.*, 911 F.3d at 517.  Plaintiffs also fail to plead the requisite plus factors that would suggest that Defendants' conduct was the result of an agreement. *Twombly,* 550 U.S. at 557 ("[W]hen allegations of parallel conduct are set out in order to make a § 1 claim, they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action.").

***First***, Plaintiffs argue that submitting business information to a wage benchmarking service is contrary to a producer's self-interest, but Plaintiffs are mistaken.  Pls.' Br. at 36-37. Benchmarking is presumptively lawful: "[G]athering information about pricing and competition in the industry is standard fare for trade associations." *In re Citric Acid Litig.*, 191 F.3d 1090, 1098 (9th Cir. 1999); *Int'l Healthcare Mgmt. v. Hawaii Coalition for Health*, 332 F.3d 600, 608 (9th Cir. 2003) ("Disseminating information that fosters rational business decisions is pro-competitive."); *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 126 (3d Cir. 1999) ("Gathering competitors' price information can be consistent with independent competitor behavior."). Furthermore, wage benchmarking is "an exceedingly common practice.  Formal and informal salary and wage surveys circulate within industries and across industries in the same geographic areas."  Daniel I. Booker, *Antitrust and Employment*, ANTITRUST, 33, 35 (1996). *See, e.g.*, *Five Smiths v. Nat'l Football League Ass'n*, 788 F. Supp. 1042, 1046-47 (D. Minn. 1992) (sports clubs'

11

players association and agents); *U.S. v. Utah Soc'y for Healthcare Human Resources Admin.*, No. 94C282G, 1994 WL 729931, at *2-3 (D. Utah Sept. 14, 1994) (hospitals).  The Department of Justice has said that "benchmarking surveys . . . can benefit consumers when industry members use information derived from such surveys to gain efficiencies and price their products or services more competitively."  U.S. Dep't of Justice, Antitrust Div., Bus. Rev. Ltr. on the Nat'l Ass'n of Small Trucking Companies and Bell & Co.'s Operational and Financial Survey of Small- and Medium-Sized Trucking Companies (Apr. 9, 2007).

*Second,* Plaintiffs argue they have pled a "motive to enter a price fixing conspiracy," but they have not.  Pls.' Br. at 35-36.  In support, Plaintiffs assert a series of market characteristics about the *poultry industry* – not any market for *labor*.  Plaintiffs allege that poultry is a commodity, that labor is an input cost in poultry production, and that the poultry production industry is concentrated (which it is not).  Even assuming these claims were true, they are not evidence of motive to fix compensation levels.

*Third*, Plaintiffs claim to have "remarkable" non-economic evidence that suggests a wage-fixing conspiracy, Pls.' Br. at 39-41, but they are wrong.  The characterizations and anecdotes of the alleged confidential witnesses are ambiguous and without explanation, thus leaving these statements far short of adequately alleging plus factors.  The allegations about benchmarking and trade associations illustrate typical procompetitive behavior, and thus courts routinely reject such allegations as evidence "suggest[ing] an illegal agreement."  *In re Musical Instruments and Equip. Antitrust Litig.*,798 F.3d 1186, 1196 (9th Cir. 2015); *SD3*, 801 F.3d at 422; *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1295 (11th Cir. 2010).  Moreover, Plaintiffs do not address their own concession that Defendants participated in Agri Stats before any alleged conspiracy, and turkey producers did not join the WMS meetings until 2015.  And a government

12

investigation into the sales of chicken is not relevant to the claims of wage-fixing in this case that involves labor markets. *See In re Elevator Antitrust Litig.*, 502 F.3d 47, 52 (2d Cir. 2007) (assertions about government investigations of conspiracy in one market are insufficient allegations of misconduct in a separate market).

***Finally***, and importantly, Plaintiffs' non-economic allegations, taken as a whole, actually support dismissal. The incongruous addition of turkey processors to the purported conspiracy is one example – Plaintiffs provide no explanation for adding turkey Defendants to the ACC (four days after Defendants filed their motion to dismiss Plaintiffs' first complaint), or how Agri Stats could have enabled a chicken-plus-turkey conspiracy when Plaintiffs did not allege that Agri Stats published turkey and chicken wage data in one report to producers of both products. Defs.' Mot'n to Dismiss ("Defs.' Mot'n") at 12; Consolidated Complaint ("Compl.") ¶ 147. Moreover, Plaintiffs are also largely silent with regard to their failure to allege any change in compensation in 2009, when the conspiracy allegedly began. ACC ¶ 196. *See* Defs.' Mot'n at 15-16 (when a complaint fails to allege a price change at the start of the alleged conspiracy, an agreement to fix those prices is not plausible). The most that Plaintiffs can muster is that Tyson re-joined Agri Stats in 2008, Pilgrim's filed for bankruptcy around that time, and three human resources committees merged in April 2009. ACC ¶ 130. These events say nothing about whether there was any change in ***compensation*** starting in 2009 to suggest the start of an agreement to fix compensation.

Plaintiffs' opposition does not rectify their failure to meet the basic requirements for pleading a *per se* conspiracy claim, either by direct or circumstantial evidence. Count I should be dismissed.

## II.     PLAINTIFFS DO NOT PLEAD AN UNLAWFUL INFORMATION EXCHANGE

Plaintiffs also have failed to allege a rule of reason information exchange claim.  Their product market allegations do not plausibly exclude reasonable alternatives, as the law requires, and neither their product market nor their geographic market are remotely plausible.  Plaintiffs have also failed to plead anticompetitive effects within the purported market.

