# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| JUDY JIEN, *et al*., | CIVIL ACTION NO. 1:19-CV-2521 |
| Plaintiffs, | |
| v. | |
| PERDUE FARMS, INC., *et al*., | |
| Defendants. | |

## SETTLEMENT AGREEMENT BETWEEN CLASS PLAINTIFFS AND PILGRIM'S PRIDE CORPORATION

Subject to the approval of the Court, this Settlement Agreement ("Settlement Agreement" or "Agreement") is made and entered into as of the Execution Date, by and between Pilgrim's (as hereinafter defined) and the Class Plaintiffs (as hereinafter defined), individually and on behalf of a Settlement Class (as hereinafter defined), through Interim Co-Lead Counsel for the proposed Settlement Class, and in the above-captioned action (the "Action").

**RECITALS**

A.     Class Plaintiffs are prosecuting the Action on their own behalf and on behalf of a putative litigation class.  Class Plaintiffs and the putative litigation class are currently represented by Interim Co-Lead Counsel.

B.     The Action is being litigated in the United States District Court for the District of Maryland.

C.     Class Plaintiffs have alleged, among other things, that Pilgrim's entered into a contract, combination or conspiracy in restraint of trade, the purpose and effect of which was to

suppress competition for labor and to allow Pilgrim's to pay sub-competitive compensation, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

D.      Pilgrim's denies all allegations of wrongdoing in the Action and believes it has numerous legitimate defenses to Class Plaintiffs' claims.

E.      This Settlement Agreement shall not be deemed or construed to be an admission or evidence of any violation of any statute, law, rule, or regulation or of any liability or wrongdoing by Pilgrim's or of the truth of any of Class Plaintiffs' claims or allegations, nor shall it be deemed or construed to be an admission or evidence of Pilgrim's defenses.

F.      Interim Co-Lead Counsel have conducted an investigation into the facts and law regarding the Action and the possible legal and factual defenses thereto and have concluded that a settlement with Pilgrim's according to the terms set forth below is fair, reasonable, adequate, and beneficial to and in the best interests of the Settlement Class, given the uncertainties, risks, and costs of continued litigation, and that the Settlement Fund (as hereinafter defined) reflects fair, reasonable, and adequate compensation for the Settlement Class to release, settle, and discharge their claims that they were undercompensated as a result of the alleged anticompetitive conduct of which Pilgrim's is accused.

G.      Despite Pilgrim's belief that it is not liable for and has strong defenses to the Claims asserted by Class Plaintiffs, Pilgrim's desires to settle the Action to avoid the further expense, inconvenience, disruption, and burden of litigation and other present or future litigation arising out of the facts that gave rise to this Action, to avoid the risks inherent in uncertain complex litigation and trial, and thereby to put to rest this controversy.

H.      Arm's-length settlement negotiations have taken place between Interim Co-Lead Counsel and Pilgrim's Counsel over many weeks and many conferences with the assistance and

contributions of an experienced and neutral mediator, and this Agreement has been reached as a result of those negotiations.

      I.      Both Settling Parties (as hereinafter defined) wish to preserve all arguments, defenses, and responses related to all claims in the Action, including any arguments, defenses, and responses related to any litigation class proposed by Class Plaintiffs in the event this Settlement Agreement fails to satisfy the conditions set out in Section II(F)(11) below.

      J.      The Settling Parties desire to fully and finally settle all actual and potential Claims arising from or in connection with the Action, the factual allegations underlying the Action, and to avoid the costs and risks of protracted litigation and trial.

      **IT IS HEREBY AGREED**, by and among the Settling Parties, that this Action and all Released Claims (as hereinafter defined) are finally and fully discharged, settled, and compromised as to the Pilgrim's Released Parties (as hereinafter defined) and that this Action shall be dismissed in its entirety with prejudice as to Pilgrim's, subject to approval of the Court pursuant to Rule 23 of the Federal Rules of Civil Procedure, upon and subject to the following terms and conditions:

## I.      DEFINITIONS

### A.      Class Definition.

"Settlement Class" means the class described in Section II(F)(3) below.

### B.      General Definitions.

      1.      "Action" means the putative class action filed by Class Plaintiffs captioned *Judy Jien, et al. v. Perdue Farms, Inc. et al*, 1:19-cv-02521-SAG (D. Md.), which is currently pending in the United States District Court for the District of Maryland.

2.      "Claims" means any and all actual or potential, known or unknown, causes of action, claims, contentions, allegations, assertions of wrongdoing, damages, losses, or demands for recoveries, remedies, or fees complained of, arising from or related to the conduct alleged in the Action, or that could or should have been alleged in the Action.

3.      "Claims Administrator" means the third party to be retained by Interim Co-Lead Counsel and approved by the Court to manage and administer the process by which Settlement Class Members are notified of the Settlement Agreement and paid from Net Settlement Fund.

4.      "Compensation" means the provision of anything of value to Settlement Class Members and includes wages, salaries, benefits, bonuses, overtime pay, night shift premiums, raises, promotions, stocks or stock options, meals, and other monetary and nonmonetary forms of remuneration.

5.      "Complaint" means the Second Amended Consolidated Complaint in the Action (ECF 386).

6.      "Court" means the United States District Court for the District of Maryland and the Honorable Stephanie A. Gallagher or her successor, or any other Court with jurisdiction of the Action.

7.      "Date of Final Approval" means the date on which the Court enters an order granting final approval to this Settlement Agreement, pursuant to Rule 23 of the Federal Rules of Civil Procedure, as provided in Section II(F)(8) below.

8.      "Date of Final Judgment" means the first date upon which both of the following conditions shall have been satisfied: (a) final approval of the Settlement Agreement by the Court ("Final Approval"); and (b) either (1) thirty days have passed from the date of Final

Approval with no notice of appeal having been filed with the Court; or (2) Final Approval has been affirmed by a mandate issued by any reviewing court to which any appeal has been taken, and any further petition for review (including certiorari) has been denied, and the time for any further appeal or review of Final Approval has expired.

