# EXHIBIT DX001

UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| JUDY JIEN, *et al.*,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>PERDUE FARMS, INC., *et al.*,<br><br>　　　　Defendants. | Case No. 1:19-cv-2521-SAG<br><br>**DEFENDANT JENNIE-O TURKEY STORE, INC.'S ANSWERS AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES TO ALL DEFENDANT PROCESSORS** |

## PRELIMINARY STATEMENT

Defendant Jennie-O Turkey Store, Inc. ("JOTS"), by and through its undersigned counsel, hereby serves these Answers and Objections ("Answers") to Plaintiffs' First Set of Interrogatories to All Defendant Processors ("Interrogatories").

JOTS's Scope Limitations below are incorporated by reference in each of JOTS's Answers as if set forth separately therein, and each Answer is made without waiving any of these Scope Limitations. The assertion of additional specific objections to a particular Interrogatory or the repetition of an objection shall not be construed as waiving any applicable objection with respect to that or any other Interrogatories. JOTS reserves the right to assert additional scope limitations and objections or to supplement the Scope Limitations and objections set forth herein.

## SCOPE LIMITATIONS ON JOTS'S ANSWERS

1.　　JOTS objects to these Interrogatories to the extent they seek to impose obligations beyond what is required by the Federal Rules of Civil Procedure, the Local Rules of this Court, and any Orders which may be entered in this case.

2.　　JOTS objects to these Interrogatories to the extent they seek discovery that is not proportional to the needs of the case, considering the importance of the issues at stake in the action,

the amount in controversy, the Parties' relative access to relevant information, the Parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

3. JOTS objects to these Interrogatories to the extent they seek discovery that is not directly related to the claims or defenses at issue in this litigation. Any Interrogatory that encompasses time periods, activities, or locations beyond those at issue as to JOTS in this case is overly broad.

4. JOTS objects to the Plaintiffs' identification of the "Relevant Time Period" of "January 1, 2007 through the present" as overly broad, unduly burdensome, and disproportionate to the needs of the case. The Class Period alleged in the Complaint is "from January 1, 2009 until the present." *See* Dkt. No. 386, 2d Am. Compl. ¶ 294. As to the start date, JOTS is only alleged to have participated in "off the books" meetings "for the first time in or around 2015," and JOTS is not specifically alleged to have participated in any alleged conspiracy prior to that date. *See id.* ¶ 194. Interrogatories seeking information from JOTS for the eight years prior to its supposed joining of the alleged conspiracy are therefore overly broad, unduly burdensome, and disproportionate to the needs of the case. As to the end date, JOTS objects to an indefinite and interminable time period as overly broad, unduly burdensome, and disproportionate to the needs of the case. In fact, JOTS attended only one Poultry Industry Meeting in 2015, and had terminated its subscription to Agri Stats turkey reports by February 2018; thus, by February 2018, JOTS had ceased all activity alleged to have been related to the purported conspiracy. For purposes of responding to Plaintiffs' Interrogatories, unless otherwise noted, JOTS will construe the "Relevant Time Period" to be from January 1, 2015 to August 30, 2019—that is, from the earliest date on

which JOTS is alleged to have participated in the alleged conspiracy to the date on which Plaintiffs filed their Class Action Complaint.

      5.      JOTS objects to these Interrogatories to the extent they attempt or purport to seek information unrelated to wages, salaries, and benefits paid to U.S. poultry processing plant workers. Any Interrogatory that encompasses activities, locations, and/or entities that do not process poultry or that relates to subject matter other than wages, salaries, and benefits for such activity is overly broad, unduly burdensome, and disproportionate to the needs of this case. Unless otherwise stated, JOTS' search for responsive information is limited to that located within and relating to the United States.

