**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

JUDY JIEN, et al.,

                            Plaintiffs,

            v.

PERDUE FARMS, INC., et al.,

                        Defendants.

C.A. No. 1:19-CV-2521-SAG

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH GEORGE'S, INC. AND GEORGE'S FOODS, LLC, CERTIFICATION OF SETTLEMENT CLASS, AND APPOINTMENT OF SETTLEMENT CLASS COUNSEL**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .............................................................................................. 1

II.   BACKGROUND ................................................................................................ 2

    A.    The Litigation ......................................................................................... 2

    B.    The Settlement Agreement ..................................................................... 2

        1.    The Settlement Class ................................................................... 3

        2.    The Settlement Amount .............................................................. 3

        3.    Cooperation Requirements .......................................................... 3

        4.    Release of All Claims against George's ...................................... 5

III.  THE COURT SHOULD PRELIMINARILY APPROVE THE
     SETTLEMENT AGREEMENT ........................................................................ 5

    A.    Standard for Granting Preliminary Approval ......................................... 5

    B.    The Settlement Agreement Is Fair ......................................................... 7

    C.    The Settlement Agreement Is Adequate ............................................... 10

IV.   THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT
     CLASS ............................................................................................................. 13

    A.    The Settlement Class Satisfies Rule 23(a) ........................................... 14

        1.    Numerosity ................................................................................ 14

        2.    Commonality ............................................................................. 14

        3.    Typicality .................................................................................. 15

        4.    Adequacy .................................................................................. 15

    B.    The Requirements of Rule 23(b)(3) Are Satisfied ............................... 16

        1.    Predominance of Common Issues .............................................. 16

            a.    Violation of the Antitrust Laws ................................... 17

            b.    Impact of the Unlawful Activity ................................. 18

        c.     Measurable Damages ................................................................... 20

    2.    Superiority of a Class Action ................................................................ 21

V.    DEFERRING CLASS NOTICE IS APPROPRIATE IN THIS CASE ........................... 23

VI.    CONCLUSION ............................................................................................... 25

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs Judy Jien, Kieo Jibidi, Elaisa Clement, Glenda Robinson and Emily Earnest (collectively "Plaintiffs") submit this Memorandum in Support of their Motion for Preliminary Approval of a proposed settlement between Plaintiffs and Defendants George's, Inc. and George's Foods, LLC (hereinafter "George's"). The Settlement Agreement achieves an excellent result for the Plaintiffs in this action and is attached as Exhibit A to the accompanying Declaration of George F. Farah, September 15, 2021 ("Farah Decl."). All defined terms herein have the same meaning as set forth in the Settlement Agreement.

## I.     INTRODUCTION

After hard-fought, arm's-length negotiations by highly experienced counsel, Plaintiffs and George's reached a Settlement Agreement resolving the claims of a proposed class of poultry processing workers employed at Defendants' plants (the "Settlement Class" as defined in § II.B.1 below). The Settlement Agreement, which was executed on August 17, 2021, secures a $5,800,000 cash payment for the Settlement Class and requires George's to provide material cooperation to Plaintiffs in the litigation against the remaining Defendants.

Accordingly, Plaintiffs respectfully request that the Court enter an order: (1) preliminarily approving the Settlement Agreement; (2) certifying the Settlement Class defined below; (3) appointing Interim Co-Lead Counsel as Settlement Class Counsel; (4) appointing Plaintiffs as Settlement Class Representatives; (5) deferring notice of the Settlement Agreement to the Settlement Class until an appropriate future date; and (6) ordering a stay of all proceedings against George's except those proceedings provided for or required by the Settlement Agreement.

## II.     BACKGROUND

### A.     The Litigation

Plaintiffs allege that the nation's leading poultry processors and two consulting companies conspired to depress the compensation paid to workers at poultry processing plants. Specifically, Plaintiffs allege that Defendants entered into two unlawful agreements in violation of the Sherman Act, 15 U.S.C. § 1: (1) a *per se* illegal agreement to fix compensation for poultry processing workers; and (2) an agreement to exchange competitively sensitive compensation information, in violation of the rule of reason. Defendants have denied Plaintiffs' allegations.

This action was initiated on August 30, 2019. ECF No. 1. Defendants moved to dismiss Plaintiffs' First Amended Complaint on March 2, 2020. *See, e.g.,* ECF No. 341. The Court granted those motions in part and denied them in part, without prejudice. ECF No. 379. On November 2, 2020, Plaintiffs filed their Second Amended Complaint, which, as the Court later found, cured the pleading defects that the Court had identified in the First Amended Complaint. ECF Nos. 386, 414, 415. Defendants have filed their Answers, and the parties have commenced discovery, serving and responding to document requests and interrogatories. *See, e.g.*, ECF No. 431.

### B.     The Settlement Agreement

Plaintiffs' counsel and counsel for George's engaged in comprehensive, hard-fought negotiations over several weeks to achieve a settlement. Farah Decl. ¶¶ 7-8. The discussions were predicated on an understanding of the strengths and weaknesses of the case, including factual information gleaned from an extensive pre-filing investigation. *Id.* ¶ 10.

The agreement was executed on August 17, 2021. The basic terms of the Settlement Agreement include:

1.     <u>The Settlement Class</u>

The Settlement Class consists of "[a]ll persons employed by Defendant Processors, their subsidiaries, and/or related entities at poultry processing plants in the continental United States from January 1, 2009 until July 20, 2021." Settlement Agreement § II(F)(3). The following persons and entities are excluded from the Settlement Class: "complex managers, plant managers, human resources managers, human resources staff, office clerical staff, guards, watchmen, and salesmen; Defendants, co-conspirators, and any of their subsidiaries, predecessors, officers, or directors; and federal, state or local governmental entities." *Id.* The Settlement Class is substantively the same as the class alleged in the operative complaint. *See* Second Amended Consolidated Complaint, ECF No. 386 (Nov. 2, 2020) (defining the Class as "all persons employed by Defendants, their subsidiaries, and related entities at poultry processing plants in the continental United States from January 1, 2009 until the present[.]").

