# EXHIBIT A

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JUDY JIEN, *et al.*, | CIVIL ACTION NO. 1:19-CV-2521 |
| Plaintiff, | |
| v. | |
| PERDUE FARMS, INC., *et al.*, | |
| Defendants. | |

## SETTLEMENT AGREEMENT BETWEEN CLASS PLAINTIFFS AND DEFENDANT WEBBER, MENG, SAHL & CO., INC.

Subject to the approval of the Court, this Settlement Agreement ("Settlement Agreement") is made and entered into as of the Execution Date, by and between WMS (as hereinafter defined) and the Class Plaintiffs (as hereinafter defined), individually and on behalf of a Settlement Class (as hereinafter defined), through Interim Co-Lead Counsel for the proposed Settlement Class, and in the above-captioned action (the "Action").

### RECITALS

A.    Class Plaintiffs are prosecuting the Action on their own behalf and on behalf of a putative litigation class. Class Plaintiffs and the putative litigation class are currently represented by Interim Co-Lead Counsel.

B.    The Action is being litigated in the United States District Court for the District of Maryland.

C.    Class Plaintiffs have alleged, among other things, that WMS entered into a contract, combination or conspiracy in restraint of trade, the purpose and effect of which was to suppress competition for labor and to allow Defendant Processors to pay sub-competitive compensation, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

D.       WMS denies all allegations of wrongdoing in the Action and believes it has numerous legitimate defenses to Class Plaintiffs' claims.

E.       This Settlement Agreement shall not be deemed or construed to be an admission or evidence of any violation of any statute, law, rule, or regulation or of any liability or wrongdoing by WMS or of the truth of any of Class Plaintiffs' claims or allegations, nor shall it be deemed or construed to be an admission or evidence of WMS's defenses.

F.       Interim Co-Lead Counsel have conducted an investigation into the facts and law regarding the Action and the possible legal and factual defenses thereto and have concluded that a settlement with WMS according to the terms set forth below is fair, reasonable, adequate, and beneficial to and in the best interests of the Settlement Class, given the uncertainties, risks, and costs of continued litigation, and that the Performance by WMS (as hereinafter defined in Section II.A.) reflects fair, reasonable, and adequate consideration for the Settlement Class to release, settle, and discharge their claims that they were undercompensated as a result of the alleged anticompetitive conduct of which WMS is accused.

G.       Despite WMS's belief that it is not liable for and has strong defenses to the Claims asserted by Class Plaintiffs, WMS desires to settle the Action to avoid the further expense, inconvenience, disruption, and burden of litigation and other present or future litigation arising out of the facts that gave rise to this Action, to avoid the risks inherent in uncertain complex litigation and trial, and thereby to put to rest this controversy.

H.       Arm's-length settlement negotiations have taken place between Interim Co-Lead Counsel and WMS's Counsel over several months, and this Settlement Agreement has been reached as a result of those negotiations.

I.       Both Settling Parties (as hereinafter defined) wish to preserve all arguments, defenses, and responses related to all claims in the Action, including any arguments, defenses, and

2

responses related to any litigation class proposed by Class Plaintiffs in the event this Settlement Agreement fails to satisfy the conditions set out in Section II(E)(11) below.

J.      The Settling Parties desire to fully and finally settle all actual and potential Claims arising from or in connection with the Action, and to avoid the costs and risks of protracted litigation and trial.

**IT IS HEREBY AGREED**, by and among the Settling Parties, that this Action and all Released Claims (as hereinafter defined) are finally and fully discharged, settled, and compromised as to the WMS Released Parties (as hereinafter defined) and that this Action shall be dismissed in its entirety with prejudice as to WMS, subject to approval of the Court pursuant to Rule 23 of the Federal Rules of Civil Procedure, upon and subject to the following terms and conditions:

## I.      DEFINITIONS

A.      **Class Definition**.

"Settlement Class" means the class described in Section II(E)(3) below.

B.      **General Definitions**.

1.      "Action" means the putative class action filed by Class Plaintiffs captioned *Judy Jien, et al. v. Perdue Farms, Inc. et al*, 1:19-cv-02521-SAG (D. Md.), which is currently pending in the United States District Court for the District of Maryland.

