UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JUDY JIEN, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>PERDUE FARMS, INC., et al.,<br><br>    Defendants. | CIVIL ACTION NO. 1:19-CV-2521-SAG<br><br><br>REDACTED |

**MOUNTAIRE FARMS INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
THE THIRD AMENDED CONSOLIDATED COMPLAINT**

Plaintiffs make only two substantive allegations against Mountaire Farms Inc. ("Mountaire") in the Third Amended Consolidated Complaint ("TACC"): first, that it participated in a single Weber Meng Sahl & Co. ("WMS") poultry industry compensation survey and attendant meeting over the course of a purported twenty-year conspiracy otherwise alleged to involve regular meetings, direct communications, and other (non-WMS) industry-sponsored surveys; and, second, that Mountaire later *refused* to participate in the WMS survey. Setting aside the valid and varied defenses as to why Plaintiffs' latest agglomeration of allegations against all Defendants fail, these allegations do not plausibly tie Mountaire to the supposed antitrust conspiracy, and the Court should dismiss the TACC as to Mountaire.

Plaintiffs resort to sleight of hand in their Opposition brief, ███████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████ Plaintiffs even mischaracterize this Court's prior decisions to misleadingly suggest support for their arguments. These and other efforts to

1

distract from the TACC's wafer-thin allegations against Mountaire end up underscoring its inadequacy, and that the TACC should be dismissed as to Mountaire.

### I. Plaintiffs fail to plausibly allege that Mountaire joined the alleged conspiracy spanning twenty years based on its attendance at one meeting in 2011.

With each amendment, Plaintiffs have further narrowed their allegations against Mountaire. Their *per se* wage-fixing claim now rests entirely on the allegation that Mountaire participated in the WMS survey and attendant meeting in a single year in the middle of the alleged twenty-year conspiracy period. *See* TACC ¶ 56. The only other allegations about Mountaire that Plaintiffs point to in their Opposition are allegations about Mountaire *declining* to participate in exchanges of compensation information—allegations that in no way plausibly suggest *participation* in a conspiracy. ECF No. 660 (hereinafter "Opp. Br.") at 13 (Mountaire declined to participate in WMS survey in 2018), 16 (███████████████████████████████████████████████████████████████████████████████████). The question before the Court, then, is whether the allegation of participation in the WMS survey and meeting in a single year is sufficient to plausibly allege that Mountaire joined the supposed twenty year conspiracy to depress compensation. The answer is no.

The Court's prior opinions support Mountaire's arguments in favor of dismissal. Both of the Court's prior opinions denying motions to dismiss focus on allegations linking Defendants to *multiple* WMS meetings—not a single meeting. ECF No. 378 at 14. Plaintiffs nonetheless argue that "this Court has explicitly held that allegations of attendance at a lone Poultry Industry Compensation Meeting during the Class Period was sufficient to link a particular defendant to the *per se* claim." Opp. Br. at 14. Plaintiffs also cite this Court's opinion denying Butterball and Fieldale's motions to dismiss the First Amended Consolidated Complaint ("FACC"). But the FACC, filed in 2019, only identified the attendees at the 2017 WMS meeting by way of

2

"example" to link them to the WMS meetings more generally.  FACC ¶ 153.  In contrast, Plaintiffs now have identified the alleged attendees at every WMS meeting from 2001 to 2019, including an allegation that Fieldale attended every WMS meeting from 2001-2019 and that Butterball "regularly attended" the WMS meetings.  TACC ¶¶ 62, 85.  In stark contrast, the TACC alleges Mountaire attended only one WMS meeting.  *Id.* ¶ 56.  Application of this Court's prior opinions, relying on allegations of participation in multiple WMS meetings, thus supports dismissal of Mountaire from the TACC.   ECF No. 378 at 14 ("Plaintiffs must link each specific Defendant to the secret *meetings* in order to state a claim." (emphasis added)); ECF No. 414 at 9 ("[T]he SAC includes a specific allegation that Mountaire attended *at least some of the secret compensation meetings*[.]" (emphasis added)).

