**UNITED STATES DISTRICT COURT**
**THE DISTRICT OF MARYLAND**

| | |
|---|---|
| JUDY JIEN, *et al.*, | Civil Action No. SAG-19-2521 |
| Plaintiffs, | |
| v. | |
| PERDUE FARMS, INC., *et al.*, | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO DIRECT NOTICE TO SETTLEMENT CLASSES FOR PILGRIM'S, GEORGE'S, WMS, PECO, SIMMONS, CARGILL, SANDERSON, WAYNE, PERDUE, CASE FOODS, AND MOUNTAIRE FARMS SETTLEMENTS**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...................................................................................................1

II. RELEVANT PROCEDURAL HISTORY ..........................................................3

III. ARGUMENT ......................................................................................................5

    A. Plaintiffs request that this Court direct notice to the Settlement Classes. ...............5

        1. The proposed manner of notice dissemination is reasonable and represents the best notice practicable under the circumstances. ..................5

        2. The proposed form of class notice should be approved because it clearly and fairly apprises class members of the nature of this action and the scope of their rights. ...................................................................11

    B. The proposed plan of allocation is fair and reasonable...........................................14

IV. PROPOSED SCHEDULE FOR FINAL APPROVAL....................................16

V. CONCLUSION..................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Boger v. Citrix Sys., Inc.*,
   2023 WL 3763974 (D. Md. June 1, 2023)..................................................................14

*Boyd v. Coventry Health Care Inc.*,
   299 F.R.D. 451 (D. Md. 2014)....................................................................................14

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974)..............................................................................................6, 11

*Feinberg v. T. Rowe Price Grp., Inc.*,
   610 F. Supp. 3d 758 (D. Md. 2022)............................................................................14

*McAdams v. Robinson*,
   26 F.4th 149 (4th Cir. 2022)......................................................................................12

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985)...................................................................................................11

*In re Titanium Dioxide Antitrust Litig.*,
   2013 WL 5182093 (D. Md. Sept. 12, 2013)..................................................................6

*Yost v. Elon Prop. Mgmt., LLC*,
   No. CCB-21-1520 (D. Md. July 11, 2022), ECF No. 36............................................14

*In re Zetia (Ezetimibe) Antitrust Litig.*,
   2023 WL 681635 (E.D. Va. Oct. 18, 2023).................................................................14

## OTHER AUTHORITIES

Fed. R. Civ. P. 23...............................................................................................3, 11, 14

Fed. R. Civ. P. 23(b)(3).............................................................................................6, 11

Fed. R. Civ. P. 23(c)(2)(B) .................................................................................3, 6, 11, 14

## I.     INTRODUCTION

Plaintiffs respectfully submit this Memorandum in support of their motion seeking Court approval to disseminate class notice for settlements of their claims against the following Defendants: Pilgrim's Pride Corporation; George's Inc., and George's Foods LLC (together, George's); Webber, Meng, Sahl & Company, Inc. (WMS); Peco Foods, Inc.; Simmons Foods, Inc., and Simmons Prepared Foods, Inc. (together, Simmons); Cargill Meat Solutions Corporation; Sanderson Farms, Inc.; Wayne Farms LLC; and Perdue Farms, Inc., and Perdue Foods, LLC (together, Perdue); Case Foods, Inc., and Case Farms, LLC (together, Case); and Mountaire Farms Inc. (collectively, the Settled Defendants). *See* ECF Nos. 490, 529, 565, 620, 749, 817, 899 & Pl.'s Mot. for Preliminary Approval of Settlements Between Plaintiffs and Defendants Case Foods, Inc., Case Farms, LLC, and Mountaire Farms Inc., Certification of Settlement Class, and Appointment of Settlement Class Counsel, filed concurrently with this motion.

Over $200 million is available for distribution to the class. Class Counsel have retained an experienced notice and claims administrator, A.B. Data, Ltd. (A.B. Data), which has the experience and expertise necessary to oversee notice and distribution in a case involving the return of wages. A.B. Data is an experienced notice claims administrator who has overseen distribution in many complex cases. Parks Decl., ¶ 3.[1] This Court appointed A.B. Data the notice and claims administrator for the Pilgrim's, George's, Peco, WMS, Simmons, Cargill, Sanderson, Wayne, and Perdue settlements. ECF No. 853. Plaintiffs also request that A.B. Data act as the notice and claims administrator for the Case and Mountaire settlements. *See* Proposed Order

---

[1] "Parks Decl." refers to the Declaration of Justin Parks, Vice President of A.B. Data, Ltd.'s Class Action Administration Division.

