# UNITED STATES DISTRICT COURT
# THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| JUDY JIEN, *et al.*, | Civil Action No. SAG-19-2521 |
| Plaintiffs, | |
| v. | |
| PERDUE FARMS, INC., *et al.*, | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF THE SETTLEMENTS BETWEEN PLAINTIFFS AND DEFENDANTS ALLEN HARIM FOODS, LLC, AMICK FARMS, LLC, BUTTERBALL, LLC, FIELDALE FARMS CORPORATION, FOSTER POULTRY FARMS, JENNIE-O TURKEY STORE, INC., KOCH FOODS, INC., O.K. FOODS, INC, TYSON FOODS, INC., AND KEYSTONE FOODS, LLC, CERTIFICATION OF SETTLEMENT CLASS, AND APPOINTMENT OF SETTLEMENT CLASS COUNSEL**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ................................................................................................................1

II.    BACKGROUND ................................................................................................................2

    A.    Procedural Background of Litigation................................................................2

    B.    The Settlement Agreements .............................................................................3

        1.    The Settlement Classes ........................................................................3

        2.    Monetary Relief ...................................................................................4

        3.    Cooperation Requirements...................................................................4

        4.    Release of Claims Against Settling Defendants .................................5

III.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT AGREEMENTS................................................................................................................6

    A.    The Settlement Agreements are fair and reasonable.........................................7

    B.    The Settlement Agreements are adequate.......................................................11

IV.    THIS COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASSES ......14

    A.    The Settlement Classes satisfy Rule 23(a).....................................................15

        1.    The Settlement Classes are sufficiently numerous. ..........................15

        2.    Questions of law and fact are common to the Settlement Classes.............15

        3.    Class Representatives' claims are typical of the Settlement Classes members' claims. ................................................................................16

        4.    Interim Class Counsel's representation is adequate...........................16

    B.    The requirements of Rule 23(b)(3) are satisfied. ...........................................17

        1.    Common issues predominate. ..............................................................17

        2.    Proceeding as a class is a superior method for resolving this dispute fairly, efficiently, and effectively. .......................................................22

V.    CLASS NOTICE SHOULD BE JOINED WITH THE OTHER EXISTING SETTLEMENTS................................................................................................................24

VI.    CONCLUSION.................................................................................................24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*1988 Tr. for Allen Children v. Banner Life Ins. Co.*,
  28 F.4th 513 (4th Cir. 2022) ..................................................................................................7

*ADESSO Homeowners' Ass'n v. Holder Props., Inc.*,
  No. 3:16-cv-710-JFA, 2017 WL 11272589 (D.S.C. May 23, 2017) ................................9, 16

*Am. Sales Co. v. Pfizer, Inc.*,
  No. 2:14cv361, 2017 WL 3669604 (E.D. Va. July 28, 2017) ................................................19

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ...................................................................................................16, 18, 24

*In re Ampicillin Antitrust Litig.*,
  82 F.R.D. 652 (D.D.C. 1979) ................................................................................................13

*Avila et al. v. Perdue Farms, Inc. et al.*,
  No. 19-cv-03018-SAG ..........................................................................................................23

*Brown v. Transurban USA, Inc.*,
  318 F.R.D. 560 (E.D. Va. 2016) ...........................................................................................14

*In re Cardizem CD Antitrust Litig.*,
  200 F.R.D. 297 (E.D. Mich. 2001) .......................................................................................17

*In re Cardizem CD Antitrust Litig.*,
  218 F.R.D. 508 (E.D. Mich. 2003) .......................................................................................12

*City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions, Inc.*,
  322 F. Supp. 3d 676 (D. Md. 2018) ......................................................................................17

*In re Corrugated Container Antitrust Litig.*,
  643 F.2d 195 (5th Cir. 1981) ................................................................................................17

*Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*,
  375 F.2d 648 (4th Cir. 1967) ................................................................................................15

*D&M Farms v. Birdsong Corp.*,
  No. 2:19-cv-463, 2020 WL 7074140 (E.D. Va. Dec. 2, 2020) .........................................15, 16

*Donovan v. Est. of Fitzsimmons*,
  778 F.2d 298 (7th Cir. 1985) ................................................................................................12

*Earnest v. Perdue Farms et al.*,
  No. 1:19-cv-02680-RDB ...................................................................................23

*Erny v. Mukunda*,
  No. DKC 18-3698, 2020 WL 3639978 (D. Md. July 6, 2020) ................................10

*Fire & Police Retiree Health Care Fund v. Smith*,
  No. CCB-18-3670, 2020 WL 6826549 (D. Md. Nov. 20, 2020) ..............................6

*Gaston v. LexisNexis Risk Sols., Inc.*,
  No. 5:16-cv-00009-KDB-DCK, 2021 WL 244807 (W.D.N.C. Jan. 25, 2021) .................9, 11

*Gunnells v. Healthplan Servs., Inc.*,
  348 F.3d 417 (4th Cir. 2003) .......................................................................14, 16

*Herrera v. Charlotte Sch. of Law, LLC*,
  818 F. App'x 165 (4th Cir. 2020) ...................................................................7

*Hughes v. Baird & Warner, Inc.*,
  No. 76 C 3929, 1980 WL 1894 (N.D. Ill. Aug. 20, 1980) ......................................18

*In re India Globalization Cap., Inc., Derivative Litig.*,
  No. DKC 18-3698, 2020 WL 2097641 (D. Md. May 1, 2020) ...........................7, 11

*In re IPO Sec. Litig.*,
  226 F.R.D. 186 (S.D.N.Y. 2005) ...................................................................13

*In re Jiffy Lube Sec. Litig.*,
  927 F.2d 155 (4th Cir. 1991) .......................................................................6

*In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.*,
  952 F.3d 471 (4th Cir. 2020) ...................................................................6, 7

*In re MicroStrategy, Inc. Sec. Litig.*,
  148 F. Supp. 2d 654 (E.D. Va. 2001) ..............................................................10

*In re Mid-Atlantic Toyota Antitrust Litig.*,
  564 F. Supp. 1379 (D. Md. 1983) ...............................................................6, 11

*In re Mills Corp. Sec. Litig.*,
  265 F.R.D. 246 (E.D. Va. 2009) ...................................................................6

*In re PNC Fin. Servs. Grp., Inc. Sec. Litig.*,
  440 F. Supp. 2d 421 (W.D. Pa. 2006) ..........................................................9, 13

*Ret. Sys. v. Sonoco Prods. Co.*,
  270 F.R.D. 247 (D.S.C. 2010) .....................................................................23

*Robinson et al. v. Tyson Foods, Inc. et al.*,
No. 1:19-cv-2960-SAG ............................................................................23

