IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JUDY JIEN, *et al.,*

               Plaintiffs,

v.

PERDUE FARMS, INC., *et al.,*

               Defendants.

No. 1:19-cv-02521-SAG

**DEFENDANT AGRI STATS, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO ENFORCE SETTLEMENT AGAINST ALABAMA PLAINTIFFS**

Defendant Agri Stats, Inc. ("Agri Stats") submits this memorandum in support of its motion to enforce the settlement agreement (the "Settlement Agreement") and the final judgment (the "Judgment") the Court entered in this case against three groups of class members that have sued Agri Stats in separate cases in Alabama state court (the "Alabama Plaintiffs").[1]

On March 10, 2026, this Court entered the Judgment approving and incorporating the Settlement Agreement between Agri Stats and a class of poultry processing workers. The Settlement Agreement and Judgment release Agri Stats from, among other things, all claims related to compensation paid or provided to class members and all claims concerning the exchange of information related to compensation. The Alabama Plaintiffs are members of class and thus have released their claims against Agri Stats. The Settlement Agreement contains a covenant not

---

[1] Each of the Alabama Plaintiffs is listed on Exhibit 1 to the Declaration of William L. Monts, III ("Monts Decl.") in Support of Agri Stats' Motion to Enforce Settlement Agreement Against Alabama Plaintiffs. The Settlement Agreement and Judgment are as Exhibits 2 and 3, respectively, to the Monts Declaration.

to sue, and the Judgment expressly enjoins class members, including the Alabama Plaintiffs, from asserting any of the released claims against Agri Stats.

Notwithstanding the Settlement Agreement and this Court's Judgment, the Alabama Plaintiffs, 241 individual poultry processing plant workers all represented by the same counsel, have filed three separate lawsuits in Alabama state court purporting to assert state-law claims all arising from the same facts alleged in this case and relating to their compensation paid by their employers. The Settlement Agreement and Judgment release those claims and bar the Alabama Plaintiffs from continuing their suit. Accordingly, Agri Stats requests that the Court enter an order enforcing the Judgment against the Alabama Plaintiffs and enjoining them from continuing to prosecute the Alabama Actions against Agri Stats.

## FACTUAL BACKGROUND

On August 30, 2019, Plaintiff Judy Jien and other named plaintiffs filed a putative class action in this Court against Agri Stats, a benchmarking firm, and several poultry processors, alleging violations of section 1 of the Sherman Act, 15 U.S.C. § 1. Their basic claims were that the processors: (1) conspired to fix wages of poultry processing plant workers; and (2) exchanged compensation information through Agri Stats, which had the effect of suppressing worker wages. After six years of litigation, Agri Stats and the putative class settled the case. That settlement requires Agri Stats to make significant changes to its business operations and the scope of information contained in the benchmarking reports that it provides to its chicken processor subscribers. *See* Monts Decl. Ex. 1, § II.A.

The Settlement Agreement resulted from months of arm's-length negotiations between Agri Stats and counsel for the putative class. As part of the resolution, the parties stipulated to the certification of a settlement class under Rule 23(b)(2) and to injunctive relief compelling Agri Stats to make the changes to its benchmarking reports set forth in the Settlement Agreement. *Id*. In

addition, because Agri Stats cannot pay a money judgment and would not have agreed to a settlement absent release of the damages claims of putative class members, the Settlement Agreement also contained a broad release of all claims related to compensation and arising from facts alleged in the case. *Id*. § II.B.  The parties also entered a covenant not to sue, which bars class members from suing Agri Stats on any claim "arising out of or related to" the released claims. *Id*. § II.C.  This Court preliminarily approved the Settlement Agreement and provisionally certified the settlement class on October 14, 2025.  ECF No. 1025.  The named plaintiffs and class counsel gave notice to the class in accordance with the Court's preliminary approval order, including notice sent by electronic mail to a substantial segment of the Alabama Plaintiffs.  No member of the class objected to the settlement.

