# EXHIBIT 7

**IN THE CIRCUIT COURT OF BULLOCK COUNTY, ALABAMA**

| | |
|---|---|
| JAMES HERBERT AYERS, et al., | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | )    **Civil Action No. 09-CV-2026-900001** |
| | ) |
| AGRI STATS, INC., et al., | ) |
|     Defendants. | ) |
| | ) |

**PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANT
AGRI STATS, INC.**

Pursuant to the Alabama Rules of Civil Procedure, Rule 33 Plaintiffs propound the

following Interrogatories to Defendant Agri Stats, Inc., Answers and responses are to be

served within the time allowed by the Alabama Rules of Civil Procedure.

**DEFINITIONS AND INSTRUCTIONS**

1. "You," "Your," and "Agri Stats" means Defendant Agri Stats, Inc., and its
   present and former parents, subsidiaries, divisions, affiliates, predecessors,
   successors, joint ventures, and any officers, directors, employees, agents,
   consultants,  contractors, attorneys, accountants, and representatives acting on
   its behalf.

2. "Plaintiffs" means the named Plaintiffs in this action and any putative class
   members.

3. "Producer Defendants" means Perdue Farms, Inc.; Perdue Foods, LLC; Tyson
   Foods, Inc.; Keystone Foods, LLC; Equity Group; Charoen Pokphand; Pilgrim's
   Pride Corporation; Wayne Farms, LLC; Wayne-Sanderson Farms, LLC; Sanderson
   Farms, Inc.; Cargill Meat Solutions, Inc.; Continental Grain Company; Koch Foods,
   Inc.; Koch Foods of Alabama, LLC; Peco Foods, Inc.; and Foster Poultry Farms,

LLC, and each of their present and former parents, subsidiaries, divisions, affiliates, predecessors, and successors. The term includes each such entity whether or not it is currently a party to this action and whether or not it has been previously dismissed or has reached a settlement with Plaintiffs. Plaintiffs' requests for information concerning communications, data exchanges, meetings, agreements, or other conduct of or involving any Producer Defendant are not limited or excused by the fact that such entity is not itself responding to this discovery.

4. "Excluded Defendants" means Tyson Foods, Inc.; Peco Foods, Inc.; Pilgrim's Pride Corporation; Cargill Meat Solutions, Inc.; and Continental Grain Company. These Defendants have settled with Plaintiffs or have been otherwise dismissed and are not being served with this discovery, but they remain Producer Defendants and co-conspirators for purposes of these Definitions and the substantive requests herein. Information concerning communications, data exchanges, meetings, agreements, or other conduct involving any Excluded Defendant remains fully requested.

5. "WMS" means Webber, Meng, Sahl & Company, Inc., and any of its principals, employees, or agents, including Jonathan Meng, Robert Sahl, Scott Ramsey, and Cindy Porter.

6. "Poultry Industry Survey Group" or "Survey Group" means the group of poultry processors that participated in the annual Poultry Industry Compensation Survey administered by WMS from 2000 through 2019.

7. "Steering Committee" means the committee of executives from Producer Defendants that managed and coordinated the Poultry Industry Compensation Survey and the annual Poultry Industry Compensation Meeting.

8. "Compensation" means any form of remuneration paid to workers at poultry complexes, including wages, salaries, bonuses, merit increases, salary ranges, starting rates, top rates, shift differentials, overtime, benefits (including health insurance, retirement, life insurance, disability, vacation, sick leave, and parental leave), and any other monetary or in-kind benefit.

9. "Relevant Period" means January 1, 2000 through the present. Any request herein that asks about conduct, knowledge, communications, or events occurring "for some period of time during the Relevant Period" or "at any time during the Relevant Period" is satisfied by conduct, knowledge, communications, or events occurring during any portion of that period, however brief, and Plaintiffs do not concede that any time-period qualifier limits the scope of Your duty to respond.

10. "Prior Actions" means, collectively: Jien, et al. v. Perdue Farms, Inc., et al., Case No. 1:19-cv-02521 (D. Md.); United States, et al. v. Agri Stats, Inc., Case No. 0:23-cv-03009 (D. Minn.); In re Broiler Chicken Antitrust Litigation, Case No. 1:16-cv-08637 (N.D. Ill.); In re Pork Antitrust Litigation, Case No. 0:18-cv-01776 (D. Minn.); In re Turkey Antitrust Litigation, Case No. 1:19-cv-08318 (N.D. Ill.); Olean Wholesale Grocery Cooperative, Inc., et al. v. Agri Stats, Inc., et al.; In re Broiler Chicken Grower Antitrust Litigation, Case No. 6:20-md-02977 (E.D. Okla.); and any related state-court or successor actions.

11. "Document" has the broadest meaning permitted under Rule 34, Ala. R. Civ. P., and includes electronically stored information ("ESI"), emails, attachments, text messages, instant messages (including Teams, Slack, and similar platforms), voicemails, calendar entries, presentations, reports, spreadsheets, databases, native files, audit logs, drafts, and metadata.

12. "Communication" means any transmission of information, including in-person, by telephone, by email, by text message, by instant messaging platform, by video conference, by letter, or by any other means.

13. "Identify" — (a) as to a person, means to provide the full name, last known address, telephone number, e-mail address, and employer; (b) as to an entity, means to provide its full legal name, address, and form of organization; (c) as to a document, means to provide the date, author, recipients, type, subject matter, and present custodian.

14. "Concerning," "relating to," and "regarding" mean referring to, alluding to, responding to, evidencing, summarizing, reflecting, describing, supporting, refuting, or otherwise pertaining to the subject in any way.

15. The singular includes the plural, and the plural includes the singular. The terms "and" and "or" shall be construed conjunctively or disjunctively as necessary to make each request inclusive rather than exclusive.

16. These discovery requests are continuing in nature. You are required to supplement Your responses as required by Rule 26(e), Ala. R. Civ. P.

17. If You withhold any document on the basis of privilege or work product, provide a privilege log identifying the document, the basis for withholding, the author, all recipients, the date, the subject matter, and the custodian.

18. If You cannot answer fully, answer to the extent possible and identify the source of any information You cannot provide and the reasons therefor.

19. Produce documents as kept in the ordinary course of business, with attachments, family relationships, metadata, and native format for spreadsheets, databases, structured data, presentations, and reports.

