**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| JUDY JIEN, *et al.*, | ) | Civil Action No. 1:19-CV-2521 |
| | ) | The Honorable Stephanie A. Gallagher |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PERDUE FARMS, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**REPLY IN SUPPORT OF WAYNE FARMS, LLC AND SANDERSON FARMS, LLC'S
MOTION TO ENFORCE SETTLEMENT AGREEMENTS AND FINAL JUDGMENT**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................... 1

I.  THE OPPOSITION CONFIRMS THAT THE FINAL JUDGMENT EXTINGUISHED
    THE JINKS CROW PLAINTIFFS' CLAIMS .................................................................. 3

   A.  The Jinks Crow Plaintiffs' Claims Are Covered by the Final Judgment ................ 3

   B.  The Jinks Crow Plaintiffs Have No Evidence That They Validly Opted Out ........ 4

   C.  Speculation About A.B. Data Error Does Not Justify Denying Enforcement ........ 6

II.  THE COURT RETAINS AUTHORITY TO ENFORCE THE FINAL JUDGMENT .... 11

   A.  The Anti-Injunction Act Does Not Bar Enforcement Of This Court's
       Judgment ................................................................................................................ 11

   B.  Due Process Has Already Been Provided ............................................................. 12

   C.  Wayne-Sanderson Should Not Be Forced to Litigate Released Claims In
       Alabama ................................................................................................................. 13

   D.  The Requested Relief Is Narrowly Tailored ........................................................ 14

CONCLUSION.................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Hawkins v. Stables*,
148 F.3d 379 (4th Cir. 1998) ...............................................................................................9

*In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales*
*Pracs. & Prods. Liab. Litig.*,
952 F.3d 471 (4th Cir. 2020) ...............................................................................................1

*In re MI Windows & Doors, Inc., Prods. Liab. Litig.*,
860 F.3d 218 (4th Cir. 2017) .....................................................................................4, 10, 12

*In re Navistar MaxxForce Engines Mktg., Sales Pracs. & Prods. Liab. Litig.*,
990 F.3d 1048 (7th Cir. 2021) .............................................................................................10

*Kay Co. v. Equitable Prod. Co.*,
27 F.4th 252 (4th Cir. 2022) ...............................................................................................12

*Matsushita Elec. Indus. Co. v. Epstein*,
516 U.S. 367 (1996).............................................................................................................4

*McKenzie v. Norfolk S. Ry. Co.*,
497 F. App'x 305 (4th Cir. 2012) ......................................................................................5, 7

*Moulton v. U.S. Steel Corp.*,
581 F.3d 344 (6th Cir. 2009) ...............................................................................................7

*Perrigo Institutional Inv. Grp. v. Papa*,
150 F.4th 206 (3d Cir. 2025) ...............................................................................................7

*Sharp Farms v. Speaks*,
917 F.3d 276 (4th Cir. 2019) ..........................................................................................5, 13

*Smith v. Bayer Corp.*,
564 U.S. 299 (2011).............................................................................................................13

**INTRODUCTION**

This Court has already done the hard work Rule 23 requires. It reviewed the proposed settlements, assessed the adequacy of notice, considered the value of the settlement fund, and found the settlements "fair, reasonable, and adequate . . . within the meaning of Federal Rule of Civil Procedure 23." ECF No. 1011 ¶ 8. In doing so, the Court served its Rule 23 function as guardian of the class process and steward of absent class members' interests. *See id.* ¶ 8 n.3 (citing *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 952 F.3d 471, 483–84 (4th Cir. 2020) ("When the court reviews a proposed class-action settlement, it acts as a fiduciary for the class.")). Wayne-Sanderson then paid nearly $70 million in exchange for releases, covenants not to sue, and finality.

