Proskauer>> Proskauer Rose LLP 1001 Pennsylvania Avenue, NW Suite 600 South Washington, DC 20004-2533

October 6, 2026

**Filed on CMECF**

Christopher Ondeck
Partner
d +1.202.416.4865
f 202.416.6899
condeck@proskauer.com
www.proskauer.com

United States Magistrate Judge Erin Aslan
United States District Court for the District of Maryland
101 West Lombard Street, Chambers 8B
Baltimore, MD 21207

**Re: *Jien v. Perdue Farms, Inc.*, No. 19-cv-2521 (D. Md.), Response to ECF No. 1069**

Dear Judge Aslan:

Wayne Farms and Sanderson Farms (collectively, "Wayne-Sanderson"), respectfully submit this response pursuant to the Court's September 30 Order (ECF No. 1069) directing the parties to address the need for and appropriate scope of discovery.

## Background

Wayne-Sanderson paid nearly $70 million to resolve the underlying litigation to obtain the finality reflected in the Settlement Agreements and Final Judgment. Those settlements broadly release Wayne-Sanderson "from any and all claims . . . , under federal or state law[,] [that] in any way aris[e] out of or relat[e] in any way to an alleged or actual conspiracy or agreement between Defendants relating to reducing competition for the hiring and retaining of" the class members. ECF No. 745-4 at 12–13; *see also* ECF No. 745-5 at 12–13. The covenant not to sue precludes class members from suing Wayne-Sanderson for the released conduct. ECF Nos. 745-4 at 13; 745-5 at 13. In approving the settlements, the Court dismissed all claims in this litigation with prejudice and enjoined class members from litigating all claims arising out of the conduct at issue. ECF No. 1011 at 7–8 ¶¶ 2–3. This Court retained jurisdiction to enforce the settlements, and, in the event of breach, the non-breaching party was authorized to seek enforcement of the settlements. *Id.* at 9 ¶ 10. After final approval, Jinks Crow, which purports to represent thousands of alleged opt-outs began threatening and asserting state-law claims, including claims against Wayne-Sanderson based on the same conduct that was the subject of the settlements in this case.

***The Motion to Enforce and Subsequent Proceedings.*** Wayne-Sanderson moved to enforce the Settlement Agreements after determining that 86 individuals on whose behalf Jinks Crow threatened or asserted claims were not on the list of opt-outs filed by the settlement administrator (A.B. Data) in the underlying case. Jinks Crow opposed the motion. It argued that all 86 validly opted out from the class. ECF No. 1050. Jinks Crow mainly shifted the blame to A.B. Data. Jinks Crow claimed that it validly opted out its clients by sending A.B. Data spreadsheets listing individuals it was seeking to exclude from the class. *See id.*

The briefing also identified additional inconsistencies in Jinks Crow's bulk opt-out process that require Court supervision. In its opposition, Jinks Crow revealed that 54 claimants (mostly not among the 86) had claimed settlement funds, even though Jinks Crow maintained that those clients opted out and remained free to pursue their threatened state-law claims based on the same

alleged conduct. Those issues go directly to the integrity of the opt-out process, the enforcement of the Final Judgment, and Wayne-Sanderson's bargained-for finality.

As a result, Wayne-Sanderson extended its requested relief and specifically sought discovery concerning Jinks Crow's opt-out process. ECF No. 1054 at 7–8. Put another way, the more Wayne-Sanderson has learned, the less confident it has become that the putative opt outs actually understood they were foregoing recovery under the *Jien* settlements to pursue narrower claims in Alabama state court. Thus, limited discovery targeted at ascertaining whether each Jinks Crow claimant intentionally, voluntarily, and knowingly opted out was necessary. *Id.*

Following a status conference on September 1, 2026, Judge Gallagher ordered discovery and directed the parties to meet and confer concerning a proposed discovery plan. ECF No. 1055. Wayne-Sanderson proposed discovery tailored to ascertaining whether individuals represented by Jinks Crow opted out of the class. By contrast, Jinks Crow sought to restrict Wayne-Sanderson's right to discovery to mainly written discovery drafted by Jinks Crow (to *itself*). *See* ECF No. 1067 at 4–5 (further explaining the meet and confer). After Wayne-Sanderson would not agree, Jinks Crow filed a Notice withdrawing its opposition and requesting that the 86 claimants be permitted to participate in the *Jien* settlements and seeking other affirmative relief from the Court. ECF No. 1065. In response, Wayne-Sanderson explained that the Notice withdrew Jinks Crow's opposition to Wayne-Sanderson's Motion, but it did not resolve the factual issues that led Judge Gallagher to order discovery. Instead, Jinks Crow continues to maintain that the 86 individuals validly opted out while simultaneously asking that those same individuals be permitted to participate in the settlements after the claims-submission deadline. Wayne-Sanderson explained that as a result of the procedural maneuver, its Motion to Enforce should now be granted as unopposed, and its discovery plan should be entered. ECF No. 1067. In view of the concerns discussed above that developed through the motion to enforce briefing, Wayne Sanderson proposed limited discovery tailored to determining whether the individuals represented by Jinks Crow knowingly, intentionally, and validly opted out was necessary. *Id.*