### A.     Plaintiffs Cannot Support Their Implausible Relevant Market.

Plaintiffs fail to plead a proper relevant market for two fundamental reasons.  First, there are over a million jobs outside of poultry plants offering similar pay for similar skills that poultry plant workers would view as reasonably interchangeable with their current position.  And, second, a "nationwide" market of poultry plant jobs is implausible because Plaintiffs never explain why a worker would move across the *country* to debone chickens, but would not drive across the *county* to work at a Walmart for similar pay.

As an initial matter, Plaintiffs try to skirt the requirement of pleading a relevant market by relying on *FTC v. Ind. Fed'n of Dentists,* 476 U.S. 447, 460 (1986).  However, *Ind. Fed'n of Dentists* is inapplicable here because that case did not apply the full rule of reason to evaluate the conduct at issue.  Rather, the Supreme Court was applying the rarely-invoked "quick look" test, a truncated rule of reason analysis applicable only when "an observer with even a rudimentary understanding of economics [can] conclude that the arrangement[] in question would have an anticompetitive effect on customers and markets."  *See Cal. Dental Ass'n v. FTC*, 526 U.S. 756, 770 (1999).  Plaintiffs cite to no case applying the "quick look" test in an information exchange case, which is not surprising because the Supreme Court and other courts have consistently held that information exchanges are presumptively lawful, and thus subject to full rule of reason analysis.  *See, e.g.*, *U.S. v. U.S. Gypsum Co.*, 438 U.S. 422 (1978); *U.S. v. Citizens & S. Nat'l*

14

*Bank*, 422 U.S. 86 (1975); *Maple Flooring Mfrs.' Ass'n v. U.S.*, 268 U.S. 563 (1925).[3] Furthermore, the Fourth Circuit has made clear that "[i]n order to prevail on [its] § 1 claim . . . plaintiff must show . . . that the conspiracy produced adverse, anticompetitive effects ***within the relevant product and geographic market.***" *Advanced Health-Care Servs., Inc. v. Radford Cmty. Hosp.*, 910 F.2d 139, 144 (4th Cir. 1990) (emphasis added).

### 1. A Labor Market Limited to Only Poultry Processing Plant Jobs is Wholly Implausible.

Plaintiffs incorrectly characterize their duty to properly define the relevant market as a "low hurdle," Pls.' Br. at 49, yet they nevertheless fail to clear it because:

- Bureau of Labor Statistics data demonstrate that ***more than a million*** other jobs, *e.g.*, landscaping and janitorial positions, offer similar pay for similar skills, and exist in the same localities as poultry processing plants, Defs.' Mot'n at 21;

- These other jobs are available to workers with the same limited education and language skills that hourly poultry plant workers allegedly have, ACC ⁋ 211;

- Plaintiffs cite materials demonstrating that poultry plant workers routinely leave for those other jobs, *see* Defs.' Mot'n at 21; and

- Plaintiffs fail to allege a single barrier preventing salaried poultry plant employees from taking similar management positions in another industry.

Plaintiffs argue that alternative jobs within the food processing industry are not true substitutes because one single alternative (beef processing plant jobs) allegedly pays 25% more than poultry plant jobs. Pls.' Br. at 55. That single comparison to a single alternative employment

---

[3] Even when the "quick look" applies, a plaintiff still must outline the contours of the relevant market and show that the challenged agreement facially restricts output in that market. *See, e.g., Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 337 (7th Cir. 2012) (quick-look doctrine requires plaintiffs show "that an agreement had anticompetitive effects ***on a particular market***"); *Republic Tobacco Co. v. N. Atl. Trading Co.*, 381 F.3d 717, 737 (7th Cir. 2004) (quick look analysis requires plaintiff establish the rough contours of the relevant market); *In re Compensation of Managerial, Prof'l, & Tech. Employees Antitrust Litig.*, No. 02-CV-2924 (GEB), 2008 WL 3887619, at *7-8 (D.N.J. Aug. 20, 2008) (same).

position does not demonstrate that poultry workers will only turn to other poultry plant jobs, and not to the many other jobs with similar pay that are available.  Plaintiffs also fail to explain why a janitor in a poultry plant would not consider a janitor position at a beef plant to be a reasonable alternative (especially if the pay would be 25% higher).

Plaintiffs next argue that the relevant market is reasonably limited to poultry plant jobs because these employees: (i) have non-transferable skills for which poultry plants pay an alleged premium; (ii) receive hazard pay; and (iii) in the case of line and maintenance workers, are limited to the poultry industry due to their limited education and language skills.  Pls.' Br. at 51.  But Plaintiffs do not explain why janitors could not clean other buildings, maintenance workers could not repair machinery at other plants, or salaried plant accountants could not manage the finances of another business.  *See Hanger v. Berkley Grp., Inc.*, No. 5:13-cv-113, 2015 WL 3439255, at *10 (W.D. Va. May 28, 2015) ("Even if industry specific knowledge will not directly benefit a prospective employer, sales experience is highly sought after in numerous industries").  Plaintiffs instead rely upon the conclusory statement that "processing workers have some industry and employer-specific skills," ACC ¶ 212, which is not enough.  *Concord Assocs., L.P. v. Ent. Prop. Tr.,* 817 F.3d 46, 54 (2d Cir. 2016) ("[M]erely asserting that a commodity is in some way unique is insufficient to plead a relevant market.").  Plaintiffs' conclusory allegation that poultry plant workers have "unique skills" or receive "hazard pay" do not reconcile with Plaintiffs' allegation that Defendants' employees received "poor compensation" and that virtually any able-bodied adult could work these jobs, including prison laborers.  ACC ¶ 120-121.  Moreover, Plaintiffs fail to allege that working in a poultry plant offers the only chance to earn so-called "hazard pay."