9.      "Date of Preliminary Approval" means the date on which the Court enters an order granting preliminary approval to this Settlement Agreement, pursuant to Rule 23 of the Federal Rules of Civil Procedure, as provided in Section II(F)(4) below.

10.     "Defendant" or "Defendants" means any or all of the Defendants named in the Action, now or in the past.

11.     "Defendant Processors" means all Defendants other than Webber, Meng, Sahl, and Company, Inc. ("WMS") and Agri Stats, Inc. ("Agri Stats").

12.     "Documents" mean (a) all papers, electronically stored information ("ESI"), statements, transcripts, or other materials within the scope of Rule 34(a)(1)(A) of the Federal Rules of Civil Procedure; and (b) any copies or reproductions of the foregoing, including microfilm copies or computer images.

13.     "Effective Date" shall be the Date of Final Judgment as defined in Section (I)(B).

14.     "Escrow Account" means the account with the Escrow Agent that holds the Settlement Fund.

15.     "Escrow Agent" means the bank into which the Settlement Fund shall be deposited and maintained as set forth in Section II(D) of this Agreement.

16.     "Escrow Agreement" means that certain agreement between the Escrow Agent that holds the Settlement Fund and Class Plaintiffs (by and through Interim Co-Lead

Counsel) pursuant to which the Escrow Account is established and funded for the benefit of the Settlement Class, as set forth in Section II(D) of this Agreement.

17.     "Execution Date" means the date on which this Settlement Agreement is entered into and executed by all Settling Parties.

18.     "Fairness Hearing" has the meaning provided in Section II(F)(4) below.

19.     "Interim Co-Lead Counsel" and "Settlement Class Counsel" means the law firms of Cohen Milstein Sellers & Toll PLLC, Hagens Berman Sobol Shapiro LLP, and Handley Farah & Anderson PLLC.

20.     "Net Settlement Fund" means the Settlement Fund, plus accrued interest, less any award of attorneys' fees or reimbursement of expenses and less applicable taxes, tax preparation expenses, and costs of notice and administration, that may be awarded or approved by the Court.

21.      "Order and Final Judgment" means the order and final judgment of the Court approving the Settlement Agreement, including all of its material terms and conditions without modification, and the settlement pursuant to Federal Rule of Civil Procedure 23, and dismissing Pilgrim's with prejudice from the Action, as described in Section II(F)(8) below.

22.     "Person(s)" means an individual, corporation, partnership, limited liability company, association, trust, unincorporated organization, or other entity or organization.

23.     "Pilgrim's" means Pilgrim's Pride Corporation and all of their current and future subsidiaries, and any of the respective former, current and future, direct or indirect trustees, directors, officers, members, attorneys, agents and insurers of Pilgrim's.

24.     "Pilgrim's Counsel" means the law firm of Weil Gotshal & Manges LLP or other legal advisors retained for purposes of advising Pilgrim's with respect to the Action.

25.     "Pilgrim's Released Parties" means Pilgrim's and Pilgrim's former, current and future parents, subsidiaries and affiliates, and any of the respective former, current and future, direct or indirect trustees, directors, officers, shareholders, managers, members, attorneys, equity holders, agents, insurers and employees of Pilgrim's. Notwithstanding the foregoing, "Pilgrim's Released Parties" does not include any Defendant other than Pilgrim's named by Plaintiffs in the Action, either explicitly or as a third-party beneficiary.

26.     "Plaintiffs" or "Class Plaintiffs" means Plaintiffs named in the Complaint, Judy Jien, Kieo Jibidi, Elaisa Clement, Glenda Robinson, and Emily Earnest.

27.      "Released Claims" means claims defined in Section II(B)(2) of this Settlement Agreement.

28.     "Releasing Party" or "Releasing Parties" shall refer individually and collectively, to the Settlement Class and all members of the Settlement Class, including the Plaintiffs, each on behalf of themselves and their respective predecessors and successors; the assigns of all such persons or entities, as well as any person or entity acting on behalf of or through any of them in any capacity whatsoever, jointly and severally; and any of their past, present and future agents, officials acting in their official capacities, legal representatives, agencies, departments, commissions and divisions; and also means, to the full extent of the power of the signatories hereto to release past, present and future claims, persons or entities acting in a private attorney general, qui tam, taxpayer or any other capacity, whether or not any of them participate in this Settlement Agreement.

29.      "Settlement Agreement" means this document and the agreement reflected therein.

30.     "Settlement Amount" means the cash payment of $29,000,000 described

in Section II(A)(1), below.

31.    "Settlement Class Member" means each member of the Settlement Class that is not timely and properly excluded from the Settlement Class.

32.    "Settlement Class Notice" means the notice to the Settlement Class that is approved by the Court, in accordance with Section II(F)(5) below.

33.    "Settlement Class Period" means the period from and including January 1, 2009 through the Date of Preliminary Approval.

34.    "Settlement Fund" means the funds described in Section II(A) of this Settlement Agreement, plus accrued interest, in the separate Escrow Account for the settlement contemplated by this Settlement Agreement established in accordance with Section II(D) below.

35.    "Settling Parties" means Pilgrim's and the Settlement Class, as represented by the Class Plaintiffs.

36.    "Unrelated Co-Conspirator" means any alleged co-conspirator in the Action that does not satisfy the criteria for inclusion as a "Released Party" in the definition of "Pilgrim's Released Parties."

## II.    SETTLEMENT

### A.    Performance By Pilgrim's.

1.    **Settlement Payment.** In consideration for the release of the Released Claims and the dismissal of the Action, within fourteen business days of the Court's grant of Preliminary Approval, Pilgrim's shall pay or cause to be paid $29,000,000 (twenty-nine million U.S. dollars) into an interest-bearing escrow account maintained by an Escrow Agent on behalf of the Settlement Class (the "Settlement Fund").