      6.      JOTS objects to these Interrogatories to the extent they attempt or purport to seek documents and/or information protected by the attorney-client privilege, the work-product doctrine, or any other applicable privilege held by JOTS. The inadvertent production of any document shall not constitute a waiver of JOTS's rights or privileges. JOTS reserves the right to seek the destruction or return of any inadvertently produced documents in accordance with the April 26, 2021 Stipulated Protective and Clawback Order ("Protective Order") entered in this case and the Federal Rules of Evidence. If production of a document is deemed to be a waiver of a right or privilege, that waiver shall be a limited waiver pertaining to that document only.

      7.      JOTS objects to these Interrogatories to the extent they seek confidential business information, proprietary information, commercially sensitive information, competitively significant information, protected health information, personal information related to JOTS's employees, and/or trade secrets of JOTS, its predecessors, and/or third parties. JOTS intends to provide its Answers subject to the Protective Order entered in this matter, where appropriate, but reserves the right to seek further protections if needed.

8. JOTS objects to the Interrogatories to the extent they seek information not in JOTS's possession, custody or control, or information more easily obtained from sources other than JOTS. JOTS further objects to the Interrogatories to the extent they seek information already in Plaintiffs' possession. JOTS also objects to the Interrogatories on the grounds and to the extent they seek information available through other means of discovery that are more convenient, more efficient and/or more practical, including document requests or depositions.

9. JOTS objects to the Interrogatories to the extent they are improperly compound and contain multiple subparts. JOTS may answer compound Interrogatories, but reserves all rights to cease responding to Interrogatories and/or subparts of Interrogatories in excess of the limits set forth in Federal Rule of Civil Procedure 33, agreed upon by the Parties, or ordered by the Court.

10. Finally, JOTS's investigation into this matter is ongoing. Accordingly, JOTS reserves the right to alter, amend, or supplement these Answers and Objections as litigation progresses.

## OBJECTIONS TO DEFINITIONS

1. JOTS objects to Plaintiffs' definition of the term "Co-Conspirator" as vague, ambiguous, overly broad, unduly burdensome, and disproportionate to the needs of this case; because it seeks information not within JOTS's possession, custody, or control; and would require JOTS to guess at whether any entities not identified as "Agents or Co-Conspirators" by the Second Amended Consolidated Complaint ("Complaint") fits within the scope of this definition. JOTS will interpret the term "Co-Conspirator" to include only those entities listed in paragraphs 63 to 125 of the Complaint.

2. JOTS objects to Plaintiffs' definition of the term "Compensation" to the extent such definition departs from its plain and ordinary meaning as vague, ambiguous, unduly burdensome, and beyond the scope of Plaintiffs' claims in the Complaint. JOTS further objects to the definitions

4

to the extent they incorporate other defined terms to which JOTS objects. JOTS will interpret "Compensation" to mean wages, salaries, benefits, bonuses, and pay.

3. JOTS objects to Plaintiffs' definition of the term "Defendant" as overly broad because it includes "predecessors, subsidiaries, affiliates, successors, parents, departments, divisions, joint ventures, and any organization or entity managed or controlled by a named defendant." JOTS further objects to the definition as vague and ambiguous because the terms "managed" and "controlled" are not defined. JOTS will interpret "Defendant" to mean only the Defendants named in the Complaint.

4. JOTS objects to the Plaintiffs' definition of the term "Meeting" as vague, ambiguous, overly broad, unduly burdensome, and disproportionate to the needs of the case because it assumes JOTS's knowledge of whether any meeting was attended by "two or more persons for any purpose." JOTS responds based only upon its knowledge. JOTS further objects to Plaintiffs' definition of the term "Meeting" to the extent it seeks discovery of meetings with representatives of entities other than the other Defendants.

5. JOTS objects to Plaintiffs' definition of the term "Poultry" as overly broad and unduly burdensome and not proportionate to the needs of the case to the extent it seeks information unrelated to any parties' claims or defenses, including information regarding "birds slaughtered for consumption by humans" other than chicken or turkey. Notwithstanding the above, JOTS will interpret "Poultry" to mean chicken and turkey slaughtered for consumption by humans in the United States, as set forth in the Complaint.