2.     <u>The Settlement Amount</u>

The proposed Settlement Agreement provides that George's will pay $5.8 million dollars ($5,800,000) for the benefit of the Settlement Class. This amount will be deposited in an escrow account by George's within 14 business days after entry of the preliminary approval order. Settlement Agreement § II(A)(1). This is a non-reversionary fund; once the Settlement Agreement is finally approved by the Court and after administrative costs, litigation expenses, and attorneys' fees are deducted, the net funds will be distributed to Settlement Class members with *no amount* reverting back to George's.

3.     <u>Cooperation Requirements</u>

In addition to providing a substantial monetary payment, the Settlement Agreement obligates George's to cooperate with Plaintiffs in the further prosecution of their claims against

- 3 -

the remaining Defendants, which each remain jointly and severally liable for *all* damages caused by the members of the alleged conspiracy. This cooperation will include, *inter alia*:

- the deposition of three current employees identified by Plaintiffs[1];

- the production of relevant structured compensation data;

- the production of responsive documents from five current or former employees identified by Plaintiffs;

- the production of the following specific categories of documents:

  i. all documents sent to and received from WMS;

  ii. all written agreements or contracts with Agri-Stats, Inc. and/or Express Markets, Inc.;

  iii. all George's contracts with labor unions executed during the Settlement Class Period;

  iv. all documents produced to, and received from, the Joint Poultry Industry Human Resources Council, National Chicken Council, and U.S. Poultry & Egg Association that reference any form or component of compensation;

  v. any documents that have been or will be produced to the Department of Justice by George's regarding any investigation known to George's on or before January 13, 2023 regarding any form or component of compensation, so long as the agency consents or does not object to the production or the Court orders the production.

- Reasonable efforts to authenticate documents produced by George's; and

- assistance with Plaintiffs' efforts to obtain phone records from third-party carriers.

*See* Settlement Agreement § II(A)(2).

---

[1] Plaintiffs may conduct depositions of *former* employees of George's without limitation, so long as those depositions are conducted in accordance with overall discovery limitations established by the Court.

- 4 -

4.    Release of All Claims against George's

In exchange for the monetary and cooperation consideration from George's, upon entry of a final judgment approving the Settlement Agreement, Plaintiffs and the Settlement Class will release and discharge George's from any and all claims arising out of or relating to "an alleged or actual conspiracy or agreement between Defendants relating to reducing competition for the hiring and retaining of, or to fixing, depressing, restraining, exchanging information about, or otherwise reducing the Compensation paid or provided to, the" Settlement Class. Settlement Agreement § II(B)(2). This Release covers both claims that were asserted and claims that could have been asserted.

The Settlement Agreement, however, does nothing to abrogate the rights of any member of the Settlement Class to recover from any other Defendant. The Settlement Agreement also expressly excludes from the Release "any claims wholly unrelated to the allegations or underlying conduct alleged in the Action that are based on breach of contract, negligence, personal injury, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, discrimination, COVID-19 safety protocols, failure to comply with wage and hours laws unrelated to anticompetitive conduct, or securities claims." *Id.*

## III.   THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT AGREEMENT

### A.    Standard for Granting Preliminary Approval

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). Before a court may approve a proposed settlement, it must conclude that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). This boils down to "examining [a] proposed

- 5 -

. . . settlement for fairness and adequacy." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991).[2]

At the preliminary approval stage, however, the Court does not make a final determination of the merits of the proposed settlement. *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983) (internal citation omitted). Full evaluation is made at the final approval stage, after notice of the settlement has been provided to the members of the class and those class members have had an opportunity to voice their views of the settlement. *Id.*

Rather, "at the preliminary approval stage, the court's role is to determine whether there exists probable cause to submit the proposal to members of the class and to hold a full-scale hearing on its fairness." *Fire & Police Retiree Health Care Fund v. Smith*, Civil Action No. CCB-18-3670, 2020 U.S. Dist. LEXIS 217892, at *6 (D. Md. Nov. 20, 2020). A court should grant preliminary approval "when the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or of segments of the class or excessive compensation for attorneys and appears to fall within the range of possible approval." *Temp. Servs., Inc. v. Am. Int'l Grp., Inc.*, No. 3:08-cv-00271-JFA, 2012 U.S. Dist. LEXIS 86474, at *16-17 (D.S.C. June 22, 2012) (internal citation omitted). "In assessing the fairness and adequacy of a proposed settlement, there is a strong initial presumption that the compromise is fair and reasonable." *S.C. Nat'l Bank v. Stone*, 139 F.R.D. 335, 339 (D.S.C. 1991) (internal quotation marks and citation omitted).

When evaluating the fairness and adequacy of a proposed settlement, courts keep in mind the following policy consideration: "It has long been clear that the law favors settlement." *United*

---

[2] The United States Court of Appeals for the Fourth Circuit has "not enumerated factors for assessing a settlement's reasonableness." *Cantu-Guerrero v. Lumber Liquidators, Inc.*, 952 F.3d 471, 484 (4th Cir. 2020).

*States v. Manning Coal Corp.*, 977 F.2d 117, 120 (4th Cir. 1992). This "strong presumption" is "especially strong in class actions and other complex cases because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 311 (3d Cir. 2011) (*en banc*) (affirming certification of two nationwide antitrust settlement classes) (internal citation omitted).