2.      "Claims" means any and all actual or potential, known or unknown, causes of action, claims, contentions, allegations, assertions of wrongdoing, damages, losses, or demands for recoveries, remedies, or fees complained of, arising from or related to the conduct alleged in the Action, or that could or should have been alleged in the Action.

3.      "Claims Administrator" means the third party to be retained by Interim Co-Lead Counsel and approved by the Court to manage and administer the process by which Settlement Class Members are notified of the Settlement Agreement.

4.      "Compensation" means the provision of anything of value to Settlement Class Members and includes wages, salaries, benefits, bonuses, overtime pay, night shift premiums, raises, promotions, stocks or stock options, meals, and other monetary and nonmonetary forms of remuneration.

5.      "Complaint" means the Second Amended Consolidated Complaint in the Action (ECF 386).

6.      "Court" means the United States District Court for the District of Maryland and the Honorable Stephanie A. Gallagher or her successor, or any other Court with jurisdiction over the Action.

7.      "Date of Final Approval" means the date on which the Court enters an order granting final approval to this Settlement Agreement, pursuant to Rule 23 of the Federal Rules of Civil Procedure, as provided in Section II(E)(8) below.

8.      "Date of Final Judgment" means the first date upon which both of the following conditions shall have been satisfied: (a) final approval of the Settlement Agreement by the Court ("Final Approval"); and (b) either (1) thirty days have passed from the date of Final Approval with no notice of appeal having been filed with the Court; or (2) Final Approval has been affirmed by a mandate issued by any reviewing court to which any appeal has been taken, and any further petition for review (including certiorari) has been denied, and the time for any further appeal or review of Final Approval has expired.

9.      "Date of Preliminary Approval" means the date on which the Court enters an order granting preliminary approval to this Settlement Agreement, pursuant to Rule 23 of the Federal Rules of Civil Procedure, as provided in Section II(E)(4) below.

10.      "Defendant" or "Defendants" means any or all of the Defendants named in the Action, now or in the past.

11.      "Defendant Processors" means all Defendants other than Webber, Meng, Sahl & Co., Inc. ("WMS") and Agri Stats, Inc. ("Agri Stats").

12.      "Documents" mean (a) all papers, electronically stored information ("ESI"), statements, transcripts, or other materials within the scope of Rule 34(a)(1)(A) of the Federal Rules of Civil Procedure; and (b) any copies or reproductions of the foregoing, including microfilm copies or computer images.

13.      "Effective Date" shall be the Date of Final Judgment as defined in Section (I)(B).

14.      "Execution Date" means the date on which this Settlement Agreement is entered into and executed by all Settling Parties.

15.      "Fairness Hearing" has the meaning provided in Section II(E)(4) below.

16.      "Interim Co-Lead Counsel" and "Settlement Class Counsel" means the law firms of Cohen Milstein Sellers & Toll PLLC, Hagens Berman Sobol Shapiro LLP, and Handley Farah & Anderson PLLC.

17.       "Order and Final Judgment" means the order and final judgment of the Court approving the Settlement Agreement, including all of its material terms and conditions without modification, and the settlement pursuant to Federal Rule of Civil Procedure 23, and dismissing WMS with prejudice from the Action, as described in Section II(E)(8) below.

18.      "Person(s)" means an individual, corporation, partnership, limited liability company, association, trust, unincorporated organization, or other entity or organization.

19.     "Plaintiffs" or "Class Plaintiffs" means Plaintiffs named in the Complaint, Judy Jien, Kieo Jibidi, Elaisa Clement, Glenda Robinson, and Emily Earnest.

20.     "Released Claims" means claims defined in Section II(B)(2) of this Settlement Agreement.

21.     "Releasing Party" or "Releasing Parties" shall refer individually and collectively, to the Settlement Class and all members of the Settlement Class, including the Plaintiffs, each on behalf of themselves and their respective predecessors and successors; the assigns of all such persons or entities, as well as any person or entity acting on behalf of or through any of them in any capacity whatsoever, jointly and severally; and any of their past, present and future agents, officials acting in their official capacities, legal representatives, agencies, departments, commissions and divisions; and also means, to the full extent of the power of the signatories hereto to release past, present and future claims, persons or entities acting in a private attorney general, qui tam, taxpayer or any other capacity, whether or not any of them participate in this Settlement Agreement.