      The cases cited by Plaintiffs in support of their argument are readily distinguishable from the allegations in the TACC.  In both *SD3, LLC v. Black & Decker (U.S.) Inc.* and *Precision Associates v. Panalpina World Transport (Holding) Ltd.*, the defendants were alleged to attend the singular meeting at which the conspiracy was formed.  801 F.3d 412, 430 (4th Cir. 2015) (finding plaintiff "identifie[d] the particular time, place, and manner in which the boycott initially formed, describing a separate meeting held for that purpose"); No. 08-cv-42, 2015 U.S. Dist. LEXIS 194073, at *62 (E.D.N.Y. June 24, 2015) (granting motion to dismiss but finding defendant's representative "attended a meeting . . . at which the attendees 'agreed to implement a NES fee on their customers'").  As now alleged, the conspiracy was formed at WMS meetings held as early as 2001, as to which there is no allegation Mountaire attended.  There were nearly two dozen annual WMS meetings overall, but Mountaire is only alleged to have attended a single one.  These cases also include allegations that the defendant(s) who attended the single meeting actually implemented the anti-competitive conduct agreed upon at the meeting.  *SD3,* 801 F.3d at

430 ("[T]he complaint then explains how the manufacturers implemented the boycott.");
*Precision Assocs.,* 2015 U.S. Dist. LEXIS 194073, at *63 ("The CTAC also alleges that the NES Defendants . . . imposed the agreed-upon NES fee.").[1]  Here, there is no allegation Mountaire changed its compensation in any way after attending the 2011 WMS meeting.

Nor do these other cases include allegations of a defendant, like Mountaire, refusing to engage in the allegedly conspiratorial conduct.  Beyond participation in the WMS survey and meeting in 2011, the only other allegations that Plaintiffs point to in their Opposition concern Mountaire *declining* to participate in exchanges of compensation information.  TACC ¶ 320.  Plaintiffs characterize their allegation as one that Mountaire "halted its participation" in the WMS survey in 2018.  Opp. Br. at 13.  The actual allegation instead shows that Mountaire chose not to participate in the WMS survey in 2018, seven years after its alleged survey participation in 2011.  TACC ¶ 320; *see also id.* ¶ 56.

[REDACTED]

---

[1] In *Miami Products & Chemical Co. v. Olin Corp.*, the court found the complaint did "not merely allege that Defendants were part of a conspiracy because they were members of trade associations, but rather alleges that the timing of the trade association meetings often coincided with the announcement of price increases by Defendants, thus suggesting a plausible inference that the trade association meetings allowed Defendants to coordinate the price increases." 449 F. Supp. 3d 136, 164 (W.D.N.Y. 2020).

███████████████████████████████████████████████ ██

██ ████████████████████████████████

████████████████████████████████████████████[2]

In addition to this sleight of hand, by responding to Mountaire and Jennie-O Turkey Store, Inc.'s ("Jennie-O's") separately filed motions to dismiss in one brief, Plaintiffs attempt to blur the distinctions between the two motions and attribute Jennie-O's purported conduct to Mountaire by association. This effort however does nothing to bolster the threadbare allegations against Mountaire. By way of example, Plaintiffs misleadingly group the two Defendants when they argue that the "TAC has added exceptional new details regarding . . . direct exchanges of compensation data between Jennie-O, Mountaire, and other Defendant Processors." Opp. Br. at 11. As to Mountaire, <u>there is not a single new detail</u> regarding direct exchanges of compensation, and indeed the only "exceptional" aspects of the TACC are how little Plaintiffs even try to connect Mountaire to the alleged sprawling conspiracy they now put forward.

## II. Plaintiffs fail to plausibly allege a rule-of-reason information sharing claim against Mountaire based on a subscription to Agri Stats.

Plaintiffs' sole allegation against Mountaire supporting their rule-of-reason information exchange claim is that Mountaire subscribed to an industry benchmarking publication, Agri Stats. That allegation falls far short of plausibly alleging participation in a twenty-year conspiracy to exchange wage information.

---

[2] ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ But "'opportunity to conspire' without a showing of actual conspiracy is insufficient[.]" *Hall v. United Air Lines, Inc.*, 296 F. Supp. 2d 652, 664 n.12 (E.D.N.C. 2003); *see also In re Delta*, 245 F. Supp. 3d 1343, 1374 (N.D. Ga. 2017) ("[A]n invitation to collude is not a plus factor[.]"). ████████████████████████████████

In response, Plaintiffs once again grossly misstate their own TACC. Although they boldly state that the TACC identifies additional, "non-WMS" compensation information exchanges with Defendants in which Mountaire participated, Opp. Br. at 2, Plaintiffs provide *no* citation to their complaint, and indeed they cannot. There simply is no allegation that Mountaire directly exchanged compensation data with any other Defendant Processor. In fact, Plaintiffs do not even contend that subscribing to Agri Stats is adequate to allege a conspiracy of any sort. Instead, they contend only the lesser point that Defendants "*monitored* the conspiracy through monthly subscriptions to Agri Stats." Opp. Br. at 17 (emphasis added). Because Plaintiffs have not plausibly alleged that Mountaire joined that conspiracy, *supra*, it follows that Mountaire cannot have used Agri Stats to monitor compliance with it.