Granting Plaintiffs' Motion for Preliminary Approval of the Settlements Between Plaintiffs and Defendants Case Foods, Inc., Case Farms, LLC, and Mountaire Farms Inc., Certification of Settlement Class, and Appointment of Settlement Class Counsel.

*First*, the proposed plan of notice is constitutional. Class Counsel have spent months working with the Defendants to extract **over 1 billion lines** of data reflecting the contact and wage information for class members. The claims administrator estimates that there are email addresses (albeit not verified and not deduplicated) for approximately 1 million class members and 245 million physical addresses of class members (again, not verified or deduplicated). Parks Decl., ¶¶ 9–10. Class Counsel proposes a robust proposed plan of notice that consists of direct email and postcard notice for the class members for whom there is contact information, informing them of their membership in the class. Class members for whom all information is known (compensation information, contact information, and a verified Taxpayer Identification Number (TIN)), will not need to do anything, and will receive a check in the distribution phase of the case. But Class Counsel also propose a robust campaign of indirect notice, consisting of supplemental paid media, earned media, union outreach, a website, and toll-free telephone number. Parks Decl., ¶¶ 17–27. For class members for whom additional information is needed, or class members who are not contained in the data, class members will be sent to the settlement website, where additional information will be requested. Class counsel submit an exemplar proposed participation form that will assist class members to submit claims in this case. Parks Decl., Ex. F.

Class Counsel have already purchased and built out a settlement website, www.PoultryWages.com, which allows class members to check (and update) their compensation and contact information, to check whether they might be a class members, and to review

important documents in the case. Utilizing an online translating tool, the website will be easily translated into more than 130 languages for the ease of class members. *Id.* ¶ 26. The participation form will also be available in electronic form, for easy participation by class members. *Id.* ¶ 25. This proposed plan of notice is adequate and constitutional.

*Second*, Plaintiffs propose notices that meet all requirements of Rule 23. Working with A.B. Data, Class Counsel submit two sets of notice—email and postcard notice—which will be sent to the millions of class members. Parks Decl., Exs. B and C. Class members who receive indirect notice will be directed to the website and a detailed set of frequently asked questions. *Id.*, Ex. G. The notices will be translated into both English and Spanish and will be readily available on the settlement website. The notices are drafted not only to comply with the requirements of Rule 23(c)(2)(B), but also written in plain and engaging language. *Id.* ¶ 29. The proposed notices meet all the requirements of Rule 23.

## II.    RELEVANT PROCEDURAL HISTORY

Over the course of five years, Plaintiffs have now settled with eleven Defendants, and have secured $217,250,000 in recovery on behalf of the class.

Over the course of this time, Plaintiffs moved for preliminary approval of these eleven settlements reached with the Settled Defendants for the following consideration:

| Settling Defendant | Consideration | Date of Preliminary Approval |
|---|---|---|
| Pilgrim's | $29,000,000 | July 20, 2021[2] |
| George's | $5,800,000 | October 5, 2021[3] |
| WMS | Substantial Cooperation | January 10, 2022[4] |

[2] ECF No. 490.

[3] ECF No. 529.

[4] ECF No. 565.

| Settling Defendant | Consideration | Date of Preliminary Approval |
|---|---|---|
| Peco | $3,000,000 | January 10, 2022[5] |
| Simmons | $12,000,000 | March 28, 2022[6] |
| Cargill | $15,000,000 | September 27, 2022[7] |
| Sanderson | $38,300,000 | September 27, 2022[8] |
| Wayne | $31,500,000 | September 27, 2022[9] |
| Perdue | $60,650,000 | April 3, 2023[10] |
| Case | $8,500,000 | Approval Pending[11] |
| Mountaire | $13,500,000 | Approval Pending |

At the time that Plaintiffs moved for preliminary approval of the first nine settlements, they requested that this Court defer notice pending their collection of contact and compensation information from the Defendants. Plaintiffs move for preliminary approval of two settlements, with Case and Mountaire, concurrently with filing this motion to direct notice.

The classes across these settlements are overlapping, but not entirely co-extensive. The first two settlements with Pilgrim's and George's were on behalf of classes consisting of "[a]ll persons employed by Defendant Processors, their subsidiaries, and/or related entities at poultry processing plants in the continental United States from January 1, 2009 until July 20, 2021."