*Seaman v. Duke University*,
No. 1:15-CV-462, 2018 WL 671239 (M.D.N.C. Feb. 1, 2018) ........................................21, 22

*In re Serzone Prods. Liab. Litig.*,
231 F.R.D. 221 (S.D.W Va. 2005)................................................................23

*Sharp Farms v. Speaks*,
917 F.3d 276 (4th Cir. 2019) ...................................................................11

*South Carolina Nat'l Bank v. Stone*,
139 F.R.D. 335 (D.S.C. 1991) ..................................................................13

*Sullivan v. DB Invs., Inc.*,
667 F.3d 273 (3d Cir. 2011) (*en banc*) ..........................................................7

*Temp. Servs., Inc. v. Am. Int'l Grp.*,
No. 3:08-cv-00271, 2012 WL 2370523 (D.S.C. June 22, 2012) ................................11, 12, 23

*In re Titanium Dioxide Antitrust Litig.*,
284 F.R.D. 328 (D. Md. 2012), *order amended*, 962 F. Supp. 2d 840 (D. Md.
2013) ......................................................................................15

*United States v. Manning Coal Corp.*,
977 F.2d 117 (4th Cir. 1992) ....................................................................6

*US Airline Pilots Ass'n v. Velez*,
No. 3:14-cv-00577-RJC-DCK, 2016 WL 1615408 (W.D.N.C. Apr. 22, 2016)....................12

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011).........................................................................15

*In re Zetia (Ezetimibe) Antitrust Litig.*,
No. 2:18-md-2836, 2020 WL 3446895 (E.D. Va. June 18, 2020)
...................................................................................18, 19, 20, 22

## Other Authorities

Fed. R. Civ. P. 23 ..................................................................... *passim*

Alba Conte & Herbert Newberg, 6 Newberg on Class Actions § 18:26 (4th ed.
2002) ..................................................................................18, 19

7AA Wright & Miller, Federal Practice & Procedure: Civil § 1778 (3d ed. 2005)......................18

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs Judy Jien, Kieo Jibidi, Elaisa Clement, Glenda Robinson, Emily Earnest, and Kevin West (collectively, "Plaintiffs") submit this memorandum in support of their motion for preliminary approval of the proposed settlements with the following Defendants: Allen Harim Foods, LLC, Amick Farms, LLC, Butterball, LLC, Fieldale Farms Corporation, Foster Poultry Farms, Jennie-O Turkey Store, Inc. (JOTS), Koch Foods, Inc., O.K. Foods, Inc., Tyson Foods, Inc. and Keystone Foods, LLC (collectively, the "Settling Defendants"). These settlement agreements (collectively the "Settlement Agreements") achieve excellent results for Plaintiffs in this action and are attached as Exhibits A through I to the accompanying Declaration of Brent W. Johnson ("Johnson Decl.").

## I.    INTRODUCTION

The settlements reached in this litigation present the possibility of a historic recovery for the proposed class. As the Court is aware, Plaintiffs previously entered into settlements with Pilgrim's ($29 million), Simmons ($12 million), George's ($5.8 million), Peco ($3 million), WMS (for cooperation), Cargill ($15 million), Sanderson ($38.3 million), Wayne ($31.5 million), Perdue ($60.65 million), Case ($8.5 million), and Mountaire ($13.5 million).[1] These settlements have been preliminary approved by the Court. *See* ECF No. 907 (Mountaire & Case); ECF No. 817 (Perdue); ECF No. 749 (Cargill, Sanderson, & Wayne); ECF No. 620 (Simmons); ECF No. 565 (Peco & WMS); ECF No. 529 (George's); ECF No. 490 (Pilgrim's).

Since then, Plaintiffs have reached additional settlements with Allen Harim ($5 million),

---

[1] "Pilgrim's" refers to Pilgrim's Pride Corporation. "Simmons" refers to Simmons Foods, Inc., and Simmons Prepared Foods, Inc. "George's" refers to George's, Inc., and George's Foods, LLC. "Peco" refers to Peco Foods, Inc. "WMS" refers to Webber, Meng, Sahl and Company, Inc. d/b/a WMS & Company, Inc. "Cargill" refers to Cargill Meat Solutions Corporation. "Sanderson" refers to Sanderson Farms, Inc. "Wayne" refers to Wayne Farms LLC. "Perdue" refers to Perdue Farms, Inc., and Perdue Foods LLC.

Amick Farms ($6.25 million), Butterball ($8.5 million), Fieldale ($5.5 million), Foster Farms ($13.3 million), JOTS ($3.5 million), Koch ($18.5 million), OK Foods ($4.75 million), and Tyson and Keystone ($115.5 million).[2] These nine settlements are the result of hard-fought, arm's-length negotiations with sophistical counsel. The result is a total settlement fund of $398.05 million, the second-largest recovery ever in a labor antitrust class action.

Plaintiffs respectfully request that the Court enter an order: (1) preliminarily approving the nine additional Settlement Agreements, (2) certifying the Settlement Classes defined below, (3) appointing Interim Co-Lead Counsel as Counsel for the Settlement Classes, (4) appointing Plaintiffs as Representatives of the Settlement Classes, and (5) staying all proceedings against Settling Defendants except those proceedings provided for or required by the Settlement Agreements.

## II.    BACKGROUND

### A.    Procedural Background of Litigation

This Court is familiar with the facts of this litigation. Plaintiffs allege that the nation's leading poultry processors ("Defendant Processors") and two consulting companies conspired to suppress the compensation paid to workers at poultry processing plants, hatcheries, feed mills, and complexes over a nearly twenty-year period. Plaintiffs allege that Defendants entered into two unlawful agreements in violation of the Sherman Act, 15 U.S.C. § 1: (1) a *per se* illegal agreement to fix compensation for poultry processing workers; and (2) an agreement to exchange competitively sensitive compensation information, in violation of the rule of reason.

---

[2] Plaintiffs have sought to certify a Rule 23(b)(2) class for declaratory and injunctive relief against the sole remaining non-settling Defendant, Agri Stats, Inc. *See* ECF No. 967.

In pursuit of those claims, Plaintiffs have vigorously litigated this case for more than five years, briefing multiple rounds of motions to dismiss and engaging in extensive discovery. To date, Defendants have produced 6.7 million documents in discovery and 178 gigabytes of structured data. Plaintiffs have taken 62 depositions and extensively consulted with expert economists. Johnson Decl. ¶¶ 18–20.

**B.    The Settlement Agreements**

Plaintiffs' years of litigating this case—including extensive motion practice, discovery, and expert analysis—informed their settlement discussions with the Settling Defendants. Accordingly, those discussions were undertaken with an especially deep understanding of the strengths and weaknesses of the case. Johnson Decl. ¶ 19. Generally, these settlements include four important features: (1) a settlement class co-extensive with the operative complaint; (2) substantial monetary value to the class; (3) extensive cooperation; and (4) a release that preserves the settlement class's ability to pursue claims against other Defendants (including Agri Stats, the lone non-settled Defendant remaining in this case) as well as claims unrelated to those alleged in this case.