On March 10, 2026, this Court held a fairness hearing on Agri Stats' settlement.  None of the Alabama Plaintiffs (or any other class member) appeared at that hearing to object.  Monts Decl. Ex. 2, § A.3.  The Court heard argument from counsel for both the class and Agri Stats, and based on the record before it, certified a proposed settlement class consisting of "All persons employed by Defendant Processors, their subsidiaries, and/or related entities at poultry processing plants, poultry hatcheries, poultry feed mills, and/or poultry complexes in the continental United States from January 1, 2000 until July 20, 2021."[2]  *Id*. § C, ¶ 1.  The Court also approved the settlement agreement as fair, reasonable, and adequate, *see* Fed. R. Civ. P. 23(e), and entered the Judgment that same day.  *Id*. § B.  The Court specifically found no just reason for delay and directed that the Judgment be treated as a final judgment as to Agri Stats under Rule 54(b) of the Federal Rules of

---

[2] The Settlement Class excludes: complex managers, plant managers, human resources managers, human resources staff, office clerical staff, guards, watchmen, and salesmen; the Defendants; Defendants' alleged co-conspirators, and any of their subsidiaries, predecessors, officers, or directors; and federal, state or local governmental entities.  Monts Decl. Ex. 3, § C, ¶ 2.  The Alabama Plaintiffs have not alleged that they fall within any exclusion from the Settlement Class.

Civil Procedure.  *Id*., at 5–6, ¶ 7.  No member of the class appealed the Court's decision.  The Judgment is now final and by its own terms binds all members of the class, including the Alabama Plaintiffs.  *Id*., at 5–6, ¶ 7.

In December 2025 and January 2026, 241 class members, represented by the same counsel, filed three separate complaints in state court in Alabama styled as follows: *Adams, et al. v. Agri Stats, Inc., et al.*, CA No. 06-cv-2025-900048 (Barbour County, Alabama) ("*Adams*") (attached as Monts Decl. Ex. 3); *Anglin, et al. v. Agri Stats, Inc., et al.*, CA No. 06-cv-2025-900049 (Barbour County, Alabama) ("*Anglin*") (attached as Monts Decl. Ex. 4); *Ayers, et al. v. Agri Stats, Inc., et al.*, CA No. 09-cv-2026-900001 (Bullock County, Alabama) ("*Ayers*") (attached as Monts Decl. Ex. 5) (*Adams*, *Anglin*, and *Ayers*, collectively, the "Alabama Actions").  Each complaint is substantively identical, the only material difference being the individuals named as plaintiffs.[3]  The defendants in the Alabama Actions, including Agri Stats, removed those cases to the United States District Court for the Middle District of Alabama.  The Alabama Plaintiffs moved to remand, making the exact same arguments in all three cases.  *Ayers* has been remanded to state court.  *See* Monts Decl. Ex. 6.  The motions to remand *Adams* and *Anglin* remain pending, and those cases are technically still in federal court, though the parties expect that the judges handling those remand motions will ultimately follow the lead of the federal judge handling the *Ayers* case.  Now that *Ayers* has returned to state court, the Alabama Plaintiffs named in that case have served

---

[3]  It is not clear why the Alabama Plaintiffs have brough the exact same claims in three separate lawsuits rather than in a single consolidated action.  *Adams* has 91 named plaintiffs.  *Anglin* has 61, and *Ayers* 90.  Agri Stats can only surmise that the Alabama Plaintiffs separated their claims into different cases to avoid removal under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(11) (defining a "mass action" as a "civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact" and deeming a "mass action" a "class action" for purposes of removal); *see also id*. § 1453(b) (making a "class action" removable to federal court "without regard to whether any defendant is a citizen of the State in which the action is brought").

burdensome discovery on Agri Stats, *see* Monts Decl. Ex. 7, and Agri Stats expects similar discovery to be served in *Adams* and *Anglin* if (and, more likely, when) those cases are remanded to state court.  In short, the Alabama Plaintiffs have made clear that they intend to press their claims against Agri Stats in the Alabama Actions.  Because the Settlement Agreement and Judgment in this case bars those actions and enjoins the Alabama Plaintiffs from suing Agri Stats, Agri Stats now asks this Court to enforce its judgment and enjoin the Alabama Plaintiffs from continuing to press their claims against Agri Stats.[4]

## ARGUMENT

## LEGAL STANDARD

Approved class action settlement agreements are enforceable both as contracts and judgments.  *See The Kay Company, LLC v. Equitable Prod. Co.*, 27 F.4th 252, 258 (4th Cir. 2022) (treating class action settlement as a contract); *In re MI Windows and Doors, Inc. Prods. Liab. Litig.*, 860 F.3d 218, 224–25 (4th Cir. 2017) (*MI Windows*) (analyzing approved class action settlement as a final judgment under doctrine of res judicata).