## **INTERROGATORIES**

**INTERROGATORY NO. 1.**    Identify the person answering these Interrogatories on behalf of Agri Stats, including the person's full name, job title, business address, dates of employment with Agri Stats, and the basis upon which the person is competent to verify the responses on behalf of the entity.

**INTERROGATORY NO. 2.**    Identify each person who assisted in preparing Your responses to these Interrogatories, the Requests for Admission, and the Requests for Production served simultaneously herewith, including each person's full name, title, employer, last known address, e-mail, and the specific requests for which the person supplied information.

**INTERROGATORY NO. 3.**    Identify each poultry processor or poultry-industry-related entity (including each of the Producer Defendants and Excluded Defendants) to which You sold, provided, or licensed any compensation, wage, salary, benefits, or labor-cost reports, data, or analyses at any time during the Relevant Period, and for each, state the dates of service, the products or reports provided, the frequency of delivery (monthly, quarterly, annual, ad hoc), and the total annual fees charged.

**INTERROGATORY NO. 4.**    Identify by full name, title, employer, and dates of employment each Agri Stats employee, officer, director, contractor, or representative who, for some period of time during the Relevant Period, (a) collected compensation, wage, benefits, or labor-cost data from any Producer Defendant; (b) drafted, edited, or audited any report containing compensation, wage, benefits, or labor-cost data; (c) traveled to, visited, or attended any meeting at any Producer Defendant's plant, corporate headquarters, or other facility; or (d) communicated with any Producer Defendant regarding labor, wages, compensation, benefits, or workforce matters.

**INTERROGATORY NO. 5.**    Describe in detail every category, field, and data element of compensation, wage, benefits, headcount, turnover, or labor-cost information that You collected from any Producer Defendant during the Relevant Period, including (a) the source files, reports, or systems from which the data was extracted; (b) the frequency of collection; (c) whether the data was current, historical, or forward-looking; (d) the level of granularity (e.g., by plant, by job position, by shift, by department, by region/subregion); and (e) the format in which it was delivered to You.

**INTERROGATORY NO. 6.**    Describe in detail every Agri Stats report, benchmark, dashboard, or product (whether monthly, quarterly, annual, or ad hoc) that contained or was derived from compensation, wage, benefits, or labor-cost data during the Relevant Period, including for each: the title, the recipients, the frequency of distribution, the fields and metrics included, the level of disaggregation (national, regional, subregion, plant, job-position), and the dates on which it was first introduced and (if applicable) discontinued.

**INTERROGATORY NO. 7.**    Describe in detail every "Agri Stats Subregion" or other regional designation You used to categorize plants or compensation data during the Relevant Period, including the geographic boundaries of each Subregion, the plants assigned to each Subregion, and the dates each Subregion designation was in effect.

**INTERROGATORY NO. 8.**    Identify and describe in detail every visit or on-site meeting Agri Stats personnel made to any plant, facility, or corporate office of any Producer Defendant during the Relevant Period, including the dates, locations, participants, agendas, topics discussed, and any documents created, presented, or exchanged.

**INTERROGATORY NO. 9.**    Describe in detail every training, demonstration, walkthrough, webinar, or other instructional session Agri Stats provided to any Producer

Defendant regarding how to read, interpret, decode, deanonymize, match, infer, or use Agri Stats compensation reports or data, including dates, attendees, materials used, and the substance of any instruction provided.

**INTERROGATORY NO. 10.**    Identify and describe every instance during the Relevant Period in which any Agri Stats employee, officer, director, or representative decoded, reverse-engineered, matched, inferred, or attributed any compensation data point in an Agri Stats report (or any WMS or other industry survey to which Agri Stats had access) to a specific Producer Defendant, plant, facility, region, or job position, including (a) who performed the analysis; (b) the data used; (c) the result; and (d) any document recording the result.

**INTERROGATORY NO. 11.**    Describe in detail every audit, verification, validation, or quality-control procedure Agri Stats performed on wage, compensation, or benefits data submitted by any Producer Defendant during the Relevant Period, including who performed the audit, the methodology used, the documents reviewed, the findings, and how discrepancies were resolved.

**INTERROGATORY NO. 12.**    Describe in detail every communication, meeting, or interaction You had with WMS at any time during the Relevant Period, including the participants, dates, topics discussed, agreements reached, and any documents exchanged. Include without limitation any communications regarding the format of the Poultry Industry Compensation Survey, the inclusion of Agri Stats Subregion designations in WMS surveys, or the Tyson-sponsored Hourly Plant Maintenance and Production Survey.

**INTERROGATORY NO. 13.**    Identify every meeting, conference, retreat, or gathering attended by Agri Stats personnel during the Relevant Period at which compensation, wages, benefits, labor costs, or workforce matters of any poultry processor

were discussed, including the date, location, attendees, agenda, and any minutes, notes, or presentations.

**INTERROGATORY NO. 14.** Identify every trade association, industry conference, working group, or compensation benchmarking forum (other than WMS and the Poultry Industry Compensation Meeting) in which Agri Stats personnel participated for some period of time during the Relevant Period and at which poultry labor, wages, benefits, staffing, productivity, or labor costs were discussed, including the National Chicken Council, USPOULTRY (U.S. Poultry & Egg Association), the National Turkey Federation, and the Poultry & Egg Association, and for each, state the dates of participation, the Agri Stats representatives involved, and the topics discussed.

**INTERROGATORY NO. 15.** Describe in detail any internal Agri Stats policy, guideline, or procedure regarding (a) the anonymization or aggregation of compensation data; (b) compliance with the U.S. Department of Justice/Federal Trade Commission "Safe Harbor" Guidelines (issued 1996) for information exchanges among competitors; (c) the inclusion of forward-looking compensation data; or (d) the level of disaggregation of compensation reports.

**INTERROGATORY NO. 16.** Identify every person (by name, employer, and title) at any Producer Defendant who, for some period of time during the Relevant Period, communicated with Agri Stats regarding compensation, wages, benefits, labor costs, or workforce matters.

**INTERROGATORY NO. 17.** Describe in detail Agri Stats's total annual revenue from each Producer Defendant during the Relevant Period, and total annual revenue from sales of compensation-related reports or data to all poultry processors collectively, broken down by year.