Jinks Crow now asks to upset that finality even though the firm did not object to the settlements, did not appear at final approval, did not seek guidance before attempting to exclude thousands of workers from a Court-approved settlement, and did not show that it calculated or communicated the settlement recovery each client would give up by opting out. Instead, on the eve of the opt-out deadline, Jinks Crow attempted to exclude thousands of workers from a Court-approved settlement in bulk, and now asks the Court to accept that process based on counsel-created spreadsheets, generalized assertions, and speculation about administrator error. Rule 23 requires more before absent class members are stripped of the benefits of a settlement this Court approved.

The record confirms why individualized proof is required. A.B. Data's records show that many individuals Jinks Crow now claims opted out also cashed settlement payments. That conduct is difficult to square with a clear election to leave the Settlement Class. It raises serious questions about what those individuals understood, whether they perceived Jinks Crow's involvement as

assistance in obtaining settlement money rather than as a decision to surrender settlement benefits, and whether Jinks Crow's bulk process accurately captured each client's individual decision. Those questions cannot be answered by counsel-created spreadsheets or generalized declarations.

That problem is particularly important because the claims process is still ongoing. The Court has extended the participation-form deadline to August 31, 2026. *See* ECF No. 1051. Any person who did not validly opt out remains a Settlement Class Member and may still be able to submit a participation form and receive settlement benefits. Jinks Crow's clients should not be left pursuing Released Claims in Alabama while unaware that, if they did not validly opt out, they may still participate in the settlement fund. At minimum, those individuals should be informed of the extended deadline, and any further inquiry should occur here, should be individualized, and should focus on opt-out validity—not merits discovery or continued litigation of Released Claims elsewhere.

Against that backdrop, the Opposition does not dispute the facts that matter. It does not dispute that the Alabama lawsuits and demands assert the same claims Wayne-Sanderson resolved in this action. It does not dispute that those claims fall within the Settlement Agreements' releases and covenants not to sue. And it does not dispute that none of the 86 individuals at issue appears on A.B. Data's Court-filed exclusion list. Those concessions narrow the dispute to a single question: whether Jinks Crow can prove, for each individual, a timely and proper opt-out through the Court-approved exclusion process.

It cannot make that showing. The Opposition offers no competent, individualized proof that any particular request was submitted through the Court-approved process, mailed and postmarked by the deadline, and accepted as a valid exclusion. There is no declaration from A.B. Data confirming that any of the 86 timely and properly excluded, no envelopes, postmarks,

2

certified-mail receipts, mail logs, or USPS tracking information, and no individualized evidence sufficient to establish a valid opt-out.

The Court should enforce the Final Judgment against every individual who cannot establish a timely and proper opt-out. Alternatively, if the Court concludes that further record development is necessary, it should order a prompt, targeted opt-out-validation process before this Court; requiring individualized evidence concerning each alleged opt-out, any settlement-payment activity, and Jinks Crow's communications concerning the consequences of opting out; stay prosecution and discovery of Released Claims while that process occurs; and require Jinks Crow to prove valid opt-out status person by person.

## I.    THE OPPOSITION CONFIRMS THAT THE FINAL JUDGMENT EXTINGUISHED THE JINKS CROW PLAINTIFFS' CLAIMS

### A.    The Jinks Crow Plaintiffs' Claims Are Covered by the Final Judgment

Jinks Crow does not dispute the threshold showing in Wayne-Sanderson's Motion: the Alabama lawsuits and demands assert the same wage-suppression claims resolved by the Settlement Agreements and Final Judgment. The Opposition does not argue that the Alabama claims arise from different conduct, seek recovery for a different injury, or fall outside the releases and covenants not to sue. It contests only whether the 86 individuals successfully excluded themselves from the settlement class.