**<u>Discovery Is Necessary And Should Proceed Under Wayne-Sanderson's Proposed Schedule</u>**

Discovery remains necessary because the factual dispute extends beyond whether the 86 individuals should be treated as members of the Settlement Class. Wayne-Sanderson seeks enforcement relief ensuring that these individuals, and anyone acting on their behalf, may no longer assert, threaten, or pursue Released Claims against Wayne-Sanderson. Jinks Crow's Notice leaves unresolved its prior demand letters, pending or threatened claims, whether the 86 individuals authorized or were informed of Jinks Crow's change in position, and what mechanism exists to avoid duplicate recovery if individuals who pursued or settled state-law claims also receive benefits from the *Jien* settlements. Limited discovery is necessary to determine whether the individuals represented by Jinks Crow knowingly declined recovery from the *Jien* settlement fund to pursue narrower state-law claims in Alabama court.

Discovery remains necessary for several reasons.

*First,* discovery is needed into the 86 individuals at issue in the Motion to Enforce. Those individuals are absent from the exclusion list filed by A.B. Data, yet, even in its Notice, Jinks Crow maintains they validly opted out. Discovery is necessary to determine what opt-out forms or submissions exist, how they were transmitted, whether and when they were received, whether they were accepted or rejected, and what records support Jinks Crow's position that each individual timely, validly, knowingly, and individually opted out.

*Second*, discovery is needed regarding the payment of settlement funds to Jinks Crow clients. In opposing the Motion to Enforce, Jinks Crow acknowledged that at least 54 individuals (and likely more) beyond the 86 that did not appear on the opt-out list already received *Jien* settlement funds. *See* ECF No. 1050-6 at 2; *see also* ECF No. 1050 at 3. This means that Jinks Crow takes the untenable position that 54 individuals who submitted claim forms and collected settlement funds knowingly opted out the *Jien* settlements. That issue is separate from, but related to, the 86 individuals. It shows broader inconsistencies between Jinks Crow's asserted opt-out process and the settlement administrator's records. Discovery should determine who claimed settlement funds, who received settlement funds, and whether any such individuals also continue to assert, threaten, or pursue state-law claims. This discovery is also necessary because by applying for and then retaining class settlement proceeds, the 54 individuals are class members as a matter of law, and should likewise be permanently enjoined from further proceedings. *See McKenzie v. Norfolk S. Ry. Co.*, 497 F. App'x 305, 311 (4th Cir. 2012) (affirming the finding that appellant did not validly opt out where he participated in settlement and received settlement funds).

*Third,* discovery is necessary to determine claimant understanding. The fact that the 54 individuals participated in the settlement they allegedly opted out of supports that the individuals were not fully informed that Jinks Crow was representing them in separate opt out suits, and instead the representation was part of this class action. Discovery is necessary to understand the origin of Jinks Crow's representation of its client, the mode of how the clients were solicited, the scope of Jinks Crow's representation, and more generally, representations made by Jinks Crow concerning the lawsuit the individuals now bring.

Other evidence arising from the Motion to Enforce supports the need for this discovery. Jinks Crow first informed Wayne-Sanderson of its intent to withdraw its opposition to the Motion to Enforce days after the parties' discussion concerning a proposed discovery schedule reached impasse. Its Notice contains nothing establishing that each of the 86 individuals was told about this change, understood the consequences of withdrawing opposition to enforcement, or authorized counsel to seek late participation in the settlements. This raises questions as to whether the 86 clients were informed that Jinks Crow intended to withdraw its opposition to the Motion to Enforce and request leave for them to participate in the *Jien* settlements. To date, and despite Wayne-Sanderson flagging this issue in writing (*see* ECF No. 1067 at 4, 6–7) and before your honor, Jinks Crow has provided no adequate assurance that the 86 individuals at issue are even informed as to the status of this proceeding, much less of the possibility that Jinks Crow's withdrawal of its opposition could result in no recovery for its clients given the expired claims submission deadline.

Proskauer



Relatedly, and as discussed further below, the claims filed or threatened by the 86 claimants in Alabama have been settled with multiple co-defendants in this proceeding that were also sued in Alabama. A special master has been appointed to administer those settlements and a claims website (https://www.poultrycaseupdate.com/) has been established. Jinks Crow has provided no mechanism to assure that the 86 claimants will not impermissibly recover twice, once from the *Jien* settlements and once from the Alabama ones. This significant settlement administration problem continues to repeat itself. Indeed, the Motion to Enforce briefing uncovered another 54 individuals represented by Jinks Crow that are class members (discussed below). Discovery is needed to determine whether additional class members are currently pursuing individual actions.