Plaintiffs rely on *Todd v. Exxon Corp.*, 275 F.3d 191 (2d Cir. 2001), and *Nitsch v. Dreamworks Animation SKG Inc.*, 315 F.R.D. 270 (N.D. Cal. 2016), for the proposition that a

16

relevant market can include a variety of very different jobs.  However, neither decision defines a relevant market to include workers with disparate pay and skills, at different levels of labor and management, and with some earning hourly wages while others earn a salary.  Plaintiffs argue that since Defendants exchanged poultry plant wage data, the Defendants somehow concede that the market is limited to poultry plant jobs.  Pls.' Br. at 52.  However, Plaintiffs cite no case law for that position, and they do not allege that Defendants relied only on poultry plant compensation data to determine their compensation.

## 2.    A National Market for Poultry Plant Workers is Implausible.

Plaintiffs' alleged nationwide geographic market is also facially implausible.  Nothing in the ACC suggests that a poultry plant worker in Mississippi would consider a poultry plant job 2,000 miles away in California to be a reasonable substitute for her current employment.

Plaintiffs baldly claim that "[a]n overbroad geographic market . . . is not a basis to dismiss a complaint," Pls.' Br. at 56-57, but on the contrary, the Fourth Circuit has held that a geographic market must be properly defined, and the failure to do so is a basis for dismissal.  *See E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 637 F.3d 435, 444 (4th Cir. 2011) (a "contradictory" or "vague delineation of the relevant geographic market" requires dismissal).  Plaintiffs identify no court that has endorsed (on the pleadings or at any stage) the notion of a nationwide market for unskilled labor.  *Cf. Ogden v. Little Caesar Enters., Inc.*, 393 F. Supp. 3d 622, 631-32 (E.D. Mich. 2019) ("[E]mployees who hold low-skill . . . jobs are looking for a position in the geographic area in which they already live").  The Fourth Circuit has also rejected the notion of a "national" market when the market was clearly local.  *It's My Party, Inc. v. Live Nation, Inc.*, 811 F.3d 676, 680, 683 (4th Cir. 2016) ("sweeping national [concert] promotion market" failed because "[c]oncertgoers will typically not travel out of their region to attend a concert in response to higher ticket prices in

17

their area."); *see also IDT Corp. v. Building Owners and Managers Ass'n Intern.*, No. Civ.A. 03–4113(JAG), 2005 WL 3447615, at *9-10 (D.N.J. Dec. 15, 2005) (dismissing complaint because "national market" was too broad).

Plaintiffs argue that a national market is plausible because "the Complaint is replete with allegations that Defendant Processors perceived themselves to be competing in a national geographic market." Pls.' Br. at 58. First, the allegation that Defendants' headquarters decided compensation for their individual plants does not mean that there is a national market for poultry plant labor. Furthermore, Plaintiffs concede that "the relevant question [is] whether work outside of the relevant market is reasonably interchangeable ***from the perspective of the employees***." Pls.' Br. at 55 (emphasis added). Plaintiffs also conspicuously ignore their own admissions in their first consolidated complaint that Defendants perceived the market as local by paying workers differently in different states, Compl. ¶ 118, and by competing for labor with "nearby" plants, ACC ¶ 100-01. *See also* Suresh Naidu et al., *Antitrust Remedies for Labor Market Power*, 132 Harv. L. Rev. 536, 555 (2018) ("[L]abor markets remain extremely local . . . greatly narrowing the geographic scope of most labor markets.").[4] And here, Plaintiffs have recognized that workers would not travel far to secure other employment due to "the expense of moving." Compl. ¶ 235.

Because Plaintiffs fail to properly plead the relevant market, Count II should be dismissed.

---

[4] This approach to defining labor markets aligns with Supreme Court precedent holding that, in the context of defining markets for goods, the geographic market is the distance consumers would travel to purchase substitute goods. *See Brown Shoe Co. v. U.S.*, 370 U.S. 294 (1962).

B. **Plaintiffs Have Failed to Allege Anticompetitive Effects Attributable to Information Exchange.**

Plaintiffs' information exchange claim fails because they do not plead anticompetitive effects in a relevant market. *Berlyn, Inc. v. Gazette Newspapers*, 223 F. Supp. 2d 718, 731 (D. Md. 2002) ("[T]he plaintiffs have failed to define any relevant market, which obviously forecloses them from demonstrating any anticompetitive effects within a relevant market, or market power of a defendant."). Plaintiffs do not deny that they are required to plead that the information exchange proximately caused anticompetitive effects, ***and*** that the purported effects occurred as a proximate result of the alleged information exchange. *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 486 (1977). However, they fail to do so. The bulk of Plaintiffs' specific allegations focus on the existence of Defendants' information exchange – which is not in itself anticompetitive or unlawful. *See U.S. Gypsum Co.*, 438 U.S. at 441 n.16. They point to a 1% decrease in the inflation-adjusted hourly wages for poultry plant workers, but they concede that this decrease commenced as early as 1999, which is ten years before the alleged conspiracy purportedly began in 2009. Pls.' Br. at 46. Plaintiffs also claim that poultry plant wages failed to increase in step with productivity gains, ACC ¶ 231; Pls.' Br. at 56, but this does not evidence a lack of competition for labor.[5] Plaintiffs' failure to plead any anticompetitive effects proximately caused by Defendants' conduct requires dismissal of Count II.