        **a.**      Pilgrim's payment to the Escrow Agent described herein shall be by wire transfer pursuant to instructions from the Escrow Agent or Interim Co-Lead Counsel.

        **b.**      The payment described in Section II(A)(1) shall constitute the total Settlement Amount and Pilgrim's shall have no other payment obligations to the Settlement Class or owe any further amount under this Settlement Agreement of the Action, and the obligations described in Section II(A)(2) shall continue so long as this Settlement Agreement remains in effect.

        **2.**      **Cooperation.**  Cooperation by Pilgrim's is a material term of this Settlement Agreement and shall include the following:

        **a.**      Pilgrim's will produce to Plaintiffs structured data identified after a reasonable search, and including, but not limited to, payroll data, sufficient to show with respect to each member of the Settlement Class employed by Pilgrim's or its subsidiaries: name, contact information, internal id number, universal identifying number (*e.g.* Social Security Number), job title, dates of employment, job changes, wages or salaries, bonuses, overtime pay, shift premiums, benefits, changes in wage or salary rate and any other reasonably accessible components of Compensation. Pilgrim's will use reasonable efforts to respond to a reasonable number of Plaintiffs' questions regarding, and otherwise assist Plaintiffs to understand, such structured data.

        **b.**      Pilgrim's agrees to use reasonable efforts to authenticate Documents and/or things produced by Pilgrim's in the Action where the facts indicate that the Documents and/or things at issue are authentic, whether by declarations, affidavits, hearings, and/or trials as may be necessary.

      c.     Plaintiffs will identify five (5) then-current employees of Pilgrim's as document custodians, and Pilgrim's will produce (1) responsive documents in the possession, custody or control of Pilgrim's that are responsive to search terms identified by Plaintiffs and (2) all phone records and phone numbers associated with those custodians in Pilgrim's possession, custody, and control, and will use reasonable efforts to obtain signed authorizations allowing Plaintiffs to obtain records for those phone numbers from third-party carriers.

      d.     Plaintiffs will identify five (5) then-current employees of Pilgrim's who will be deposed by Plaintiffs and will participate as witnesses at trial if requested by Plaintiffs. This limitation on depositions and trial witnesses does not apply to former employees of Pilgrim's, who can be deposed in accordance with discovery limitations established by the Court.

      e.     Pilgrim's will provide reasonable assistance with respect to Class Plaintiffs' efforts to obtain phone records from third-party phone carriers and will not object to Class Plaintiffs' subpoena to third-party phone carriers for phone records of Defendants' current and former employees.

      f.     Pilgrim's will produce the following Documents to Plaintiffs identified by a reasonable search:

- All Documents sent to and received from WMS;

- All written agreements or contracts with Agri-Stats, Inc. and/or Express Markets, Inc.;

- All Pilgrim's contracts with labor unions executed during the Settlement Class Period.

- All documents produced to, and received from, Joint Poultry Industry Human Resources Council, National Chicken Council, and U.S. Poultry & Egg Association that reference any form or component of Compensation;

- Any documents that have been or will be produced to the Department of Justice by Pilgrim's regarding any investigation regarding any form or component of Compensation. Pilgrim's is required to produce any such documents only if and when either the Department of Justice consents to such production (or declines to object) or a court orders any such documents produced. Unless prohibited by the Department of Justice, Pilgrim's agrees to take no position on submissions by Plaintiffs to the Court to obtain any documents submitted to the Department of Justice.

B.      **Release of Claims.**

1.      The Release of Claims is a material term of this Settlement Agreement.

2.      **Release.**  Upon the Date of Final Judgment, the Releasing Parties shall completely release, acquit, and forever discharge the Pilgrim's Released Parties from any and all claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature (whether or not any member of the Settlement Class has objected to the Settlement Agreement or makes a claim upon or participates in the Settlement Fund, whether directly, representatively, derivatively or in any other capacity) that the Releasing Parties ever had, now has, or hereafter can, shall, or may ever have, on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated claims, injuries, losses, damages, and the consequences thereof that have been asserted, or could have been asserted, under federal or state law in any way arising out of or relating in any way to an alleged or actual conspiracy or agreement between Defendants relating to reducing competition for the hiring and retaining of, or to fixing, depressing, restraining, exchanging information about, or otherwise reducing the Compensation paid or provided to, the Releasing Parties by Defendants, co-conspirators, their respective subsidiaries and/or related entities (collectively, the "Released Claims"). Notwithstanding the above, "Released Claims" do not include (i) claims asserted against any Defendant other than the Pilgrim's Released Parties, (ii) any claims wholly unrelated to the allegations or underlying conduct alleged in the Action

that are based on breach of contract, negligence, personal injury, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, discrimination, COVID-19 safety protocols, failure to comply with wage and hours laws unrelated to anticompetitive conduct, or securities claims. This reservation of claims set forth in (i) and (ii) of this paragraph does not impair or diminish the right of the Pilgrim's Released Parties to assert any and all defenses to such claims. During the period after the expiration of the deadline for submitting an opt-out notice, as determined by the Court, and prior to Final Judgment, all Releasing Parties who have not submitted a valid request to be excluded from the Settlement Class shall be preliminarily enjoined and barred from asserting any Released Claims against the Pilgrim's Released Parties. The release of the Released Claims will become effective as to all Releasing Parties upon Final Judgment. Upon Final Judgment, the Releasing Parties further agree that they will not file any other suit against the Pilgrim's Released Parties arising out of or relating to the Released Claims.