6. JOTS objects to Plaintiffs' definition of the term "Poultry Processor" as vague, ambiguous, overly broad, unduly burdensome, and disproportionate to the needs of this case; seeks information not within JOTS's possession, custody, or control; and would require JOTS to guess

5

at whether any non-Defendant entity fits within the scope of this definition. JOTS will interpret "Poultry Processor" to mean only the named Defendants in this action—other than Defendants Agri Stats, Inc. and Webber, Meng, Saul and Company, Inc. d/b/a WMS & Company, Inc.

7.  JOTS objects to Plaintiffs' definition of the term "Poultry Processor Employee" because, by incorporating the definitions of "Defendant Processor," "Co-Conspirator," and "Poultry Processor," the definition includes individuals and entities who are not employed by JOTS, and therefore seeks information beyond JOTS's possession, custody, or control. Consistent with Plaintiffs' proposed Class, *see* 2d Am. Compl. ¶¶ 294-95, JOTS will interpret "Employee" to mean only those nonmanagerial individuals employed by and paid a wage or salary by JOTS to work at its turkey-processing plants during the Relevant Time Period, and who are not responsible for plant management or human resources.

8.  JOTS objects to Plaintiffs' definition of the term "Poultry Processing Plant" as vague, ambiguous, overly broad, unduly burdensome, and disproportionate to the needs of this case; and seeks information not within JOTS's possession, custody, or control; and would require JOTS to guess at whether any non-Defendant entity fits within the scope of this definition. JOTS further objects to the Plaintiffs' definition of the term "Poultry Processing Plant" because the definition is not limited to facilities within the United States.

9.  JOTS objects to Plaintiffs' definition of the term "Representative" as vague, ambiguous, overly broad, unduly burdensome, and disproportionate to the needs of the case. JOTS also objects to the definition of this term on the grounds that it purports to include individuals and entities that are irrelevant and outside the scope of this case, and that it purports to impose a burden on JOTS to obtain information from third parties outside of its control.

10. JOTS objects to Plaintiffs' definition of the terms "You," "Your," and "Your company" as vague, ambiguous, overly broad, unduly burdensome, and disproportionate to the needs of the case. Plaintiffs have not named any of JOTS's predecessors, subsidiaries, affiliates, successors, parents, departments, joint ventures, or any other organization or entity that JOTS manages or controls, including those merged with or acquired, or any present or former directors, officers, employees, agents, attorneys, representatives, or any persons acting or purporting to act on its behalf, as Defendants in this litigation. JOTS further objects to this definition on the grounds that it purports to include individuals and entities beyond the named Defendants that are irrelevant and outside the scope of the case, and that it purports to impose a burden on JOTS to obtain information from third parties outside of its control. JOTS interprets these terms to mean only named Defendants as of the date of these Objections and Responses. JOTS will interpret "You," "Your," and "Your company" to refer to the operations of JOTS and its turkey-processing plants.

## OBJECTIONS TO INSTRUCTIONS

1  JOTS objects to Instruction No. 2 to the extent it seeks to impose obligations beyond or in excess of what is required by the Federal Rules of Civil Procedure, the Local Rules of this Court, and any orders which may be entered in this case. JOTS will supplement its discovery as needed consistent with the Federal Rules of Civil Procedure, the Local Rules, or as ordered by the Court.

2  JOTS objects to Instruction No. 3 to the extent that it seeks to impose obligations beyond what is required by the Federal Rules of Civil Procedure, the Local Rules of this Court and any Orders which may be entered in this case—including the May 4, 2021 Order Regarding Electronically Stored Information and Paper Documents ("ESI Protocol"). *See* Dkt. No. 457. To

the extent JOTS produces documents under Rule 33(d), it will do so in accordance with the Federal Rules of Civil Procedure, the Local Rules, and any orders which may be entered in this case.