### B.     The Settlement Agreement Is Fair

A court's fairness analysis is intended primarily to ensure that a "settlement [is] reached as a result of good-faith bargaining at arm's length, without collusion." *In re India Globalization Cap., Inc.*, No. DKC 18-3698, 2020 U.S. Dist. LEXIS 77190, at *8 (D. Md. May 1, 2020). The fairness analysis involves examination of "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of [antitrust] class action litigation."[3] *Id.*

The Settlement Agreement with George's is fair. The first factor—*i.e.* the posture of the case—weighs in favor of preliminary approval. The Settlement Agreement was reached after 24 months of adversarial and informative litigation. The prosecution and defense of the action included the briefing of two rounds of motions to dismiss, each of which yielded a lengthy and

---

[3] "Federal Rule of Civil Procedure 23(e)(2) has been amended and now sets forth factors for the district court to assess in evaluating fairness, reasonableness, and adequacy." *Herrera v. Charlotte Sch. of Law, LLC*, 818 F. App'x 165, 176 n.4 (4th Cir. 2020). The United States Court of Appeals for the Fourth Circuit, however, has noted that "our factors for assessing class-action settlements almost completely overlap with the new Rule 23(e)(2) factors." *Cantu-Guerrero*, 952 F.3d at 484 n.8. As the overlap "render[s] the analysis the same," the Fourth Circuit "continues to apply its own standards." *Herrera*, 818 F. App'x at 176 n.4; *see also* Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment ("The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.").

detailed ruling by the Court regarding the viability of the alleged claims. The Court's resolution of Defendants' motions to dismiss materially narrowed the list of defendants, clarified the applicable law and legal hurdles, and set the stage for the parties' positions in their settlement negotiations. *See* Farah Decl. ¶ 11.

The second factor—*i.e.* the extent of discovery—also weighs in favor of preliminary approval. The parties have recently begun *formal* discovery. The parties have served extensive document requests; exchanged and responded to interrogatories; conducted extensive meet-and-confers to negotiate document custodians, search terms and document production; and briefed discovery disputes over the same. Yet, while extensive *formal* discovery has not yet been completed, there has been "sufficient *informal* discovery and investigation to fairly evaluate the merits of Defendants' positions during settlement negotiations." *Strang v. JHM Mortg. Sec. Ltd. P'ship*, 890 F. Supp. 499, 501-02 (E.D. Va. 1995) (emphasis added). Indeed, "[d]istrict courts within the Fourth Circuit have found that even when cases settle early in the litigation after only informal discovery has been conducted, the settlement may nonetheless be deemed fair." *Temp. Servs.*, 2012 U.S. Dist. LEXIS 86474, at *32. There is "no minimum or definitive amount of discovery that must be undertaken," *In re Serzone Prods. Liab. Litig.*, 231 F.R.D. 221, 244 (S.D. W. Va. 2005), and "[e]ngaging in formal discovery is not essential . . . or even the critical focal point of the analysis." *In re PNC Fin. Servs. Grp., Inc., Sec. Litig.*, 440 F. Supp. 2d 421, 433 (W.D. Pa. 2006). *See, e.g., In re India*, 2020 U.S. Dist. LEXIS 77190, at *11 (preliminarily approving class action settlement before the filing of motions to dismiss and or commencement of formal discovery).

Here, as the Court is aware, Plaintiffs' capable counsel have engaged in substantial *informal* discovery to analyze the strengths and weaknesses of the Settlement Class's claims. Both

- 8 -

prior to and after filing the detailed complaint, Plaintiffs' counsel expended considerable time and resources to conduct an extraordinary investigation of Defendants' collaboration in setting compensation for their plant employees. *See* Farah Decl. ¶ 10. Plaintiffs' counsel interviewed multiple confidential witnesses formerly employed by Defendants and other poultry processors. *Id.* Furthermore, Plaintiffs' counsel retained an expert economist to conduct a preliminary analysis of compensation in the poultry processing industry, as compared to other non-poultry food manufacturers. *Id.* Plaintiffs' counsel also conducted extensive research of both the poultry labor market and the plant workers that comprise the Settlement Class. *Id.* These unusually extensive investigative and analytical efforts support a finding of fairness. *See In re PNC*, 440 F. Supp. 2d at 430-31; *see also Adesso Homeowners' Ass'n v. Holder Props., Inc.*, No. 3:16-cv-710-JFA, 2017 U.S. Dist. LEXIS 224941, at \*34 (D.S.C. May 23, 2017) ("[T]he parties have committed substantial resources to the investigation and legal analysis of the claims and defenses of the parties, to obtain sufficient information to weigh the benefits of the proposed settlement against the risks of continued litigation.").

The third factor—*i.e.* the circumstances surrounding the negotiations—heavily favors preliminary approval. Where, as here, "a settlement is the result of genuine arm's-length negotiations, there is a presumption that it is fair." *Gaston v. Lexisnexis Risk Sols., Inc.*, No. 5:16-cv-00009-KDB-DCK, 2021 U.S. Dist. LEXIS 12872, at \*18 (W.D.N.C. Jan. 25, 2021); *see also Adesso*, 2017 U.S. Dist. LEXIS 224941, at \*33 ("[A] proposed class action settlement is considered presumptively fair where there is no evidence of collusion and the parties, through capable counsel, have engaged in arms' length negotiations."). Before executing the Settlement Agreement, the parties engaged in several weeks of hard-fought, arm's-length negotiations, which were adversarial throughout and showed no trace of collusion. *See* Farah Decl. ¶¶ 4, 7.

010844-11/1612394 V1

Finally, the fourth factor—*i.e.* the experience of counsel—strongly favors preliminary approval. The lawyers who conducted these negotiations, and who have endorsed the Settlement Agreement as fair and adequate, are highly experienced and nationally recognized antitrust and class action practitioners. *See* ECF No. 60; *see also* Farah Decl. ¶ 2. This "further minimizes concerns that [Plaintiffs and George's] colluded to the detriment of the class's interests." *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 665 (E.D. Va. 2001). "[T]he opinion of experienced and informed counsel in favor of settlement should be afforded due consideration in determining whether a class settlement is fair and adequate." *Gaston*, 2021 U.S. Dist. LEXIS 12872, at *19 (citing *Jiffy Lube*, 927 F.2d at 159).