22.     "Settlement Agreement" means this document and the agreement reflected therein.

23.      "Settlement Class Member" means each member of the Settlement Class that is not timely and properly excluded from the Settlement Class.

24.     "Settlement Class Notice" means the notice to the Settlement Class that is approved by the Court, in accordance with Section II(E)(5) below.

25.     "Settling Parties" means WMS and the Settlement Class, as represented by the Class Plaintiffs.

26.     "WMS" means Webber, Meng, Sahl & Co., Inc. and all of their current and future subsidiaries, and any of the respective former, current and future, direct or indirect partners, owners, directors, officers, attorneys, agents and insurers of WMS.

27.     "WMS Counsel" means the law firm of Rosenberg Martin Greenberg, LLP or other legal advisors retained for purposes of advising WMS with respect to the Action.

28.     "WMS Released Parties" means WMS and WMS's former, current and future parents, subsidiaries and affiliates, and any of the respective former, current and future, direct or indirect partners, owners, directors, officers, shareholders, managers, attorneys, equity holders, agents, insurers and employees of WMS. "WMS Released Parties" does not include any Defendant other than WMS named by Plaintiffs in the Action, either explicitly or as a third-party beneficiary.

## II.     SETTLEMENT

### A.     Performance by WMS.

1.     Cooperation by WMS is a material term of this Settlement Agreement. In consideration for the release of claims and dismissal of the Action, WMS agrees to provide the following categories of cooperation to Plaintiffs:

a.     WMS represents and warrants that it has already contracted with a third-party vendor, Iron Oak Discovery, to collect (1) all hard copy and electronic documents within the possession of WMS and (2) all hard copy and electronic documents related to WMS within the possession of WMS employees George Jonathan Meng, Scott Ramsey, and Cynthia Porter.

b.     WMS agrees that, by December 8, 2021, it will produce to Plaintiffs all documents collected by Iron Oak Discovery that are responsive to the instructions contained in Appendix A, with the exception of documents identified in Paragraph 1(c) below.

c.     WMS is not required to produce documents to Plaintiffs that are either: (1) covered by the attorney-client privilege, (2) highly personal, (3) subject to a binding and applicable pre-existing confidentiality agreement and/or (4) consist solely of raw compensation data associated with a particular entity that is not a processor of any poultry products.

d.      Prior to December 8, 2021, Plaintiffs are entitled to temporarily review the documents that WMS elects to withhold from production on the basis that those documents are: (1) highly personal, (2) subject to a binding and applicable pre-existing confidentiality agreement and/or (3) consist solely of raw compensation data associated with a particular entity that is not a processor of any poultry products. Accordingly, WMS will tag all such documents that fall within any of those three categories in a database by December 3, 2021 for Plaintiffs' review. If Plaintiffs disagree with WMS's decision to withhold from production any such tagged document, then the Parties will meet and confer in an effort to resolve the dispute. If the Parties cannot reach an agreement, the matter may be brought to the Court.

e.      WMS represents and warrants that it has provided Plaintiffs with a sworn declaration that was executed on November 12, 2021 by G. Jonathan Meng under penalty of perjury and for use in this Action. The declaration includes 164 exhibits that have also been produced to Plaintiffs.

f.      WMS agrees that George Jonathan Meng, Scott Ramsey, and Cynthia Porter will each be deposed in the Action by Plaintiffs, if requested by Plaintiffs.

g.      WMS agrees that George Jonathan Meng, Scott Ramsey, and Cynthia Porter will each participate as witnesses at trial in the Action, if requested by Plaintiffs.

h.      If requested by Plaintiffs, WMS agrees to use reasonable efforts to authenticate and/or provide testimony to make admissible documents and/or things produced in the Action by WMS, whether by declarations, affidavits, depositions, hearings, and/or trials as may be necessary for the Action, so long as such authentication can be done by WMS or its employees without the use of a third party.

2.      The Parties will have the discretion to agree to minor modifications of these discovery obligations and deadlines, and such modifications will not require Court approval.