Nor are Plaintiffs correct that "this Court has already concluded that there is 'little debate' that Plaintiffs sufficiently alleged this rule of reason claim against Mountaire, Jennie-O, and each of the other Defendant Processors." Opp. Br. at 2 (citing ECF No. 378 at 20). Rather than holding that Plaintiffs had sufficiently alleged a rule-of-reason claim against Mountaire, the Court dismissed the rule-of-reason claim against Mountaire without prejudice. ECF No. 378 at 10 ("Counts I [wage fixing] and II [information sharing] will be dismissed without prejudice [as to Mountaire.]").[3]

---

[3] Plaintiffs also argue that "the Court found that participation in Agri Stats alone provides a sufficient basis to allege a viable rule of reason claim." Opp. Br. at 19. This too is wrong. The Court found Plaintiffs had stated a rule of reason information sharing claim *against Agri Stats* itself, the entity that collected and disseminated the compensation information—not against any Defendant Processor on the basis of merely subscribing to Agri Stats. *See id.* (quoting ECF No. 378 at 27 ("By ***providing*** comprehensive, real-time, and current wage data to nearly the entire poultry processing industry, Agri Stats's conduct can plausibly be alleged to constitute unlawful information sharing[.]") (emphasis added)). And, while the Court did not dismiss the information sharing claim against Peco Foods, Inc. ("Peco Foods"), even though it did dismiss the wage fixing claim against it, ECF No. 378 at 28 n.12, the allegations against Peco Foods were much more specific than they are as to Mountaire in the TACC. Peco

Plaintiffs here as well attempt to conflate their allegations as to Mountaire with allegations as to other Defendants. They argue that the TACC "identifies, for the first time, additional compensation information exchanges in which Mountaire and Jennie-O participated in[.]" Opp. Br. at 21. In support, Plaintiffs point only to Jennie-O's alleged conduct, not any conduct of Mountaire. *Id.* As they did in support of their *per se* claim, Plaintiffs improperly lump defendants together when they argue "Mountaire (and Jennie-O) illicitly exchanged information on multiple occasions through various mechanisms, including . . . other surveys directly administered by other Defendant Processors." *Id.* Again this is simply false—Plaintiffs do not, and cannot, allege that Mountaire ever participated in a wage survey directly administered by another Defendant Processor or any other direct compensation information exchange.

Dismissal of the information sharing claim is appropriate for the additional reason that, absent allegations plausibly linking Mountaire to the alleged wage-fixing conspiracy, Plaintiffs fail to allege any anti-competitive effects arising from Mountaire's alleged participation in Agri Stats as is required for their rule-of-reason claim. Plaintiffs make no allegations Mountaire used the Agri Stats data to suppress compensation, or even that Mountaire suppressed compensation at all. They do not in fact even purport in their Opposition that the TACC contains these allegations.

## CONCLUSION

Plaintiffs' ever-shrinking allegations against Mountaire do not assert facts specific to Mountaire to plausibly link Mountaire to the alleged conspiracy to suppress wages. Nor do they

---

Foods was "alleged to have shared compensation information 'all the time,' and a former Peco Foods employee described in present tense the fact that 'local plants talk.'" ECF No. 378 at 32.

plausibly link Mountaire to an unlawful information exchange or an exchange that had any anticompetitive effect. For these reasons, along with those asserted in its opening brief, Mountaire respectfully requests that this Court dismiss the TACC as to Mountaire with prejudice.

Respectfully submitted,

/s/ *Stephen J. Kastenberg*
Stephen J. Kastenberg (admitted *pro hac vice*)
Jason A. Leckerman (admitted *pro hac vice*)
Elizabeth P. Weissert (admitted *pro hac vice*)
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103
kastenberg@ballardspahr.com
leckermanj@ballardspahr.com
weisserte@ballardspahr.com
Telephone:   (215) 665-8300
Facsimile:    (215) 864-8999

Amanda Wofford (admitted *pro hac vice*)
Bourgon Reynolds (admitted *pro hac vice*)
ROSE LAW FIRM
a Professional Association
120 East Fourth Street
Little Rock, Arkansas 72201
Telephone: (501) 375-9131
Facsimile: (501) 375-1309
awofford@roselawfirm.com
breynolds@roselawfirm.com

Michelle McGeogh (MD # 028778)
BALLARD SPAHR LLP
300 East Lombard St., 18th Fl.
Baltimore, MD 21202
McGeoghm@ballardspahr.com
Telephone:   (410) 528-5600
Facsimile:    (410) 528-5650

Counsel for Defendant
MOUNTAIRE FARMS INC.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 15th day of June, 2022, I caused Defendant Mountaire Farms Inc.'s Redacted Reply in Support of its Motion to Dismiss the Third Amended Consolidated Complaint to be served via ECF on all counsel of record in accordance with the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Maryland.

/s/ *Stephen J. Kastenberg*
Stephen J. Kastenberg