---

[5] *Id.*

[6] ECF No. 620.

[7] ECF No. 749.

[8] *Id.*

[9] *Id.*

[10] ECF No. 817.

[11] Plaintiffs submit a motion for preliminary approval of the Case and Mountaire settlements concurrently with the motion to direct notice.

ECF Nos. 490 & 529. Plaintiffs subsequently filed the Third Amended Complaint, expanding the class to include hatchery and feed mill workers and enlarging the class period to January 1, 2000, until July 20, 2021. *Compare* ECF No. 386 ¶ 294 *with* ECF No. 590 ¶ 503. Accordingly, all settlements beginning with the WMS and Peco settlements are on behalf of the larger settlement class. ECF Nos. 565, 620, 749, 817, & Exs. A & B to the Declaration of Shana Scarlett filed in support of the Motion for Preliminary Approval of the Settlements Between Plaintiffs and Defendants Case Foods, Inc., Case Farms, LLC, and Mountaire Farms Inc., Certification of Settlement Class, and Appointment of Settlement Class Counsel. In the orders granting preliminary approval of the Pilgrim's through Perdue settlement agreements, the Court ordered that Plaintiffs' counsel move for approval of a notice plan after Defendants' production of contact information for all class members. ECF Nos. 490 at 2, 529 at 2, 565 at 2, 620 at 2, 749 at 2 & 817 at 2. Plaintiffs, having received a critical mass of contact information for individuals in both classes (collectively, class members), propose a notice plan that will fairly apprise potential class members of the nature and extent of the claims, the settlements, and the scope of their rights.

### III.    ARGUMENT

**A.    Plaintiffs request that this Court direct notice to the Settlement Classes.**

**1.    The proposed manner of notice dissemination is reasonable and represents the best notice practicable under the circumstances.**

In a class action certified under Rule 23(b)(3), the rule provides for "the best notice practicable under the circumstances," including "individual notice to all members who can be identified through reasonable effort."[12] Notice that is mailed to each member of a settlement

---

[12] *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

class "who can be identified through reasonable effort" constitutes the best notice practicable.[13]

But notice may also be by electronic means. Fed. R. Civ. P. 23(c)(2)(B). And when class

members cannot be individually identified, notice by publication "constitutes a reasonable effort

to provide notice to class members."[14]

Plaintiffs propose a state-of-the-art notice program design by an experienced notice and

claims administrator, A.B. Data. The notice program includes (1) direct notice, (2) supplemental

paid media, (3) earned media, (4) union outreach, and (5) website notice.

**Direct Notice.** A.B. Data has prepared two notices: postcard notice and e-mail notice,

attached as Exhibits B and C, respectively, to the Parks Decl. Plaintiffs have received 245

million mailing addresses and one million email addresses of potential class members. Parks

Decl., ¶ 10. These numbers are an overstatement, as the records are still in the process of being

verified and deduplicated. One this process is complete, A.B. Data will send email notice to all

class members with known email addresses. *Id.* ¶ 11. A.B. Data will perform several tasks to

maximize deliverability and avoid SPAM or junk filters. *Id.* ¶ 12. These tasks include running

the list of recipient email addresses through a deliverability analysis to ensure the email

addresses are valid and working with AB. Data contacts at the email service providers to develop

sending strategies to achieve optimal deliverability. *Id.* A.B. Data will also incorporate certain

best practices to maximize deliverability, such as ensuring exclusion of words or phrases known

to trigger SPAM or junk filters, not including attachments to the email, and sending the emails in

tranches over a period of days or weeks. *Id.*

---

[13] *Id.* at 176.

[14] *See, e.g.*, *In re Titanium Dioxide Antitrust Litig.*, No. RDB-10-0318, 2013 WL 5182093, at *5 (D. Md. Sept. 12, 2013).