**1.    The Settlement Classes**

Each of the Settlement Agreements was reached on behalf of a Settlement Class that is co-extensive with the litigation class alleged in the operative complaint. Specifically, each Settlement Class includes "[a]ll persons employed by Defendant Processors, their subsidiaries, and/or related entities at poultry processing plants, poultry hatcheries, poultry feed mills, and/or poultry complexes in the continental United States from January 1, 2000 until July 20, 2021." Johnson Decl., Ex. A-I §§ II(F)(3). The following persons and entities are excluded from each Settlement Class: "complex managers, plant managers, human resources managers, human resources staff, office clerical staff, guards, watchmen, and salespersons of the Defendants, alleged co-

conspirators, and any of their subsidiaries, predecessors, officers, or directors; and federal, state or local governmental entities." *Id.*

### 2. Monetary Relief

Each of the nine settlements includes substantial monetary relief for the settlement class. The below chart identifies the amounts provided by each settlement.

| Settlement Defendant | Settlement Date | Settlement Amount |
|---|---|---|
| Allen Harim | October 9, 2024 | $5 million |
| Amick Farms | July 3, 2024 | $6.25 million |
| Butterball | August 27, 2024 | $8.5 million |
| Fieldale | December 9, 2024 | $5.5 million |
| Foster Farms | October 3, 2024 | $13.3 million |
| JOTS | August 20, 2024 | $3.5 million |
| Koch | October 16, 2024 | $18.5 million |
| OK Foods | September 25, 2024. | $4.75 million |
| Tyson & Keystone | August 5, 2024 | $115.5 million |

Importantly, the Settlement Agreements specify that these settlement funds are non-reversionary. This means that, once the Settlement Agreements are finally approved by the Court and after administrative costs, litigation expenses, and attorneys' fees are deducted, the net funds will be distributed to the Settlement Classes, and *no amount* will revert back to the Settling Defendants.

### 3. Cooperation Requirements

In addition to providing a substantial monetary payment, each of the Settling Defendants has agreed to provide cooperation to assist Plaintiffs in the continued prosecution of their claims. The specific cooperation agreed to varies by Settling Defendant, but the cooperation generally

includes providing (to the extent not already produced): structured compensation data, documents from current and former employees, documents that have been produced to the Department of Justice, assistance with the authentication of documents, assistance with securing phone records from third-party carriers, multiple deposition witnesses, and multiple trial witnesses. *See* Johnson Decl., Exs. A-I § II(A)(2).

### 4.    Release of Claims Against Settling Defendants

In exchange for the monetary and cooperation consideration from the Settling Defendants, upon entry of a final judgment approving the Settlement Agreements, Plaintiffs and the Settlement Classes will release and discharge the Settling Defendants from any and all claims arising out of or relating to "an alleged or actual conspiracy or agreement between any of the Defendants relating, directly or indirectly, to (a) the Compensation paid or provided to the Releasing Parties," as that term is defined in the Settlement Agreements, "directly or indirectly, by Defendants, alleged co-conspirators, their respective subsidiaries, affiliates, and/or related entities (including but not limited to reducing competition for the hiring and retaining of, or to fixing, depressing, restraining, exchanging information about, or otherwise reducing that Compensation); or (b) exchanging information regarding the Compensation paid or provided to the Releasing Parties." Johnson Decl., Exs. A–I § II(B)(2).[3] The Releases included in the Settlement Agreements cover both claims that were asserted and claims that could have been asserted.

The Settlement Agreements, however, do nothing to abrogate the rights of any member of the Settlement Classes to recover from any other Defendant. The Settlement Agreements also expressly excludes from the Release claims that are both wholly unrelated to the allegations or

---

[3] The Release for Amick Farms uses nearly identical language but substitutes the phrase "named or unnamed co-conspirators alleged in the Action" for the phrase "alleged co-conspirators." Johnson Decl., Ex. B § II.(B)(2).

underlying conduct alleged in this case and based on breach of contract, negligence, personal injury, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, discrimination, COVID-19 safety protocols, failure to comply with wage and hours laws unrelated to anticompetitive conduct, or securities claims. Johnson Decl., Exs. A–I § II(B)(2).

## III. THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT AGREEMENTS

The Settlement Agreements more than satisfy the standard for preliminary approval. To be preliminarily approved, a proposed settlement must be "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In part because the Fourth Circuit has "not enumerated factors for assessing a settlement's reasonableness," *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 952 F.3d 471, 484 (4th Cir. 2020), this boils down to "examining [a] proposed . . . settlement for fairness and adequacy." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991). Crucially, the Court need not make a final determination of the merits of the proposed settlement. *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983). Rather, "at the preliminary approval stage, the court's role is to determine whether there exists probable cause to submit the proposal to members of the class and to hold a full-scale hearing on its fairness." *Fire & Police Retiree Health Care Fund v. Smith*, No. CCB-18-3670, 2020 WL 6826549, at *2 (D. Md. Nov. 20, 2020). At bottom, "in cases in which discovery has been substantial and several briefs have been filed and argued, courts should be inclined to favor the legitimacy of a settlement." *In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 254 (E.D. Va. 2009).

In conducting this analysis, courts bear in mind that "[i]t has long been clear that the law favors settlement." *United States v. Manning Coal Corp.*, 977 F.2d 117, 120 (4th Cir. 1992). This "strong presumption" is "especially strong in class actions and other complex cases . . . because

they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 311 (3d Cir. 2011) (*en banc*) (citation omitted) (affirming certification of two nationwide antitrust settlement classes).