"[P]ublic policy considerations favor the enforcement of settlement agreements." *Alston v. TowneBank*, 2022 WL 971008, at \*6 (D. Md. Mar. 31, 2022) (citation omitted); *see Bernstein v. Kapneck*, 290 Md. 452, 459 (1981) ("[P]articularly in this era of burgeoning litigation, compromise and settlement of disputes outside of court is to be encouraged.").  "A district court has 'inherent authority, deriving from [its] equity power, to enforce settlement agreements.'"  *Churchill v. Prince George's Cnty. Pub. Schs.*, 2019 WL 528180, at \*3 (D. Md. Feb. 11, 2019) (citation

---

[4]  Because both *Adams* and *Anglin* remain in federal court, to the extent the Court believes that it cannot enjoin the Alabama Plaintiffs bringing those cases from continuing to pursue their actions while they remain in federal court, Agri Stats respectfully requests that the Court hold this motion in abeyance as to the *Adams* and *Anglin* plaintiffs and enforce the Judgment only against the *Ayers* plaintiffs.  Agri Stats will notify the Court when *Adams* and *Anglin* are remanded.

omitted).    The enforcement of a settlement agreement is governed by "standard contract principles." *See Topiwala v. Wessell*, 509 F. App'x 184, 186 (4th Cir. 2013) (per curiam) (citation omitted).

If "a settlement agreement exists and its terms and conditions can be determined, as long as the excuse for nonperformance is comparatively unsubstantial, the court may enforce the agreement summarily." *Churchill*, 2019 WL 528180, at *3 (quoting *Swift v. Frontier Airlines, Inc.*, 636 F. App'x 153, 156 (4th Cir. 2016) (per curiam)).  Approved class action settlements are contracts enforceable against all members of the settlement class. *The Kay Co.*, 27 F.4th at 258.

Approved class action settlements are also enforceable as final judgments. *MI Windows*, 860 F.3d at 223–24.  An approved settlement bars members of the class from asserting in a subsequent case all claims arising from the same nucleus of operative facts that were asserted or could have been asserted in the underlying class action.  *Id*. at 224–25.

I.    **THE SETTLEMENT AGREEMENT AND JUDGMENT IN THIS CASE BAR THE PUTATIVE CLAIMS THAT THE ALABAMA PLAINTIFFS PURPORT TO ASSERT IN THE ALABAMA ACTIONS.**

A.    **The Release in the Settlement Agreement Binds the Alabama Plaintiffs and Bars Their Claims.**

The Alabama Plaintiffs, as workers at various poultry processing facilities in Alabama, are indisputably members of the settlement class.  Monts Decl. Ex. 1, § II.C.2.  Their representatives entered into a contract that contains both significant conduct relief, which benefits all class members, including the Alabama Plaintiffs, in exchange for a release of all claims and a covenant not to sue.  The contract binds the Alabama Plaintiffs. *The Kay Co.*, 27 F.4th t 258.

The Settlement Agreement contains a comprehensive release of claims.  Under Section II.B.2, upon the date of the Judgment, each class member "completely release[d], acquit[ted], and forever discharge[d] . . . Agri Stats . . . from any and all claims, demands, actions, suits, causes of

action . . . that have been asserted, *or could have been asserted*, in the Complaint or under any federal law *or any state law* in any way arising but of or relating in any way to the facts alleged in the Action or underlying conduct challenged in the Action."  Monts Decl. Ex. 1, § II.B.2, at 11–12 (emphasis added).  Specifically, the Settlement Agreement releases all claims relating to "an alleged or actual conspiracy or agreement between any of the Defendants relating, directly or indirectly, to (a) the Compensation paid or provided to the Releasing Parties, directly or indirectly, by Defendants, alleged co-conspirators, their respective subsidiaries, affiliates, and/or related entities (including but not limited to reducing competition for the hiring and retaining of, or to fixing, depressing, restraining, exchanging information about, or otherwise reducing that Compensation); or (b) exchanging information regarding the Compensation paid or provided to the Releasing Parties."  *Id*.