**INTERROGATORY NO. 18.**    Identify and describe each lawsuit, government investigation, subpoena, civil investigative demand, deposition, sworn statement, or regulatory inquiry involving Agri Stats and concerning labor, wages, compensation, benefits, or information sharing in the poultry, beef, pork, or other meat-processing industries during the Relevant Period (including without limitation each of the Prior Actions), and for each, state the case caption (or matter name), the court or agency, the date initiated, the status, and the outcome.

**INTERROGATORY NO. 19.**    Describe in detail any policy, decision, or directive by Agri Stats, at any time during the Relevant Period, to limit, restrict, modify, or discontinue the collection, analysis, or dissemination of compensation data of poultry-complex workers, and identify the reasons for, and the persons responsible for, each such decision.

**INTERROGATORY NO. 20.**    Identify and describe in detail every contract, agreement, retainer letter, statement of work, engagement letter, or other written arrangement between Agri Stats and any Producer Defendant during the Relevant Period that relates to compensation, wage, benefits, or labor-cost data.

**INTERROGATORY NO. 21.**    Describe in detail (a) all steps You have taken to preserve, collect, search, and review documents and ESI in connection with this action and the Prior Actions; (b) each custodian whose data was preserved or collected; (c) each data source preserved or collected (including email systems, file shares, instant-messaging platforms, mobile devices, cloud storage, and database systems); (d) the search terms and date-range parameters used; (e) the collection dates; and (f) any data source that is or may be lost, deleted, inaccessible, or otherwise unavailable.

**INTERROGATORY NO. 22.**    Identify each Agri Stats document-retention policy, ESI-preservation policy, or litigation-hold notice in effect during the Relevant Period,

including the dates each was issued, the persons to whom it was distributed, and the categories of documents preserved.

**INTERROGATORY NO. 23.**    Describe in detail how Agri Stats has used, accessed, or analyzed data submitted by any Producer Defendant after the original report containing that data was distributed, including whether and how the data is retained, archived, used for trend analysis, or incorporated into subsequent reports or products.

**INTERROGATORY NO. 24.**    Identify each individual at Agri Stats with the most knowledge of (a) the company's compensation-data collection from the Producer Defendants; (b) the company's relationship and communications with WMS; (c) the company's audit and verification practices; (d) the company's revenue from the Producer Defendants; and (e) the company's document retention and litigation-hold policies.

**INTERROGATORY NO. 25.**    Identify each fact, document, and witness on which You rely to support any contention that Agri Stats's compensation-data products were aggregated, anonymized, or otherwise structured in compliance with the Safe Harbor Guidelines during any portion of the Relevant Period.

**INTERROGATORY NO. 26.**    State whether Agri Stats has ever received from any Producer Defendant any communication, complaint, or request to revise the format, level of detail, or anonymization of any compensation or labor report, and if so, identify each such communication, the date, the participants, the substance of the request, and how it was resolved.

**INTERROGATORY NO. 27.**    Identify by name, title, dates of employment, and current contact information every Agri Stats employee, officer, director, or contractor who has left Agri Stats's employment during the Relevant Period and who had

responsibility for, or involvement with, the collection, analysis, or distribution of compensation, wage, benefits, or labor-cost data.

**INTERROGATORY NO. 28.**    Identify any insurance policy (including primary, excess, umbrella, or D&O coverage), indemnity agreement, joint-defense agreement, common-interest agreement, tolling agreement, cooperation agreement, settlement agreement, or release that may provide coverage for, or otherwise relate to, any of the claims or damages asserted by Plaintiffs in this action, including the parties, dates, terms, and the persons responsible for each.

**INTERROGATORY NO. 29.**    Identify every poultry processor's plant for which Agri Stats collected, analyzed, distributed, or maintained compensation, wage, benefits, or labor-cost data at any time during the Relevant Period, including the operator of each plant, the years of data collection, and the categories of data maintained.

**INTERROGATORY NO. 30.**    State the factual basis for each affirmative defense, denial, jurisdictional defense, venue defense, statute-of-limitations defense, causation defense, or contention that Plaintiffs' Compensation was not affected by the conduct alleged in the Complaint.

**INTERROGATORY NO. 31.**    Identify each person whom You expect to call as a witness (lay or expert) at the trial of this action, and for each, provide the substance of the facts and opinions to which the witness is expected to testify and a summary of the grounds for each opinion.

_s/ Christina D. Crow_
CHRISTINA D. CROW (CRO064)

OF COUNSEL:
Christina D. Crow (CRO064)
C. Elizabeth Littell (LIT028)
JINKS CROW, PC
219 N. Prairie Street
Union Springs, AL 36089
334-738-4225
christy.crow@jinkscrow.com
lisa.littell@jinkscrow.com

## CERTIFICATE OF SERVICE

I hereby certify that I have on this the June 8, 2026, served a copy of the foregoing upon all counsel of records, by using ALAFILE, the CM/ECF system, facsimile, hand delivery, and/or by placing a copy of the same in the United States mail, first class postage prepaid to the following:

Joshua Jonathan Jackson
Samford & Denson, LLP
PO Box 2345
Opelika, AL 36803-2345
jackson@samfordlaw.com

William Leitzsey Monts, III
Hogan Lovells US LLP
555 Thirteenth Street, N.W.
Washington, DC 20004-1109
william.monts@hoganlovells.com

_s/ Christina D. Crow_
OF COUNSEL

## IN THE CIRCUIT COURT OF BULLOCK COUNTY, ALABAMA

| | | |
|---|---|---|
| JAMES HERBERT AYERS, et al., | ) | |
|    Plaintiffs, | ) | |
| | ) | Civil Action No. 09-CV-2026-900001 |
| v. | ) | |
| | ) | |
| AGRI STATS, INC., et al., | ) | |
|    Defendants. | ) | |
| | ) | |

## PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT AGRI STATS, INC.

Pursuant to the Alabama Rules of Civil Procedure, Rule 36 Plaintiffs propound the following Requests for Admissions to Agri Stats, Inc. Answers and responses are to be served within the time allowed by the Alabama Rules of Civil Procedure.

## DEFINITIONS AND INSTRUCTIONS

1. "You," "Your," and "Agri Stats" mean Defendant Agri Stats, Inc., and its present and former parents, subsidiaries, divisions, affiliates, predecessors, successors, joint ventures, and any officers, directors, employees, agents, consultants, contractors, attorneys, accountants, and representatives acting on its behalf.