That distinction matters. The Settlement Agreements release claims arising out of or relating to the alleged conspiracy to suppress compensation paid to poultry workers. ECF No. 745-5, Wayne Farms Settlement Agreement ("WFSA") §§ I.B.33, II.B.2; ECF No. 745-4, Sanderson Farms Settlement Agreement ("SFSA") §§ I.B.33, II.B.2. They also define Settlement Class Members as persons within the Settlement Class who did not timely and properly exclude themselves. WFSA § I.B.36; SFSA § I.B.36. The Final Judgment approved the releases and

3

covenants not to sue and retained jurisdiction to enforce them.  ECF No. 1011 ¶¶ 3–4, 8–10; WFSA § II.B.2–3; SFSA § II.B.2–3.  Thus, if the 86 individuals did not timely and properly opt out, they are Settlement Class Members bound by the releases, covenants not to sue, and Final Judgment.

The Opposition offers no contrary theory.  It does not identify any claim against Wayne-Sanderson that falls outside the releases.  It does not contend that a person who failed to opt out may nonetheless pursue Released Claims.  The only disputed issue is opt-out validity.

**B.      <u>The Jinks Crow Plaintiffs Have No Evidence That They Validly Opted Out</u>**

"[A] judgment entered in a class action is binding on each class member unless, in a class action certified under Rule 23(b)(3), the class member elects timely to opt out."  *In re MI Windows & Doors, Inc., Prods. Liab. Litig.*, 860 F.3d 218, 223 (4th Cir. 2017); *see also, e.g., Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 379 (1996).  The burden therefore rests with Jinks Crow to prove that each of the 86 individuals timely and properly opted out.

The Court-approved process required each Settlement Class Member who wished to preserve separate claims to submit a request for exclusion, mailed and postmarked, by May 27, 2025.  ECF No. 1006-9 ¶¶ 1–4, 35.  The Opposition does not dispute that requirement or that none of the 86 appears on A.B. Data's Court-filed exclusion list.  Instead, Jinks Crow relies on signed forms, a spreadsheet, A.B. Data correspondence, and generalized assertions that counsel submitted opt-outs in bulk.  That evidence does not establish valid opt-outs for the 86 individuals.

*First*, the purported signed forms do not prove valid exclusions.  *See* Opp. 2, 4, 7–8; ECF No. 1050-2, Crow Decl. Ex. 1.  A signed form is not enough by itself.  Jinks Crow must show that each form was submitted through the Court-approved process, mailed and postmarked by the deadline, and accepted as a valid exclusion.  It has not done so.  Jinks Crow offers no envelopes, postmarks, certified-mail receipts, mail logs, USPS tracking information, or testimony from anyone who actually mailed the forms.  Nor is the batch of forms itself uniformly reliable; at least

one form submitted as proof of exclusion lists the claimant's name and address as "N/A."  *See* ECF No. 1050-2, Crow Decl. Ex. 1 at 71.

Jinks Crow employee Kijana Mitchell states only that she "directed" forms to be mailed and that "[t]hese forms were mailed as instructed."  ECF No. 1050-5, Mitchell Aff. ¶ 7.  She does not say who mailed them, when they were mailed, which forms were mailed, whether all 86 were mailed, or whether any mailing was postmarked by May 27, 2025.  That omission is dispositive under *McKenzie,* which rejected opt-out proof where the affidavit failed to identify "who mailed the form or that the form was sent before the deadline."  *McKenzie v. Norfolk S. Ry. Co.*, 497 F. App'x 305, 311 (4th Cir. 2012).  Jinks Crow's evidence has the same defect.  It does not establish, for any particular individual, that a timely and proper exclusion request was submitted through the Court-approved process.

*Second*, the spreadsheet does not establish valid opt-outs.  *See* Opp. 2, 4–5, 7–8; ECF No. 1050-4, Crow Decl. Ex. 3.  A spreadsheet created by counsel is not an opt-out request.  At most, it is counsel's record of who counsel contends opted out.  The opt-out right belongs to the individual class member, and counsel cannot exercise class rights en masse.  *See Sharp Farms v. Speaks*, 917 F.3d 276, 298 (4th Cir. 2019) ("There is no class action rule, statute, or case that allows a putative class plaintiff or counsel to exercise class rights en masse, either by making a class-wide objection or by attempting to effect a group-wide exclusion from an existing class.").  A spreadsheet may help counsel track clients, but it does not prove that A.B. Data received, processed, and accepted valid exclusions for each of the 86 individuals.  Jinks Crow's own submission confirms the point.  It admits that signed forms cannot be located for two individuals on Exhibit C, though it asserts that their names appeared on Jinks Crow's spreadsheet.  Opp. 8 n.3;

5

ECF No. 1050-1, Crow Decl. ¶ 8.  If the spreadsheet were enough, the missing forms would not matter.  They do.