Publicly available social media posts reinforce the need for the discovery into claimant understanding, as they evidence confusion between the *Jien* litigation and the separate Alabama opt out cases. Some posts link Jinks Crow and their co-counsel Johnny Adams to the *Jien* settlement rather than separate opt-out litigation; others discuss settlement checks, missed deadlines, and whether individuals should have submitted claim forms in the class settlement. *See, e.g.*, Ex. A at 14 (social media post linking the Johnny Adams Law Firm (Jinks Crow's co-counsel) to the *Jien* settlement and not a separate opt-out case); *see also* Ex. B at 5. Other social media posts indicate that Jinks Crow and Johnny Adams are proceeding as if the Alabama state court cases were a class action, not individualized opt-out litigation. *See* Ex. A at 33 (one of multiple social media posts updating all Jinks Crow and Johnny Adams client that "litigation is actively progressing" and further updates will be provided "as they occur"); *see also* Ex. B at 1, 3, 6–7. Further confusing matters, Jinks Crow and Johnny Adams established a "claims" website that is substantially similar to the one used by class counsel in *Jien*. *Compare* Ex. C (*Jien* website), *with* Ex. D (Alabama website). Wayne-Sanderson cites these posts to illustrate the confusion that exists in the public record and underscore the need for discovery into what claimants were told, what they understood, and whether any opt-out or participation decision was knowing and individualized, none of which is privileged.[1]

*Fourth*, discovery is needed to address issues concerning duplicate recovery and the finality of the Settlements. Recent Alabama filings make that concern concrete. On October 1, 2026, after the hearing before your Honor, Jinks Crow filed joint stipulations dismissing Perdue Farms, Inc. and Perdue Foods LLC with prejudice in multiple Alabama actions. *See* Exs. E–G. Those stipulations dismiss only Perdue, leave claims against remaining defendants pending, and expressly reserve "all claims filed and unfiled" against those remaining defendants. *Id.*

Those filings sharpen the double-recovery problem raised in Wayne-Sanderson's filings and during the September 30. They strongly suggest that settlement consideration has been or will be paid to or through Jinks Crow in connection with state court claims arising from the same alleged injury resolved by the *Jien* settlements. But the stipulations disclose no limitation on who

---

[1] To the extent Jinks Crow argues otherwise, any assertion of privilege has been waived. *Rock River Commc'ns, Inc. v. Universal Music Grp., Inc.*, 745 F.3d 343, 353 (9th Cir. 2014) ("A party who affirmatively places its attorney-client communications at issue in a litigation implicitly waives the privilege. The attorney client privilege 'may not be used both as a sword and shield.'" (emphasis added)).

may receive those funds, whether any funds have been or will be distributed to Jinks Crow clients, whether any recipients are among the 86 individuals or the 54 settlement claimants, or whether any offset, release, or mechanism to prevent duplicate recovery exists. At the same time, because the Perdue dismissals provide no finality for Wayne-Sanderson, the Court should, either now or following the limited discovery Judge Gallagher ordered, grant as unopposed Wayne-Sanderson's request to permanently enjoin the 86 individuals, and anyone acting on their behalf, from continuing to litigate, threaten, or pursue Released Claims against Wayne-Sanderson.

Recent proceedings in *In re RealPage, Inc., Rental Software Antitrust Litigation (No. II)*, No. 3:23-md-03071 (M.D. Tenn.), provide a useful framework for addressing similar class-process concerns. *RealPage* regards the allegedly anticompetitive use of revenue management software to impact rental pricing and has resulted in a number of class settlements by defendants. In that settlement context, class counsel raised concerns about a large-scale opt-out process by outside counsel, including whether absent class members had accurate information and had made knowing, individualized opt-out decisions. Ex. H, *RealPage*, ECF No. 1486-1 at 1. Class counsel invoked Rule 23(d) and the court's authority to protect absent class members, regulate communications, and authorize corrective notice where necessary. *Id.* Thereafter, the Court quickly initiated a court-supervised process to address those concerns, including setting an evidentiary hearing, and requiring a curative notice be sent to the class requiring individuals represented by the law firm to individually opt out of the class if they so desired. Ex. I, *RealPage*, ECF No. 1500 (order with curative notice attached); *see also* Ex. J, ECF No. 1527. That framework confirms the appropriate approach here, and makes clear that where a mass opt-out process raises questions about client understanding and settlement administration, the Court should first require an adequate record (based on discovery) before granting affirmative relief.

***Wayne-Sanderson's Proposed Scope of Discovery and Schedule.*** Wayne-Sanderson proposed an expedited discovery at ECF No. 1067-4 and now seeks the entry of substantively similar discovery plan with deadlines running from the date of the Court's Order. *See* Ex. K.

As to scope, Wayne-Sanderson seeks leave to propound requests for production, interrogatories, and serve targeted non-party subpoenas. After document productions, Wayne-Sanderson will assess what depositions are necessary to determine if the individuals represented by Jinks Crow knowingly, intentionally, and voluntarily opted out. Without the benefit of written discovery, Wayne-Sanderson does not know how many depositions will be necessary. But it commits to limit them to depositions necessary to discover the issues addressed above.

Following the conclusion of written discovery, Wayne-Sanderson suggests that the parties file a status report concerning whether supplemental motion practice is necessary. At this stage, supplemental relief appears likely to be necessary at least for Jinks Crow clients who have already participated in the *Jien* settlements while Jinks Crow maintains that they opted out. Discovery will determine whether the scope of the issue is broader and what further relief is appropriate.

Proskauer»



Sincerely,

*/s/ Christopher Ondeck*
Christopher Ondeck