---

[5] Plaintiffs' reliance on the Fourth Circuit's opinion in *Robertson* is misplaced. In *Robertson*, plaintiffs pled the existence of specific rules imposed by defendants and how each cited rule established price controls, raised entry barriers, excluded lower-cost competitors, and reduced customer options in the real estate market. *Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 290-91 (4th Cir. 2012). By contrast, Plaintiffs in this case offer little more than bare assertions that the alleged information exchange depressed wages by "diminish[ing] incentives to increase wages" – an assertion contradicted by their own allegation that wages were depressed prior to the

## III.    PLAINTIFFS' CLAIMS ARE TIME BARRED

In an effort to save their time-barred claims, Plaintiffs mischaracterize the law of fraudulent concealment and Defendants' arguments regarding continuing violation.

### A.    Plaintiffs Do Not Allege Affirmative Acts of Concealment.

Plaintiffs admit that the Clayton Act's four-year limitation period prevents them from seeking damages for their time-barred claims, which date as far back as ten years ago, unless they plead fraudulent concealment with particularity under the heightened pleading requirements of Rule 9(b).  However, Plaintiffs' opposition merely recharacterizes their conclusory allegations, demonstrating their failure to plead fraudulent concealment *with particularity*.

Plaintiffs fail to allege the first element of fraudulent concealment – "affirmative acts of concealment" – by Defendants.  First, Plaintiffs do not dispute that allegations of "secret" meetings are not "affirmative acts of concealment."  Defs.' Mot'n at 29-30.  Instead, Plaintiffs contend that Defendants "took active steps" to keep meetings "off the books," Pls.' Br. at 65-67, but do not indicate at all (or, for that matter, with the requisite particularity) what those "active steps" were.[6] The cases that Plaintiffs cite as "analogous" are, in fact, inapposite.  Consider *In re Titanium Dioxide Antitrust Litig.*, in which this Court identified multiple written directives circulated among the defendants with express reminders and instructions to "refrain" from certain conduct to "minimize the appearance of collusion" with competitors in proximity to agreed-upon, publicly announced price increases.  959 F. Supp. 2d 799, 814, 832 (D. Md. 2013).  And in *Pinney Dock*

---

information exchange.  Pls.' Br. at 46 (noting that inflation adjusted wages decreased 1% in the fifteen-year period beginning in 1999).

[6] The failure is particularly notable when Plaintiffs claim to have confidential witnesses who attended these alleged "off the books" meetings.  Further, Plaintiffs and these alleged witnesses fail to even articulate what the catchphrase "off the books" means.

*and Transport Co. v. Penn Cent. Corp.*, the Sixth Circuit found that the defendants failed to make certain disclosures required under an agreement, sent misleading letters personally to the plaintiffs, and the defendants' correspondence reflected that committee records intentionally excluded actions taken after the conclusion of public portions of trade group meetings.  838 F.2d 1445, 1473-78 (6th Cir. 1988).  Plaintiffs do not come close to alleging such conduct here.[7]

Second, allegations of non-public communications or data exchanges are not "affirmative acts of concealment" in and of themselves, Defs.' Mot'n at 29-30, and Plaintiffs do not argue otherwise.  Rather, Plaintiffs claim concealment because Defendants, through their use of Agri Stats and WMS surveys, allegedly "designat[ed] [their] data exchanges as confidential and inaccessible," and "employ[ed] sham data anonymization techniques to create an illusion of legality."  Pls.' Br. at 67-68.  Yet Plaintiffs admit that Agri Stats presents its mission to the marketplace as "[i]mprov[ing] [] bottom line profitability for our participants by providing accurate and timely comparative data while preserving confidentiality of individual companies."  ACC ¶ 158.  Agri Stats reporting cannot constitute an affirmative act of concealment when Agri Stats was open and clear about its business model.

Plaintiffs' cited cases on communications and data exchanges also do not support their claims of affirmative acts of concealment.  Plaintiffs point to a "statistics exchange program" that

---

[7] Plaintiffs state that *Boland* dismissed allegations of fraudulent concealment due to a lack of particularity regarding alleged "secret" meetings.  Pls.' Br. at 66.  In reality, *Boland v. Consol. Multiple Listing Serv.* dismissed the complaint because the allegations of fraudulent concealment amounted to no more than "a failure to admit wrongdoing" and thus were not "affirmative acts of concealment."  868 F. Supp. 2d 506, 514, 518 (D.S.C. 2011), *aff'd sub nom. Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278 (4th Cir. 2012).

21

the *Titanium Dioxide* defendants allegedly kept "confidential" – but that alleged exchange was a program created **in conjunction with the alleged conspiracy**, and its very existence was "kept secret*." In re Titanium Dioxide Antitrust Litig,* 959 F. Supp. 2d at 804-06, 813, 815-16.  Plaintiffs do not allege the same about Defendants' alleged data exchanges.  *See, e.g.*, ACC ¶ 161 (describing **public statements in October 2009** regarding the use of Agri Stats in the broiler and turkey industries).  Moreover, Plaintiffs' reliance on real-estate "kickback scheme" cases ignores that the defendants in those cases allegedly used "sham" entities or agreements to affirmatively hide kickback payments from the plaintiffs.  Pls.' Br. at 68 & n.41.  There is nothing of the sort here.[8]