   **3.** **Covenant Not to Sue**.  Class Plaintiffs and each Settlement Class Member covenant not to sue, directly or indirectly, or otherwise seek to establish liability against the Pilgrim's Released Parties for any transaction, event, circumstance, action, failure to act, or occurrence of any sort or type arising out of or related to the Released Claims, including, without limitation, seeking to recover damages or other relief relating to any of the Released Claims. This Paragraph shall not apply to any action to enforce this Settlement Agreement.

   **4.** **Full Release**. The Settling Parties to this Agreement expressly agree and confirm that the Released Claims as set forth in the provisions of Section II(B) constitute a full and final release of the Pilgrim's Released Parties by the Releasing Parties of the Released Claims.

5.      **Waiver**. In addition to the provisions of Section II(B)(2), the Releasing Parties hereby expressly waive and release, solely with respect to the Released Claims, upon the Date of Final Judgment, any and all provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, which states:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code. Each Releasing Party may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims which are released pursuant to the provisions of Section II(B)(2), but each Releasing Party hereby expressly waives and fully, finally, and forever settles and releases, upon the Date of Final Judgment, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that the Releasing Parties have agreed to release pursuant to Section II(B)(2), whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

C.      **Claims Administrator.** Pursuant to the Preliminary Approval Order, and subject to Court approval, Interim Co-Lead Counsel shall engage a qualified Claims Administrator.  The Claims Administrator will assist with the settlement claims process as set forth herein.

1.      The Claims Administrator shall effectuate the notice plan approved by the Court in the Preliminary Approval Order, shall administer and calculate the claims, and shall oversee distribution of the Net Settlement Fund in accordance with the Plan of Distribution.

2.      The Claims Administrator also shall assist in the development of the Plan of Distribution and the resolution of any disputes regarding the Plan of Distribution.

**D.      Settlement Fund Administration.**  The Settlement Fund shall be administered pursuant to the provisions of this Settlement Agreement and subject to the Court's continuing supervision and control, until the funds in the Settlement Fund are fully distributed, as follows:

1.      The Settlement Fund shall be established within an Escrow Account and administered by an Escrow Agent at a bank, in each case, designated by Interim Co-Lead Counsel.  Interim Co-Lead Counsel, Pilgrim's, and Pilgrim's Counsel agree to cooperate in good faith to prepare an appropriate Escrow Agreement in conformance with this Agreement.

2.      Neither the Settlement Class, Interim Co-Lead Counsel, Pilgrim's, nor Pilgrim's Counsel shall have any responsibility, financial obligation, or liability for any fees, costs, or expenses related to providing notice to the Settlement Class or obtaining approval of the settlement or administering the settlement. Such fees, costs, or expenses shall be paid solely from the Settlement Fund, subject to any necessary Court approval. Pilgrim's shall not object to Interim Co-Lead Counsel withdrawing from the Settlement Fund, subject to any necessary Court approval, up to $1,500,000 to pay the costs for notice and for Preliminary and Final Approval of the Settlement Agreement. Any costs of notice that Interim Co-Lead Counsel are permitted to withdraw from the Settlement Fund, either pursuant to the Settling Parties' Settlement Agreement or order of the Court, shall be nonrefundable if, for any reason, the Settlement Agreement is terminated according to its terms. At their discretion, Plaintiffs may combine the notice of the Pilgrim's settlement with the notice for any other Defendant in the action. The timing of the filing of a motion to approve notice of the Settlement Agreement to the Settlement

Class, and the timing proposed to the Court for the actual distribution of that notice to the

Settlement Class, shall be at the sole discretion of Interim Co-Lead Counsel.

       3.      Under no circumstances will Pilgrim's or the Pilgrim's Released Parties be

required to pay more than the Settlement Amount pursuant to this Agreement and the settlement

set forth herein. For purposes of clarification, the payment of any fee and expense award, the

notice and administrative costs (including payment of any applicable fees to Escrow Agent) and

any other costs associated with the implementation of this Settlement Agreement shall be

exclusively paid from the Settlement Amount.

       4.      Except for as provided in Section II(F)(11), no other funds shall be paid or

disbursements made from the Settlement Fund without an order of the Court.

       5.      The Escrow Agent shall, to the extent practicable, invest the funds

deposited in the Settlement Fund in discrete and identifiable instruments backed by the full faith

and credit of the United States Government, or fully insured by the United States Government or

any agency thereof, including a United States Treasury Fund or a bank account that is either:

(i) fully insured by the Federal Deposit Insurance Corporation; or (ii) secured by instruments

backed by the full faith and credit of the United States Government. The proceeds of these

accounts shall be reinvested in similar instruments at their then-current market rates as they

mature.  All risks related to the investment of the Settlement Fund in accordance with the

investment guidelines set forth in this paragraph shall be borne by the Settlement Fund.  Any

cash portion of the Settlement Fund not invested in instruments of the type described in the first

sentence of this Section II(D)(5) shall be maintained by the Escrow Agent, and not commingled

with any other funds or monies, in a federally insured bank account.  Subsequent to payment into

the Settlement Fund pursuant to Section II(A)(1), neither Pilgrim's nor Pilgrim's Counsel shall

bear any responsibility or risk related to the Settlement Fund or the Net Settlement Fund.