### ANSWERS AND OBJECTIONS TO INTERROGATORIES

**INTERROGATORY NO. 1**: Identify the names of all current or former Representatives of You who participated in analyzing, recommending, setting, modifying, and/or approving Compensation; their positions and titles while serving as Representatives of You; the dates in which they held those positions and titles; and a general description of their duties throughout the time they held those positions and titles.

**ANSWER TO INTERROGATORY NO. 1:** In addition to the Scope Limitations, Objections to Definitions, and Objections to Instructions, JOTS objects to Interrogatory No. 1 on the grounds that it is vague and ambiguous in its use of the undefined term "participated," and is overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to seek information regarding employees who do not have primary responsibility and/or decision-making authority for analyzing, recommending, setting, modifying, and/or approving compensation of employees at JOTS's turkey-processing plants, and requires the additional disclosure of information already produced to Plaintiffs in this matter.

Notwithstanding and subject to the foregoing objections, JOTS states that the following persons had primary responsibility and decision-making authority regarding the compensation of employees at JOTS's turkey-processing plants between January 1, 2015 and August 30, 2019:

| Name | Role | Dates Held | Duties |
|---|---|---|---|
| Steve Lykken | President | 12/4/17–8/30/19 | Setting, modifying, and approving compensation of employees at JOTS's turkey-processing plants |
| Glenn Leitch | Former President | 1/1/15–12/4/17 | Setting, modifying, and approving compensation of employees at JOTS's turkey-processing plants |
| Paul Kuehneman | Vice President & CFO | 5/30/16–8/30/19 | Approving compensation of employees at JOTS's turkey-processing plants |
| Gary Jamison | Former Vice President & CFO | 1/1/15–2/15/17 | Approving compensation of employees at JOTS's turkey-processing plants |

| Patricia Solheid | Former Vice President, HR | 1/1/15–5/31/19 | Analyzing, recommending, setting, modifying, and approving compensation for employees at JOTS's turkey-processing plants |

**INTERROGATORY NO. 2**: Identify the names of all current or former Representatives of You who have interacted with WMS, including any of Your current or former Representatives who contracted with WMS, made a payment to WMS, provided Compensation data to WMS, received Compensation data from WMS, and/or attended any Meeting that was attended or arranged by WMS. For each such Representative of You, identify whether that individual has contracted with WMS, made a payment to WMS, provided Compensation data to WMS, received Compensation data from WMS, and/or attended a Meeting that was attended or arranged by WMS, as well as the date range for when each such action or actions occurred.

**ANSWER TO INTERROGATORY NO. 2:** In addition to the Scope Limitations, Objections to Definitions, and Objections to Instructions, JOTS objects to Interrogatory No. 2 on the grounds that it is vague, ambiguous, overly broad, and unduly burdensome in its use of the undefined term "interacted" and the phrase "any Meeting that was attended or arranged by WMS" because JOTS does not have knowledge of whether a meeting "was attended or arranged by WMS," apart from the 2015 Poultry Industry Meeting on May 4 and 5, 2015 at the Hilton Sandestin. JOTS further objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of this case insofar as it is not limited to the provision or receipt of data related to compensation of employees at poultry-processing plants or attendance at a meeting arranged by WMS.

Notwithstanding and subject to the forgoing objections, JOTS states that Carol Westaby—a former HR Compensation Analyst—attended the 2015 Poultry Industry Meeting on May 4 and 5, 2015 at the Hilton Sandestin during which the 2015 Annual Poultry Industry Compensation and Benefits Survey was discussed. JOTS further states that, in connection with her attendance at the 2015 Poultry Industry Meeting, Westaby collected and provided certain historical information regarding the compensation of employees at JOTS's turkey-processing plants to WMS in or around

February 2015, and received information from WMS and compiled by WMS for the 2015 Annual Poultry Industry Compensation and Benefits Survey at the May 4 and 5, 2015 meeting.