In sum, the proposed Settlement Agreement was the product of genuine arm's-length negotiations by experienced counsel, and it was reached only after an extensive investigation of the strengths and weaknesses of the claims.

### C.    The Settlement Agreement Is Adequate

In determining whether a proposed settlement is adequate, courts consider the following factors: "(1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement." *In re India*, 2020 U.S. Dist. LEXIS 77190, at *11.

Detailed analyses of the fourth and the fifth factors are unnecessary. This Court has held that it "places little weight upon [the fourth] factor." *In re Mid-Atlantic*, 564 F. Supp. at 1386. And with respect to the fifth factor, "[d]ue to the preliminary nature of this motion," opposition to the Settlement Agreement has not yet presented itself. *Temp. Servs.*, 2012 U.S. Dist. LEXIS 86474, at *36.

- 10 -

"The most important factors in this analysis are the relative strength of the plaintiffs' claims on the merits and the existence of any difficulties of proof or strong defenses." *Sharp Farms v. Speaks*, 917 F.3d 276, 299 (4th Cir. 2019). An evaluation of the strength of Plaintiffs' claims in light of the risks and costs of continued litigation supports a finding that the Settlement Agreement is adequate.

Plaintiffs believe that they have pleaded a strong case. The Court held that Plaintiffs' operative complaint withstood Defendants' multiple motions to dismiss. The Court even held that Plaintiffs had alleged the "extremely rare" direct evidence of a *per se* antitrust conspiracy. ECF No. 378 at 11-16.

But this is a complex antitrust action. "[A]n integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985) (citing *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 124 (8th Cir. 1975)). It is inherently difficult to prove a complex antitrust class action, and there are "significant risks associated with continued litigation." *Temp. Servs.*, 2012 U.S. Dist. LEXIS 86474, at *35. "Regardless of the strength of a claim on the merits, one can never ensure a finding of liability in complex litigation like this. Similarly, all parties to this litigation face significant difficulties and risks in establishing liability and defending against the claims." *US Airline Pilots Ass'n v. Velez*, No. 3:14-cv-00577-RJC-DCK, 2016 U.S. Dist. LEXIS 54239, at *16 (W.D.N.C. Apr. 22, 2016). "Experience proves that, no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict, particularly in complex antitrust litigation." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 523 (E.D. Mich. 2003); *see* Farah Decl. ¶ 5.

- 11 -

Further, even though the case will continue against the non-settling Defendants, continuing to litigate this case against George's would have required significant additional resources and materially increased the complexity of the case. To obtain a jury verdict against George's, Plaintiffs would have needed to conduct adversarial discovery of George's, litigate discovery disputes with George's, brief summary judgment motions concerning George's, and prepare a liability case against George's for trial. Courts in the Fourth Circuit have found that such circumstances (involving partial settlements in complex actions) support approval: "From the court's perspective, it is clear that pursuing the claims and potential claims against the settling defendants would add complexity, expense and delay which could postpone actual recovery for years." *In re PNC*, 440 F. Supp. 2d at 432. Another found: "Although plaintiffs have expressed their intention to continue to pursue their claims against the non-settling defendants, many additional hours would have been required to prepare and respond to anticipated summary judgment motions, and to try the case against the settling defendants. Settlement under these circumstances clearly is appropriate." *Stone*, 139 F.R.D. at 340.

In light of the above risk assessment, the terms of the proposed Settlement Agreement provide the Settlement Class with more than adequate relief. Under the Settlement Agreement, George's will pay $5,800,000 into a settlement fund that will provide tangible financial benefits to the Settlement Class. This settlement amount is particularly adequate considering that George's only compensated approximately 2.5 percent of the Settlement Class; thus, the Settlement Agreement awards the Settlement Class roughly 2.32 million dollars for each percentage point of George's relevant market share—a remarkable financial recovery for such an early-stage settlement. Meanwhile, the remaining Defendants continue to be jointly and severally liable for *all* the damages caused by the alleged conspiracy.

- 12 -

The financial recovery from George's alone would render the Settlement Agreement adequate, but Plaintiffs also secured extensive cooperation obligations (summarized above) that will materially strengthen their claims against the remaining sixteen Defendants. The Settlement Agreement allows Plaintiffs to secure key evidence—in the form of documents, deposition testimony, and trial testimony—from George's and its employees. *See In re Ampicillin Antitrust Litig.*, 82 F.R.D. 652, 654 (D.D.C. 1979) (approving settlement in light of settling defendant's "assistance in the case against [a non-settling defendant]"); *see generally In re IPO Sec. Litig.*, 226 F.R.D. 186, 198-99 (S.D.N.Y. 2005) (recognizing the value of cooperating defendants in complex class action litigation).

In sum, the proposed Settlement Agreement is adequate in light of the strength of Plaintiffs' claims and the risks and expense of continued litigation. Accordingly, the proposed Settlement Agreement is fair and should be preliminarily approved.

## IV.    THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS

Plaintiffs request that the Court certify the proposed Settlement Class to receive the benefits of the Settlement Agreement. Specifically, Plaintiffs seek certification of a Settlement Class consisting of "[a]ll persons employed by Defendant Processors, their subsidiaries, and/or related entities at poultry processing plants in the continental United States from January 1, 2009 until the July 20, 2021."[4] Settlement Agreement § II(F)(3).

"A settlement class, like a litigation class, must satisfy the requirements" of Federal Rule of Civil Procedure 23(a) and one of the categories of Rule 23(b). *Brown v. Transurban USA, Inc.*,

---

[4] As Plaintiffs noted earlier, the Settlement Class excludes complex managers, plant managers, human resources managers, human resources staff, office clerical staff, guards, watchmen, and salesmen; Defendants, co-conspirators, and any of their subsidiaries, predecessors, officers, or directors; and federal, state or local governmental entities." Settlement Agreement § II(F)(3).