**B.**     **Release of Claims**.

1.     The Release of Claims is a material term of this Settlement Agreement.

2.     **Release**. Upon the Date of Final Judgment, the Releasing Parties shall completely release, acquit, and forever discharge the WMS Released Parties from any and all claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature (whether or not any member of the Settlement Class has objected to the Settlement Agreement or makes a claim upon or participates in any settlement funds made available in this Action, whether directly, representatively, derivatively or in any other capacity) that the Releasing Parties ever had, now has, or hereafter can, shall, or may ever have, on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated claims, injuries, losses, damages, and the consequences thereof that have been asserted, or could have been asserted, under federal or state law in any way arising out of or relating in any way to an alleged or actual conspiracy or agreement between Defendants relating to reducing competition for the hiring and retaining of, or to fixing, depressing, restraining, exchanging information about, or otherwise reducing the Compensation paid or provided to, the Releasing Parties by Defendants, co-conspirators, their respective subsidiaries and/or related entities (collectively, the "Released Claims"). Notwithstanding the above, "Released Claims" do not include (i) claims asserted against any Defendant other than the WMS Released Parties, or (ii) any claims wholly unrelated to the allegations or underlying conduct alleged in the Action that are based on personal injury, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, discrimination, COVID-19 safety protocols, or securities claims. This reservation of claims set forth in (i) and (ii) of this paragraph does not impair or diminish the right of the WMS Released Parties to assert any and all defenses to such claims. During the period after the expiration of the deadline for submitting an opt-out notice, as determined by the Court, and prior to the Date

9

of Final Judgment, all Releasing Parties who have not submitted a valid request to be excluded from the Settlement Class shall be preliminarily enjoined and barred from asserting any Released Claims against the WMS Released Parties. The release of the Released Claims will become effective as to all Releasing Parties upon the Date of Final Judgment. Upon the Date of Final Judgment, the Releasing Parties further agree that they will not file any other suit against the WMS Released Parties arising out of or relating to the Released Claims.

3. **Covenant Not to Sue**. Class Plaintiffs and each Settlement Class Member covenant not to sue, directly or indirectly, or otherwise seek to establish liability against the WMS Released Parties for any transaction, event, circumstance, action, failure to act, or occurrence of any sort or type arising out of or related to the Released Claims, including, without limitation, seeking to recover damages or other relief relating to any of the Released Claims. This Paragraph shall not apply to any action to enforce this Settlement Agreement.

4. **Full Release**. The Settling Parties to this Settlement Agreement expressly agree and confirm that the Released Claims as set forth in the provisions of Section II(B) constitute a full and final release of the WMS Released Parties by the Releasing Parties of the Released Claims.

5. **Waiver**. In addition to the provisions of Section II(B)(2), the Releasing Parties hereby expressly waive and release, solely with respect to the Released Claims, upon the Date of Final Judgment, any and all provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, which states:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code. Each Releasing Party may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims which are released pursuant to the provisions of Section II(B)(2), but each Releasing Party hereby expressly waives and fully, finally, and forever settles and releases, upon the Date of Final Judgment, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that the Releasing Parties have agreed to release pursuant to Section II(B)(2), whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

**C.   Claims Administrator**.

Pursuant to the Preliminary Approval Order, and subject to Court approval, Interim Co-Lead Counsel shall engage a qualified Claims Administrator. The Claims Administrator shall effectuate the notice plan approved by the Court in the Preliminary Approval Order.

**D.   No Reversion**.

WMS shall have no rights to reversion, except as provided in Section II(E)(11) of this Settlement Agreement.

**E.   Approval of Settlement Agreement and Dismissal of Claims**.

1.   **Notice of Settlement**. Within two (2) business days after the execution of this Settlement Agreement by WMS, Interim Co-Lead Counsel and WMS's Counsel shall jointly file with the Court a notice of settlement and stipulation for suspension of all proceedings by Plaintiffs against WMS in the Action pending approval of the Settlement Agreement.

2.   **Cooperation**. Class Plaintiffs and WMS shall cooperate in good faith and use their best efforts to effectuate this Settlement Agreement, including cooperating in seeking the Court's approval of the Settlement Agreement without modification of any of its material terms and

conditions, the giving of appropriate Settlement Class Notice under Federal Rule of Civil

Procedure 23, and the complete and final dismissal with prejudice of the Action as to WMS.