For those class members for whom no email address is available or the email is returned as undeliverable, A.B. Data will send the notice as a double postcard. *Id.* ¶ 13. The postcard notice will be formatted as a sealed double postcard to facilitate privacy of class member information, given that to the extent possible, class members will be informed of the aggregate amount of their compensation from the class period (so they are aware whether all of their compensation is included or not). *Id.* ¶ 13. A.B. Data will ensure maximum deliverability of the postcard notice by standardizing and updating all mailing addresses through the United States Postal Service (USPS) national change of address database. *Id.* ¶ 14. A.B. Data may also utilize available demographic information and known standard tools to locate class members' contact information, if necessary. *Id.* The postcard notice will be sent to updated mailing addresses provided by the USPS or the located contact information of class members. *Id.* Should the postcard notice be returned as undeliverable with a forwarding address provided, A.B. Data will promptly remail the postcard notice to the forwarding address. *Id.* ¶ 15. If the postcard notice is returned as undeliverable with *no* forwarding address provided, A.B. Data will search for an updated address using an information provider to which it subscribes. *Id.* A.B. Data will promptly remail the postcard notice to available updated addresses. *Id.*

**Supplemental Paid Media.** Plaintiffs also propose a paid media campaign on both digital and social media, to reach class members who did not receive the email notice or the postcard notice. *Id.* ¶ 17. The ads, which will appear on desktops, tablets, and mobile devices for 30 days on Google Display Network, YouTube, Facebook, Instagram, and other platforms, are estimated to achieve approximately 30 million gross impressions. *Id.* The ads will appear nationally and be geotargeted within states with the highest concentration of poultry workers, including Alabama, Georgia, Virginia, Mississippi, Arkansas, New York, and California. *Id.*

The entire media campaign and settlement website will use a standard logo that will visually help class members to identify the correct official settlement website. Each piece of the campaign—the simple text, standard logo, and eye-catching colors on the online banner ads and social media newsfeed ads—is designed to alert class members about the case. *Id.* ¶ 18. The ads will include links to the case-specific website so class members may click on the link and go directly to the website to find answers to commonly asked questions, download case information, update their information, or complete the participation form. *Id.* Sample banner and social media ads are attached to the Parks Decl. as Exhibit D.

Sponsored search listings will be additionally purchased and appear on Google—the most highly visited search engine—or other search partners. *Id.* ¶ 19. A person will be able to use specific target phrases or keywords to search for information, and the link to the case-specific website may appear on the search result pages. *Id.* This supplemental paid media is flexible and will be adjusted as necessary to provide sufficient notice coverage. *Id* ¶ 20.

**Earned Media.** The proposed notice plan also includes a press release calculated to reach traditional media outlets (television, radio, newspapers, magazines), news websites, and journalists nationwide. *Id.* ¶ 21. The news release will be distributed via PR Newswire's US1 and Hispanic National Newslines to help the case gain class members' attention. *Id.* News about the settlements will also be distributed via X (formerly known as Twitter) to thousands of media outlets, journalists, and other followers. *Id.* ¶ 22.

**Union Outreach.** Plaintiffs intend to create flyers with QR codes directing class members to the settlement website, and to ask the UFCW union's assistance in disseminating news about the settlement funds in an additional attempt to reach class members. *Id.* ¶ 23.

**Settlement Website.** Plaintiffs have already obtained a case-specific website for this matter, www.PoultryWages.com. *Id.* ¶ 25. Working with the claims administrator, Plaintiffs have developed a very specific logo to be placed at the top of the page, to help ensure continuity between the various notices and the official, court-sponsored website (versus the websites of claims aggregators). The website will be continually updated by class counsel regarding timelines in the case, countdowns to make claims, important documents and decisions in the case to help inform class members, and answers to "frequently asked questions." The frequently asked questions will be translated to English, Spanish and Marshallese (the language of the named plaintiffs and a community of workers in this case). *Id.* ¶ 26. The website's content will be developed in HTML so that it can be translated into over 130 languages, including Spanish, French/Haitian (Creole), and Vietnamese. *Id.* The website's content will therefore be available in each of the top five language spoken by poultry-processing workers. *Id.*

Because this case involves the return of wages, Class Counsel have sought the advice of accountants regarding the necessity of W-9s or TINs from class members. Following that advice, the website will include a number of precautions. First, prior to sending notice, the claims administrator will perform a TIN match. For those with matches, direct notice will be sent and distribution will be automatic. For a second group, TIN verification will be needed, and class members will be directed to the website where a W-9 or substitute W-9 will be solicited. If a TIN match results, then the class member will be moved automatically to the distribution phase. For those without TIN matches, one more attempt will be made to solicit a TIN, and then a distribution will be made. To avoid penalties to the class settlement funds due to a lack of TIN-verification, the following process will be followed, but under all pathways, class members will receive distribution (that is, funds will not be denied because of a lack of TIN matching):