**A.    The Settlement Agreements are fair and reasonable.**

A court's fairness analysis is intended primarily to ensure that a "settlement [is] reached as a result of good-faith bargaining at arm's length, without collusion." *In re India Globalization Cap., Inc., Derivative Litig.*, No. DKC 18-3698, 2020 WL 2097641, at *3 (D. Md. May 1, 2020) (citation omitted). The fairness analysis involves examination of "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of [antitrust] class action litigation." *Id.*[4]

The Settlement Agreements are more than fair. The first factor—*i.e.*, the posture of the case—weighs in favor of preliminary approval. *See, e.g.*, *1988 Tr. for Allen Children v. Banner Life Ins. Co.*, 28 F.4th 513, 525–26 (4th Cir. 2022) (upholding district court approval of settlement where the "settlement was reached after an extensive motions practice, extensive discovery and investigation . . . and multiple settlement discussions and negotiations."). The Settlement Agreements were reached after five years of adversarial and informative litigation. The

---

[4] "Federal Rule of Civil Procedure 23(e)(2) has been amended and now sets forth factors for the district court to assess in evaluating fairness, reasonableness, and adequacy." *Herrera v. Charlotte Sch. of Law, LLC*, 818 F. App'x 165, 176 n.4 (4th Cir. 2020). The Fourth Circuit, however, has noted that "our factors for assessing class-action settlements almost completely overlap with the new Rule 23(e)(2) factors." *In re Lumber Liquidators*, 952 F.3d at 484 n.8. As the overlap "render[s] the analysis the same," the Fourth Circuit "continues to apply its own standards." *Herrera*, 818 F. App'x at 176 n.4; *see also* Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment ("The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.").

prosecution and defense of the action included the briefing of multiple rounds of motions to dismiss, each of which yielded a lengthy and detailed ruling by the Court regarding the viability of the alleged claims. The Court's resolution of Defendants' motions to dismiss clarified the applicable law and legal hurdles and set the stage for the parties' positions in their settlement negotiations. *See* Johnson Decl. ¶ 10. And many of the Settlement Agreements were reached just before the then-operative deadline for Plaintiffs to file for class certification and after Plaintiffs had extensively consulted with expert economists regarding a report to support such a Rule 23(b)(3) motion, including extensive data-driven analysis of the predominance issues of impact and damages. *See id.* ¶ 20; ECF No. 958.

The second factor—*i.e.*, the extent of discovery—also weighs in favor of preliminary approval. The parties have engaged in extensive, multi-year discovery. The parties have served and responded to multiple document requests and interrogatories. Specifically, Plaintiffs have served 25 requests for production on each Settling Defendant, and the Settling Defendants have served 26 requests for production on Plaintiffs. The parties spent months negotiating the search terms used to cull the documents responsive to the requests for production. Plaintiffs have filed motions regarding depositions, document requests, and custodians with the Court. Johnson Decl. ¶ 20. Ultimately, Defendants and non-parties produced over 6.7 million documents to Plaintiffs; Plaintiffs conducted an exhaustive review of those documents and a subset were used as exhibits at depositions of Defendants' current and former employees. To date, Plaintiffs have deposed 62 of Defendants' current and former employees. *Id*.

Plaintiffs' capable counsel have also engaged in substantial *informal* discovery. Both prior to and after filing Plaintiffs' initial detailed complaint, Plaintiffs' counsel expended considerable time and resources to conduct an extraordinary investigation of Defendants' conduct in setting

compensation for their employees. *See* Johnson Decl. ¶ 18. Plaintiffs' counsel interviewed dozens of confidential witnesses formerly employed by Defendants and other poultry processors. *Id.* Plaintiffs' counsel also conducted extensive research of both the poultry labor market and the workers that comprise the Settlement Classes. *Id.* These unusually extensive investigative and analytical efforts support a finding of fairness. *See In re PNC Fin. Servs. Grp., Inc. Sec. Litig.*, 440 F. Supp. 2d 421, 430-31 (W.D. Pa. 2006); *see also ADESSO Homeowners' Ass'n v. Holder Props., Inc.*, No. 3:16-cv-710-JFA, 2017 WL 11272589, at *9 (D.S.C. May 23, 2017) ("[T]he parties have committed substantial resources to the investigation and legal analysis of the claims and defenses of the parties, to obtain sufficient information to weigh the benefits of the proposed settlement against the risks of continued litigation.").

The third factor—*i.e.*, the circumstances surrounding the negotiations—heavily favors preliminary approval. Where, as here, "a settlement is the result of genuine arm's-length negotiations, there is a presumption that it is fair." *Gaston v. LexisNexis Risk Sols., Inc.*, No. 5:16-cv-00009-KDB-DCK, 2021 WL 244807, at *6 (W.D.N.C. Jan. 25, 2021), *subsequent determination*, No. 5:16-cv-00009-KDB-DCK, 2021 WL 2077812 (W.D.N.C. May 24, 2021); *see also ADESSO*, 2017 WL 11272589, at *8 ("[A] proposed class action settlement is considered presumptively fair where there is no evidence of collusion and the parties, through capable counsel, have engaged in arms' length negotiations.").

Each of the nine settlement agreements addressed in this motion were reached through genuine, hard-fought arm's-length negotiations. The agreements with Foster Farms and Tyson were reached utilizing experienced mediators, the Honorable Daniel Weinstein (Ret.) for the Foster Farms settlement and the team of Professor Eric D. Green and his colleague Fouad Kurdi for the Tyson settlement. For Foster Farms, the parties participated in a mediation on August 19,

2024, but did not reach an agreement; the parties only agreed to a settlement after extensive negotiations after the mediation, with assistance from Judge Weinstein. For Tyson, negotiations between the parties spanned several years and involved several mediated negotiations, none of which resulted in an agreement. Following those mediations, the parties engaged in further adversarial negotiations with the assistance of the two mediators and finally reached a settlement agreement. These extensive and hard-fought negotiations illustrate there was no trace of collusion in the settlements the parties reached.

The same is true for the other seven settlements. Each of those settlements was reached only after the parties engaged in arms-length negotiations that were hard fought, adversarial, and often spanned at least several months, if not years. Johnson Decl. ¶¶ 17–18 (Allen Harim (2 ½ years), Butterball (3 ½ months); Koch (2 years); JOTS (5 months); Amick Farms (2 years); (Fieldale 2 years); OK Foods (3 months). The outcome of the negotiations was clearly not the product of collusion. *See, e.g.*, *Erny v. Mukunda*, No. DKC 18-3698, 2020 WL 3639978, at *2 (D. Md. July 6, 2020) ("[T]he aid of extensive formal mediation is a hallmark[] of a non-collusive, arm's-length settlement process." (internal quotation marks omitted)).

Finally, the fourth factor—*i.e.* the experience of counsel—strongly favors preliminary approval. The lawyers who conducted these negotiations, and who have endorsed the Settlement Agreements as fair and adequate, are highly experienced and nationally recognized antitrust and class action practitioners. *See* Unopposed Mot. for Consolidation of Related Actions & for Appointment of Interim Co-Lead Class Counsel, ECF No. 60; *see also* Johnson Decl. ¶ 2. This "further minimizes concerns that [Plaintiffs and Settling Defendants] colluded to the detriment of the class's interests." *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 665 (E.D. Va. 2001). "[T]he opinion of experienced and informed counsel in favor of settlement should be

afforded due consideration in determining whether a class settlement is fair and adequate." *Gaston*, 2021 WL 244807, at *6 (citing *Jiffy Lube*, 927 F.2d at 159).