Although the Alabama Plaintiffs purport to frame their claims as violations of state law, the initial paragraph of each complaint explains their claims succinctly:

> This action is brought to remedy a secret, multi-decade conspiracy orchestrated by America's largest poultry processing companies. While holding themselves out to the public as fierce competitors, these corporate giants privately colluded to systematically fix, depress, and stabilize the compensation paid to hundreds of thousands of their most vulnerable employees.

Monts Decl. Ex. 3, ¶ 1; *id*. Ex. 4, ¶ 1; *id*. Ex. 5, ¶ 1.  In other words, the Alabama Plaintiffs' own allegations bring them with the scope of the Settlement Agreement's release.  The substantive allegations crib liberally from the facts in the operative complaint in this case.  Nor is there any doubt that the Alabama Plaintiffs' claims encompass Agri Stats.  Paragraph 2 of all three complaints alleges that the putative conspiracy arose from, among other things, "illicit exchanges of competitively sensitive data facilitated by consulting firms" and "resulted in artificially depressed wages and benefits for the plaintiffs and other workers."  *Id*. Ex. 3, ¶ 2; *id*. Ex. 4, ¶ 2; *id*. Ex. 5, ¶ 2.

The release in the Settlement Agreement, accordingly, bars the Alabama Actions.

**B.      The Judgment Binds the Alabama Plaintiffs and Bars Their Claims.**

Likewise, the Judgment bars the Alabama Plaintiffs' claims.  This Court approved the Settlement Agreement as fair, adequate, and reasonable.  It incorporated that Settlement Agreement into the final Judgment.  Because they are members of a certified class, the Court's Judgment binds the Alabama Plaintiffs.  *MI Windows*, 860 F.3d at 224–25.

The Judgment dismissed all claims asserted in the *Jien* action against Agri Stats.  *Id*. Ex. 2, ¶ 2.  It also declared the "Releasing Parties as defined in the Settlement Agreement" to be bound by the releases, *id*. ¶ 3, and deemed them to have released Agri Stats "from all of the Released Claims as defined in the Settlement Agreement. *Id*.  It follows that because the Alabama Plaintiffs are members of the Settlement Class, they are bound by the Judgment and its terms.

Under the doctrine of *res judicata*, a judgment in one action bars a class member from relitigating claims in another court under three conditions: (1) the judgment is a final judgment on the merits; (2) the judgment involves the same parties or their privies; and (3) the second suit involves the same cause of action as the first.  *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979).  The Judgment here satisfies all three.

*First*, class action judgments, including those approving settlement agreements, are judgments on the merits.  *MI Window*, 860 F.3d at 224.  The Judgment here meets that requirement and is now final.

*Second*, the Alabama Plaintiffs are members of the settlement class.  While they were not named parties in *Jien*, they were represented by the named plaintiffs in *Jien*.  This Court expressly found that the settlement class it certified met "each of the prerequisites for a class action under Rules 23(a) and (b)(2)," including adequacy of representation.  *See* Monts Decl. Ex. 2, § C., ¶¶ 3– 4; Fed. R. Civ. P. 23(a)(4) (requiring that "the representative parties will fairly and adequately

protect the interests of the class").[5]   The Court also found that notice given to the class was "due, adequate, and sufficient" and satisfied the requirements of the Due Process Clause of the Fifth Amendment, *id*. § A., ¶¶ 1–2, and "[d]ue and adequate notice of the proceedings" had been given to all class members and that class members had been offered a "full opportunity . . . to participate in the Final Approval Hearing." *Id*. § A., ¶ 2.  No objections were raised at the Final Approval Hearing.