2. "Plaintiffs" means the named Plaintiffs in this action and any putative class members.

3. "Producer Defendants" means Perdue Farms, Inc.; Perdue Foods, LLC; Tyson Foods, Inc.; Keystone Foods, LLC; Equity Group; Charoen Pokphand; Pilgrim's Pride Corporation; Wayne Farms, LLC; Wayne-Sanderson Farms, LLC; Sanderson Farms, Inc.; Cargill Meat Solutions, Inc.; Continental Grain Company; Koch Foods, Inc.; Koch Foods of Alabama, LLC; Peco Foods, Inc.; and Foster Poultry Farms,

LLC, and each of their present and former parents, subsidiaries, divisions, affiliates, predecessors, and successors. The term includes each such entity whether or not it is currently a party to this action and whether or not it has been previously dismissed or has reached a settlement with Plaintiffs. Plaintiffs' requests for information concerning communications, data exchanges, meetings, agreements, or other conduct of or involving any Producer Defendant are not limited or excused by the fact that such entity is not itself responding to this discovery.

4. "Excluded Defendants" means Tyson Foods, Inc.; Peco Foods, Inc.; Pilgrim's Pride Corporation; Cargill Meat Solutions, Inc.; and Continental Grain Company. These Defendants have settled with Plaintiffs or have been otherwise dismissed and are not being served with this discovery, but they remain Producer Defendants and co-conspirators for purposes of these Definitions and the substantive requests herein. Information concerning communications, data exchanges, meetings, agreements, or other conduct involving any Excluded Defendant remains fully requested.

5. "WMS" means Webber, Meng, Sahl & Company, Inc., and any of its principals, employees, or agents, including Jonathan Meng, Robert Sahl, Scott Ramsey, and Cindy Porter.

6. "Poultry Industry Survey Group" or "Survey Group" means the group of poultry processors that participated in the annual Poultry Industry Compensation Survey administered by WMS from 2000 through 2019.

7. "Steering Committee" means the committee of executives from Producer Defendants that managed and coordinated the Poultry Industry Compensation Survey and the annual Poultry Industry Compensation Meeting.

8. "Compensation" means any form of remuneration paid to workers at poultry complexes, including wages, salaries, bonuses, merit increases, salary ranges, starting rates, top rates, shift differentials, overtime, benefits (including health insurance, retirement, life insurance, disability, vacation, sick leave, and parental leave), and any other monetary or in-kind benefit.

9. "Relevant Period" means January 1, 2000 through the present. Any request herein that asks about conduct, knowledge, communications, or events occurring "for some period of time during the Relevant Period" or "at any time during the Relevant Period" is satisfied by conduct, knowledge, communications, or events occurring during any portion of that period, however brief, and Plaintiffs do not concede that any time-period qualifier limits the scope of Your duty to respond.

10. "Prior Actions" means, collectively: Jien, et al. v. Perdue Farms, Inc., et al., Case No. 1:19-cv-02521 (D. Md.); United States, et al. v. Agri Stats, Inc., Case No. 0:23-cv-03009 (D. Minn.); In re Broiler Chicken Antitrust Litigation, Case No. 1:16-cv-08637 (N.D. Ill.); In re Pork Antitrust Litigation, Case No. 0:18-cv-01776 (D. Minn.); In re Turkey Antitrust Litigation, Case No. 1:19-cv-08318 (N.D. Ill.); Olean Wholesale Grocery Cooperative, Inc., et al. v. Agri Stats, Inc., et al.; In re Broiler Chicken Grower Antitrust Litigation, Case No. 6:20-md-02977 (E.D. Okla.); and any related state-court or successor actions.

11. "Document" has the broadest meaning permitted under Rule 34, Ala. R. Civ. P., and includes electronically stored information ("ESI"), emails, attachments, text messages, instant messages (including Teams, Slack, and similar platforms), voicemails, calendar entries, presentations, reports, spreadsheets, databases, native files, audit logs, drafts, and metadata.

12. "Communication" means any transmission of information, including in-person, by telephone, by email, by text message, by instant messaging platform, by video conference, by letter, or by any other means.

13. "Identify" — (a) as to a person, means to provide the full name, last known address, telephone number, e-mail address, and employer; (b) as to an entity, means to provide its full legal name, address, and form of organization; (c) as to a document, means to provide the date, author, recipients, type, subject matter, and present custodian.

14. "Concerning," "relating to," and "regarding" mean referring to, alluding to, responding to, evidencing, summarizing, reflecting, describing, supporting, refuting, or otherwise pertaining to the subject in any way.

15. The singular includes the plural, and the plural includes the singular. The terms "and" and "or" shall be construed conjunctively or disjunctively as necessary to make each request inclusive rather than exclusive.

16. These discovery requests are continuing in nature. You are required to supplement Your responses as required by Rule 26(e), Ala. R. Civ. P.

17. If You withhold any document on the basis of privilege or work product, provide a privilege log identifying the document, the basis for withholding, the author, all recipients, the date, the subject matter, and the custodian.

18. If You cannot answer fully, answer to the extent possible and identify the source of any information You cannot provide and the reasons therefor.

19. Produce documents as kept in the ordinary course of business, with attachments, family relationships, metadata, and native format for spreadsheets, databases, structured data, presentations, and reports.

## REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1.**    Admit that Agri Stats is a corporation or business entity that, for some period of time during the Relevant Period, provided data, benchmarking, reporting, auditing, analytics, or consulting services to poultry processors.

**REQUEST FOR ADMISSION NO. 2.**    Admit that, for some period of time during the Relevant Period, Agri Stats collected compensation, wage, or benefits data from one or more Producer Defendants.

**REQUEST FOR ADMISSION NO. 3.**    Admit that, for some period of time during the Relevant Period, Agri Stats distributed reports containing compensation, wage, or benefits data to one or more Producer Defendants on a monthly basis.

**REQUEST FOR ADMISSION NO. 4.**    Admit that, for some period of time during the Relevant Period, the compensation, wage, or benefits data Agri Stats distributed included plant-specific data.

**REQUEST FOR ADMISSION NO. 5.**    Admit that, for some period of time during the Relevant Period, the compensation, wage, or benefits data Agri Stats distributed included job-position-specific data.