*Third*, the A.B. Data correspondence does not supply the missing proof.  *See* Opp. 2, 4–5; ECF Nos. 1050-3, 1050-6, Crow Decl. Exs. 2, 5.  The correspondence shows only that A.B. Data accommodated electronic uploads and requested a spreadsheet to help process Jinks Crow's large-volume submission.  It did not waive the Court-approved mailing requirement.  To the contrary, A.B. Data warned: "Whereas the Court requires that the exclusions be mailed, we advise you to also send the requests by mail." ECF No. 1050-3, Crow Decl. Ex. 2 at 8.  A.B. Data also instructed Jinks Crow to verify that "all putative class members in your Exclusion Request align with the Class Definition before including them in the Excel document."  *Id.* at 2.  Those instructions confirm that the spreadsheet was an administrative tool, not proof that every listed individual was eligible, timely submitted a mailed exclusion request, or was validly excluded. Nor does A.B. Data's June 30 email "confirm" opt-out status.  *See* ECF No. 1050-6, Crow Decl. Ex. 5.  It states only that A.B. Data was providing Jinks Crow's "original opt-out documentation" through ShareFile "for your reference," and notes that the documentation was received across multiple submissions and "may contain duplicates." *Id.* at 2.  It does not identify any of the 86 as valid opt-outs, state that the Court-filed exclusion list was wrong, confirm that any mailed request was timely postmarked, or say that any individual was accepted as excluded.

**C.    Speculation About A.B. Data Error Does Not Justify Denying Enforcement**

Jinks Crow's fallback theory is that A.B. Data must have made a mistake.  But the record Jinks Crow invokes does not prove valid opt-outs; it shows confusion generated by Jinks Crow's mass opt-out process.  Most significantly, A.B. Data's records show that many individuals Jinks Crow now claims opted out also claimed settlement payments.  A person who validly opted out is

6

not entitled to settlement proceeds, and a person who accepts settlement benefits acts inconsistently with any purported election to leave the Settlement Class.  *See McKenzie*, 497 F. App'x at 311 (affirming finding that appellants failed to opt out where the record showed that one appellant submitted an opt-out form but later participated in the settlement and received payments). For any individual who claimed settlement funds, that conduct is independently fatal to Jinks Crow's assertion that the individual made a clear and effective election to opt out.

The payment issue also exposes a broader problem.  It raises serious questions about what those individuals understood, what they were told about the settlement fund and their right to participate in it, and whether Jinks Crow's process accurately captured each client's individual decision.  Those questions cannot be answered by counsel-created spreadsheets or generalized declarations about bulk submissions.  They require individualized proof.

Courts do not disregard class settlement records based on speculation that an administrator or counsel erred.  In *Moulton v. United States Steel Corp.*, 581 F.3d 344, 354 (6th Cir. 2009), the Sixth Circuit denied relief to class members who relied on counsel to submit opt-outs and later claimed, without substantiation, that a clerical error caused them to be omitted from the opt-out list.  Likewise, in *Perrigo Institutional Investor Group v. Papa*, 150 F.4th 206, 212 n.3, 217–19 (3d Cir. 2025), the Third Circuit rejected a class member's reliance on counsel's uncertainty about whether an exclusion letter was never mailed, lost in transit, or received but not recorded.  The same principle applies here.  Without administrator-confirmed proof that each of the 86 timely and properly opted out, Jinks Crow cannot displace the Court-filed exclusion record.