Finally, statements that Defendants offer "competitive" wages are not "affirmative acts of concealment."  Courts in the Fourth Circuit have repeatedly held that such allegations are insufficient for pleading fraudulent concealment.[9]  *See* Defs.' Mot'n at 30.  Plaintiffs try to overcome this binding precedent by relying on two readily distinguishable, out of circuit cases. Pls.' Br. at 70-71.  In *Conmar Corp. v. Mitsui & Co.*, the defendants denied wrongdoing when confronted with allegations of a government investigation, and falsified documents to hide the conduct.  858 F.2d 499, 500, 505 (9th Cir. 1988).  In *In re Animation Workers Antitrust Litig.*, the

---

[8] *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430 (6th Cir. 2012) – a Sixth Circuit case cited by Plaintiffs that "revolve[d] around two decisions issued by the Commission of the European Communities" – is distinguishable because the court found that the defendants had taken "***active*** steps to hide evidence, as opposed to simply meeting in secret."  *Carrier Corp,* 673 F.3d at 435-36, 447.

[9] Contrary to Plaintiffs' contention, Pls.' Br. at 70, neither of the cases cited by Defendants turned on the fact that the alleged affirmative acts were somehow "immaterial."  Rather, in both cases, the court found that plaintiffs failed to allege affirmative acts of concealment and dismissed the complaint.  *See Pocahontas Supreme Coal Co., Inc. v. Bethlehem Steel Corp.*, 828 F.2d 211, 215, 218; *SD3, LLC v. Black & Decker (U.S.)*, 215 F. Supp. 3d 486, 497 (E.D. Va. 2016).

defendants allegedly made detailed, misleading statements about specific wage increases to individual putative class members, such as misleading statements regarding "the reasons for certain salary raises and ranges," and including that a "main reason" for a specific "3.5% raise" was "to fund additional benefit programs."   123 F. Supp. 3d 1175, 1200 (N.D. Cal. 2015). Plaintiffs' allegations do not remotely allege such concealment.[10]

### B.   Plaintiffs Do Not Allege Due Diligence.

Plaintiffs' invocation of fraudulent concealment also fails because Plaintiffs do not allege that they exercised due diligence.  First, contrary to Plaintiffs' assertion, whether Plaintiffs have alleged due diligence to discover their claims is appropriately resolved on a motion to dismiss. *See, e.g.*, *Pocahontas*, 828 F.2d at 218-219; *Bausch v. Philatelic Leasing*, 728 F. Supp. 1201 at 1207-08.  In fact, dismissal is particularly appropriate where, as here, Plaintiffs rely on a plethora of public information substantially predating the limitations period without "distinct averments" stating when and how they discovered the alleged conspiracy.  *See* Defs' Mot'n at 31-33.  Such "distinct averments" are required "so that the [C]ourt may clearly see, whether by the exercise of ordinary diligence, the discovery might not have been before made."  *Charlotte Telecasters, Inc. v. Jefferson-Pilot Corp.*, 546 F.2d 570, 574 (4th Cir. 1976).  Plaintiffs' vague allegations that they

---

[10] Plaintiffs' cases in footnotes 42 and 43 also fail to support their arguments. *See In re Bldg. Materials Corp. of Am. Asphalt Roofing Shingle Prods. Liab. Litig.*, No. 8:11-cv-03085-JMC, 2013 WL 169289, at *5 (D.S.C. Jan. 16, 2013) (applying NC fraudulent concealment state law in a product defect case, which requires that defendant have a duty to disclose the defect); *Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 537 (D. Md. 2011) (same but applying MD state law); *Bausch v. Philatelic Leasing*, 728 F. Supp. 1201, 1207 (D. Md. 1989) (finding that a "plaintiffs' claim of fraudulent concealment must rest on something more than the defendants' failure to admit their own illegal conduct."); *Texas v. Allan Constr. Co.*, 851 F.2d 1526, 1528, 1531-33 (5th Cir. 1988) (considering the "submission of false affidavits").

did not discover the facts underlying their complaint until "shortly before filing" the ACC, or that discovery was "based on the investigation of counsel," do not allege due diligence. Plaintiffs do not cite a single case supporting their claim of a low bar for "distinct averments." *See* Pls.' Br. at 72.

Furthermore, Plaintiffs' assertion that they do not have to "demonstrate that [they] engaged in any specific inquiry" because "there was *nothing* to provoke Plaintiffs' inquiry" earlier in time is belied by Plaintiffs' own reliance on ***public*** statements, articles, and books published ***years before*** they filed suit. Pls.' Br. at 71-73 (emphasis added); Defs.' Mot'n at 31-33. For example, Plaintiffs allege that, ***as early as 2009***, unions representing putative class members knew that certain Defendants were "insist[ing] during negotiations that wages 'would have to be within the parameters' contained in Agri Stats." ACC ¶¶ 174-75; Pls.' Br. at 72 & n. 46. Assuming these allegations are true for purposes of the motion to dismiss, this shows that the unions, which Plaintiffs allege represent approximately 33% of hourly paid workers at poultry plants, were aware that class members were being paid similar wages by Defendants and that the wages were "within the parameters contained in Agri Stats." ACC ¶¶ 118, 174-75. The notion that these facts were insufficient to "provoke Plaintiffs' inquiry" for another ten years lacks merit. *See, e.g., GO Computer, Inc. v. Microsoft Corp.*, 508 F.3d 170, 178 (4th Cir. 2007) ("[I]nquiry notice should not 'await the dawn of complete awareness.'").