      6.      The Settling Parties agree that the Settlement Fund and the Net Settlement

Fund are each intended to be a "Qualified Settlement Fund" within the meaning of Treasury

Regulation § 1.468B-1, and to that end, the Settling Parties shall cooperate with each other and

shall not take a position in any filing or before any tax authority that is inconsistent with such

treatment.  In addition, the Escrow Agent, as administrator of the Qualified Settlement Fund

within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be solely responsible for

filing tax returns for the Escrow Account and paying from the Escrow Account any Taxes, as

defined below, owed with respect to the Escrow Account.  In addition, Interim Co-Lead Counsel

shall timely make, or cause to be made, such elections as necessary or advisable to carry out the

provisions of this paragraph, including the "relation-back election" (as defined in Treas. Reg. §

1.468B-1) back to the earliest permitted date. Such election shall be made in compliance with the

procedures and requirements contained in such regulations. It shall be the responsibility of

Interim Co-Lead Counsel to timely and properly prepare and deliver the necessary

documentation for signature by all necessary parties, and thereafter to cause the appropriate

filing to occur.  All provisions of this Settlement Agreement shall be interpreted in a manner that

is consistent with the Settlement Fund being a "Qualified Settlement Fund" within the meaning

of Treas. Reg. § 1.4688-1.  Interim Co-Lead Counsel shall timely and properly file all

information and other tax returns necessary or advisable with respect to the Settlement Fund

(including without limitation the returns described in Treas. Reg. § 1.468B-2(k), (1)).  Such

returns shall reflect that all taxes (including any estimated taxes, interest or penalties) on the

income earned by the Settlement Fund shall be paid out of the Settlement Fund.  Neither

Pilgrim's nor Pilgrim's Counsel shall have any liability or responsibility of any sort for filing any tax returns or paying any Taxes with respect to the Escrow Account.

   7. All: (i) taxes on the income of the Settlement Fund ("Taxes"), and (ii) expenses and costs incurred in connection with the taxation of the Settlement Fund (including, without limitation, expenses of tax attorneys and accountants) shall timely be paid by the Escrow Agent out of the Settlement Fund.  Settlement Class Members shall be responsible for paying any and all federal, state, and local income taxes due on any distribution made to them pursuant to the Settlement provided herein.

   8. After the Date of Final Approval, the Net Settlement Fund shall be disbursed in accordance with a plan of distribution to be approved by the Court.  The timing of a motion to approve a plan of distribution of the Net Settlement Fund created by this Settlement Agreement shall be in the discretion of Interim Co-Lead Counsel, and may be combined with a plan to distribute proceeds from other settlements in this Action.

  **E.** **No Reversion.** Pilgrim's shall have no rights to reversion, except as provided in Section II(F)(11) of this Settlement Agreement. In the event of a reversion, all funds not previously spent on notice and administrative costs shall be returned to Pilgrim's, including any interest accrued.

  **F.** **Approval of Settlement Agreement and Dismissal of Claims.**

   1. **Notice of Settlement**. Within two (2) business days after the execution of this Settlement Agreement by Pilgrim's, Interim Co-Lead Counsel and Pilgrim's Counsel shall jointly file with the Court a notice of settlement and stipulation for suspension of all proceedings by Plaintiffs against Pilgrim's in the Action pending approval of the Settlement Agreement.

2. **Cooperation.**  Class Plaintiffs and Pilgrim's shall cooperate in good faith and use their best efforts to effectuate this Settlement Agreement, including cooperating in seeking the Court's approval of the Settlement Agreement without modification of any of its material terms and conditions, the giving of appropriate Settlement Class Notice under Federal Rules of Civil Procedure 23, and the complete and final dismissal with prejudice of the Action as to Pilgrim's.

3. **Settlement Class Certification.** Class Plaintiffs shall seek, and Pilgrim's shall take no position with respect to, the appointment of Interim Co-Lead Counsel as Settlement Class Counsel for purposes of this Settlement and the certification in the Action of a class for settlement purposes only, referred to herein as the "Settlement Class," which shall include Plaintiffs and be defined as:

> All persons employed by Defendant Processors, their subsidiaries,
> and/or related entities at poultry processing plants in the
> continental United States from January 1, 2009 until the Date of
> Preliminary Approval.

The following persons and entities are excluded from the Settlement Class: complex managers, plant managers, human resources managers, human resources staff, office clerical staff, guards, watchmen, and salesmen; Defendants, co-conspirators, and any of their subsidiaries, predecessors, officers, or directors; and federal, state or local governmental entities.

4. **Preliminary Approval**.  No later than 14 business days after the Execution Date, Class Plaintiffs shall submit to the Court a motion requesting entry of an order preliminarily approving the settlement ("Preliminary Approval Order").  Plaintiffs may combine the motion for Preliminary Approval with a motion to grant preliminary approval for settlement with any other Defendants. The Settling Parties may delay the filing of Preliminary Approval by mutual agreement. At a reasonable time in advance of submission to the Court, the papers in

support of Preliminary Approval shall be provided by Interim Co-Lead Counsel to Pilgrim's Counsel for its review.  Pilgrim's shall not oppose and shall reasonably cooperate in such motion, subject to the below. The proposed Preliminary Approval Order shall provide that, *inter alia*:

    **a.**    the settlement proposed in the Settlement Agreement has been negotiated at arm's length and is preliminarily determined to be fair, reasonable, adequate, and in the best interests of the Settlement Class;

    **b.**    the Claims Administrator is appointed;

    **c.**    after Settlement Class Notice has been carried out, a hearing on the settlement proposed in this Settlement Agreement shall be held by the Court to determine whether the proposed settlement is fair, reasonable, and adequate, and whether it should be finally approved by the Court (the "Fairness Hearing");

    **d.**    Settlement Class Members who wish to exclude themselves from the settlement and the Settlement Agreement must submit an appropriate and timely request for exclusion;

    **e.**    Settlement Class Members who wish to object to this Agreement must submit an appropriate and timely written statement of the grounds for objection;

    **f.**    Settlement Class Members who wish to appear in person to object to this Agreement may do so at the Fairness Hearing pursuant to directions by the Court; and

    **g.**    all proceedings in the Action with respect to Pilgrim's and Class Plaintiffs are stayed until further order of the Court, except as may be necessary to implement the settlement reflected in this Settlement Agreement or comply with the terms thereof.