**INTERROGATORY NO. 3**: Identify each Meeting attended or arranged by WMS or any of its Representatives and also attended by You or one or more of Your Representatives during which Compensation paid by one or more Poultry Processors was discussed, including each Meeting attended by You or one or more of Your Representatives at which WMS or any of its Representatives distributed and/or discussed the results of a Compensation survey that was completed by one or more Poultry Processors. For each such Meeting, identify the date of the Meeting, the location of the Meeting, the entity or entities that arranged the Meeting, the entity or entities that financed the Meeting, the Poultry Processors that attended the Meeting, and the names and then-employers of all individuals who attended the Meeting.

**ANSWER TO INTERROGATORY NO. 3:** In addition to the Scope Limitations, Objections to Definitions, and Objections to Instructions, JOTS objects to Interrogatory No. 3 on the grounds that it is vague, ambiguous, overly broad, and unduly burdensome in its use of the undefined term "discussed" and the phrase "any Meeting that was attended or arranged by WMS" because JOTS does not have knowledge of whether a meeting "was attended . . . by WMS." JOTS further objects to this Interrogatory to the extent it seeks information not within JOTS's possession, custody, or control and available from sources other than JOTS.

Notwithstanding and subject to the foregoing objections, JOTS incorporates its Answer to Interrogatory No. 2, and states that, pursuant to Federal Rule of Civil Procedure 33(d), it will produce, in conjunction with its Answers, documents in the Company's possession, custody, and control related to the 2015 Annual Poultry Industry Compensation and Benefits Survey and the 2015 Poultry Industry Meeting which contain information responsive to this Interrogatory.

**AS TO ANSWERS:**

    I, Paul R. Kuehneman, after being duly sworn on oath, state that I am an authorized signatory of Defendant Jennie-O Turkey Store, Inc., and verify the above Interrogatory answers for and on behalf of Defendant Jennie-O Turkey Store, Inc. and am duly authorized to do so; that certain of the matters stated in these Interrogatory answers are not within the personal knowledge of the signatory; that these Interrogatory answers have been assembled by authorized employees and counsel of Defendants; and that the facts stated in these Interrogatory answers are true and correct.

Dated: July 6, 2021

JENNIE-O TURKEY STORE, INC.

*[signature]*

Vice President & Chief Financial Officer
Jennie-O Turkey Store, Inc.

**AS TO OBJECTIONS:**

Dated: July 7, 2021

                                                  /s/ Emily E. Chow

                                    Jonathan H. Todt (Bar No. 07166)
                                    FAEGRE DRINKER BIDDLE & REATH LLP
                                    1500 K Street, N.W., Suite 1100
                                    Washington, D.C. 20005-1209
                                    Phone: (202) 230-5823
                                    Fax: (202) 842-8465
                                    jonathan.todt@faegredrinker.com

                                    Richard A. Duncan (*pro hac vice*)
                                    Craig S. Coleman (*pro hac vice*)
                                    Emily E. Chow (*pro hac vice*)
                                    Isaac B. Hall (*pro hac vice*)
                                    FAEGRE DRINKER BIDDLE & REATH LLP
                                    2200 Wells Fargo Center
                                    90 South Seventh Street
                                    Minneapolis, MN 55402-3901
                                    Phone: (612) 766-7000
                                    Fax: (612) 766-1600
                                    richard.duncan@faegredrinker.com
                                    craig.coleman@faegredrinker.com

emily.chow@faegredrinker.com
isaac.hall@faegredrinker.com

Christopher A. Kreuder (*pro hac vice*)
FAEGRE DRINKER BIDDLE & REATH LLP
801 Grand Avenue, 33rd Floor
Des Moines, IA 50309
Phone: (515) 248-4733
Fax: (515) 248-9010
christopher.kreuder@faegredrinker.com

*Counsel for Jennie-O Turkey Store, Inc.*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that, on July 7, 2021, a copy of the foregoing was served by agreement via email to all counsel of record.

                                                                                            */s/ Emily E. Chow*