318 F.R.D. 560, 566 (E.D. Va. 2016). The Fourth Circuit practice is to "give Rule 23 a liberal rather than a restrictive construction, adopting a standard of flexibility in application [that] will in the particular case best serve the ends of justice for the affected parties and promote judicial efficiency." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 424 (4th Cir. 2003) (quoting *In re A.H. Robins Co.*, 880 F.2d 709, 740 (4th Cir. 1989)).

This proposed Settlement Class meets the prerequisites of Rule 23(a) as well as the prerequisites of Rule 23(b)(3).

### A. The Settlement Class Satisfies Rule 23(a)

#### 1. Numerosity

Rule 23(a)(1) requires that the class be so numerous as to make joinder of its members "impracticable." Generally, classes consisting of forty or more members are considered sufficiently large to satisfy the numerosity requirement. *In re Titanium Dioxide Antitrust Litig.*, 284 F.R.D. 328, 337 (D. Md. 2012). *See, e.g., Cypress v. Newport News Gen. & Non-Sectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (holding that a class of only eighteen members satisfied the numerosity requirement). Here, the precise number of Settlement Class members is presently known only to Defendants. But based on extensive investigation, Plaintiffs' counsel believe that hundreds of thousands of people fall within the Settlement Class definition. Rule 23(a)(1) is satisfied.

#### 2. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Plaintiffs must show that resolution of an issue of fact or law "is central to the validity of each" class member's claim; "[e]ven a single [common] question will" satisfy the commonality requirement. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 359 (2011). "In the antitrust context, courts have generally held that an alleged conspiracy or monopoly is a common issue that

- 14 -

will satisfy Rule 23(a)(2) as the singular question of whether defendants conspired to harm plaintiffs will likely prevail." *D&M Farms v. Birdsong Corp.*, No. 2:19-cv-463, 2020 U.S. Dist. LEXIS 226047, at *10 (E.D. Va. Dec. 1, 2020).

Here, a central allegation in the Complaint is that Defendants, including George's, illegally conspired to depress their workers' compensation. Proof of this conspiracy will be common to all Settlement Class members. In addition to that overarching question, this case is replete with other questions of law and fact common to the Settlement Class, including, *inter alia*, the identity of the participants in the alleged conspiracy, the duration of the alleged conspiracy, and the measure of damages caused by the alleged conspiracy. *See* ECF No. 386 ¶ 304. Rule 23(a)(2) is satisfied.

### 3. Typicality

Rule 23(a)(3) requires that the class representatives' claims be "typical" of class members' claims. "As a general matter, the 'typicality' prerequisite is satisfied in instances where plaintiffs' claims arise out of the common course of conduct of one or more defendant." *Adesso*, 2017 U.S. Dist. LEXIS 224941, at *23. Typicality is "established by plaintiffs and all class members alleging the same antitrust violations by defendants." *D&M Farms*, 2020 U.S. Dist. LEXIS 226047, at *10 (quoting *Am. Sales Co. v. Pfizer, Inc.*, No. 2:14cv361, 2017 U.S. Dist. LEXIS 137222, at *35 (E.D. Va. July 28, 2017)). Here, both Plaintiffs' claims and Settlement Class members' claims arise out of a common course of misconduct by Defendants; each received compensation that was depressed by Defendants' conduct. As such, Rule 23(a)(3) is satisfied.

### 4. Adequacy

Rule 23(a)(4) requires that, for a case to proceed as a class action, the court must find that "the representative parties will fairly and adequately protect the interests of the class." This inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc., v. Windsor*, 521 U.S. 591, 625 (1997) (citing *Gen. Tel. Co. of Sw. v. Falcon*,

- 15 -

457 U.S. 147, 157-58 n.13 (1982)). For a conflict to defeat class certification, the conflict "must be more than merely speculative or hypothetical," but rather "go to the heart of the litigation." *Gunnells*, 348 F.3d at 430-31 (internal citations omitted).

There is no conflict here, as the interests of Plaintiffs are aligned with those of Settlement Class members. Plaintiffs, like all Settlement Class members, share an overriding interest in obtaining both the largest possible monetary recovery and most helpful cooperation from George's. *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981) ("so long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes"). Moreover, Plaintiffs are not afforded any special or unique compensation by the proposed Settlement Agreement. As such, Rule 23(a)(4) is satisfied.

**B.      The Requirements of Rule 23(b)(3) Are Satisfied**

Once Rule 23(a)'s four prerequisites are met, Plaintiffs must demonstrate that the proposed Settlement Class satisfies Rule 23(b)(3). Specifically, Plaintiffs must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiffs have done so.

1.      Predominance of Common Issues

"Courts focus on the issue of liability to determine whether a proposed class meets the predominance prong: '[i]f the liability issue is common to the class, common questions are held to predominate over individual ones.'" *City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions, Inc.*, 322 F. Supp. 3d 676, 685 (D. Md. 2018) (internal citation omitted). "[A] claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to

- 16 -

examine each class member's individual position." *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 307 (E.D. Mich. 2001) (internal citation omitted). Therefore, "when one or more of the central issues in the action are common to the class and can be said to predominate, the [class] will be considered proper." 7AA Charles Alan Wright, Arthur R. Miller & Mary K. Kane, Federal Practice & Procedure: Civil 3d § 1778 at 121-23.