   3.  **Settlement Class Certification**. Class Plaintiffs shall seek, and WMS shall take no

position with respect to, the appointment of Interim Co-Lead Counsel as Settlement Class Counsel

for purposes of this Settlement and the certification in the Action of a class for settlement purposes

only, referred to herein as the "Settlement Class," which shall include Plaintiffs and be defined as:

> All persons employed by Defendant Processors, their subsidiaries and/or related entities at poultry processing plants, poultry hatcheries, poultry feed mills and/or poultry complexes in the continental United States from January 1, 2000 until July 20, 2021.

The following persons and entities are excluded from the Settlement Class: complex managers,

plant managers, human resources managers, human resources staff, office clerical staff, guards,

watchmen, and salesmen; Defendants, co-conspirators, and any of their subsidiaries, predecessors,

officers, or directors; and federal, state, or local governmental entities. With the exception of the

end date, the above Settlement Class mirrors the putative litigation class that will be alleged in

Plaintiffs' forthcoming amended pleading, which Plaintiffs will seek to file via motion or with the

consent of Defendants within 30 days of the execution of this Settlement Agreement. Should the

Court not allow the filing of Plaintiffs' amended pleading alleging such a putative litigation class,

then the Settlement Class for the purposes of this Settlement shall be defined as follows:

> All persons employed by Defendant Processors, their subsidiaries, and/or related entities at poultry processing plants in the continental United States from January 1, 2009 until July 20, 2021.

The following persons and entities are excluded from the Settlement Class: complex managers,

plant managers, human resources managers, human resources staff, office clerical staff, guards,

watchmen, and salesmen; Defendants, co-conspirators, and any of their subsidiaries, predecessors,

officers, or directors; and federal, state, or local governmental entities.

4.      **Preliminary Approval**. No later than 30 business days after the Execution Date, Class Plaintiffs shall submit to the Court a motion requesting entry of an order preliminarily approving the settlement ("Preliminary Approval Order"). Plaintiffs may combine the motion for Preliminary Approval with a motion to grant preliminary approval for settlement with any other Defendants. The Settling Parties may delay the filing of Preliminary Approval by mutual agreement. The proposed Preliminary Approval Order shall provide that, *inter alia*:

a.      the settlement proposed in the Settlement Agreement has been negotiated at arm's length and is preliminarily determined to be fair, reasonable, adequate, and in the best interests of the Settlement Class;

b.      after Settlement Class Notice has been carried out, a hearing on the settlement proposed in this Settlement Agreement shall be held by the Court to determine whether the proposed settlement is fair, reasonable, and adequate, and whether it should be finally approved by the Court (the "Fairness Hearing");

c.      Settlement Class Members who wish to exclude themselves from the settlement and the Settlement Agreement must submit an appropriate and timely request for exclusion;

d.      Settlement Class Members who wish to object to this Settlement Agreement must submit an appropriate and timely written statement of the grounds for objection;

e.      Settlement Class Members who wish to appear in person to object to this Settlement Agreement may do so at the Fairness Hearing pursuant to directions by the Court; and

f.      all proceedings in the Action with respect to WMS and Class Plaintiffs are stayed until further order of the Court, except as may be necessary to implement this Settlement Agreement or comply with the terms thereof.

5.      **Settlement Class Notice**. Individual notice of the Settlement to all Settlement Class Members who can be identified through reasonable effort shall be mailed, emailed and/or sent via text message to the Settlement Class in conformance with a notice plan to be approved by the Court. Interim Co-Lead Counsel will undertake all reasonable efforts to notify potential Settlement Class Members of the settlement. The timing of a motion to approve notice to the Settlement Class of this Settlement Agreement shall be in the discretion of Interim Co-Lead Counsel and may be combined with notice of other settlements in this Action.

6.      **Cost of Settlement Class Notice**. The costs of providing Settlement Class Notice to Settlement Class Members shall be combined with the costs of providing notice of other settlements in this Action.

7.      **CAFA Notice**. Within ten days of filing the motion for Preliminary Approval, WMS will provide to the appropriate state officials and the appropriate federal official the notice required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b) ("CAFA").