**Toll-Free Telephone Number.** A.B. Data will also implement and maintain a toll-free telephone number with an automated interactive voice response system. *Id.* ¶ 24. The automated interactive voice system will present callers with a series of choices to hear prerecorded information concerning the settlements in both English and Spanish. *Id.* Callers will also have the option to speak with a live operator during business hours or leave a message during non-business hours, which will be returned. *Id.*

In short, the proposed notice plan satisfies the requirements of Rule 23 and due process, will provide ample notice to potential members of the settlement classes, and is the best notice practicable under the circumstances. *Id.* ¶ 35. Plaintiffs respectfully request that this Court approve the proposed notice plan.

**2.     The proposed form of class notice should be approved because it clearly and fairly apprises class members of the nature of this action and the scope of their rights.**

In any class action certified under Rule 23(b)(3), the Court must direct notice of class certification to class members using the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The class notice must "clearly and concisely state in plain, easily understood language:" (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (viii) the binding effect of a class judgment on class members. *Id.*

Because class members are bound by the results of a certified Rule 23(b)(3) class action unless they affirmatively opt out, this class notice is required as a matter of constitutional due process to protect the rights of absent class members.[15] To meet the requirements of Rule 23 and constitutional due process, the class notice should be "reasonably calculated, under all the circumstances, to apprise [absent class members] of the pendency of the action and afford them an opportunity to present their objections."[16]

The information provided to the class members in the notice "need only 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options

---

[15] *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *Eisen v Carlisle & Jacquelin*, 417 U.S. 156, 173–74 (1974).

[16] *McAdams v. Robinson*, 26 F.4th 149, 157 (4th Cir. 2022) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)).

that are open to them in connection with the proceedings.'"[17] "Put another way," the notice must "describe[] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."[18] And, because typically "it would be difficult, if not impossible, for parties to reliably predict the number of valid claims when drafting notices," notices generally need not provide an estimate of the amount class members' recovery.[19]

Plaintiffs propose two notice forms for the class but have worked with outside parties and the claims administrator to propose a simplified and accessible form of notice. The proposed email notice will be formatted to be visible on a mobile device, and easily link to the website so a class member can access further information or correct their contact information. The postcard notice will be folded over to protect the personal information of class members. And both sets of notice will include (to the extent possible) the total compensation information for that class member—to give them some sense of whether the information upon which their award will be based is correct. If they believe the information is incorrect, they have the option of going to the class website to include additional information on compensation. Parks Decl., ¶¶ 13, 25 & 27.

In clear and simple language, the proposed notices state the class definitions, a brief overview of the case, the procedure for opting out of the class or objecting, and the right of any class member who does not opt out to appear at the fairness hearing. Parks Decl., ¶¶ 29–31. And the proposed website notice provides contact information for the claims administrator and Class Counsel should class members require additional information. *Id.* ¶ 25.

---

[17] *Id.* (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005)).

[18] *Id.* (quoting *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 946 (9th Cir. 2015)).

[19] *Id.* at 158.

The email notice, postcard notice, and case-specific website's lookup tool each indicate the total wages each class member is known to have earned while working for the Defendants during the class periods. Thus, class members will be informed of the basis of their pro rata share of recovery and can, if necessary, use the website's lookup tool to verify the same or add additional employment and compensation information. Total payments are determined in part by the number of class members submitting claims, and it is unknown at this time how many class members will submit claims and receive distributions. So, the notices make clear that the total amount of money each claimant will receive will be determined at a later date. *See* Parks Decl., Exs. B, C & G.

Because most poultry-processing workers speak English as a second language or have a high school diploma, its equivalent, or less, the proposed notices were carefully drafted in accessible language. The email, postcard, and "frequently asked questions" are drafted with language at a sixth or seventh grade level. Parks Decl. ¶ 32. The "frequently asked questions" will be translated on the website to English, Marshallese, and Spanish—three of the primary languages spoken by poultry-processing workers. *Id.* ¶ 26. The content of the website will be available in HTML and translatable to more than 130 languages, including Spanish, French/Haitain (Creole), and Vietnamese. *Id.* Since the Court's first preliminary approval of the Pilgrim's settlement, Class Counsel and A.B. Data have expended significant resources evaluating class members' demographics and have endeavored to provide the clearest notice practicable. So, the proposed notices plainly satisfy the requirements of due process and the specific requirements of Rule 23(c)(2)(B).[20]

---

[20] *See, e.g., Boger v. Citrix Sys., Inc.*, No. LKG-19-1234, 2023 WL 3763974, at *12 (D. Md. June 1, 2023) (finding a notice that contained, among other things, details regarding the nature of

Plaintiffs respectfully request that the Court approve the contents of the proposed notices.