In sum, the proposed Settlement Agreements were the product of genuine arm's-length negotiations by experienced counsel over several months, and they were reached only after an extensive investigation of the strengths and weaknesses of the claims. They are fair under Rule 23.

**B.     The Settlement Agreements are adequate.**

In determining whether a proposed settlement is adequate, courts consider the following factors: "(1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement." *In re India*, 2020 WL 2097641, at *4.

Detailed analyses of the fourth and fifth factors are unnecessary. This Court has held that it "places little weight upon [the fourth] factor." *In re Mid-Atlantic*, 564 F. Supp. at 1386. And with respect to the fifth factor, "[d]ue to the preliminary nature of this motion," opposition to the Settlement Agreements has not yet presented itself. *Temp. Servs., Inc. v. Am. Int'l Grp.*, No. 3:08-cv-00271, 2012 WL 2370523, at *13 (D.S.C. June 22, 2012).

"The most important factors in this analysis are the relative strength of the plaintiffs' claims on the merits and the existence of any difficulties of proof or strong defenses." *Sharp Farms v. Speaks*, 917 F.3d 276, 299 (4th Cir. 2019). An evaluation of the strength of Plaintiffs' claims in light of the risks and costs of continued litigation supports a finding that the Settlement Agreements are adequate.

Plaintiffs believe that they have presented a strong case. But this is a complex antitrust action, and Settling Defendants contest both the factual basis for Plaintiffs' claims and many of

the legal bases for Plaintiffs' claims. "[A]n integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *Donovan v. Est. of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985) (citing *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 124 (8th Cir. 1975)). It is inherently difficult to prove a complex antitrust class action, and there are "significant risks associated with continued litigation." *Temp. Servs.*, 2012 WL 2370523, at *12. Thus, despite Plaintiffs' counsel's confidence in the merits of their claims, given the Defendants' willingness and ability to contest Plaintiffs' claims, there exists a real risk to Plaintiffs. "Regardless of the strength of a claim on the merits, one can never ensure a finding of liability in complex litigation like this. Similarly, all parties to this litigation face significant difficulties and risks in establishing liability and defending against the claims." *US Airline Pilots Ass'n v. Velez*, No. 3:14-cv-00577-RJC-DCK, 2016 WL 1615408, at *4 (W.D.N.C. Apr. 22, 2016). "Experience proves that, no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict, particularly in complex antitrust litigation." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 523 (E.D. Mich. 2003); *see* Johnson Decl. ¶ 14.

Further, even though the case will continue against the non-settling Defendant, continuing to litigate this case against the Settling Defendants would have required significant additional resources and materially increased the complexity of the case. To obtain a jury verdict against the Settling Defendants, Plaintiffs would have needed to conduct additional adversarial discovery of the Settling Defendants, litigate additional discovery disputes with the Settling Defendants, brief class certification and summary judgment motions concerning the Settling Defendants, and prepare a liability case against the Settling Defendants for trial. Courts in the Fourth Circuit have found that such circumstances (involving partial settlements in complex actions) support approval:

"From the court's perspective, it is clear that pursuing the claims and potential claims against the settling defendants would add complexity, expense and delay which could postpone actual recovery for years." *In re PNC*, 440 F. Supp. 2d at 432. Another court found: "Although plaintiffs have expressed their intention to continue to pursue their claims against the non-settling defendants, many additional hours would have been required to prepare and respond to anticipated summary judgment motions, and to try the case against the settling defendants. Settlement under these circumstances clearly is appropriate." *South Carolina Nat'l Bank v. Stone*, 139 F.R.D. 335, 340 (D.S.C. 1991).

In light of the above risk assessment, the terms of the proposed Settlement Agreements provide the Settlement Classes with more than adequate relief. Under the Settlement Agreements, the Settling Defendants will pay $180.8 million into settlement funds that will, in short order, provide tangible financial benefits to the Settlement Classes. The Settlement Agreements represent a significant increase in the already-substantial compensation recovered by class members.

Plaintiffs likewise secured extensive cooperation obligations that Plaintiffs expect will materially strengthen their claims against Agri Stats. The Settlement Agreements generally allow Plaintiffs to secure potentially key evidence—in the form of structured data, documents, deposition testimony, and trial testimony—from the Settling Defendants and their employees. *See In re Ampicillin Antitrust Litig.*, 82 F.R.D. 652, 654 (D.D.C. 1979) (approving settlement in light of settling defendant's "assistance in the case against [a non-settling defendant]"); *see generally In re IPO Sec. Litig.*, 226 F.R.D. 186, 198–199 (S.D.N.Y. 2005) (recognizing the value of cooperating defendants in complex class action litigation).

In sum, the proposed Settlement Agreements are adequate in the light of the strength of the claims and the risks and expense of continued litigation. Accordingly, the proposed Settlement Agreements are fair and should be preliminarily approved.

## IV.    THIS COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASSES

Plaintiffs request that the Court certify the proposed Settlement Classes to receive the benefits of the Settlement Agreements. Specifically, Plaintiffs seek certification of the Allen Harim, Amick Farms, Butterball, Fieldale, Foster Farms, JOTS, Koch, O.K. Foods, and Tyson and Keystone Settlement Classes, each of which consists of "[a]ll persons employed by Defendant Processors, their subsidiaries, and/or related entities at poultry processing plants, poultry hatcheries, poultry feed mills, and/or poultry complexes in the continental United States from January 1, 2000 until July 20, 2021," subject to the exclusions described above. Johnson Decl., Ex. A-I § II(F)(3); *see supra* at 3–4.

"A settlement class, like a litigation class, must satisfy the requirements" of Federal Rule of Civil Procedure 23(a) and one of the categories of Rule 23(b). *Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 566 (E.D. Va. 2016). The Fourth Circuit practice is to "give Rule 23 a liberal rather than a restrictive construction, adopting a standard of flexibility in application [that] will in the particular case 'best serve the ends of justice for the affected parties and . . . promote judicial efficiency.'" *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 424 (4th Cir. 2003) (quoting *In re A.H. Robins Co.*, 880 F.2d 709, 740 (4th Cir. 1989)).

This proposed Settlement Classes meet the prerequisites of Rule 23(a) as well as the prerequisites of Rule 23(b)(3).

A.     **The Settlement Classes satisfy Rule 23(a).**

1.     **The Settlement Classes are sufficiently numerous.**

Rule 23(a)(1) requires that the class be so numerous as to make joinder of its members "impracticable." Generally, classes consisting of forty or more members are considered sufficiently large to satisfy the numerosity requirement. *In re Titanium Dioxide Antitrust Litig.*, 284 F.R.D. 328, 337 (D. Md. 2012), *order amended*, 962 F. Supp. 2d 840 (D. Md. 2013); *see also, e.g.*, *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (holding that a class of only 18 members satisfied the numerosity requirement). Here, Plaintiffs' counsel's extensive investigation to date indicates that hundreds of thousands of people fall within the Settlement Classes' definition. Rule 23(a)(1) is satisfied.