*Finally*, as noted above, *see supra* at 6-8, the Judgment addresses the same cause of action as that asserted in the Alabama actions.  The Judgment bars not only claims that the named plaintiffs asserted in this case but also those that they could have asserted, including the state-law claims that the Alabama Plaintiffs now purport to allege in their complaints in the Alabama actions. *Id.* at 5, ¶¶ 3, 6.

Accordingly, the doctrine of *res judicata* bars the Alabama Actions.

## II.    THIS COURT HAS POWER TO ENJOIN ALABAMA PLAINTIFFS FROM CONTINUING TO PROSECUTE THEIR CLAIMS IN THE ALABAMA COURTS.

This Court has jurisdiction to enforce the Settlement Agreement under the Agreement's express terms, Monts Decl. Ex. 1, § 3, ¶ E., and the Judgment. *Id*., Ex. 2, at 6, ¶ 8.  The Settlement Agreement expressly contemplates enforcement actions.  Specifically, Section II(C)(11)(b) provides that the Settlement Agreement may "be filed and used in other proceedings, where relevant, to demonstrate the fact of its existence and of this settlement, including but not limited to Agri Stats filing the Settlement Agreement and/or the Order and Final Judgment in any other action that may be brought against it in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, waiver, judgment bar

---

[5]  Because the Court certified the class under Federal Rule 23(b)(2), the Alabama Plaintiffs could not opt-out of the class.  Fed. R. Civ. P. 23(c).

or reduction, or any other theory of claim preclusion or issue preclusion or similar other defense or counterclaim that the Settlement Agreement might support." *Id.*, Ex. 1, § II.C.11.b.  The Judgment is similar.  It permits a "non-breaching party" to "petition the Court for enforcement of this Final Judgment Order," and notes that the Court retains jurisdiction to do so. *Id.*, Ex. 2, at ¶ 8.

In addition to the release, the Settlement Agreement contains an express covenant not to sue.  Under Section II(B)(3) all class members "covenant not to sue, directly or indirectly, or otherwise seek to establish liability against [Agri Stats] for any transaction, event, circumstance, action, failure to act, or occurrence of any sort or type arising out of or related to" claims that the Settlement Agreement released.  Further, the Settlement Agreement makes any breach of the agreement, including the covenant not to sue, "irreparable damage" for which Agri Stats "will not have an adequate remedy at law." *Id.*, Ex. 1, § II.B.3.  The Judgment itself implements the covenant not to sue by "enjoin[ing] and [barr[ing]" members of the settlement class from any claims against Agri Stats as set forth in the Settlement Agreement. *Id.*, Ex. 2, at 5, ¶ 6

The Alabama Actions merely repackage the claims asserted in this case under the guise of Alabama state law.  The Settlement Agreement released those claims, and this Court enjoined their relitigation.  Accordingly, this Court may enforce its judgment against the Alabama Plaintiffs and enjoin them from continuing to prosecute their claims in Alabama state court. *See MI Windows*, 860 F.3d at 224–25 (approving district court injunction against settlement class members who attempted to reassert claims under California state law based on the identical factual predicate of claims resolved by a court-approved class action settlement).

## CONCLUSION

For the foregoing reasons, Agri Stats respectfully requests that this Court enforce the approved Settlement Agreement and Final Judgment by: (1) declaring that the plaintiffs in the Alabama Actions are members of the Settlement Class; (2) declaring that the claims asserted in

the Alabama Actions are Released Claims; (3) enjoining the plaintiffs in the Alabama Actions from further prosecuting their claims against Agri Stats; and (4) granting such other and further relief as this Court deems just and proper.

Dated: June 30, 2026

Respectfully submitted,

*/s/ William L. Monts III*

Justin W. Bernick
William L. Monts III
Liam E. Phibbs
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
Email: justin.bernick@hoganlovells.com
william.monts@hoganlovells.com
liam.phibbs@hoganlovells.com

*Counsel for Defendant Agri Stats, Inc.*

- 11 -

- 12 -

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, on this 30 day of June, 2026, a true and correct copy of the

foregoing paper was served on Plaintiffs via CM/ECF and email to counsel for Plaintiffs of the

Proposed Class and the Alabama Actions.


Dated: June 30, 2026                            Respectfully submitted,

                                                */s/ William L. Monts III*
                                                William L. Monts III