**REQUEST FOR ADMISSION NO. 6.**    Admit that, for some period of time during the Relevant Period, the compensation, wage, or benefits data Agri Stats distributed was current (i.e., less than three months old) at the time of distribution.

**REQUEST FOR ADMISSION NO. 7.**    Admit that, for some period of time during the Relevant Period, the compensation, wage, or benefits data Agri Stats distributed was reported at a monthly, quarterly, annual, or other recurring interval.

**REQUEST FOR ADMISSION NO. 8.**    Admit that monthly or recurring dissemination of competitor compensation information allowed participating poultry processors to track changes in competitors' conduct over time.

**REQUEST FOR ADMISSION NO. 9.**    Admit that, for some period of time during the Relevant Period, Agri Stats compensation reports were not made available to the general public.

**REQUEST FOR ADMISSION NO. 10.**  Admit that, for some period of time during the Relevant Period, Agri Stats compensation reports were not made available to employees of the Producer Defendants, including Plaintiffs.

**REQUEST FOR ADMISSION NO. 11.**  Admit that, for some period of time during the Relevant Period, Agri Stats compensation reports were not made available to any labor union representing workers of the Producer Defendants.

**REQUEST FOR ADMISSION NO. 12.**  Admit that, for some period of time during the Relevant Period, Agri Stats charged subscription fees to one or more Producer Defendants in exchange for compensation, wage, or benefits reports.

**REQUEST FOR ADMISSION NO. 13.**  Admit that, for some period of time during the Relevant Period, Agri Stats personnel visited one or more poultry-processing plants operated by a Producer Defendant.

**REQUEST FOR ADMISSION NO. 14.**  Admit that, for some period of time during the Relevant Period, at least one Agri Stats visit to a Producer Defendant's plant or facility lasted at least one week.

**REQUEST FOR ADMISSION NO. 15.**  Admit that, for some period of time during the Relevant Period, Agri Stats personnel trained, instructed, explained, or otherwise assisted

employees of one or more Producer Defendants in how to interpret Agri Stats compensation reports.

**REQUEST FOR ADMISSION NO. 16.**  Admit that, for some period of time during the Relevant Period, Agri Stats compensation reports replaced the names of submitting companies with codes, abbreviations, or other identifiers other than the company's own name.

**REQUEST FOR ADMISSION NO. 17.**  Admit that, for some period of time during the Relevant Period, the format of Agri Stats compensation reports made it possible for a recipient to identify (i.e., deanonymize) the company that submitted at least some of the data contained in the report.

**REQUEST FOR ADMISSION NO. 18.**  Admit that data fields such as plant location, number of employees, state, union status, job category, production type, or facility count can assist a poultry processor in identifying another processor's data in a supposedly anonymous or coded report.

**REQUEST FOR ADMISSION NO. 19.**  Admit that letter codes or anonymized identifiers did not prevent deanonymization when the accompanying data was sufficiently granular to permit a participant to match a code to a processor or plant.

**REQUEST FOR ADMISSION NO. 20.**  Admit that, for some period of time during the Relevant Period, Agri Stats audited or verified compensation data submitted to it by one or more Producer Defendants.

**REQUEST FOR ADMISSION NO. 21.**  Admit that, for some period of time during the Relevant Period, one or more Producer Defendants were referred to publicly or internally as "Agri Stats subscribers."

**REQUEST FOR ADMISSION NO. 22.**  Admit that, for some period of time during the Relevant Period, Agri Stats used the term "Agri Stats Subregion" or substantially similar terminology to designate geographic groupings of plants.

**REQUEST FOR ADMISSION NO. 23.**  Admit that, for some period of time during the Relevant Period, Agri Stats provided WMS or Tyson Foods, Inc. with information concerning Agri Stats Subregion designations.

**REQUEST FOR ADMISSION NO. 24.**  Admit that, for some period of time during the Relevant Period, Agri Stats personnel met or communicated with WMS personnel concerning compensation, wage, or benefits data.

**REQUEST FOR ADMISSION NO. 25.**  Admit that the U.S. Department of Justice has, at some time during the Relevant Period, investigated or filed an action concerning information sharing in the poultry, beef, or pork industries that involved Agri Stats.

**REQUEST FOR ADMISSION NO. 26.**  Admit that, for some period of time during the Relevant Period, Agri Stats did not require any Producer Defendant to anonymize the plant-level or company-level data the Producer Defendant submitted to Agri Stats prior to submission.

**REQUEST FOR ADMISSION NO. 27.**  Admit that, for some period of time during the Relevant Period, Agri Stats did not require, as a condition of subscription, that any Producer Defendant refrain from using Agri Stats reports to set or align worker compensation.

**REQUEST FOR ADMISSION NO. 28.**  Admit that, for some period of time during the Relevant Period, the Producer Defendants together accounted for a majority share of the U.S. poultry-processing market.

**REQUEST FOR ADMISSION NO. 29.** Admit that, for some period of time during the Relevant Period, Agri Stats collected, analyzed, distributed, or maintained compensation data concerning Producer Defendants.

**REQUEST FOR ADMISSION NO. 30.** Admit that, for some period of time during the Relevant Period, Agri Stats has not made a public statement retracting or correcting any representation it made to a subscriber regarding the anonymity, aggregation, or Safe Harbor status of its compensation reports.

**REQUEST FOR ADMISSION NO. 31.** Admit that, for some period of time during the Relevant Period, Agri Stats was advised by counsel or its own personnel that the format of one or more of its compensation reports could be used by subscribers to identify the submitting company.

**REQUEST FOR ADMISSION NO. 32.** Admit that, for some period of time during the Relevant Period, Agri Stats's revenue from compensation-related products and services derived from Producer Defendants exceeded $1 million in at least one year.

**REQUEST FOR ADMISSION NO. 33.** Admit that, for some period of time during the Relevant Period, Agri Stats did not maintain a written policy prohibiting subscribers from using its reports to set or align compensation with competing subscribers.

**REQUEST FOR ADMISSION NO. 34.** Admit that, for some period of time during the Relevant Period, Agri Stats did not disclose to any worker employed at a Producer Defendant's plant (including any Plaintiff) the fact that Agri Stats was collecting, analyzing, or distributing compensation data concerning that worker's plant or position.