Jinks Crow's own due-process argument confirms the proper path if the Court believes further record development is necessary.  Jinks Crow argues that the Court cannot determine whether the 86 are bound without individualized adjudication.  But that does not support denial of

Wayne-Sanderson's Motion or continued litigation of Released Claims elsewhere. It instead supports a targeted opt-out-validation process before this Court. That process should require Jinks Crow to provide from A.B. Data information including a signed exclusion request, when and how it was received, whether any mailed request was timely postmarked, whether the request was accepted as valid, whether the individual claimed settlement funds, and what payment-related communications were sent to that individual.

That process should also include discovery into Jinks Crow's own opt-out process. Jinks Crow asks the Court to rely on its bulk process, counsel-created spreadsheets, and generalized assertions that thousands of individuals knowingly chose to exclude themselves. Having placed that process at issue, Jinks Crow should be required to provide individualized proof showing how the 86 were solicited, what they were told about the settlement, what they were told about the consequences of opting out, whether Jinks Crow calculated or communicated the settlement recovery each person would give up, and whether each person understood that Jinks Crow was excluding them from a Court-approved settlement rather than helping them obtain settlement benefits.

The inquiry should also include whether Jinks Crow ever calculated what each client was giving up. If Jinks Crow advised thousands of clients to opt out, it should be able to show whether it calculated or communicated each client's potential settlement recovery based on the employment information relevant to the claims process. Jinks Crow's later efforts to obtain employer-side discovery into that same information suggest it may not have performed that individualized analysis before attempting to exclude clients from the settlement. That bears directly on whether the alleged opt-outs were knowing and valid.

8

To the extent Jinks Crow relies on communications with the 86 to prove knowing and valid opt-outs, it cannot use privilege as both sword and shield. Nonprivileged facts concerning Jinks Crow's opt-out process, client instructions, mailing and transmission procedures, and settlement-payment communications are plainly discoverable. And if Jinks Crow relies on privileged communications to establish that any individual knowingly opted out, it cannot withhold other privileged communications on the same subject matter that are necessary to test that assertion. *Hawkins v. Stables*, 148 F.3d 379, 384 n.4 (4th Cir. 1998) (recognizing that disclosure of privileged communications generally waives privilege as to related communications concerning the same subject matter).

The concern is not limited to the 86 individuals at issue on this Motion. Jinks Crow claims to represent approximately 3,500 opt-outs, yet A.B. Data's records already show that 54 Jinks Crow clients claimed settlement funds.[1] That inconsistency raises a broader risk of confusion while the claims process remains open. Given the broad notice process and the possibility that class members may receive settlement communications under different addresses, names, or employment records, other Jinks Crow clients may submit participation forms or receive settlement-related communications inconsistent with Jinks Crow's asserted opt-out position. That is all the more reason to require prompt notice to all clients Jinks Crow contends opted out, require

---

[1] Given the facts undisputed by Jinks Crow–that at least 54 individuals they purport to represent received, and apparently accepted, settlement proceeds from this Court–in spite of their alleged opting out–and given Jinks Crow's own pleadings describing its clients as "vulnerable employees" on at least 3 occasions in its Alabama Complaint, *see* Compl. at 4 (Introduction), 43 (Count IV), and 44 (Count VI), *Ayers v. Agri Stats, Inc.,* No. 09-CV-2026-900001.00 (Cir. Ct. Bullock Cnty., Ala. Jan. 7, 2026) , and as "disproportionately comprised of vulnerable populations, including marginalized citizens, immigrants, refugees, and asylum-seekers with limited English proficiency, education, and alternative employment options," *id.* at 25 (Factual Allegations § A), this Court would be well within its rights to undertake an inquiry into the process used, and the representations made to, and the understandings of, each of the more than 3,500 "opt outs" Jinks Crow purports to represent. That said, Wayne Sanderson only seeks such relief with respect to the 86 alleged opt outs whom the Settlement Administrator did not record as excluded.