### C.    Plaintiffs Fail to Allege A Continuing Violation.

Plaintiffs' assertion that Defendants waived their arguments as to Plaintiffs' continuing violation allegations is a red herring. Defendants argued that Plaintiffs' "attempt to invoke a continuing violation fails for the same pleading deficiencies discussed in the prior sections" of their Motion to Dismiss. Defs.' Mot'n at 28 n.12. Plaintiffs' continuing violation claim fails

because Plaintiffs fail to allege any facts about what actual agreements were reached through Defendants' alleged meetings or exchanges, or by whom, *at any* time – let alone during the limitations period. The "overt acts" that Plaintiffs allege during the limitations period are more of the same: a purported list of 2017 meeting attendees without any allegation of what agreement was reached at the meeting; and a purported exchange of information between certain poultry plants without any allegation of an agreement or how the information was used.[11] *See* Pls.' Br. at 62-63.

For all of these reasons, Plaintiffs' claims are time-barred and should be dismissed.

## CONCLUSION

Plaintiffs fail to plead a claim – on multiple grounds. They have now had two bites at the proverbial apple, which courts have said is enough. *Iron Workers, Local Union No. 17 Ins. Fund v. Philip Morris, Inc.*, 35 F. Supp. 2d 582 (N.D. Ohio 1999). A court's power to dismiss with prejudice in these circumstances to avoid the inequitable result of defendants having to continually defend themselves against baseless claims, when a plaintiff has had a full and fair opportunity to present its case and was unable to do so. The Court should therefore dismiss Plaintiffs' claims with prejudice.

---

[11] Even if Plaintiffs have sufficiently alleged a continuing violation, it does not "toll" the statute of limitations as Plaintiffs assert. Pls.' Br. at 63. Rather, at most, Plaintiffs would be able to recover for damages that fall within the four-year limitations period. *See Pocahontas*, 828 F.2d at 218.

Date: August 13, 2020

Respectfully submitted,

/s/ Aaron L. Casagrande
Aaron L. Casagrande (Bar # 28518)
WHITEFORD, TAYLOR & PRESTON
L.L.P.
Seven Saint Paul Street, Suite 1500
Baltimore, Maryland 21202
Tel: (410) 347-8714
Fax: (410) 234-2326
acasagrande@wtplaw.com

Carrie C. Mahan
Christopher J. Abbott
WEIL, GOTSHAL & MANGES LLP
2001 M Street N.W., Suite 600
Washington, D.C. 20036
Tel: 202-682-7000
Fax: 202-857-0940
carrie.mahan@weil.com
christopher.abbott@weil.com

Adam C. Hemlock
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Tel: 212-310-8000
Fax: 212-310-8007
adam.hemlock@weil.com

*Attorneys for Defendants Pilgrim's Pride
Corporation, Pilgrim's Pride Corporation of
West Virginia, Inc., and JFC LLC (d/b/a GNP
Company)*

/s/ J. Douglas Baldridge
J. Douglas Baldridge (Bar No. 11023)
Lisa Jose Fales (Bar No. 08141)
Danielle R. Foley (Bar No. 21113)
Andrew T. Hernacki (Bar No. 21107)
VENABLE LLP
600 Massachusetts Ave, N.W.
Washington, DC 20001
Tel: (202) 344-4000
jdbaldridge@venable.com
ljfales@venable.com
drfoley@venable.com
athernacki@venable.com

*Attorneys for Perdue Foods, LLC and Perdue
Farms, Inc.*

26

/s/ Edward J. Baines
Edward J. Baines (USDC Bar No. 06776)
Geoffrey M. Gamble (USDC Bar No. 28919)
Gregory L. Waterworth (USDC Bar No. 20938)
SAUL EWING ARNSTEIN & LEHR LLP
500 E. Pratt Street, 8th Floor
Baltimore, MD 21202-3133
Tel: (410) 332-8600
Fax: (410) 332-8862
Ted.Baines@saul.com
Geoff.Gamble@saul.com
Greg.Waterworth@saul.com

Patrick Fitzgerald
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 N. Wacker Drive
Chicago, IL 60606
Tel: (312) 407-0700
Fax: (312) 407-0411
patrick.fitzgerald@skadden.com

Boris Bershteyn (admitted *pro hac vice*)
Lara Flath (admitted *pro hac vice*)
Sam Auld (admitted *pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
Telephone: (212) 735-3000
Facsimile: (212) 735-2000
boris.bershteyn@skadden.com
lara.flath@skadden.com
sam.auld@skadden.com

*Attorneys for Defendant Peco Foods, Inc.*

/s/ Kristen Knapp
Kristen A. Knapp (Bar No. 21169)
SIDLEY AUSTIN LLP
1501 K Street NW #600
Washington, DC 20005
Telephone: (202) 736-8219
Facsimile: (202) 736-8711
kknapp@sidley.com

John W. Treece *(admitted pro hac vice)*
1135 West Montana Street
Chicago, Illinois 60614
Tel: (312) 961-7808
jtreece@jwtreece.com

Amanda K. Wofford *(admitted pro hac vice)*
Bourgon B. Reynolds *(admitted pro hac vice)*
ROSE LAW FIRM
120 East Fourth Street
Little Rock, Arkansas 72201
Tel: (501) 377-0349
Fax: (501) 375-1309
awofford@roselawfirm.com
 breynolds@roselawfirm.com

*Attorneys for Defendants Mountaire Farms, Inc. and Mountaire Farms of Delaware, Inc.*

27

/s/ Cary Silverman
Cary Silverman (Bar # 15137)
SHOOK HARDY & BACON LLP
1800 K Street NW, Ste. 1000
Washington, D.C. 20006
Tel: (202) 783-8400|
Fax: (202) 783-4211
csilverman@shb.com