5.        **Settlement Class Notice.**  The Settlement Class Notice shall provide for a right of exclusion, as set forth in Section II(F)(4).  The Settlement Class Notice shall also provide for a right to object to the proposed Settlement.  Individual notice of the Settlement to all Settlement Class Members who can be identified through reasonable effort shall be mailed, emailed and/or sent via text message to the Settlement Class in conformance with a notice plan to be approved by the Court.   Interim Co-Lead Counsel will undertake all reasonable efforts to notify potential Settlement Class Members of the settlement.  The timing of a motion to approve notice to the Settlement Class of this Settlement Agreement shall be in the discretion of Interim Co-Lead Counsel, and may be combined with notice of other settlements in this Action.

6.        **Cost of Settlement Class Notice**.  The costs of providing Settlement Class Notice to Settlement Class Members shall be paid by the Escrow Agent from the Settlement Fund pursuant to Section II(D)(2) and (3).

7.        **CAFA Notice.**  Within ten days of filing the motion for Preliminary Approval, Pilgrim's will provide to the appropriate state officials and the appropriate federal official the notice required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b) ("CAFA").

8.        **Final Approval**.  If this Settlement Agreement is preliminarily approved by the Court, the Settlement Class shall seek entry of an Order and Final Judgment, which Pilgrim's shall not oppose and in which it shall reasonably cooperate, that *inter alia:*

a.        finally approves this Settlement Agreement and its terms as being a fair, reasonable, and adequate settlement as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms and conditions;

      **b.**     determines that the Settlement Class Notice constituted, under the circumstances, the most effective and practicable notice of this Settlement Agreement and the Fairness Hearing, and constituted due and sufficient notice for all other purposes to all Persons entitled to receive notice;

      **c.**     confirms that Pilgrim's has provided the appropriate notice pursuant to the Class Action Fairness Act, 28 U.S.C. § 1711 et seq. ("CAFA");

      **d.**     orders that all claims made against Pilgrim's in the Action, including in all class action complaints asserted by the Class Plaintiffs, are dismissed with prejudice and without further costs or fees;

      **e.**     discharges and releases the Pilgrim's Released Parties from all Released Claims up through and including the date of Preliminary Approval of this Settlement Agreement;

      **f.**     enjoins Class Plaintiffs from suing, directly or indirectly, any of the Pilgrim's Released Parties for any of the Released Claims;

      **g.**     requires Interim Co-Lead Counsel to file with the clerk of the Court a record of potential Settlement Class Members that timely excluded themselves from the Settlement Class, and to provide a copy of the record to Pilgrim's Counsel;

      **h.**     incorporates the release set forth in Section II(B)(2) of this Agreement and makes that release effective as of the Effective Date as to the Class Plaintiffs and all Settlement Class Members that were not timely and validly excluded from the Settlement Class;

**i.**        determines under Federal Rule of Civil Procedure 54(b) that there is
no just reason for delay and directs that the judgment of dismissal as to Pilgrim's shall be final
and entered forthwith, and stating:

>        i.  Final judgment as to the Action is entered in favor of
>        Pilgrim's; and
>
>        ii.  Final judgment is granted in favor of the Pilgrim's Released
>        Parties on any Released Claim of a Settlement Class Member
>        that did not file a timely notice for exclusion.

**j.**        reserves to the Court exclusive jurisdiction over the settlement and
this Settlement Agreement, including the administration and consummation of this Agreement;
and

**k.**        orders that Settlement Funds may be disbursed as provided in the
Final Approval Order or other order of the Court.

**9.        Class Counsel Fees and Expenses; No Other Costs.**

**a.**        Pilgrim's shall have no responsibility for any other costs, including
Interim Co-Lead Counsel's attorneys' fees, costs, and expenses or the fees, costs, or expenses of
any Plaintiff's or Class Member's respective attorneys, experts, advisors, or representatives,
provided, however, that with respect to the Action, including this Settlement Agreement,
Pilgrim's shall bear its own costs and attorneys' fees.

**b.**        Subject to Interim Co-Lead Counsel's sole discretion as to whether
to apply and timing of such an application, Interim Co-Lead Counsel may apply to the Court for
an attorney fee award, reimbursement of expenses and costs, and/or service awards for class
representatives, to be paid from the proceeds of the Settlement Fund. Pilgrim's shall have no

responsibility, financial obligation, or liability for any such fees, costs, expenses, or service awards.

        **c.**     The procedure for and the allowance or disallowance by the Court of any applications by Interim Co-Lead Counsel for attorneys' fees, reimbursement of expenses, and/or service awards to class representatives are not part of or a condition to the Settlement set forth herein, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Agreement, and any order or proceeding relating to any application for attorneys' fees, reimbursement of expenses, and/or service awards to class representatives shall not operate to terminate or cancel this Agreement or the release set forth herein, or affect or delay the finality of the judgment approving this settlement.

        **d.**     Within 15 days after any order by the Court awarding attorneys' fees, reimbursing expenses, and/or providing service awards to class representatives, the Escrow Agent shall pay the approved attorneys' fees, reimbursement of expenses, and service award via wire transfer from the Settlement Fund as directed by Settlement Class Counsel in accordance with and attaching the Court's order. In the event the Settlement does not become Final or the award of attorneys' fees, reimbursement of expenses, and/or provision of service awards is reversed or modified, Settlement Class Counsel will cause the difference in the amount paid and the amount awarded to be returned to the Settlement Fund within 30 days of the order from a court of appropriate jurisdiction.

        **10.**    **When Settlement Becomes Final**.  The settlement contemplated by this Settlement Agreement shall become final on the Date of Final Judgment.