The Supreme Court has stated that "[p]redominance is a test readily met in certain cases alleging . . . violations of the antitrust laws." *Amchem*, 521 U.S. at 625. As this is an antitrust conspiracy case, common issues regarding the existence, scope, and effect of the conspiracy, *inter alia*, predominate over individual issues. *See, e.g., Hughes v. Baird & Warner, Inc.*, No. 76 C 3929, 1980 U.S. Dist. LEXIS 13885, at *7 (N.D. Ill. Aug. 20, 1980) ("Clearly, the existence of a conspiracy is the common issue in this ca[s]e. That issue predominates over issues affecting only individual sellers.").

Plaintiffs "are not required to prove that each element of their claims is susceptible to classwide proof, but only that 'common questions predominate over any questions affecting only individual [class] members.'" *In re Zetia Ezetimihe Antitrust Litig.*, No. 2:18-md-2836, 2020 U.S. Dist. LEXIS 112331, at *86 (E.D. Va. June 18, 2020) (quoting *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013). Nevertheless, Plaintiffs could use common evidence to prove each of the elements of their antitrust claims on behalf of the Settlement Class. To prevail in an antitrust case, Plaintiffs must prove three elements: (1) a violation of the antitrust laws; (2) the impact of the unlawful activity; and (3) measurable damages. *In re Zetia*, 2020 U.S. Dist. LEXIS 112331, at *86.

### a.    Violation of the Antitrust Laws

Courts have found that the existence and scope of an antitrust conspiracy are common issues. *See, e.g., In re Zetia*, 2020 U.S. Dist. LEXIS 112331, at *88 ("As many courts—including

- 17 -

this one—have recognized, such evidence is common to the class, for if each member pursued its claims individually, it would rely on the same evidence to prove the alleged antitrust violations."). *See also* Alba Conte & Herbert Newberg, Newberg on Class Actions § 18.26, at 18-83 to 18-86 (4th ed. 2002) ("in antitrust [cases], the issues of conspiracy . . . have been viewed as central issues which satisfy the predominance requirement").

Proof of Defendants' antitrust violations would involve evidence common to all Settlement Class members. Critically, Plaintiffs' allegations of compensation-fixing focus on the actions of the Defendants, rather than the actions of individual class members, so that common issues regarding Defendants' liability predominate. Proof, common to the Settlement Class, establishes the creation, scope, terms, participants, and enforcement of the conspiracy, as well as acts in furtherance of the conspiracy. Such evidence comes from Defendants' own files, statements, records, and employees. In short, proof of Defendants' antitrust violations is a common issue of sufficient importance that it alone causes common issues to predominate in this case. *See Am. Sales Co. v. Pfizer, Inc.*, No. 2:14cv361, 2017 U.S. Dist. LEXIS 137222, at *43 (E.D. Va. July 28, 2017) ("Based on this common evidence, the legal issues surrounding the antitrust violation will also be resolved uniformly across the class — whether [defendant] violated antitrust laws does not depend on any legal issue unique to a particular class member. Accordingly, Plaintiffs have proven by a preponderance of the evidence that common issues regarding the antitrust violation predominate over any individualized inquiry.").

### b.        *Impact of the Unlawful Activity*

"To show antitrust impact, there must be sufficient evidence to show that the class members suffered some damage as a result of [Defendants'] alleged antitrust violation." *In re Zetia*, 2020 U.S. Dist. LEXIS 112331, at *89-91 (quoting *Am. Sales Co.*, 2017 U.S. Dist. LEXIS 137222, at *43). "But at the class certification stage," Plaintiffs need not prove actual class-wide impact;

- 18 -

rather, Plaintiffs "need only 'demonstrate that the element of antitrust impact is capable of proof at trial through evidence that is common to the class rather than individual to its members.'" *Id.* (quoting *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311-12 (3d Cir. 2008)).

At trial, Plaintiffs will prove common impact on a class-wide basis using evidence common to the Settlement Class. First, Defendant Processors and co-conspirators collectively possess market power in the market for employment at poultry processing plants in the continental United States. ECF No. 386 ¶ 317. Defendant Processors and co-conspirators together control more than 90 percent of that relevant labor market, which affords them "the power to jointly set compensation for workers at poultry processing plants." *Id.* Second, individual poultry processing plants did *not* set compensation for Settlement Class members. Rather, "the compensation of workers at poultry processing plants owned by Defendant Processors, their subsidiaries, and related entities were made exclusively by and at each Defendant Processors' corporate headquarters during the Class Period." *Id.* ¶ 154. Third, the alleged conspiracy commonly impacted all workers at poultry processing plants owned by Defendant Processors, their subsidiaries, and related entities in the continental United States "because Defendant Processors valued internal equity, *i.e.* the idea that similarly situated employees should be compensated similarly." *Id.* ¶ 274. Defendant Processors "determined the hourly wages, annual salaries, bonuses and employment benefits for Class Members across the country in a formulaic way, establishing schedules that compensated employees according to their specific positions in the poultry processing plants." *Id.* ¶ 156. As a consequence, when Defendant Processors aligned their compensation schedules, the alignment systematically impacted the compensation of each Settlement Class member, as each occupied a position within those schedules. Fourth, in the absence of the conspiracy, Defendant Processors would have vigorously "competed with each other for labor during the Class Period by offering

- 19 -

higher wages, higher salaries and superior benefits to Class Members." *Id.* ¶ 171. This is particularly true given that each Defendant Processor owns and operates a poultry processing plant that is within 32 miles of a poultry processing plant owned by another Defendant Processor, "meaning that many workers could easily switch to rival poultry processing plants offering better compensation in a competitive market." *Id.* Instead, through their coordinated effort, Defendants restrained competition resulting in injury to the entire Settlement Class.