8.      **Final Approval**. If this Settlement Agreement is preliminarily approved by the Court, the Settlement Class shall seek entry of an Order and Final Judgment, which WMS shall not oppose and in which it shall reasonably cooperate, that *inter alia:*

a.      finally approves this Settlement Agreement and its terms as being a fair, reasonable, and adequate settlement as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms and conditions;

b.      determines that the Settlement Class Notice constituted, under the circumstances, the most effective and practicable notice of this Settlement Agreement and the Fairness Hearing, and constituted due and sufficient notice for all other purposes to all Persons entitled to receive notice;

c.      confirms that WMS has provided the appropriate notice pursuant to CAFA;

d.      orders that all claims made against WMS in the Action, including in all class action complaints asserted by the Class Plaintiffs, are dismissed with prejudice and without further costs or fees;

e.      discharges and releases the WMS Released Parties from all Released Claims up through and including the date of Preliminary Approval of this Settlement Agreement;

f.      enjoins Class Plaintiffs from suing, directly or indirectly, any of the WMS Released Parties for any of the Released Claims;

g.      requires Interim Co-Lead Counsel to file with the clerk of the Court a record of potential Settlement Class Members that timely excluded themselves from the Settlement Class, and to provide a copy of the record to WMS Counsel;

h.      incorporates the release set forth in Section II(B)(2) of this Settlement Agreement and makes that release effective as of the Effective Date as to the Class Plaintiffs and all Settlement Class Members that were not timely and validly excluded from the Settlement Class;

i.      determines under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directs that the judgment of dismissal as to WMS shall be final and entered forthwith, and stating: (1) final judgment as to the Action is entered in favor of WMS; and (2) final judgment is granted in favor of the WMS Released Parties on any Released Claim of a Settlement Class Member that did not file a timely notice for exclusion; and

j.      reserves to the Court exclusive jurisdiction over the settlement and this Settlement Agreement, including the administration and consummation of this Settlement Agreement.

9.      **Class Counsel Fees and Expenses; No Other Costs**. WMS shall have no responsibility for any costs, including Interim Co-Lead Counsel's attorneys' fees, costs, and

expenses or the fees, costs, or expenses of any Plaintiff's or Class Member's respective attorneys, experts, advisors, or representatives, provided, however, that with respect to the Action, including this Settlement Agreement, WMS shall bear its own costs and attorneys' fees.

10.     **When Settlement Becomes Final**. The settlement contemplated by this Settlement Agreement shall become final on the Date of Final Judgment.

11.     **Termination and Reduction**. If the Court declines to grant either preliminary or final approval to this Settlement Agreement or any material part hereof (as set forth in Sections II(E)(4) or (E)(8) above, respectively), or if the Court approves this Settlement Agreement in a materially modified form, or if after the Court's approval, such approval is materially modified or set aside on appeal, or if the Court does not enter the Order and Final Judgment, or if the Court enters the Order and Final Judgment and appellate review is sought and on such review such Final Order and Judgment is not affirmed (collectively "Triggering Events"), then WMS and Class Plaintiffs shall each, in their respective sole discretion, have the option to rescind this Settlement Agreement in its entirety by providing written notice of their election to do so ("Termination Notice") to each other within thirty calendar days of such Triggering Event. For purposes of this Section II(E)(11), a material modification includes but is not limited to any modification to the cooperation provisions or the scope of the Released Claims. If rescinded or terminated, this Settlement Agreement shall become null and void and the Settling Parties' position shall be returned to the status quo ante. In no way shall Class Plaintiffs have the right to rescind or terminate this Settlement Agreement if the Court fails or refuses to grant any request for attorneys' fees, reimbursement of costs, or any service awards to class representatives.

12.     **No Admission**.

    a.     WMS denies all allegations of wrongdoing in the Action.

b.      This Settlement Agreement, and any of its terms, and any agreement or order relating thereto, shall not be deemed to be, or offered by any of the Settling Parties to be received in any civil, criminal, administrative, or other proceeding, or utilized in any manner whatsoever as, a presumption, a concession, or an admission of any fault, wrongdoing, or liability whatsoever on the part of WMS or other WMS Released Parties; provided, however, that nothing contained in this Section II(E)(12) shall prevent this Settlement Agreement (or any agreement or order relating thereto) from being used, offered, or received in evidence in any proceeding to approve, enforce, or otherwise effectuate the settlement (or any agreement or order relating thereto) or the Order and Final Judgment, or in which the reasonableness, fairness, or good faith of any Settling Party participating in the settlement (or any agreement or order relating thereto) is in issue, or to enforce or effectuate provisions of this Settlement Agreement or the Order and Final Judgment. This Settlement Agreement may, however, be filed and used in  other proceedings, where relevant, to demonstrate the fact of its existence and of this settlement, including but not limited to WMS filing the Settlement Agreement and/or the Order and Final Judgment in any other action that may be brought against it in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, waiver, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

13.      **Litigation Standstill**. Class Plaintiffs shall cease all litigation activities against WMS in the Action except to the extent expressly authorized in this Settlement Agreement. WMS and WMS Counsel shall cease all litigation activities against Class Plaintiffs in the Action, except in connection with providing the cooperation provided for in Section II(A).