**B.     The proposed plan of allocation is fair and reasonable.**

Allocation plans must pass muster under Federal Rule of Civil Procedure 23. Courts evaluate the fairness, reasonableness, and adequacy of proposed allocation plans to determine whether class members are treated "equitably relative to each other."[21] Pro rata allocation plans are routinely approved by courts as fair, adequate, and reasonable.[22]

Plaintiffs propose that the plan of allocation will be a pro rata share of compensation earned by each class member during the relevant class periods. Plaintiffs propose that class members will have multiple methods of payment available. For class members with valid email addresses, there will be digital payments through a series of either a Mastercard, or various brands such as Amazon, Wal-Mart or grocery stores—places where class members will be able to use their returned wages. Class members will also have the option of receiving a check. Parks Decl., ¶ 34. Class members without valid email addresses will be mailed a check. *Id.*

After an initial distribution has taken place, it is very likely that additional information will remain in the escrow funds. Plaintiffs propose that either the funds remaining from the first-

---

the lawsuit, the settlement agreement's terms, the release of claims, information regarding objections, and details about the fairness hearing was sufficient for Rule 23); Order Preliminarily Approving Settlement Proposal, Conditionally Certifying the Settlement Class, Conditionally Appointing Settlement Class Counsel and Settlement Class Representative, and Providing for Notice at 3, 5, *Yost v. Elon Prop. Mgmt., LLC*, No. CCB-21-1520 (D. Md. July 11, 2022), ECF No. 36 (approving notice that reasonably informed class members of the "essential features" of the case, the settlement agreements, class certification, and their rights).

[21] *Feinberg v. T. Rowe Price Grp., Inc.*, 610 F. Supp. 3d 758, 769 (D. Md. 2022) (citing Fed. R. Civ. P. 23(e)(2)(D)); *see also In re Zetia (Ezetimibe) Antitrust Litig.*, --- F. Supp. 3d ----, 2023 WL 681635, at *6 (E.D. Va. Oct. 18, 2023).

[22] *See, e.g., In re Zetia (Ezetimibe) Antitrust Litig.*, --- F. Supp. 3d ----, 2023 WL 681635, at *6; *Feinberg*, 610 F Supp. 3d at 770; *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 461 (D. Md. 2014).

round distribution will be joined with any subsequent settlements for the class, or that a second round of distribution will take place limited to only those class members who cashed their checks or claimed their digital funds in the first found. Limiting this second round of distribution to only class members who have already demonstrated that they are actively engaged enough to collect their funds and that the contact information is correct will help to reduce administrative costs. Plaintiffs also propose that any second-round distribution remove *de minimus* payments where the costs of administration would outweigh the benefit to that class member. To this end, Plaintiffs propose that there would be a floor of $5 per class member in the second round of distribution, and any amounts of awards less than $5 would be forfeited and returned to the settlement funds. Finally, if money remains after this second round of distribution and it is no longer cost effective to continue with a third round of distribution, and no additional settlements are reached with which the first-round funds may be joined, Plaintiffs propose that the money would be sent to the State Attorney General of Maryland for use in prosecuting antitrust actions.

## IV.     PROPOSED SCHEDULE FOR FINAL APPROVAL

Plaintiffs propose the following schedule for the dissemination of notice, period for objections, and motion for final approval:

| Task | Proposed Deadline |
|---|---|
| Publication notice plan, postcard and email notice to commence. | 75 days from the date of the Order on this motion |
| Initial Notice Complete (Email and Postcard) | 105 days from the date of the Order on this motion |
| Class counsel to file motion for award of attorneys' fees, costs, and service awards. | 151 days from the date of the Order on this motion |
| Deadline for class members to request exclusion or object to settlements. | 211 days from the date of the Order on this motion |
| Class counsel to file motion for final approval, a declaration regarding the completion of notice, and a list of timely excluded class members. | 286 days from the date of the Order on this motion |
| Final approval hearing (as convenient to the Court). | 376 days from the date of the Order on this motion |
| Deadline for submission of claims/update of tax or TIN information to be provided by class members. | 556 days from the date of the Order on this motion |

## V.     CONCLUSION

Defendants have paid over $200 million in wages which should be returned to class members. Plaintiffs respectfully request that the Court approve the proposed form of notice and the proposed manner of dissemination to class members, approve the plan of allocation, and allow class members to being receiving back their lost wages.