2.     **Questions of law and fact are common to the Settlement Classes.**

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Plaintiffs must show that resolution of an issue of fact or law "is central to the validity of each" class member's claim; "[e]ven a single [common] question will" satisfy the commonality requirement. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 359 (2011) (citation and internal quotation marks omitted). "In the antitrust context, courts have generally held that an alleged conspiracy or monopoly is a common issue that will satisfy Rule 23(a)(2) as the singular question of whether defendants conspired to harm plaintiffs will likely prevail." *D&M Farms v. Birdsong Corp.*, No. 2:19-cv-463, 2020 WL 7074140, at *3 (E.D. Va. Dec. 2, 2020).

Here, a central allegation in the Complaint is that Defendants, including the Settling Defendants, illegally conspired to suppress their workers' compensation. Proof of this alleged conspiracy will be common to all members of the Settlement Classes. In addition to that overarching question, this case is replete with other questions of law and fact common to the Settlement Classes, including, *inter alia*, the identity of the participants in the alleged conspiracy,

the duration of the alleged conspiracy, and the measure of damages caused by the alleged conspiracy. *See* Third Am. Compl. ("TAC") ¶ 516, ECF No. 590. Accordingly, Rule 23(a)(2) is satisfied.

### 3.    Class Representatives' claims are typical of the Settlement Classes members' claims.

Rule 23(a)(3) requires that the class representatives' claims be "typical" of class members' claims. "As a general matter, the 'typicality' prerequisite is satisfied in instances where plaintiffs' claims arise out of the common course of conduct of one or more defendant." *ADESSO*, 2017 WL 11272589, at *4. Typicality is "established by plaintiffs and all class members alleging the same antitrust violations by defendants." *D&M Farms*, 2020 WL 7074140, at *10 (quoting *Am. Sales Co. v. Pfizer, Inc.*, No. 2:14cv361, 2017 WL 3669604, at *11 (E.D. Va. July 28, 2017)). Here, both Plaintiffs' claims and the members of the Settlement Classes' claims arise out of a common course of misconduct by Defendants; the Plaintiffs, like the members of the putative class, all claim to have received suppressed compensation as a result of Defendants' conduct. As such, Rule 23(a)(3) is satisfied.

### 4.    Interim Class Counsel's representation is adequate.

Rule 23(a)(4) requires that, for a case to proceed as a class action, the court must find that "the representative parties will fairly and adequately protect the interests of the class." This inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157-58 n.13 (1982)). For a conflict to defeat class certification, the conflict "must be more than merely speculative or hypothetical," but rather "go to the heart of the litigation." *Gunnells*, 348 F.3d at 430-31 (citations omitted).

There is no conflict here, as the interests of Plaintiffs are aligned with those of the members of the Settlement Classes. Plaintiffs, like all members of the Settlement Classes, share an overriding interest in obtaining both the largest possible monetary recovery and most helpful cooperation from the Settling Defendants. *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981) ("[S]o long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes.") (citation omitted). Moreover, Plaintiffs are not afforded any special or unique compensation by the proposed Settlement Agreements. As such, Rule 23(a)(4) is satisfied.

**B.      The requirements of Rule 23(b)(3) are satisfied.**

Once Rule 23(a)'s four prerequisites are met, Plaintiffs must demonstrate that the proposed Settlement Classes satisfy Rule 23(b)(3). Specifically, Plaintiffs must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiffs have done so.

**1.      Common issues predominate.**

"Courts focus on the issue of liability to determine whether a proposed class meets the predominance prong: '[i]f the liability issue is common to the class, common questions are held to predominate over individual ones.'" *City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions, Inc.*, 322 F. Supp. 3d 676, 685 (D. Md. 2018) (citation omitted). "[A] claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position." *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 307 (E.D. Mich. 2001) (citation omitted). Therefore, when one or more of the central issues in the

action are common to the class and can be said to predominate, the class will be considered proper. *See* 7AA Wright & Miller, Federal Practice & Procedure: Civil § 1778 (3d ed. 2005).

The Supreme Court has stated that "[p]redominance is a test readily met in certain cases alleging . . . violations of the antitrust laws." *Amchem*, 521 U.S. at 625. As this is an antitrust conspiracy case, common issues regarding the existence, scope, and effect of the alleged conspiracy, *inter alia*, predominate over individual issues. *See, e.g.*, *Hughes v. Baird & Warner, Inc.*, No. 76 C 3929, 1980 WL 1894, at *3 (N.D. Ill. Aug. 20, 1980) ("Clearly, the existence of a conspiracy is the common issue in this case. That issue predominates over issues affecting only individual sellers.").

Plaintiffs "are not required to prove that each element of their claims is susceptible to classwide proof, but only that 'common questions predominate over any questions affecting only individual [class] members.'" *In re Zetia (Ezetimibe) Antitrust Litig.*, No. 2:18-md-2836, 2020 WL 3446895, at *28 (E.D. Va. June 18, 2020) (quoting *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013)), *report and recommendation adopted*, 481 F. Supp. 3d 571 (E.D. Va. 2020). To prevail in an antitrust case, Plaintiffs must prove three elements through evidence that is common to the class: (1) a violation of the antitrust laws; (2) the impact of the unlawful activity; and (3) measurable damages. *Id.* at *28.

> ### a.    Defendants' violations of the antitrust laws are susceptible to common proof.

Courts have found that the existence and scope of an antitrust conspiracy can be shown through common evidence. *See, e.g.*, *Id.* at *29 ("As many courts—including this one—have recognized, such evidence is common to the class, for if each member pursued its claims individually, it would rely on the same evidence to prove the alleged antitrust violations."); *see also* Alba Conte & Herbert Newberg, 6 Newberg on Class Actions § 18:26, at 18-83 to 18-86 (4th

ed. 2002) ("[I]n antitrust [cases], the issues of conspiracy . . . have been viewed as central issues which satisfy the predominance requirement.").

Establishing that Defendants violated the antitrust laws would involve evidence common to all members of the Settlement Classes. Critically, Plaintiffs' allegations of compensation-fixing focus on the actions of the Defendants, rather than the actions of individual class members, so that common issues regarding Defendants' liability predominate. Evidence relating to the creation, scope, terms, participants, and enforcement of the alleged conspiracy, as well as acts in furtherance of it, would all be common to the proposed Settlement Class. Such evidence comes from Defendants' own files, statements, records, and employees. In short, litigating proof of Defendants' antitrust violations is a common issue of sufficient importance that it alone causes common issues to predominate in this case. *See Am. Sales Co.*, 2017 WL 3669604, at *14 ("Based on this common evidence, the legal issues surrounding the antitrust violation will also be resolved uniformly across the class—whether [defendant] violated antitrust laws does not depend on any legal issue unique to a particular class member. Accordingly, Plaintiffs have proven by a preponderance of the evidence that common issues regarding the antitrust violation predominate over any individualized inquiry.").