**REQUEST FOR ADMISSION NO. 35.** Admit that, for some period of time during the Relevant Period, Agri Stats did not obtain written authorization from any Plaintiff to use

his or her wage, payroll, employment, or compensation information in any Agri Stats report.

**REQUEST FOR ADMISSION NO. 36.** Admit that suppressing, stabilizing, coordinating, or limiting compensation paid to poultry workers would financially benefit poultry processors by reducing labor costs.

**REQUEST FOR ADMISSION NO. 37.** Admit that reducing labor costs can increase profits, margins, or financial performance for poultry processors, all else being equal.

**REQUEST FOR ADMISSION NO. 38.** Admit that if competing poultry processors use non-public, current, plant-specific, or job-specific compensation information to avoid bidding up wages, workers can be paid less than they would be paid in a competitive labor market.

**REQUEST FOR ADMISSION NO. 39.** Admit that if competing poultry processors monitor each other's wage levels in near real time, that monitoring can reduce uncertainty about competitors' compensation decisions and facilitate coordination of compensation.

**REQUEST FOR ADMISSION NO. 40.** Admit that Agri Stats compensation reports, WMS survey results, and direct competitor communications are distinct channels through which poultry processors could receive competitor compensation or labor-cost information.

**REQUEST FOR ADMISSION NO. 41.** Admit that, for some period of time during the Relevant Period, Agri Stats had documents relating to WMS, the Poultry Industry Compensation Surveys, or poultry compensation benchmarking.

**REQUEST FOR ADMISSION NO. 42.** Admit that Agri Stats has not destroyed, deleted, overwritten, lost, or failed to preserve any document or ESI concerning Agri Stats data, Producer Defendants, WMS, the Poultry Industry Compensation Surveys,

compensation, Producer Defendants', or Agri Stats's services to poultry processors after learning of investigations, litigation, claims, subpoenas, or preservation duties related to poultry compensation or wage suppression.

*s/ Christina D. Crow*
CHRISTINA D. CROW (CRO064)

OF COUNSEL:
Christina D. Crow (CRO064)
C. Elizabeth Littell (LIT028)
JINKS CROW, PC
219 N. Prairie Street
Union Springs, AL 36089
334-738-4225
christy.crow@jinkscrow.com
lisa.littell@jinkscrow.com

## CERTIFICATE OF SERVICE

I hereby certify that I have on this the June 8, 2026, served a copy of the foregoing upon all counsel of records, by using ALAFILE, the CM/ECF system, facsimile, hand delivery, and/or by placing a copy of the same in the United States mail, first class postage prepaid to the following:

Joshua Jonathan Jackson
Samford & Denson, LLP
PO Box 2345
Opelika, AL 36803-2345
jackson@samfordlaw.com

William Leitzsey Monts, III
Hogan Lovells US LLP
555 Thirteenth Street, N.W.
Washington, DC 20004-1109
william.monts@hoganlovells.com

*s/ Christina D. Crow*
OF COUNSEL

**IN THE CIRCUIT COURT OF BULLOCK COUNTY, ALABAMA**

| | | |
|---|---|---|
| JAMES HERBERT AYERS, et al., | ) | |
|     Plaintiffs, | ) | |
| | ) | Civil Action No. 09-CV-2026-900001.00 |
| v. | ) | |
| | ) | |
| AGRI STATS, INC., et al., | ) | |
|     Defendants. | ) | |
| | ) | |

**PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT AGRI STATS, INC.**

Pursuant to the Alabama Rules of Civil Procedure, Rule 34 Plaintiffs propound the following Requests for Production to Agri Stats, Inc. Answers and responses are to be served within the time allowed by the Alabama Rules of Civil Procedure.

**DEFINITIONS AND INSTRUCTIONS**

1. "You," "Your," and "Agri Stats" mean Defendant Agri Stats, Inc., and its present and former parents, subsidiaries, divisions, affiliates, predecessors, successors, joint ventures, and any officers, directors, employees, agents, consultants, contractors, attorneys, accountants, and representatives acting on its behalf.

2. "Plaintiffs" means the named Plaintiffs in this action and any putative class members.

3. "Producer Defendants" means Perdue Farms, Inc.; Perdue Foods, LLC; Tyson Foods, Inc.; Keystone Foods, LLC; Equity Group; Charoen Pokphand; Pilgrim's Pride Corporation; Wayne Farms, LLC; Wayne-Sanderson Farms, LLC; Sanderson Farms, Inc.; Cargill Meat Solutions, Inc.; Continental Grain Company; Koch Foods, Inc.; Koch Foods of Alabama, LLC; Peco Foods, Inc.; and Foster Poultry Farms,

LLC, and each of their present and former parents, subsidiaries, divisions, affiliates, predecessors, and successors. The term includes each such entity whether or not it is currently a party to this action and whether or not it has been previously dismissed or has reached a settlement with Plaintiffs. Plaintiffs' requests for information concerning communications, data exchanges, meetings, agreements, or other conduct of or involving any Producer Defendant are not limited or excused by the fact that such entity is not itself responding to this discovery.

4. "Excluded Defendants" means Tyson Foods, Inc.; Peco Foods, Inc.; Pilgrim's Pride Corporation; Cargill Meat Solutions, Inc.; and Continental Grain Company. These Defendants have settled with Plaintiffs or have been otherwise dismissed and are not being served with this discovery, but they remain Producer Defendants and co-conspirators for purposes of these Definitions and the substantive requests herein. Information concerning communications, data exchanges, meetings, agreements, or other conduct involving any Excluded Defendant remains fully requested.

5. "WMS" means Webber, Meng, Sahl & Company, Inc., and any of its principals, employees, or agents, including Jonathan Meng, Robert Sahl, Scott Ramsey, and Cindy Porter.

6. "Poultry Industry Survey Group" or "Survey Group" means the group of poultry processors that participated in the annual Poultry Industry Compensation Survey administered by WMS from 2000 through 2019.

7. "Steering Committee" means the committee of executives from Producer Defendants that managed and coordinated the Poultry Industry Compensation Survey and the annual Poultry Industry Compensation Meeting.