9

individualized proof before any Released Claim proceeds, and stay discovery in any other case unless and until the relevant claimant establishes a valid opt-out.[2]

The problem is especially acute because the Court has extended the participation-form deadline to August 31, 2026. *See* ECF No. 1051.  Any individual who did not validly opt out remains a Settlement Class Member and still may have an opportunity to participate in the settlement fund.  Jinks Crow's clients should not be left pursuing Released Claims in Alabama while unaware that, if they did not validly opt out, they may still submit a participation form and receive settlement benefits.  At minimum, Jinks Crow should be required to provide prompt written notice of the extended participation-form deadline, provide the necessary forms and instructions, and certify compliance to the Court.

No merits discovery (in Alabama or anywhere else) is warranted unless and until an individual establishes a valid opt-out.  That conclusion follows from the basic purpose of class settlement procedure.  Class settlements depend on clear, administrable rules for notice, exclusion, final approval, and judgment.  As the Seventh Circuit explained in enforcing a class settlement against a putative opt-out, "[f]ollowing mechanical rules is the only sure way to handle suits with thousands of class members." *In re Navistar MaxxForce Engines Mktg., Sales Pracs. & Prods. Liab. Litig.*, 990 F.3d 1048, 1053 (7th Cir. 2021).  Wayne-Sanderson paid $69.8 million for finality, releases, and covenants not to sue.  It should not be forced to litigate Released Claims in Alabama because Jinks Crow asks this Court to displace the Court-filed exclusion list based on

---

[2] Jinks Crow's procedural strategy underscores the prejudice to Wayne-Sanderson and the settlement process.  Jinks Crow has already filed three Alabama actions, each naming fewer than 100 plaintiffs, and has threatened additional actions arising from the same alleged poultry-wage conduct.  That creates the risk of duplicative state-court litigation, inconsistent rulings, overlapping discovery obligations, and staggered proceedings over claims this Court already released.  The class-action process is designed to avoid that uncertainty: by the end of the opt-out period, "the state of the class" should be "fixed enough to allow parties to conduct their affairs." *In re MI Windows & Doors, Inc.*, 860 F.3d at 226 (quoting Manual for Complex Litigation (Fourth) § 21.321 (2004)).  That is why opt-out validity should be resolved by this Court before Released Claims proceed elsewhere.

counsel-created records, unverified mailing assertions, and speculation that A.B. Data made a mistake.

## II.    THE COURT RETAINS AUTHORITY TO ENFORCE THE FINAL JUDGMENT

Jinks Crow's Anti-Injunction Act, due-process, adequate-remedy, and narrow-tailoring arguments all rest on the same premise: that the 86 individuals validly opted out.  They have not made that showing.  This Court approved the Settlement Agreements, supervised the opt-out process, entered Final Judgment, and retained jurisdiction to enforce that Judgment.  If the 86 individuals did not timely and properly opt out, they are Settlement Class Members bound by the releases, covenants not to sue, and Final Judgment.

Jinks Crow tries to convert its failure of proof into a jurisdictional defect.  That is backwards.  This Court already adjudicated the binding effect of the settlement on all Settlement Class Members who did not timely and properly opt out.  What remains is an enforcement question: whether the 86 individuals fall within that non-opt-out category.  That issue belongs here, before the Court that approved the settlement and retained jurisdiction to enforce it—not in Alabama litigation over Released Claims.

### A.    The Anti-Injunction Act Does Not Bar Enforcement Of This Court's Judgment.

Jinks Crow argues that the Anti-Injunction Act bars relief because this Court has not adjudicated "the threshold question on which the motion depends: whether each of the eighty-six was a bound class member . . . ."  Opp. 10.  But the relitigation exception does not require a separate person-by-person enforcement proceeding before final judgment. The Court approved the releases, entered Final Judgment, and retained jurisdiction to enforce it.  ECF No. 1011 ¶¶ 3–4, 8–10; WFSA § II.F.8; SFSA § II.F.9.  The only remaining question is whether Jinks Crow can prove that the 86 timely and properly opted out.  Its Opposition establishes that it cannot.