Lynn H. Murray
SHOOK HARDY & BACON LLP
111 S. Wacker Dr., Ste. 4700
Chicago IL 60606
Tel: (312) 704-7700
Fax: (312) 558-1195
lhmurray@shb.com

Laurie A. Novion
SHOOK HARDY & BACON LLP
2555 Grand
Kansas City, MO
64108 Tel: (816) 474-6550
Fax: (816) 421-5547
lnovion@shb.com

John R. Elrod
Vicki Bronson
CONNER & WINTERS
4375 N. Vantage Drive, Ste. 405 Fayetteville,
AR 72703
Tel: (479) 582-5711
jelrod@cwlaw.com
vbronson@cwlaw.com

*Attorneys for Defendants Simmons Foods,
Inc. and Simmons Prepared Foods Inc.*

/s/ Brian D. Frey
Brian D. Frey (Bar # 17592)
ALSTON & BIRD LLP
The Atlantic Building 950 F Street, NW
Washington, D.C. 20004-1404
Tel: (202) 239-3067
Fax: (202) 239-3333
brian.frey@alston.com

B. Parker Miller
Valarie C. Williams
Raechel J. Bimmerle
ALSTON & BIRD LLP
1201 West Peachtree Street Atlanta, GA
30309
Tel: (404) 881-7000
Fax: (404) 881-7777
parker.miller@alston.com
valarie.williams@alston.com
raechel.bimmerle@alston.com

*Attorneys for Fieldale Farms Corporation*

/s/ Steven K. White
Steven K. White (Bar No. 04274)
STINSON LLP
1775 Pennsylvania Ave., NW, Suite 800
Washington, DC 20006
Tel: (202) 785-9100
Fax: (202) 572-9963
steven.white@stinson.com

William L. Greene
Peter J. Schwingler
Jon M. Woodruff
STINSON LLP
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 335-1500
Fax: (612) 335-1657
william.greene@stinson.com
peter.schwingler@stinson.com
jon.woodruff@stinson.com

Gary V. Weeks
K.C. Dupps Tucker
Kristy E. Boehler
THE LAW GROUP OF NW. ARKANSAS
LLP
1830 Shelby Lane Fayetteville, AR 72704
Tel: (479) 316-3760
Fax: (844) 325-6603
gary.weeks@lawgroupnwa.com
kc.tucker@lawgroupnwa.com
kristy.boehler@lawgroupnwa.com

*Attorneys for Defendants George's Inc.;
Ozark Mountain Poultry, Inc.; George's
Chicken, LLC; George's Foods, LLC; and
George's Processing, Inc.*

/s/ Gerard P. Martin
Gerard P. Martin, Bar No. 00691
Jeffrey M. Lichtstein, Bar No. 20731
ROSENBERG MARTIN GREENBERG,
LLP
25 S. Charles Street, 21st Floor
Baltimore, Maryland 21201
Tel: (410) 727-6600
Fax: (410) 727-1115
gmartin@rosenbergmartin.com
jlichtstein@rosenbergmartin.com

*Attorneys for Defendant Webber, Meng, Sahl
and Company, Inc. d/b/a WMS & Company,
Inc.*

/s/ Steven F. Barley
Steven F. Barley
HOGAN LOVELLS US LLP
100 International Drive, Suite 2000
Baltimore, Maryland  21202
Tel: (410) 659-2700
Fax: (410) 659-2701
steve.barley@hoganlovells.com

William L. Monts III
Justin W. Bernick
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C.  20004-1109
Tel: (202) 637-5600
Fax: (202) 637-5910
william.monts@hoganlovells.com
justin.bernick@hoganlovells.com

*Attorneys for Defendant Agri Stats, Inc.*

29

/s/ Marlynda L. Romero
Christopher E. Ondeck
Stephen R. Chuk
Marlynda L. Romero (MD Bar No. 20808)
PROSKAUER ROSE LLP
1001 Pennsylvania Ave, NW, Suite 600S
Washington, DC 20004
Tel: (202) 416-5865
Fax: (202) 416-6899
condeck@proskauer.com
schuk@proskauer.com
mromero@proskauer.com

*Attorneys for Defendant Wayne Farms, LLC*

/s/ Eric Pelletier
Eric Pelletier (Bar # 12716)
OFFIT KURMAN, P.A.
4800 Montgomery Lane, 9th Floor
Bethesda, Maryland 20814
Tel: (240) 507-1739
Fax: (240) 507-1735
epelletier@offitkurman.com

John F. Terzaken (DC 474015)
Abram J. Ellis (DC 497634)
Elizabeth H. French (DC 1030684)
SIMPSON THACHER & BARTLETT
900 G Street, N.W.
Washington, DC 20001
Phone: 202-636-5500
Facsimile: 202-636-5502

*Attorneys for Tyson Foods, Inc., Tyson Prepared
Foods, Inc., Hillshire Brands Company, Tyson Fresh
Meats, Inc., Tyson Processing Services, Inc., Tyson
Refrigerated Processed Meats, Inc., Keystone Foods,
LLC, Equity Group Eufaula Division, LLC, Equity
Group – Georgia Division, LLC, and Equity Group
Kentucky Division, LLC*

/s/ Daniel E. Laytin
Daniel E. Laytin, P.C. *(pro hac vice)*
Christa C. Cottrell, P.C. *(pro hac vice)*
Stacy Pepper *pro hac vice*
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Tel: (312) 862-2000
Fax: (312) 862-2200
dlaytin@kirkland.com
ccottrell@kirkland.com
stacy.pepper@kirkland.com