11.    **Termination and Reduction.** If the Court declines to grant either preliminary or final approval to this Settlement Agreement or any material part hereof (as set forth in Sections II(F)(4) or (F)(8) above, respectively), or if the Court approves this Settlement Agreement in a materially modified form, or if after the Court's approval, such approval is materially modified or set aside on appeal, or if the Court does not enter the Order and Final Judgment, or if the Court enters the Order and Final Judgment and appellate review is sought and on such review such Final Order and Judgment is not affirmed (collectively "Triggering Events"), then Pilgrim's and Class Plaintiffs shall each, in their respective sole discretion, have the option to rescind this Settlement Agreement in its entirety by providing written notice of their election to do so ("Termination Notice") to each other within thirty calendar days of such Triggering Event.  For purposes of this Section II(F)(11), a material modification includes but is not limited to any modification to the settlement payments or the scope of the Released Claims. If rescinded or terminated, this Settlement Agreement shall become null and void, and, with the exception of any Settlement Funds used for notice purposes pursuant to Section II(D)(2), all other funds remaining in the Escrow Account shall be returned to Pilgrim's and the Settling Parties' position shall be returned to the status quo ante. In no way shall Class Plaintiffs have the right to rescind or terminate this Settlement Agreement if the Court fails or refuses to grant any request for attorneys' fees, reimbursement of costs, or any service awards to class representatives.

12.    **No Admission.**

a.    Pilgrim's denies all allegations of wrongdoing in the Action. Nothing in this Settlement Agreement constitutes an admission by Pilgrim's as to the merits of

the allegations made in the Action, or an admission by Class Plaintiffs or the Settlement Class of the validity of any defenses that have been or could be asserted by Pilgrim's.

        **b.**     This Settlement Agreement, and any of its terms, and any agreement or order relating thereto, shall not be deemed to be, or offered by any of the Settling Parties to be received in any civil, criminal, administrative, or other proceeding, or utilized in any manner whatsoever as, a presumption, a concession, or an admission of any fault, wrongdoing, or liability whatsoever on the part of Pilgrim's or other Pilgrim's Released Parties; provided, however, that nothing contained in this Section II(F)(12) shall prevent this Settlement Agreement (or any agreement or order relating thereto) from being used, offered, or received in evidence in any proceeding to approve, enforce, or otherwise effectuate the settlement (or any agreement or order relating thereto) or the Order and Final Judgment, or in which the reasonableness, fairness, or good faith of any Settling Party participating in the settlement (or any agreement or order relating thereto) is in issue, or to enforce or effectuate provisions of this Settlement Agreement or the Order and Final Judgment.  This Settlement Agreement may, however, be filed and used in other proceedings, where relevant, to demonstrate the fact of its existence and of this settlement, including but not limited to Pilgrim's filing the Settlement Agreement and/or the Order and Final Judgment in any other action that may be brought against it in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, waiver, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

        **13.**     **Litigation Standstill.**  Class Plaintiffs shall cease all litigation activities against Pilgrim's in the Action except to the extent expressly authorized in this Settlement Agreement.  Pilgrim's and Pilgrim's Counsel shall cease all litigation activities against Class

Plaintiffs in the Action, except in connection with providing the cooperation provided for in

Section II(A).  For the avoidance of doubt, should Class Plaintiffs seek to depose former

Pilgrim's employees on topics primarily related to their time of employment at Pilgrim's, this

litigation standstill shall not apply, and Pilgrim's in its sole discretion shall be permitted to

represent the interests of Pilgrim's and the former employee in the deposition and any related

discovery practice.  None of the foregoing provisions shall be construed to prohibit Class

Plaintiffs from seeking appropriate discovery from non-settling Defendants, Unrelated Co-

Conspirators, former employees of Pilgrim's consistent with Section II(A)2(d), or other third

parties.

## III.      MISCELLANEOUS

**A.      Entire Agreement.**  This Settlement Agreement shall constitute the entire

agreement between the Settlement Class and Pilgrim's pertaining to the settlement of the Action

against Pilgrim's and supersedes any and all prior and contemporaneous undertakings of the

Settlement Class and Pilgrim's in connection therewith.  All terms of the Settlement Agreement

are contractual and not mere recitals.

**B.      Inurement.**  The terms of the Settlement Agreement are and shall be binding

upon, to the fullest extent possible, each of the Releasing Parties and the Pilgrim's Released

Parties, and upon all other Persons claiming any interest in the subject matter hereto through any

of the Settling Parties, Releasing Parties, or Pilgrim's Released Parties, including any Settlement

Class Members.

**C.      Modification and Waiver.**  This Settlement Agreement may be modified or

amended only by a writing executed by the Class Plaintiffs (through Interim Co-Lead Counsel)

and Pilgrim's, subject (if after preliminary or final approval) to approval by the Court.

Amendments and modifications may be made without notice to the Settlement Class unless notice is required by law or by the Court.  The waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving Party.

        **D.**    **Drafted Mutually.**  For the purpose of construing or interpreting this Settlement Agreement, the Settlement Class and Pilgrim's shall be deemed to have drafted it equally, and it shall not be construed strictly for or against any party.

        **E.**    **Governing Law & Jurisdiction.**  Any disputes relating to this Settlement Agreement shall be governed by Maryland law without regard to conflicts of law provisions. Subject to Court approval, the United States District Court for the District of Maryland shall retain jurisdiction over the implementation, enforcement, and performance of this Settlement Agreement and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement that cannot be resolved by negotiation and agreement by Plaintiffs and Pilgrim's, including mediation with Eric Green of Resolutions LLC.

        **F.**    **Counterparts.**  This Settlement Agreement may be executed in counterparts by Interim Co-Lead Counsel and Pilgrim's Counsel, each of which shall be deemed an original and all of which taken together shall constitute the same Settlement Agreement.  A facsimile or .pdf signature shall be deemed an original signature for purposes of executing this Settlement Agreement.

        **G.**    **Represented by Counsel.**  Class Plaintiffs, the Settlement Class, and Pilgrim's acknowledge that each have been represented by counsel, and have made their own investigations of the matters covered by this Settlement Agreement to the extent they have deemed it necessary to do so and are not relying on any representation or warranty by the other

party other than as set forth herein.  Therefore, the Settling Parties and their respective counsel agree that they will not seek to set aside any part of the Settlement Agreement on the grounds of mistake.  The Settling Parties agree that this Settlement Agreement was negotiated in good faith by the Settling Parties, and reflects a settlement that was reached voluntarily after consultation with competent counsel and the participation of a neutral mediator, and no Settling Party has entered this Settlement Agreement as the result of any coercion or duress.