Another antitrust case within the Fourth Circuit that alleged a conspiracy to depress compensation—*Seaman v. Duke University,* No. 1:15-CV-462, 2018 U.S. Dist. LEXIS 16136 (M.D.N.C. Feb. 1, 2018)—is instructive. In that case, plaintiffs alleged that the University of North Carolina ("UNC") and Duke University conspired not to hire each other's faculty, which had the effect of reducing compensation. In certifying a class, the court found two of the plaintiffs' arguments persuasive for purposes of demonstrating common impact: (1) "that because of the no-hire agreement the UNC and Duke defendants did not have to provide preemptive compensation increases for faculty that otherwise would have been needed to ensure employee retention" and (2) "that the defendants' internal equity structures—policies and practices that are alleged to have ensured relatively constant compensation relationships between employees—spread the individual harm of decreased lateral offers and corresponding lack of retention offers to all faculty, thus suppressing compensation faculty-wide." *Id.* at *10. The court concluded that those "theories of anti-trust impact to faculty present common questions for which common proof will be proffered." *Id.* Here, Plaintiffs offer those same theories (and more) and thus have sufficiently demonstrated that class-wide impact is capable of common proof at trial.

*c.    Measurable Damages*

No precise damages formula is required at the class certification stage. Rather, the Court's inquiry is merely limited to assessing whether methods are "available to prove damages on a class-

- 20 -

wide basis." *In re Zetia*, 2020 U.S. Dist. LEXIS 112331, at \*96-97. "Assuming an appropriate model is put forth, 'the need for some individualized determinations' is not fatal to class certification." *Id.* (quoting *In re Nexium Antitrust Litig.*, 777 F.3d 9, 21 (1st Cir. 2015)).

Multiple methodologies are available to prove damages in this case on a class-wide basis. For example, class-wide damages can be calculated using an industry benchmark model, which is an approach commonly employed in antitrust cases of this type. The compensation paid to workers in another industry (or industries) can be used as a yardstick to estimate the compensation that Settlement Class members would have received in the absence of the conspiracy. This can be done using standard regression techniques that control for non-conspiratorial differences between the two industries that would be likely to influence compensation. In fact, the operative complaint already previews one such class-wide damages model: "Economic analysis conducted by expert economists retained by Plaintiffs shows that compensation of plant workers employed by non-poultry food manufacturers was higher, and increased at a materially more rapid rate, than compensation paid by Defendant Processors to Class Members during the Class Period." ECF No. 386 ¶ 10. *See also Seaman*, 2018 U.S. Dist. LEXIS 16136, at \*16-18 (holding that a regression analysis is a viable method for calculating damages using common evidence in a case alleging the depression of compensation).

### 2.   Superiority of a Class Action

In addition to the predominance of common questions, Rule 23(b)(3) requires a finding that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Factors relevant to the superiority of a class action under Rule 23(b)(3) include: "(A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of

- 21 -

concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of the class action." Fed R. Civ. P. 23(b)(3).

In this case, a class action is certainly superior. The interests of Settlement Class members in individually controlling the prosecution of separate claims are outweighed by the efficiency of the class mechanism. There are no other pending actions raising the same allegations. Thus, the first three factors listed above are easily addressed: No class member has demonstrated any interest in litigating individually; the claims in this case are not being litigated anywhere else; and it would be enormously inefficient—for both the Court and the parties—to engage in multiple trials of the same claims asserted in multiple individual actions. "Requiring individual Class Members to file their own suits would cause unnecessary, duplicative litigation and expense, with parties, witnesses and courts required to litigate time and again the same issues, possibly in different forums." *In re Serzone Prods. Liab. Litig.*, 231 F.R.D. 221, 240 (S.D. W. Va. 2005).

Moreover, "the expense of individual actions, weighed against the potential individual recovery of the vast majority of class members here, would be prohibitive." *Temp. Servs.*, 2012 U.S. Dist. LEXIS 86474, at *13. *See also City of Ann Arbor Employees' Ret. Sys. v. Sonoco Prods. Co.*, 270 F.R.D. 247, 257 (D.S.C. 2010) (holding that the superiority requirement has been satisfied because "the costs associated with bringing individual actions would be prohibitive when weighed against the potential individual recoveries"). Because it would be economically unreasonable for Settlement Class members to adjudicate their separate claims individually, the superiority of a class action is evident. Proceeding as a class action, rather than a host of separate individual trials, would provide significant economies in time, effort and expense and permit Settlement Class members to seek damages that would otherwise be too costly to pursue.

- 22 -

Finally, the Supreme Court has found that when certifying a settlement class "a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620. Such is the case here. If approved, the Settlement Agreement would obviate the need for a trial against George's, and thus questions concerning that trial's manageability are irrelevant. Accordingly, the Court should certify the Settlement Class.

## V.      DEFERRING CLASS NOTICE IS APPROPRIATE IN THIS CASE

Rule 23(e) requires that, prior to final approval of a settlement, notice of that settlement must be distributed to all class members who would be bound by it. Rule 23(c)(2)(B) requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."

Plaintiffs request that the Court agree to defer formal notice of the Settlement Agreement to the Settlement Class until a later date.[5]  In Plaintiffs' Motion for Preliminary Approval of Settlement with Pilgrim's Pride Corporation, Plaintiffs made the same request. *See* ECF No. 481. This Court granted Plaintiffs' request on July 20, 2021. *See* ECF No. 490.

Deferring formal notice of the Settlement Agreement is appropriate here, too, for the same reasons. First, Plaintiffs do not yet have the names and/or contact information of Settlement Class members. Plaintiffs believe that the Settlement Class consists of hundreds of thousands of individuals who were employed by 17 Defendant Processors and their related entities over a period exceeding a decade. Via written formal discovery, Plaintiffs have requested identifiers and contact

---

[5] Plaintiffs and George's have agreed that the timing of a motion to provide notice to the Settlement Class of the Settlement Agreement is at the discretion of Interim Co-Lead Counsel and may be combined with notice of other settlements in this action. *See* Settlement Agreement § II(D)(2).

information for each of those Settlement Class members from Defendants, but it will take time for Defendants to produce all such data. Defendants have until January 14, 2022 to substantially complete the production of documents. ECF No. 456. *See, e.g., McKinney v. U.S. Postal Serv.*, 292 F.R.D. 62, 68 (D.D.C. 2013) (court deferred the issuance of class notice "pending the completion of [an] additional six-month search period" that would "allow [party's] counsel to locate more accurate information" regarding class members).