## III.     MISCELLANEOUS

**A.     Entire Agreement**.

This Settlement Agreement shall constitute the entire agreement between the Settlement Class and WMS pertaining to the settlement of the Action against WMS and supersedes any and all prior and contemporaneous undertakings of the Settlement Class and WMS in connection therewith. All terms of the Settlement Agreement are contractual and not mere recitals.

**B.     Inurement**.

The terms of the Settlement Agreement are and shall be binding upon, to the fullest extent possible, each of the Releasing Parties and the WMS Released Parties, and upon all other Persons claiming any interest in the subject matter hereto through any of the Settling Parties, Releasing Parties, or WMS Released Parties, including any Settlement Class Members.

**C.     Modification and Waiver**.

Except for minor modifications of discovery obligations and deadlines as set forth in Section II(A) above, this Settlement Agreement may be modified or amended only by a writing executed by the Class Plaintiffs (through Interim Co-Lead Counsel) and WMS, subject (if after the Date of Preliminary Approval or the Date of Final Approval) to approval by the Court. Amendments and modifications may be made without notice to the Settlement Class unless notice is required by law or by the Court. The waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving Party.

**D.     Drafted Mutually**.

For the purpose of construing or interpreting this Settlement Agreement, the Settlement Class and WMS shall be deemed to have drafted it equally, and it shall not be construed strictly for or against any party.

**E.      Governing Law & Jurisdiction**.

Any disputes relating to this Settlement Agreement shall be governed by Maryland law without regard to conflicts of law provisions. Subject to Court approval, the United States District Court for the District of Maryland shall retain jurisdiction over the implementation, enforcement, and performance of this Settlement Agreement and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement that cannot be resolved by negotiation and agreement by Plaintiffs and WMS.

**F.      Counterparts**.

This Settlement Agreement may be executed in counterparts by Interim Co-Lead Counsel and WMS Counsel, each of which shall be deemed an original and all of which taken together shall constitute the same Settlement Agreement. A facsimile or .pdf signature shall be deemed an original signature for purposes of executing this Settlement Agreement.

**G.      Represented by Counsel**.

Class Plaintiffs, the Settlement Class, and WMS acknowledge that each have been represented by counsel, and have made their own investigations of the matters covered by this Settlement Agreement to the extent they have deemed it necessary to do so and are not relying on any representation or warranty by the other party other than as set forth herein. Therefore, the Settling Parties and their respective counsel agree that they will not seek to set aside any part of the Settlement Agreement on the grounds of mistake. The Settling Parties agree that this Settlement Agreement was negotiated in good faith by the Settling Parties and reflects a settlement that was reached voluntarily after consultation with competent counsel, and no Settling Party has entered this Settlement Agreement as the result of any coercion or duress.

**H.     Authorization**.

Each of the undersigned attorneys represents that he or she is fully authorized to enter into and execute this Settlement Agreement, subject to Court approval; the undersigned Interim Co-Lead Counsel represent that they are authorized to execute this Settlement Agreement on behalf of Class Plaintiffs; and the undersigned WMS Counsel represent that they are authorized to execute the Settlement Agreement on behalf of WMS.

**I.     Privilege and Confidentiality**.

1.     Nothing in this Settlement Agreement, settlement, or the negotiations or proceedings relating to the foregoing is intended to or shall be deemed to constitute a waiver of any applicable privilege or immunity, including, without limitation, the accountants' privilege, the attorney-client privilege, the joint defense privilege, or work product immunity.

2.     During the period prior to the public filing of this Settlement Agreement, the Settling Parties agree to maintain the confidentiality of all settlement discussions, materials exchanged during those settlement discussions, and the terms of this Settlement Agreement. However, during the period prior to the public filing of this Settlement Agreement, WMS and Class Plaintiffs can inform other parties to this Action that they have reached a settlement agreement.