Dated: April 1, 2024                  Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

*/s/ Shana E. Scarlett*
Shana E. Scarlett (admitted *pro hac vice*)
Rio S. Pierce (admitted *pro hac vice*)
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
shanas@hbsslaw.com
riop@hbsslaw.com

Steven W. Berman (admitted *pro hac vice*)
Breanna Van Engelen (admitted *pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, Washington 98101
Telephone: (206) 623-7292
steve@hbsslaw.com
breannav@hbsslaw.com

Elaine T. Byszewski (admitted *pro hac vice*)
Abigail D. Pershing (admitted *pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 920
Pasadena, CA 91101
Telephone: (213) 330-7150
elaine@hbsslaw.com
abigailp@hbsslaw.com

Dated: April 1, 2024                  COHEN MILSTEIN SELLERS & TOLL PLLC

*/s/ Brent W. Johnson*
Brent W. Johnson (admitted *pro hac vice*)
Benjamin D. Brown (admitted *pro hac vice*)
Daniel H. Silverman (admitted *pro hac vice*)
Alison S. Deich (admitted *pro hac vice*)
Zachary Glubiak (D. Md. Bar # 20962)
Zachary Krowitz (D. Md. Bar # 22370)
1100 New York Avenue NW, 5th Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
bjohnson@cohenmilstein.com
bbrown@cohenmilstein.com

dsilverman@cohenmilstein.com
adeich@cohenmilstein.com
zglubiak@cohenmilstein.com
zkrowitz@cohenmilstein.com


Dated: April 1, 2024                    HANDLEY FARAH & ANDERSON PLLC

                                        */s/ George F. Farah*
                                        George F. Farah (admitted *pro hac vice*)
                                        Rebecca P. Chang (admitted *pro hac vice*)
                                        Nicholas J. Jackson (admitted *pro hac vice*)
                                        33 Irving Place
                                        New York, NY 10003
                                        Telephone: (212) 477-8090
                                        gfarah@hfajustice.com
                                        rchang@hfajustice.com
                                        njackson@hfajustice.com

                                        Matthew K. Handley (D. Md. Bar # 18636)
                                        Rachel E. Nadas (admitted *pro hac vice*)
                                        HANDLEY FARAH & ANDERSON PLLC
                                        1201 Connecticut Avenue, NW, Suite 200K
                                        Washington, DC 20036
                                        Telephone: (202) 559-2433
                                        mhandley@hfajustice.com
                                        rnadas@hfajustice.com

                                        William H. Anderson (admitted *pro hac vice*)
                                        HANDLEY FARAH & ANDERSON PLLC
                                        5353 Manhattan Circle, Suite 204
                                        Boulder, CO 80303
                                        Telephone: (202) 559-2433
                                        wanderson@hfajustice.com

                                        Simon Wiener (admitted *pro hac vice*)
                                        HANDLEY FARAH & ANDERSON PLLC
                                        68 Harrison Avenue, Suite 604
                                        Boston, MA 02111
                                        Telephone: (202) 921-4567
                                        swiener@hfajustice.com

                                        *Co-Lead Counsel for Plaintiffs and the Proposed
                                        Class*

Brian D. Clark (admitted *pro hac vice*)
Stephen J. Teti (admitted *pro hac vice*)
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Tel: (612) 339-6900
Fax: (612) 339-0981
bdclark@locklaw.com
steti@locklaw.com

Candice J. Enders (admitted *pro hac vice*)
Julia R. McGrath (admitted *pro hac vice*)
BERGER MONTAGUE PC
1818 Market St., Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
Fax: (215)-875-4604
cenders@bm.net
jmcgrath@bm.net

*Additional Counsel for Plaintiffs and the Proposed
Class*

## **CERTIFICATE OF SERVICE**

The undersigned attorney of record hereby certifies that on April 1, 2024, a true and correct copy of the foregoing was filed electronically using the Court's CM/ECF system which will cause notice and a copy of this filing will be served upon all counsel of record.

Dated: April 1, 2024                          */s/ Shana E. Scarlett*
                                               SHANA E. SCARLETT