### b.    The impact of the unlawful activity is susceptible to common proof.

"To show antitrust impact, there must be sufficient evidence to show that the class members suffered some damage as a result of [Defendants'] alleged antitrust violation." *In re Zetia*, 2020 WL 3446895, at *29 (quoting *Am. Sales Co.*, 2017 WL 3669604, at *14). "But at the class certification stage," Plaintiffs need not prove actual class-wide impact; rather, Plaintiffs "need only 'demonstrate that the element of antitrust impact is capable of proof at trial through evidence that

is common to the class rather than individual to its members.'" *Id.* (quoting *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311-12 (3d Cir. 2008)).

At a trial against the Settling Defendants, Plaintiffs would prove common impact on a class-wide basis using evidence common to the Settlement Classes. First, Plaintiffs would prove Defendant Processors and co-conspirators collectively possess market power in the market for employment at poultry processing plants, poultry complexes, hatcheries, and poultry feed mills in the continental United States. TAC ¶ 534, ECF No. 590. Plaintiffs would prove Defendant Processors and co-conspirators together control more than 90 percent of that relevant labor market, which affords them "the power to jointly set compensation for workers at poultry processing complexes, plants, hatcheries, and feed mills." *Id.* Second, Plaintiffs would prove individual poultry processing facilities did *not* set compensation for members of the Settlement Classes. Rather, decisions regarding "the compensation of workers at poultry processing complexes, plants, hatcheries, and feed mills owned by Defendant Processors, their subsidiaries, and related entities were made exclusively by and at each Defendant Processors' corporate headquarters during the Class Period." *Id.* ¶ 186. Third, Plaintiffs would prove the alleged conspiracy "commonly impacted all workers at poultry processing complexes, plants, hatcheries, and feed mills owned by Defendant Processors, their subsidiaries, and related entities in the continental United States because Defendant Processors valued internal equity, *i.e.* the idea that similarly situated employees should be compensated similarly." *Id.* ¶ 477. Plaintiffs would also prove Defendant Processors "determined the hourly wages, annual salaries, bonuses, and employment benefits for Class Members across the country in a formulaic way, establishing schedules that compensated employees according to their specific positions in poultry processing complexes, plants, hatcheries, and feed mills." *Id.* ¶ 188. As a consequence, when Defendant Processors aligned their

compensation schedules, the alignment systematically impacted the compensation of each member of the Settlement Classes, as each occupied a position within those schedules. Fourth, Plaintiffs would also prove that in the absence of the alleged conspiracy, Defendant Processors would have vigorously "competed with each other for labor during the Class Period by offering higher wages, higher salaries, and superior benefits to Class Members." *Id.* ¶ 208. This is particularly true given that each Defendant Processor owns and operates a poultry processing plant that is within 47 miles of a poultry processing plant owned by a co-conspirator, "meaning that many workers could easily switch to rival poultry processing plants offering better compensation in an unrestrained competitive market." *Id.* Instead, through their coordinated effort, Defendants restrained competition, resulting in injury to the entirety of the Settlement Classes.

Another antitrust case within the Fourth Circuit that alleged a conspiracy to depress compensation—*Seaman v. Duke University*, No. 1:15-CV-462, 2018 WL 671239 (M.D.N.C. Feb. 1, 2018)—is instructive. In that case, plaintiffs alleged that the University of North Carolina (UNC) and Duke University conspired not to hire each other's faculty, which had the effect of suppressing compensation. In certifying a class, the court found two of the plaintiffs' arguments persuasive for purposes of demonstrating common impact: (1) "that because of the no-hire agreement the UNC and Duke defendants did not have to provide preemptive compensation increases for faculty that otherwise would have been needed to ensure employee retention" and (2) "that the defendants' internal equity structures—policies and practices that are alleged to have ensured relatively constant compensation relationships between employees—spread the individual harm of decreased lateral offers and corresponding lack of retention offers to all faculty, thus suppressing compensation faculty-wide." *Id.* at *4. The court concluded that those "theories of anti-trust impact to faculty present common questions for which common proof will be proffered." *Id.* Here,

Plaintiffs have similarly and sufficiently demonstrated that class-wide impact is capable of common proof at trial.

### c. Damages for the Settlement Classes are susceptible to common proof and measurable.

No precise damages formula is required at the class certification stage. Rather, the Court's inquiry is merely limited to assessing whether methods are "available to prove damages on a class-wide basis." *In re Zetia*, 2020 WL 3446895, at *32 (citation omitted). "Assuming an appropriate model is put forth, 'the need for some individualized determinations' is not fatal to class certification." *Id.* (quoting *In re Nexium Antitrust Litig.*, 777 F.3d 9, 21 (1st Cir. 2015)). Multiple methodologies are available to prove damages in this case on a class-wide basis. For example, class-wide damages can be calculated using an industry benchmark model, which is an approach commonly employed in antitrust cases of this type. The compensation paid to workers in another industry (or industries) can be used as a yardstick to estimate the compensation that members of the Settlement Classes would have received in the absence of the alleged conspiracy. This can be done using standard regression techniques that control for non-conspiratorial differences between the two industries that would be likely to influence compensation. *See Seaman*, 2018 WL 671239, at *6–7 (holding that a regression analysis is a viable method for calculating damages using common evidence in a case alleging the depression of compensation).

### 2. Proceeding as a class is a superior method for resolving this dispute fairly, efficiently, and effectively.

In addition to the predominance of common questions, Rule 23(b)(3) requires a finding that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Factors relevant to the superiority of a class action under Rule 23(b)(3) include: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or

against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

In this case, a class action is certainly superior. The interests of members of the Settlement Classes in individually controlling the prosecution of separate claims are outweighed by the efficiency of the class mechanism. There are no other pending actions raising the same allegations.[5] Thus, the first three factors listed above are easily addressed: no class member has demonstrated any interest in litigating individually; the claims in this case are not being litigated anywhere else; and it would be enormously inefficient—for both the Court and the parties—to engage in multiple trials of the same claims asserted in multiple individual actions. "Requiring individual Class Members to file their own suits would cause unnecessary, duplicative litigation and expense, with parties, witnesses and courts required to litigate time and again the same issues, possibly in different forums." *In re Serzone Prods. Liab. Litig.*, 231 F.R.D. 221, 240 (S.D.W Va. 2005) (citation omitted).