8. "Compensation" means any form of remuneration paid to workers at poultry complexes, including wages, salaries, bonuses, merit increases, salary ranges, starting rates, top rates, shift differentials, overtime, benefits (including health insurance, retirement, life insurance, disability, vacation, sick leave, and parental leave), and any other monetary or in-kind benefit.

9. "Relevant Period" means January 1, 2000 through the present. Any request herein that asks about conduct, knowledge, communications, or events occurring "for some period of time during the Relevant Period" or "at any time during the Relevant Period" is satisfied by conduct, knowledge, communications, or events occurring during any portion of that period, however brief, and Plaintiffs do not concede that any time-period qualifier limits the scope of Your duty to respond.

10. "Prior Actions" means, collectively: Jien, et al. v. Perdue Farms, Inc., et al., Case No. 1:19-cv-02521 (D. Md.); United States, et al. v. Agri Stats, Inc., Case No. 0:23-cv-03009 (D. Minn.); In re Broiler Chicken Antitrust Litigation, Case No. 1:16-cv-08637 (N.D. Ill.); In re Pork Antitrust Litigation, Case No. 0:18-cv-01776 (D. Minn.); In re Turkey Antitrust Litigation, Case No. 1:19-cv-08318 (N.D. Ill.); Olean Wholesale Grocery Cooperative, Inc., et al. v. Agri Stats, Inc., et al.; In re Broiler Chicken Grower Antitrust Litigation, Case No. 6:20-md-02977 (E.D. Okla.); and any related state-court or successor actions.

11. "Document" has the broadest meaning permitted under Rule 34, Ala. R. Civ. P., and includes electronically stored information ("ESI"), emails, attachments, text messages, instant messages (including Teams, Slack, and similar platforms), voicemails, calendar entries, presentations, reports, spreadsheets, databases, native files, audit logs, drafts, and metadata.

12. "Communication" means any transmission of information, including in-person, by telephone, by email, by text message, by instant messaging platform, by video conference, by letter, or by any other means.

13. "Identify" — (a) as to a person, means to provide the full name, last known address, telephone number, e-mail address, and employer; (b) as to an entity, means to provide its full legal name, address, and form of organization; (c) as to a document, means to provide the date, author, recipients, type, subject matter, and present custodian.

14. "Concerning," "relating to," and "regarding" mean referring to, alluding to, responding to, evidencing, summarizing, reflecting, describing, supporting, refuting, or otherwise pertaining to the subject in any way.

15. The singular includes the plural, and the plural includes the singular. The terms "and" and "or" shall be construed conjunctively or disjunctively as necessary to make each request inclusive rather than exclusive.

16. These discovery requests are continuing in nature. You are required to supplement Your responses as required by Rule 26(e), Ala. R. Civ. P.

17. If You withhold any document on the basis of privilege or work product, provide a privilege log identifying the document, the basis for withholding, the author, all recipients, the date, the subject matter, and the custodian.

18. If You cannot answer fully, answer to the extent possible and identify the source of any information You cannot provide and the reasons therefor.

19. Produce documents as kept in the ordinary course of business, with attachments, family relationships, metadata, and native format for spreadsheets, databases, structured data, presentations, and reports.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1.** All documents and communications concerning Your answers to Plaintiffs' First Interrogatories and Plaintiffs' First Requests for Admission served simultaneously herewith.

**REQUEST FOR PRODUCTION NO. 2.** All contracts, retainer letters, statements of work, engagement letters, subscription agreements, or other agreements between Agri Stats and any Producer Defendant during the Relevant Period that relate, in whole or in part, to compensation, wage, benefits, or labor-cost data.

**REQUEST FOR PRODUCTION NO. 3.** All invoices, billing records, payment records, and accounting entries reflecting amounts paid by any Producer Defendant to Agri Stats during the Relevant Period.

**REQUEST FOR PRODUCTION NO. 4.** All Agri Stats reports, benchmarks, dashboards, or products containing or derived from compensation, wage, benefits, or labor-cost data of poultry-complex workers distributed during the Relevant Period.

**REQUEST FOR PRODUCTION NO. 5.** All template documents, sample reports, and exemplars used by Agri Stats to demonstrate or market its compensation, wage, benefits, or labor-cost reporting products to any Producer Defendant during the Relevant Period.

**REQUEST FOR PRODUCTION NO. 6.** All raw, submission-level data files (including spreadsheets, CSVs, database extracts, or other electronic submissions) received from any Producer Defendant during the Relevant Period reflecting compensation, wage, benefits, headcount, turnover, or labor-cost information. Native files with metadata intact are required.

**REQUEST FOR PRODUCTION NO. 7.** All data dictionaries, database schemas, field definitions, report specifications, code books, decoding keys, lookup tables, formulas, pivot tables, macros, and native source files for any Agri Stats database, report, or analytical product that contains compensation, wage, benefits, or labor-cost data of poultry-complex workers.

**REQUEST FOR PRODUCTION NO. 8.** All documents reflecting or used to define each "Agri Stats Subregion" or similar geographic designation in effect during the Relevant Period, including maps, plant assignments, and revisions thereto.

**REQUEST FOR PRODUCTION NO. 9.** All trip reports, travel itineraries, expense reports, calendars, agendas, and notes reflecting visits by Agri Stats personnel to any Producer Defendant's plant, facility, or corporate office during the Relevant Period.

**REQUEST FOR PRODUCTION NO. 10.** All training materials, manuals, slide decks, screen recordings, webinars, and other instructional content provided to any Producer Defendant during the Relevant Period concerning how to use, interpret, decode, deanonymize, match, or apply Agri Stats compensation reports.

**REQUEST FOR PRODUCTION NO. 11.** All audit work-papers, validation files, reconciliation reports, and quality-control documents reflecting Agri Stats's audit, verification, or validation of compensation, wage, or benefits data submitted by any Producer Defendant during the Relevant Period.

**REQUEST FOR PRODUCTION NO. 12.** All communications (including emails, attachments, calendar invites, text messages, instant messages, Teams/Slack messages, and meeting notes) between Agri Stats personnel and any Producer Defendant during the Relevant Period concerning compensation, wages, benefits, labor costs, employee turnover, or workforce matters.

**REQUEST FOR PRODUCTION NO. 13.** All communications between Agri Stats personnel and WMS personnel during the Relevant Period.