11

*MI Windows* confirms the point. There, the Fourth Circuit affirmed an injunction barring a non-opt-out class member from pursuing state-court claims covered by a class settlement release. *In re MI Windows & Doors, Inc.*, 860 F.3d at 224–25. Jinks Crow tries to distinguish *MI Windows* because the class member there "simply failed" to opt out, while Jinks Crow claims the opt-out issue is disputed here. Opp. 10. But an unsupported dispute is not enough to avoid enforcement; Jinks Crow must prove valid opt-outs. Because it has not, the Court should enforce the official record: the 86 individuals remain Settlement Class Members bound by the Settlement Agreements and Final Judgment.

*Kay Co. v. Equitable Production Co.,* 27 F.4th 252 (4th Cir. 2022), does not change the result. Jinks Crow cites *Kay Co.* for the general proposition that an injunction under the relitigation exception is discretionary. Opp. 6, 12. Wayne-Sanderson agrees that the Court has discretion. But this is exactly the circumstance where enforcement is warranted: Jinks Crow is pursuing claims this Court already released, on behalf of individuals who do not appear on the Court-filed exclusion list. The requested injunction protects this Court's Judgment; it does not interfere with unrelated state-court litigation.

### B.    Due Process Has Already Been Provided.

Jinks Crow argues that due process prevents the Court from declaring the 86 individuals bound without an individualized adjudication. Opp. 9–10. But due process was provided through the class settlement process this Court approved. The Court certified a Settlement Class, approved notice, provided an opportunity to opt out, entered Final Judgment, and retained jurisdiction to enforce that Judgment. *See* ECF No. 1006-9 ¶¶ 10, 14–21; ECF No. 1011 ¶¶ 3–4, 8–10. A class member who receives constitutionally adequate notice and fails to timely and properly opt out is bound by the judgment.

12

Jinks Crow's individualized-adjudication argument does not change that result. Wayne-Sanderson does not contend that valid opt-outs are bound. Nor does it ask the Court to extinguish claims of persons who can establish that they timely and properly excluded themselves. The issue is proof. The 86 individuals do not appear on the Court-filed exclusion list, and Jinks Crow has not provided competent, individualized proof that any of them timely and properly opted out. Due process does not require the Court to accept counsel-created spreadsheets, generalized assertions of mailing, or speculation about administrator error in place of proof.

Nor do *Smith* or *Sharp Farms* help Jinks Crow. *See* Opp. 9–10. In *Smith,* no class had been certified, no notice had issued, and no exclusion mechanism existed. *See Smith v. Bayer Corp.*, 564 U.S. 299, 305–07, 312 (2011). Here, all of that happened. And *Sharp Farms* reinforces that opt-out rights belong to individual class members and must be exercised through the proper process. *Sharp Farms*, 917 F.3d at 298–99. That principle supports Wayne-Sanderson, not Jinks Crow. If the right belongs to each individual, then Jinks Crow must prove that each individual knowingly and effectively exercised it.

That point is reinforced by A.B. Data's records, which reflect that many individuals Jinks Crow now claims opted out also cashed settlement payments. Such conduct is inconsistent with a clear election to leave the Settlement Class and raises individualized questions about what each person understood and did.

C.    **Wayne-Sanderson Should Not Be Forced to Litigate Released Claims In Alabama.**

Jinks Crow argues that Wayne-Sanderson can simply assert the releases as a defense in Alabama, so there is no need for injunctive relief. Opp. 11. That ignores the bargain this Court approved. The Settlement Agreements expressly provide that a breach may cause irreparable harm and that the Settling Parties may seek specific performance and injunctive relief without posting

13

bond.  WFSA § III.L; SFSA § III.L. More fundamentally, Wayne-Sanderson paid nearly $70 million for releases, covenants not to sue, and finality -- not for the right to relitigate released claims in another forum.