Joseph C. Schroeder *(pro hac vice)*
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave N.W.
Washington, DC 20004
(202) 389-5118
joseph.schroeder@kirkland.com

Joseph W. Hovermill (Bar No. 22446)
Alexander P. Creticos (Bar No. 30199)
MILES & STOCKBRIDGE P.C.
100 Light Street
Baltimore, Maryland 21202
Tel: 410-385-3442
Fax: 410-385-3700
jhovermill@milesstockbridge.com
acreticos@milesstockbridge.com

*Attorneys for Defendants Sanderson Farms, Inc.,
Sanderson Farms, Inc. (Foods Division), and
Sanderson Farms, Inc. (Processing Division)*

30

/s/ James E. Edwards, Jr.
James E. Edwards, Jr., (MDB No. 02360)
Ty Kelly Cronin, (MDB No. 27166)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
100 Light Street
Baltimore, Maryland 21202
Tel: (410) 685-1120
Fax: (410) 547-0699
jedwards@bakerdonelson.com
tykelly@bakerdonelson.com

John G. Calender (DCB No. 939124)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
901 K Street, N.W., Suite 900
Washington, D.C. 20001
Tel: (202)508-3474
Fax: (202) 220-2274
jcalender@bakerdonelson.com

Scott W. Pedigo (MSB No. 10735)
Amy L. Champagne (MSB No. 102447)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
MAILING: Post Office Box 14167
Jackson, Mississippi 39236-4167
PHYSICAL: One Eastover Center
100 Vision Drive, Suite 400
Jackson, Mississippi 39211
Tel: (601) 351-2400
Fax: (601) 351-2424
spedigo@bakerdonelson.com
achampagne@bakerdonelson.com

 Russell W. Gray (TNB No. 16120)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
1800 Republic Centre
633 Chestnut Street
Chattanooga, Tennessee 37450-1801
Tel: (423) 209-4218
Fax: (423) 752-9563
rgray@bakerdonelson.com

*Attorneys for Defendants Koch Foods, Inc.,
JCG Foods of Alabama, Inc., JCG Foods of
Georgia, LLC, JCG Industries, Inc., Koch
Foods LLC, Koch Foods of Alabama, LLC,
Koch Foods of Ashland, LLC, Koch Foods of
Gadsden, LLC, Koch Foods of Cumming,
LLC, Koch Foods of Gainesville, LLC and
Koch Foods of Mississippi, LLC*

31

/s/ David B. Hamilton
David B. Hamilton (Bar No. 04308)
Hillary V. Colonna (Bar No. 19704)
WOMBLE BOND DICKINSON (US) LLP
100 Light Street, 26th Floor
Baltimore, MD 21202
Tel: (410) 545-5850
Fax: (410) 545-5801
David.Hamilton@wbd-us.com
Hillary.Colonna@wbd-us.com

Hayden J. Silver III (*Pro Hac Vice*)
Jonathon D. Townsend (*Pro Hac Vice*)
WOMBLE BOND DICKINSON (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
Tel: (919) 755-2188
Fax: (919) 755-7099
Jay.Silver@wbd-us.com
Jonathon.Townsend@wbd-us.com

*Attorneys for Defendant*
*Butterball, LLC*

/s/ Julia E. McEvoy
Julia E. McEvoy *(Pro Hac Vice)*
Christopher N. Thatch (Bar No. 29097)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
(202) 879-3867
jmcevoy@jonesday.com

Kathryn N. Hibbard *(Pro Hac Vice)*
GREENE ESPEL PLLP
222 South Ninth Street, Suite 2200
Minneapolis, MN 55402
(612) 373-0830
khibbard@greeneespel.com

*Attorneys for Cargill, Incorporated and*
*Cargill Meat Solutions Corporation*

/s/ Jonathan H. Todt
Richard A. Duncan (pro hac vice)
Craig S. Coleman (pro hac vice)
Emily E. Chow (pro hac vice)
Isaac B. Hall (pro hac vice)
FAEGRE DRINKER BIDDLE & REATH
LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
Phone: (612) 766-7000
Fax: (612) 766-1600
richard.duncan@faegredrinker.com
craig.coleman@faegredrinker.com
emily.chow@faegredrinker.com
isaac.hall@faegredrinker.com

Christopher A. Kreuder (pro hac vice)
FAEGRE DRINKER BIDDLE & REATH
LLP
801 Grand Avenue, 33rd Floor
Des Moines, IA 50309
Phone: (515) 248-4733
Fax: (515) 248-9010
christopher.kreuder@faegredrinker.com

Jonathan H. Todt (Bar No. 07166)
FAEGRE DRINKER BIDDLE & REATH
LLP
1500 K Street, N.W., Suite 1100
Washington, D.C. 20005-1209
Phone: (202) 230-5823
Fax: (202) 842-8465
jonathan.todt@faegredrinker.com

*Attorneys for Hormel Foods Corporation;*
*Jennie-O Turkey Store, Inc.; Jennie-O Turkey*
*Store, LLC; and Jennie-O Turkey Store Sales,*
*LLC*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 2nd day of March 2020, Defendants' Joint Motion to Dismiss, Defendants' Memorandum of Law in Support thereof (including exhibits) and a proposed order were served via the Court's CM/ECF system on all counsel of record in accordance with the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Maryland.

 _/s/ Aaron L. Casagrande_____
Aaron L. Casagrande