        **H.**     **Authorization.**  Each of the undersigned attorneys represents that he or she is fully authorized to enter into and execute this Settlement Agreement, subject to Court approval; the undersigned Interim Co-Lead Counsel represent that they are authorized to execute this Settlement Agreement on behalf of Class Plaintiffs; and the undersigned Pilgrim's Counsel represent that they are authorized to execute the Settlement Agreement on behalf of Pilgrim's.

        **I.**     **Privilege.**

        **1.**     Nothing in this Settlement Agreement, settlement, or the negotiations or proceedings relating to the foregoing is intended to or shall be deemed to constitute a waiver of any applicable privilege or immunity, including, without limitation, the accountants' privilege, the attorney-client privilege, the joint defense privilege, or work product immunity.

        **2.**     The Settling Parties agree to continue to maintain the confidentiality of all settlement discussions and materials exchanged during the settlement negotiation. However, Pilgrim's and Class Plaintiffs can inform other parties to this Action that they have reached a settlement agreement, the amount of the settlement, and the cooperation provided for in Section II(A) of this Settlement Agreement. Moreover, Pilgrim's may, consistent with its obligations under federal securities laws and other legal obligations, disclose the fact of settlement, the amount of settlement and other terms of the Settlement Agreement in required filings.

**J.     No Unstated Third-Party Beneficiaries**.  No provision of this Agreement shall provide any rights to, or be enforceable by, any Person that is not a Released Party, Plaintiff, Settlement Class Member, or Interim Co-Lead Counsel.

**K.     Breach.**  This Agreement does not waive or otherwise limit the Settling Parties' rights and remedies for any breach of this Agreement. Any breach of this Agreement may result in irreparable damage to a Party for which such Party will not have an adequate remedy at law. Accordingly, in addition to any other remedies and damages available, the Settling Parties acknowledge and agree that the Settling Parties may immediately seek enforcement of this Settlement Agreement by means of specific performance or injunction, without the requirement of posting a bond or other security.  The waiver by any Party of any particular breach of this Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent or contemporaneous, of this Agreement

**L.     Notice.**  Other than Settlement Class Notice, any notice required pursuant to or in connection with this Settlement Agreement shall be in writing and shall be given by: (1) hand delivery; (2) registered or certified mail, return receipt requested, postage prepaid; or (3) UPS or similar overnight courier, addressed, in the case of notice to any Plaintiff or Settlement Class Member, to Interim Co-Lead Counsel at their physical addresses set forth below, with a copy by email at the email addresses set forth below and, in the case of notice to Pilgrim's, to its representatives at their physical addresses set forth below, with a copy by email at the email addresses set forth below, or such other physical or email addresses as Pilgrim's or Interim Co-Lead Counsel may designate, from time to time, by giving notice to all Settling Parties in the manner described in this Section III(L).

For Class Plaintiffs:

       Steve W. Berman
       HAGENS BERMAN SOBOL SHAPIRO LLP
       1301 Second Avenue, Suite 2000
       Seattle, Washington  98101
       (206) 623-7292
       steve@hbsslaw.com

       Shana E. Scarlett
       HAGENS BERMAN SOBOL SHAPIRO LLP
       715 Hearst Avenue, Suite 202
       Berkeley, California 94710
       Telephone: (510) 725-3000
       shanas@hbsslaw.com

       Brent W. Johnson
       COHEN MILSTEIN SELLERS & TOLL PLLC
       1100 New York Avenue, NW, 5th Floor
       Washington, DC 20005
       T: (202) 408-4600
       F: (202) 408-4699
       bjohnson@cohenmilstein.com

       George F. Farah
       HANDLEY FARAH & ANDERSON PLLC
       33 Irving Place
       New York, NY 10003
       T: (212) 477-8090
       F: (844) 300-1952
       gfarah@hfajustice.com


For Pilgrim's

       Carrie C. Mahan
       Christopher J. Abbott
       WEIL GOTSHAL & MANGES LLP
       2001 M Street N.W., Ste. 600
       Washington, D.C. 20036
       Telephone: (202) 682-7000
       Facsimile: (202) 857-0940
       carrie.mahan@weil.com
       christopher.abbott@weil.com

IN WITNESS WHEREOF, the Settling Parties hereto, through their fully authorized representatives, have agreed to this Settlement Agreement as of the Execution Date.

Dated:  June 14, 2021

_____

Steve W. Berman
Breanna Van Engelen
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
breannav@hbsslaw.com

Shana E. Scarlett
Rio S. Pierce
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com
rios@hbsslaw.com

Dated:  June 14, 2021

_____

Brent W. Johnson
Benjamin D. Brown
Daniel Silverman
Alison Deich
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Ave. NW
Suite 500, West Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
bjohnson@cohenmilstein.com
bbrown@cohenmilstein.com
dsilverman@cohenmilstein.com
adeich@cohenmilstein.com

31

Dated:  June 14, 2021

 

George F. Farah
HANDLEY FARAH & ANDERSON PLLC
33 Irving Place
New York, NY 10003
T: (212) 477-8090
F: (844) 300-1952
gfarah@hfajustice.com

*Interim Co-Lead Counsel for the Proposed Class*

 

Dated: June 14 2021

 

Carrie C. Mahan
Christopher J. Abbott
WEIL GOTSHAL & MANGES LLP
2001 M Street N.W., Ste. 600
Washington, D.C. 20036
Telephone: (202) 682-7000
Facsimile: (202) 857-0940
carrie.mahan@weil.com
christopher.abbott@weil.com

*Counsel for Pilgrim's Pride Corp*