Second, each provision of notice to a class of this size costs hundreds of thousands of dollars. Accordingly, providing separate notice to the Settlement Class each time that Plaintiffs enter into a settlement with any of the 19 Defendants might lead to inefficiencies and reduce the amount of funds available for distribution to the Settlement Class. If possible, it is in the best interests of the Settlement Class to combine the notice of the George's settlement with notice of the prior Pilgrim's settlement, and any future notice(s) of future settlement(s) with other Defendants, should additional settlements be reached in the near future. Proceeding in this way creates attendant efficiencies and cost savings for the Settlement Class, resulting in more money from the settlements making it into the pockets of Settlement Class members. Indeed, courts often defer notice of partial settlements in complex antitrust cases until enough settlements have been reached to make the transmittal of notice cost-effective. *See, e.g., In re Auto. Wire Harnesses*, No. 12-md-02311, 2020 U.S. Dist. LEXIS 183483, at *267 (E.D. Mich. Sept. 30, 2020) (approving plaintiffs' plan "to defer notice and the corresponding claims process until Class Counsel determined that an appropriate number of settlements occurred," which "kept expenses lower"); *In re: Broiler Chicken Antitrust Litig.*, No. 1:16-cv-08637, Order (ECF No. 462) ¶¶ 3-4 (N.D. Ill. Aug. 18, 2017) (allowing plaintiffs to defer class notice of a preliminarily approved settlement

- 24 -

until a later time); *In re Aftermarket Filters Antitrust Litig.*, No. 1:08-cv-04883, Order (ECF No. 885), at 5, 11 (N.D. Ill. Feb. 16, 2012) (same).

If the Court approves Plaintiffs' request to defer notice, Plaintiffs will propose a detailed notice plan in a subsequent motion that will be filed after Defendants have produced data regarding each of the identifiable Settlement Class members. The proposed notice plan will, pursuant to Rule 23(c)(2)(B), provide the "best notice practicable" to all potential Settlement Class members who will be bound by the proposed Settlement Agreement.

## VI.    CONCLUSION

For the above reasons, Plaintiffs respectfully request that the Court enter an order: (1) preliminarily approving Plaintiffs' settlement with George's, (2) certifying the Settlement Class, (3) appointing Interim Co-Lead Counsel as Settlement Class Counsel, (4) appointing Plaintiffs as Settlement Class Representatives, (5) deferring notice to Settlement Class members until a later date, and (6) ordering a stay of all proceedings against George's except those proceedings provided for or required by the Settlement Agreement.

Dated: September 15, 2021                    Respectfully submitted,

*/s/ Brent W. Johnson*
Daniel A. Small (D. Md. Bar # 20279)
Benjamin D. Brown (admitted *pro hac vice*)
Brent W. Johnson (admitted *pro hac vice*)
Daniel H. Silverman (admitted *pro hac vice*)
Alison S. Deich (admitted *pro hac vice*)
Louis Katz (admitted *pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue NW
5th Floor
Washington, DC 20005
Telephone: (202) 408-4600
Fax: (202) 408-4699
dsmall@cohenmilstein.com
bbrown@cohenmilstein.com
bjohnson@cohenmilstein.com
dsilverman@cohenmilstein.com

- 25 -

adeich@cohenmilstein.com
lkatz@cohenmilstein.com

Steven W. Berman (admitted *pro hac vice*)
Breanna Van Engelen (admitted *pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, Washington 98101
Tel: (206) 623-7292
steve@hbsslaw.com
breannav@hbsslaw.com

*/s/ Shana E. Scarlett*
Shana E. Scarlett (admitted *pro hac vice*)
Rio R. Pierce (admitted *pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Tel: (510) 725-3000
shanas@hbsslaw.com
riop@hbsslaw.com

Elaine T. Byszewski (*pro hac vice* forthcoming)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 920
Pasadena, CA 91101
Tel: (213) 330-7150
elaine@hbsslaw.com

Matthew K. Handley (D. Md. Bar # 18636)
Rachel E. Nadas (admitted *pro hac vice*)
HANDLEY FARAH & ANDERSON PLLC
777 6th Street, NW, Eleventh Floor
Washington, DC 20001
Telephone: (202) 559-2433
mhandley@hfajustice.com
rnadas@hfajustice.com

*/s/ George F. Farah*
George F. Farah (admitted *pro hac vice*)
Rebecca P. Chang (admitted *pro hac vice*)
HANDLEY FARAH & ANDERSON PLLC
33 Irving Place
New York, NY 10003
Telephone: (212) 477-8090
gfarah@hfajustice.com

- 26 -

rchang@hfajustice.com

William H. Anderson (admitted *pro hac vice*)
HANDLEY FARAH & ANDERSON PLLC
4730 Table Mesa Drive
Suite G-200
Boulder, CO 80305
Telephone: (202) 559-2433
wanderson@hfajustice.com

*Co-Lead Counsel for Plaintiffs and the Proposed
Class*

Brian D. Clark (admitted *pro hac vice*)
Stephen J. Teti (admitted *pro hac vice*)
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Tel:  (612) 339-6900
Fax:  (612) 339-0981
bdclark@locklaw.com
steti@locklaw.com

Candice J. Enders (admitted *pro hac vice*)
Julia R. McGrath (admitted *pro hac vice*)
BERGER MONTAGUE PC
1818 Market St., Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
Fax: (215)-875-4604
cenders@bm.net
jmcgrath@bm.net

*Additional Counsel for Plaintiffs and the Proposed
Class*