**J.     No Unstated Third-Party Beneficiaries**.

No provision of this Settlement Agreement shall provide any rights to, or be enforceable by, any Person that is not a Released Party, Plaintiff, Settlement Class Member, or Interim Co-Lead Counsel.

**K.     Breach**.

This Settlement Agreement does not waive or otherwise limit the Settling Parties' rights and remedies for any breach of this Settlement Agreement. Any breach of this Settlement

Agreement may result in irreparable damage to a Party for which such Party will not have an adequate remedy at law. Accordingly, in addition to any other remedies and damages available, the Settling Parties acknowledge and agree that the Settling Parties may immediately seek enforcement of this Settlement Agreement by means of specific performance or injunction, without the requirement of posting a bond or other security. The waiver by any Party of any particular breach of this Settlement Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent or contemporaneous, of this Settlement Agreement.

**L.**     **Notice**.

Other than Settlement Class Notice, any notice required pursuant to or in connection with this Settlement Agreement shall be in writing and shall be given by: (1) hand delivery; (2) registered or certified mail, return receipt requested, postage prepaid; or (3) UPS or similar overnight courier, addressed, in the case of notice to any Plaintiff or Settlement Class Member, to Interim Co-Lead Counsel at their physical addresses set forth below, with a copy by email at the email addresses set forth below and, in the case of notice to WMS, to its representatives at their physical addresses set forth below, with a copy by email at the email addresses set forth below, or such other physical or email addresses as WMS or Interim Co-Lead Counsel may  designate, from time to time, by giving notice to all Settling Parties in the manner described in this Section III(L).

For Class Plaintiffs:

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, Washington 98101
Telephone: (206) 623-7292
steve@hbsslaw.com

Shana E. Scarlett
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
shanas@hbsslaw.com

Brent W. Johnson
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue, NW, 5th Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile:  (202) 408-4699
bjohnson@cohenmilstein.com

George F. Farah
HANDLEY FARAH & ANDERSON PLLC
33 Irving Place
New York, New York 10003
Telephone: (212) 477-8090
Facsimile:  (844) 300-1952
gfarah@hfajustice.com

For WMS:

Gerard P. Martin
Jeffrey M. Lichtstein
ROSENBERG MARTIN GREENBERG, LLP
25 S. Charles Street, 21st Floor
Baltimore, Maryland 21201
Tel: (410) 727-6600
Fax: (410) 727-1115
gmartin@rosenbergmartin.com
jlichtstein@rosenbergmartin.com

IN WITNESS WHEREOF, the Settling Parties hereto, through their fully authorized representatives, have agreed to this Settlement Agreement as of the Execution Date.

Dated:  November 18, 2021

George F. Farah
HANDLEY FARAH & ANDERSON PLLC
33 Irving Place
New York, NY 10003
T: (212) 477-8090
F: (844) 300-1952
gfarah@hfajustice.com

William H. Anderson (admitted *pro hac vice*)
HANDLEY FARAH & ANDERSON PLLC
4730 Table Mesa Drive, Suite G-200
Boulder, CO 80305
Telephone: (202) 559-2433
wanderson@hfajustice.com

Dated:  November 19, 2021

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Shana E. Scarlett
Rio S. Pierce
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com
rios@hbsslaw.com

Dated: November 19, 2021

Brent W. Johnson
Benjamin D. Brown
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Ave. NW
Suite 500, West Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
bjohnson@cohenmilstein.com
bbrown@cohenmilstein.com

*Interim Co-Lead Counsel for the Proposed Class*

Dated: November 19, 2021

Gerard P. Martin
Jeffrey M. Lichtstein
ROSENBERG MARTIN GREENBERG, LLP
25 S. Charles Street, 21st Floor
Baltimore, Maryland 21201
Tel: (410) 727-6600
Fax: (410) 727-1115
gmartin@rosenbergmartin.com
jlichtstein@rosenbergmartin.com

*Counsel for Webber, Meng, Sahl & Co., Inc.*

Agreed to:

WEBBER, MENG, SAHL & CO., INC.

Name: George Jonathan Meng
Title: President
Date: November 19, 2021

*Defendant*

24