Moreover, "the expense of individual actions, weighed against the potential individual recovery of the vast majority of class members here, would be prohibitive." *Temp. Servs.*, 2012 WL 2370523, at *5; *see also City of Ann Arbor Emps.' Ret. Sys. v. Sonoco Prods. Co*., 270 F.R.D. 247, 257 (D.S.C. 2010) (holding that the superiority requirement has been satisfied because "the costs associated with bringing individual actions would be prohibitive when weighed against the potential individual recoveries"). Because it would be economically unreasonable for members of

---

[5] The Court has consolidated the cases of *Robinson et al. v. Tyson Foods, Inc. et al.*, No. 1:19-cv-2960-SAG; *Earnest v. Perdue Farms et al.*, No. 1:19-cv-02680-RDB, and *Avila et al. v. Perdue Farms, Inc. et al.*, No. 19-cv-03018-SAG with this case for pretrial purposes. ECF No. 173. Plaintiffs' current motion for preliminary approval thus includes the consolidated actions.

the Settlement Class to adjudicate their separate claims individually, the superiority of a class action is evident. Proceeding as a class action, rather than a host of separate individual trials, would provide significant economies in time, effort, and expense, and permit members of the Settlement Classes to seek damages that would otherwise be too costly to pursue.

Finally, the Supreme Court has found that when certifying a settlement class "a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620. Here, the Settlement Agreements would obviate the need for a trial against the Settling Defendants, and thus questions concerning that trial's manageability are irrelevant.

Accordingly, the Court should certify the Settlement Classes.

## V.    CLASS NOTICE SHOULD BE JOINED WITH THE OTHER EXISTING SETTLEMENTS

Plaintiffs have spent months working with a notice and claims administrator to develop a plan of notice and allocation. These settlement notices will include notice of all the settlements that have been reached in this case to date. *See* ECF No. 932 (Plaintiffs' motion to vacate notice schedule to allow for consolidated notice); ECF No. 935 (amended notice granting that motion). A motion to direct notice is being filed shortly after this motion for preliminary approval, and Plaintiffs request that they be considered together. *See* Pls.' Mot. to Direct Notice to Settlement Classes for Allen Harim, Amick Farms, Butterball, Fieldale, Foster Farms, JOTS, Koch, O.K. Foods, Tyson and Keystone Settlements, filed concurrently herewith.

## VI.    CONCLUSION

For the above reasons, Plaintiffs respectfully request that the Court enter an order: (1) preliminarily approving Plaintiffs' settlements with the Settling Defendants, (2) certifying the Settlement Classes, (3) appointing Interim Co-Lead Counsel as Counsel for the Settlement Classes,

(4) appointing Plaintiffs as Representatives of the Settlement Classes, and (5) ordering a stay of all proceedings against the Settling Defendants except those proceedings provided for or required by the Settlement Agreements.

Dated:  December 23, 2024

COHEN MILSTEIN SELLERS & TOLL PLLC

/s/ Brent W. Johnson

Brent W. Johnson (admitted *pro hac vice*)
Benjamin D. Brown (admitted *pro hac vice*)
Daniel H. Silverman (admitted *pro hac vice*)
Alison S. Deich (admitted *pro hac vice*)
Zachary R. Glubiak (D. Md. Bar # 20962)
Zachary Krowitz (D. Md. Bar # 22370)
Sabrina Merold (admitted *pro hac vice*)
1100 New York Avenue NW, Suite 800
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile:  (202) 408-4699
bjohnson@cohenmilstein.com
bbrown@cohenmilstein.com
dsilverman@cohenmilstein.com
adeich@cohenmilstein.com
zglubiak@cohenmilstein.com
zkrowitz@cohenmilstein.com

Dated: December 23, 2024

HAGENS BERMAN SOBOL SHAPIRO LLP

/s/ Shana E. Scarlett

    SHANA E. SCARLETT (admitted *pro hac vice*)
Rio S. Pierce (admitted *pro hac vice*)
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
shanas@hbsslaw.com
riop@hbsslaw.com

Steven W. Berman (admitted *pro hac vice*)
Breanna Van Engelen (admitted *pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com
breannav@hbsslaw.com

Elaine T. Byszewski (admitted *pro hac vice*)
Abigail D. Pershing (admitted *pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 920
Pasadena, CA 91101

Telephone: (213) 330-7150
elaine@hbsslaw.com
abigailp@hbsslaw.com


Dated: December 23, 2024                    HANDLEY FARAH & ANDERSON PLLC

                                            */s/ George F. Farah*
                                            George F. Farah (admitted *pro hac vice*)
                                            Rebecca P. Chang (admitted *pro hac vice*)
                                            Nicholas J. Jackson (admitted *pro hac vice*)
                                            33 Irving Place
                                            New York, NY 10003
                                            Telephone: (212) 477-8090
                                            gfarah@hfajustice.com
                                            rchang@hfajustice.com
                                            njackson@hfajustice.com

                                            Matthew K. Handley (D. Md. Bar # 18636)
                                            Rachel E. Nadas (admitted *pro hac vice*)
                                            HANDLEY FARAH & ANDERSON PLLC
                                            1201 Connecticut Avenue, NW, Suite 200K
                                            Washington, DC 20036
                                            Telephone: (202) 559-2433
                                            mhandley@hfajustice.com
                                            rnadas@hfajustice.com

                                            William H. Anderson (admitted *pro hac vice*)
                                            HANDLEY FARAH & ANDERSON PLLC
                                            5353 Manhattan Circle, Suite 204
                                            Boulder, CO 80303
                                            Telephone: (202) 559-2433
                                            wanderson@hfajustice.com

                                            Simon Wiener (admitted *pro hac vice*)
                                            HANDLEY FARAH & ANDERSON PLLC
                                            68 Harrison Avenue, Suite 604
                                            Boston, MA 02111
                                            Telephone: (202) 921-4567
                                            swiener@hfajustice.com

                                            *Co-Lead Counsel for Plaintiffs and the Proposed
                                            Class*

Brian D. Clark (admitted *pro hac vice*)
Stephen J. Teti (admitted *pro hac vice*)
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile:  (612) 339-0981
bdclark@locklaw.com
steti@locklaw.com

Candice J. Enders (admitted *pro hac vice*)
Julia R. McGrath (admitted *pro hac vice*)
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile:  (215) 875-4604
cenders@bm.net
jmcgrath@bm.net

*Additional Counsel for Plaintiffs and
the Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney of record hereby certifies that on December 23, 2024, a true and correct copy of the foregoing was filed electronically using the Court's CM/ECF system which will cause notice and a copy of this filing will be served upon all counsel of record.

Dated: December 23, 2024          */s/ Brent W. Johnson*
                                     BRENT W. JOHNSON