**REQUEST FOR PRODUCTION NO. 14.** All communications between Agri Stats personnel and any other Defendant or Excluded Defendant during the Relevant Period concerning the Poultry Industry Compensation Survey, the Tyson-sponsored Hourly Plant Maintenance and Production Survey, or any other compensation or wage information-exchange initiative.

**REQUEST FOR PRODUCTION NO. 15.** All documents reflecting any internal Agri Stats policy, guideline, procedure, training, or directive regarding (a) the anonymization or aggregation of compensation data; (b) compliance with the Safe Harbor Guidelines (DOJ/FTC 1996); (c) the inclusion of forward-looking compensation data; or (d) the level of disaggregation of compensation reports.

**REQUEST FOR PRODUCTION NO. 16.** All organizational charts, personnel rosters, and reporting-line diagrams for Agri Stats in effect at any time during the Relevant Period, with particular reference to personnel responsible for compensation-related products and services.

**REQUEST FOR PRODUCTION NO. 17.** All financial statements, profit-and-loss statements, revenue reports, and management-accounting records reflecting Agri Stats's revenue and profits from compensation-related products and services during the Relevant Period, broken down by customer.

**REQUEST FOR PRODUCTION NO. 18.** All Agri Stats marketing, sales, and promotional materials concerning compensation-related products and services distributed during the Relevant Period, including brochures, website pages, white papers, presentations, and sales pitches.

**REQUEST FOR PRODUCTION NO. 19.**       All documents concerning any decision by Agri Stats to modify, restrict, suspend, or discontinue any compensation-data collection, analysis, or dissemination practice during the Relevant Period, including the reasons for, and the persons responsible for, each decision.

**REQUEST FOR PRODUCTION NO. 20.**       All documents produced by Agri Stats in any of the Prior Actions, including all productions made to the United States Department of Justice, the Federal Trade Commission, any state attorney general, any congressional committee, or any other governmental or regulatory body, concerning labor, wages, compensation, benefits, or information sharing in the poultry, beef, pork, or other meat-processing industries.

**REQUEST FOR PRODUCTION NO. 21.**       All transcripts (and exhibits thereto) of every deposition, sworn statement, declaration, or trial testimony given by any current or former Agri Stats employee, officer, director, or representative in any of the Prior Actions or any related governmental investigation.

**REQUEST FOR PRODUCTION NO. 22.**       All expert reports, expert disclosures, declarations, and dispositive-motion exhibits submitted by or on behalf of Agri Stats in any of the Prior Actions.

**REQUEST FOR PRODUCTION NO. 23.**       All communications between Agri Stats personnel and any government agency, regulator, investigator, auditor, congressional committee, or court concerning poultry compensation, wage fixing, no-poach agreements, compliance with all laws, WMS, or competitor information exchanges, during the Relevant Period.

**REQUEST FOR PRODUCTION NO. 24.**    All Agri Stats document-retention policies, ESI-preservation policies, and litigation-hold notices in effect during the Relevant Period.

**REQUEST FOR PRODUCTION NO. 25.**    All electronic-discovery preservation and collection materials, including data-map documentation, custodian-collection lists, search-term reports, and audit logs documenting the preservation and collection of documents in connection with this matter and the Prior Actions.

**REQUEST FOR PRODUCTION NO. 26.**    All joint-defense agreements, common-interest agreements, tolling agreements, cooperation agreements, settlement agreements, releases, indemnity agreements, or similar written communications between Agri Stats (or its counsel) and any other Defendant, Excluded Defendant, or its counsel concerning the subject matter of this action, any of the Prior Actions, or any related governmental investigation.

**REQUEST FOR PRODUCTION NO. 27.**    All resignation letters, exit interview notes, and severance agreements for any Agri Stats employee or officer who left employment during the Relevant Period and who had responsibility for, or involvement with, compensation-related products and services.

**REQUEST FOR PRODUCTION NO. 28.**    All insurance policies (including primary, excess, umbrella, and D&O policies) that may provide coverage for any of the claims asserted by Plaintiffs in this action, together with any reservation-of-rights letters and coverage-denial letters.

**REQUEST FOR PRODUCTION NO. 29.**    All documents relating to the use of Agri Stats compensation reports by any Producer Defendant in setting wages, salaries, benefits, or other compensation paid to workers at any plant during the Relevant Period.

**REQUEST FOR PRODUCTION NO. 30.**    All documents identifying poultry-processing plants for which Agri Stats collected, analyzed, distributed, or maintained compensation, wage, benefits, or labor-cost data during the Relevant Period.

**REQUEST FOR PRODUCTION NO. 31.**    All documents that support, refute, or otherwise relate to any affirmative defense, denial, or contention You intend to raise in this action.

**REQUEST FOR PRODUCTION NO. 32.**    All declarations, affidavits, and deposition transcripts of Jonathan Meng, Robert Sahl, Scott Ramsey, Cindy Porter, or any other WMS personnel in Your possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 33.**    All Agri Stats personnel files (excluding medical records) for any Agri Stats employee identified in response to Interrogatory No. 4 or Interrogatory No. 27.

**REQUEST FOR PRODUCTION NO. 34.**    All documents identifying the persons most knowledgeable concerning the matters addressed in the foregoing Interrogatories.

**REQUEST FOR PRODUCTION NO. 35.**    All documents You intend to introduce, rely upon, or refer to at the trial of this action.

*s/ Christina D. Crow*
CHRISTINA D. CROW (CRO064)

OF COUNSEL:
Christina D. Crow (CRO064)
C. Elizabeth Littell (LIT028)
JINKS CROW, PC
219 N. Prairie Street
Union Springs, AL 36089
334-738-4225
christy.crow@jinkscrow.com
lisa.littell@jinkscrow.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have on this the June 8, 2026, served a copy of the foregoing upon all counsel of records, by using ALAFILE, the CM/ECF system, facsimile, hand delivery, and/or by placing a copy of the same in the United States mail, first class postage prepaid to the following:

Joshua Jonathan Jackson
Samford & Denson, LLP
PO Box 2345
Opelika, AL 36803-2345
jackson@samfordlaw.com

William Leitzsey Monts, III
Hogan Lovells US LLP
555 Thirteenth Street, N.W.
Washington, DC 20004-1109
william.monts@hoganlovells.com

<u>s/ Christina D. Crow</u>
OF COUNSEL