Jinks Crow is pursuing or threatening the same compensation-suppression claims resolved by this Court's Final Judgment, on behalf of individuals who do not appear on the Court-filed exclusion list and for whom Jinks Crow has not provided competent, individualized proof of timely and proper exclusion.  Allowing those claims to proceed in Alabama would undermine the Final Judgment, deprive Wayne-Sanderson of the benefit of the releases and covenants not to sue, and invite inconsistent rulings about the effect of a settlement this Court approved and retained jurisdiction to enforce.

### D.    The Requested Relief Is Narrowly Tailored.

Jinks Crow argues that Wayne-Sanderson seeks a sweeping adjudication against nonparties and counsel.  Opp. 11–12.  Not so.  The requested relief applies only to the 86 identified individuals, only to Released Claims, and only to claims against Wayne-Sanderson and its Released Parties.  It does not reach valid opt-outs, persons outside the Settlement Class, or claims outside the releases.  And if any individual can establish a timely and proper opt-out, Wayne-Sanderson does not seek to enforce the Final Judgment against that person.

Wayne-Sanderson does not seek to bind Jinks Crow because it is class counsel, a party to the Settlement Agreements, or a general participant in this action.  It seeks to prevent Jinks Crow from acting on behalf of clients who are Settlement Class Members bound by the releases and covenants not to sue.  Once the Court determines that an individual did not timely and properly opt out, counsel may not evade the Final Judgment by continuing to pursue that individual's Released Claims in another forum.

**CONCLUSION**

For the foregoing reasons, Wayne-Sanderson respectfully requests that the Court grant its Motion to Enforce Settlement Agreements and Final Judgment and enter an order: (1) declaring that the identified 86 individuals are Settlement Class Members bound by the Settlement Agreements and the Final Judgment because Jinks Crow has not established that they timely and properly opted out; (2) enjoining those individuals from prosecuting, pursuing, threatening, demanding payment for, or otherwise asserting any Released Claims against Wayne Farms, Sanderson Farms, or their Released Parties in any forum; (3) directing counsel to dismiss or withdraw all pending actions, demands, or threats asserting such Released Claims; and (4) requiring Jinks Crow to provide prompt written notice of the Court's July 20, 2026 Order extending the participation-form deadline to August 31, 2026, *see* ECF No. 1051, to provide participation forms and instructions so that any non-opt-out Settlement Class Member may submit a participation form before the extended deadline, and to certify compliance to the Court.

In the alternative, if the Court concludes that further record development is necessary before enforcing the Final Judgment as to all 86 individuals, Wayne-Sanderson respectfully requests that the Court order a prompt, targeted opt-out-validation process before this Court. That process should include individualized discovery from Jinks Crow concerning the alleged opt-outs, any settlement-payment activity, and the communications and procedures on which Jinks Crow relies to establish knowing and valid exclusions. It should also permit limited depositions, including of any Jinks Crow affiant and, if necessary, counsel with personal knowledge of the opt-out process. During that process, prosecution and discovery of Released Claims in any other forum should be stayed or enjoined, and Jinks Crow should be required to prove valid opt-out status on an individual-by-individual basis by a date certain.

Dated: July 31, 2026                                    Respectfully submitted,


                                                        /s/ Stephen R. Chuk
                                                        Christopher E. Ondeck
                                                        Stephen R. Chuk
                                                        Rucha A. Desai
                                                        PROSKAUER ROSE LLP
                                                        1001 Pennsylvania Ave, NW, Suite 600S
                                                        Washington, DC 20004
                                                        Tel: (202) 416-5865
                                                        Fax: (202) 416-6899
                                                        condeck@proskauer.com
                                                        schuk@proskauer.com
                                                        rdesai@proskauer.com

                                                        *Attorneys for Defendant Wayne Farms, LLC and
                                                        Defendant Sanderson Farms, LLC*

16