# Exhibit H

# ATTACHMENT 1

**<u>Plaintiffs' Position</u>**: Mason & Perry LLP ("M&P") intends to submit opt out forms for thousands of absent class members ("Class Members") it purports to represent. Notice issued on July 21, 2026. Class Members have contacted Settlement Class Counsel ("Class Counsel") confused and concerned about M&P communications urging them to opt-out of the Settlement Class (the "Class") and claiming to represent them—despite Class Members having no record of any such retention. Based on further investigation, Class Counsel have identified multiple grounds to challenge the validity of the purported opt-out agreements between M&P and Class Members. First, it is far from clear that these Class Members knowingly executed a retainer agreement with M&P. Second, M&P has not demonstrated that the individuals it intends to opt out received accurate or sufficient information to do so knowingly. Third, M&P asserts authority to—by default—opt out any Class Member who did not affirmatively contact M&P to decline. Class Counsel seek Court intervention to protect these Class Members.

Under Rule 23(d), the Court has broad authority to protect the interests of class members in administering class settlements, including regulating communications with Class Members, rescinding suspect opt-out agreements, and issuing any other relief that the Court believes is necessary.[1] Plaintiffs request that the Court exercise that authority here and (1) rescind the purported retainer agreements with M&P (which M&P claims authorize it to opt out Class Members); and (2) authorize the Settlement Administrator to issue the attached corrective notice.

---

[1] *Fox v. Saginaw*, 35 F.4th 1042, 1047, 1050 (6th Cir. 2022); *Wayside Church v. Van Buren Cnty., Mich.*, 103 F.4th 1215, 1221-1225 (6th Cir. 2024); *In re McKesson*, 126 F. Supp. 2d 1239, 1246 (N.D. Cal. 2000); *In re Fire Apparatus Antitrust Litig.,* 2026 WL 2018432, at *1-2 (E.D. Wis. July 13, 2026); *Georgine v. Amchem Prods., Inc*., 160 F.R.D. 478, 518–22 (E.D. Pa. 1995); *Braswell v. Bow Plumbing Grp., Inc.*, 2024 WL 2401782, at *1 (M.D. Ala. May 23, 2024); *In re: Generic Pharms. Pricing Antitrust Litig.* (E.D. Pa.), No. 16-md-2724 (ECF 3822); *In re Payment Card Interchange Litig.* (E.D.N.Y.), No. 5-md-1720 (ECF 6349).

***Background***: For several years M&P has maintained an inquiry form—accessible through its website and third-party referral sites[2]—soliciting personal information from individuals concerning the RealPage action ("Inquiry Page"). Individuals "interested in joining the RealPage lawsuit" were directed to M&P's Inquiry Page and prompted to submit their contact information. Unless they clicked a drop-down "FAQ" button, a person viewing the Inquiry Page would not know that, by simply providing their information, they were formally retaining M&P and authorizing the firm to exclude them from any and all *RealPage* class settlements—including settlements whose existence, terms, and recovery had not yet been announced or could not yet be assessed.[3] M&P's and its referrals' websites did not (1) inform Class Members about the appointment of Class Counsel; (2) disclose the risks and benefits of participating in the class settlement, including that individuals would be subject to discovery, forum selection clauses, or arbitration clauses if they file separately; (3) inform Class Members about the Court's supervision of the class settlement process, including settlement approval and attorney's fees and costs. Instead, without undertaking any discovery or filing a single case, M&P dangled the prospect of Class Members recovering up to 15-21% of their total rent paid if they signed with M&P.[4]

---

[2] *See* M&P Inquiry Page, *available at* https://realpage.masonllp.com/?source=Abraham (last accessed 8/14/26). After Class Counsel requested that M&P correct misleading information about the *RealPage* case on its website, it removed all references to RealPage on its main page and represented that it is no longer accepting clients through its website. As of August 14, 2026, however, the Inquiry Page remains live and accessible through third-party sites. *See, e.g.*, Christopher Svensson, *RealPage class action lawsuit payout – is $5,000+ realistic per sign-up?"* The Class Action Community, *available at* https://www.skool.com/class-action-community/realpage-class-action-lawsuit-payout-is-5000-realistic-per-sign-up?p=cbe0ba98 (linking to Inquiry Page) (last accessed 8/14/2026) (hereinafter, "Svensson.")
[3] *See* M&P Inquiry Page, *supra* note 2.
[4] *See, e.g.*, "RealPage lawsuit payout: Can tenants recover 15-21% of their rent since 2016 if they join and sue?" IsThatLegal.Org, Jan. 25, 2026, *available at* https://perma.cc/EF9M-Z873 (referring claimants to M&P) (captured May 27, 2026); Svensson, *supra* note 2 (last accessed August 14, 2026). M&P recently produced a retainer for a particular Class Member (representing that all its retainers are identical in form), which lists "Bay Point Legal Partners PLLC" as a party

Through its Inquiry Page, M&P treated each visitor's submission of contact information as an executed retainer and authorization to opt them out—without any affirmative signature or indication to the visitor that they were entering a legal agreement. Under these purported retainers, M&P was authorized to automatically opt clients out of any RealPage class settlements in favor of individual litigation. M&P represented that it "retained" clients through this process exclusively ***before*** the RealPage settlements were announced, and that M&P stopped its intake process once the settlements were announced in 2025.[5] Accordingly, by M&P's own account, it could not have informed these individuals of the settlements' terms or provided fact-based advice about whether to opt out — because those settlements did not yet exist or were not yet public.

On July 16, 2026, five days before Class Notice was to issue, M&P convened a "Town Hall" with about 200 individuals in attendance—all of whom M&P claims had signed retainers. A video recording of the Town Hall was produced to Class Counsel and is available upon the Court's request. On the call, attorney Gary Mason stated (among other things):

- "I'm leading this matter and I'm the lawyer whose name is on all the Court pleadings in the case." [This was incorrect: Gary Mason has not signed any pleading in this case.]
- "In this case in the federal court in Nashville, Tennessee before a judge by the name of Crenshaw, lawyers call this an MDL – a multidistrict litigation – and that's the case we're already involved with now." [M&P has not filed any cases in this MDL, or at all.]
- "If you want to stay in the class, the deadline to file a claim is . . . January 29, 2029. That's not when you can get paid. That's the end of the class period. It will be many months after that till payments go out. . . . [C]lass actions often get appealed and that often delays things a year or even more so." [These were incorrect. The claim deadline is Jan. 29, 2027, the class period ends Nov. 21, 2025, and claimants will not have to wait until 2030 for a distribution.]

---

to it. Bay Point Legal is an "AI-assisted" litigation finance arm of Bay Point Advisors. *See also* Svensson, *supra* note 3 (last accessed August 13, 2026). For reasons that are unclear, Bay Point is not in M&P's filed exemplar retainer (Dkt. 1441-1, Ex. A), but is on the recently produced retainer.

[5] M&P claims to have interacted with ~20,000 people through this process but declined representation for many after concluding that they were not Class Members. This included dropping representation of individuals who had not rented from a named Defendant, even though that is not actually a condition for Class membership. Class Counsel does not know what M&P communicated to those individuals upon dropping them.

- "July 21, 2026, many class members . . . will receive in the mail a notice from the Court saying that you are part of a class settlement. . . . Don't worry about it."
- In comparing the class settlement recovery to prospective recovery through M&P, his clients could "accept $10 against $5,000."
- Class members not signed up with M&P "don't have lawyers."
- "[M&P's] default assumption is that if we have the information that we need from you, we're going to opt you out if we don't hear from you. . . . As I said, I'm going to sign it as the authorized representative and that's what your retainer allows me to do."

On August 4, 2026, consistent with its Town Hall representations, M&P sent out a blast email, stating that it intended to opt out recipients unless they responded in five days (Aug. 9) to decline.

***Argument***: This Court has broad authority to manage a class action, including to regulate communications and issue appropriate orders to protect class members and ensure the integrity of class settlement procedures.[6] Here, exercise of that authority is warranted. Class Counsel's investigation has shown that (1) it is unclear whether all Class Members that M&P purports to represent knowingly retained it to represent them on an "opt-out-only basis;" (2) M&P obtained the opt-out authorizations on which it is relying before any settlements were made public, based on an online intake process that included misleading information and excluded material information; (3) there is no evidence that anyone whom M&P seeks to opt out ever had enough information to make an informed decision whether to opt out, let alone retain M&P; and (4) M&P has stated (both in emails to Class Members and during its Town Hall) that its "default assumption" is to opt out Class Members for whom it has "sufficient information"—meaning simply the property name (if known), address, and lease dates—and that absent a response, M&P will proceed to opt them out. M&P has arrogated to itself the role of establishing the default outcome for these individuals' claims, displacing the Court-ordered framework and substituting client inaction, rather than informed individual choice, as the operative trigger for exclusion from the settlements.

[6] *Fox*, 35 F.4th at 1047; *Wayside*, 103 F.4th at 1221-1225.

M&P contends that its opt-out forms will comply with Court-ordered procedures. The process provides no shield here: it presumes that the person submitting the opt-out form has actual authority to act for a Class Member, the authority was validly procured, and each Class Member is making a knowing and informed decision.[7] There is substantial evidence that none of these things are true here.[8] M&P also cites *Fox v. Saginaw*, where the Sixth Circuit acknowledged that there ***are*** circumstances that can justify pre-certification rescission.[9] However, it faulted the district court for not providing reasoning to justify that relief in that case.[10]

A corrective communication alone is insufficient. Full protection of Class Members' rights requires the Court to (1) rescind the purported retention agreements between affected Class Members and M&P (and require M&P inform its roster of that ruling); and (2) authorize the administrator to issue curative notice—at M&P's expense—to all Class Members M&P contacted regarding the *RealPage* matter, providing accurate information and an additional 14 days (to September 15) to make a knowing and voluntary opt-out decision. As noted above (fn. 1), courts have granted this relief in comparable circumstances.[11]

---

[7] *See In re CenturyLink*, 2020 WL 3512807, at *3 (D. Minn. June 29, 2020) (requirements for opt outs intended "ensure that the class member is individually opting out" and is "making an informed, individual decision").

[8] M&P cites *Google* and *Does 1-5*, but neither involved evidence that the class members had not made a knowing, informed choice to opt out.

[9] *Fox*, 35 F.4th at 1050 n.3 (citing *Currency Conversion*).

[10] In *Fox* there was no dispute that the individuals had retained the company as counsel; no evidence the company knew of the pending class action until after certification, *id.* at 1051; and no allegation that the company solicited clients solely to opt them out of future class settlements.

[11] Should the factual record be in dispute, Class Counsel are willing to engage in proceedings to determine (*inter alia*) whether absent Class Members received misleading communications.

**Mason & Perry's Position**: Plaintiffs' Counsel contends that Mason & Perry's (M&P) opt-outs are invalid and intends to ask the Court to rescind them and all of the underlying retainer agreements between M&P and its clients, authorize the Claims Administrator to send "corrective" information directly to M&P clients, and require re-signing and resubmitting of the opt-out forms. M&P opposes this proposal in its entirety.[12]

M&P's position rests on five independently dispositive grounds: (1) every retainer agreement and exclusion form is individually signed by the client, with a signed copy emailed immediately upon execution—no opt-out rests on silence; (2) M&P's opt-outs comply exactly with the procedure negotiated with and agreed to by Plaintiffs' Counsel and filed with the Court; (3) rejecting valid opt-outs would violate the due process rights of M&P's clients under the Fourteenth Amendment; (4) with limited exceptions, pre-certification retainer agreements cannot be rescinded under binding Sixth Circuit precedent; and (5) advising clients of their right to opt-out is a professional obligation, not misleading conduct.

***Background***: M&P currently represents approximately 8,000 clients in connection with the RealPage rental pricing software litigation. Not all are eligible for exclusion from the class; through ongoing investigation, M&P has limited its intended opt-outs to clients for whom it can substantiate residence in RealPage-affected buildings.[13] M&P stopped soliciting clients when the first Motion for Preliminary Approval of settlements was filed October 2025.

Each client individually retained M&P by executing an electronic retainer agreement authorizing the firm to act as their agent and opt-out of any certified trial or settlement class action on the client's behalf. The retainer and opt-out form is not triggered by a visitor's mere submission

[12] M&P reserves all rights to object to both this LR 37.01 Joint Statement, as this is not a discovery dispute, and to the proposed curative notice.
[13] M&P is prepared to opt-out approximately 6,000 clients prior to the opt-out deadline.

of contact information: each client must separately sign both the retainer and opt-out form, and receives a fully signed copy of each by email promptly upon execution. M&P provided its clients with updates on the class action, informed clients of the settlement terms and notice plan, and gave each client a meaningful opportunity to instruct the firm not to proceed with the opt-out.

Critically, exclusion is likewise decided by signature, not silence. Consistent with each client's signed retainer agreement and opt-out authorization, M&P is preparing to proceed with the opt-out for each client who did not object after learning the settlement terms—but the exclusion form M&P will submit to the settlement administrator is itself separately signed by that client, and more recently by their authorized representative (M&P). Every opt-out is therefore backed by two client-signed documents, not by the absence of a reply to a single email.

The opt-out procedure is not unilateral. M&P proactively challenged the original opt-out requirements (Objection of Proposed Intervenors, Docs. 1413–1414) and negotiated its procedure directly with Plaintiffs' Counsel. The parties reached an agreement, which was memorialized and filed with the Court as a Joint Notice of Resolution (Doc. 1443). M&P now follows, to the letter, the procedure Plaintiffs' Counsel designed. Plaintiffs' Counsel contends that M&P's opt-outs are invalid because clients signed retainer agreements before settlement terms were known, and they have proposed rescinding all opt-outs, sending "corrective" communications, and requiring re-signing—a remedy amounting to opt-out suppression and interference with existing attorney-client relationships. M&P has offered to send any mutually agreed-upon corrective communication and to extend the deadline if necessary. Plaintiffs' Counsel rejected those offers.

***Argument:*** Plaintiffs' Counsel's central factual premise—that M&P's clients did not knowingly and individually authorize their retention or exclusion—is incorrect. M&P's intake process requires its prospective clients to view the retainer agreement before they assent. Each

retainer bears that client's own electronic signature, emailed to the client at signing; M&P clients moving forward with opting-out likewise electronically-signed a request for exclusion. Plaintiffs' Counsel's representation that individuals who provided contact information were somehow retaining M&P and authorizing them to exclude them from class settlement without their knowledge and without them having the opportunity to sign and review a written retainer or written exclusion request is patently false. Plaintiffs' Counsel's suggestion that non-response to a single email constitutes consent describes no client's actual opt-out.

Further, M&P's opt-outs are in exact compliance with the court-filed procedure. The agreed-upon procedure requires three things: (1) submission by the September 1, 2026, deadline; (2) signature by the class member or an authorized agent; and (3) proof of class membership. M&P's opt-outs will satisfy all three—each will be timely, each will be accompanied by proof of class membership, and each will be signed by M&P as "agent," the precise term the procedure uses, acting on individualized, signed authorization from each client and submitted only after that client separately signed the exclusion form itself. This is not substantial compliance—it is exact compliance with a procedure Plaintiffs' Counsel and M&P agreed to and filed with the Court. Plaintiffs' Counsel cannot credibly challenge opt-outs that conform to terms it helped create; if the procedure is now deficient, the remedy is to seek modification of the Court's order, not to declare compliant opt-outs invalid after the fact. *See In re Google Assistant Privacy Litig.*, 2025 WL 510435, at *3–4 (N.D. Cal. Feb. 14, 2025) (accepting 69,507 attorney-submitted opt-outs; a signature requirement should not "defeat the Arbitration Claimants' expressed intention to exclude themselves from a Class"); *Does 1-5 v. Found. Health Plan, Inc.*, 2025 WL 2998156, at *5 (N.D. Cal. Oct. 24, 2025) (finding reasonable individualized signatures with either a wet signature or electronic one collected by counsel and batch-submitted to the settlement administrator).

M&P's procedure mirrors—and exceeds—what *Kaiser* endorsed. Each client authorized the opt-out by electronic signature, received a signed copy of that authorization by email, was informed of the settlement terms after they were announced, and was given a further opportunity to withdraw that authorization before any opt-out was submitted. No court has required this level of protection; M&P provided it voluntarily.

Plaintiffs' Counsel cannot argue that a process it designed fails to satisfy due process. The right to exclude oneself from a class settlement is a substantive, constitutionally protected interest secured by due process. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (holding that due process requires, at a minimum, that an absent class member "be provided with an opportunity to remove himself from the class by executing and returning an 'opt out' or 'request for exclusion' form"). Rejecting these opt-outs would strip thousands of class members of that right, validly exercised, in writing, and, after learning the settlement terms, chosen not to relinquish. *See also In re Google Assistant Privacy Litig.*, 2025 WL 510435, at *3 (each claimant's "decision[] to authorize retained counsel to opt-out of the Class on their behalf . . . clearly indicates an intent to exclude themselves from the Class").[14]

Plaintiffs' Counsel's proposal to rescind M&P's retainer agreements must be rejected. In *Fox v. Saginaw Cnty.*, 35 F.4th 1042 (6th Cir. 2022), the Court rescinded retainer agreements where the soliciting party coerced class members into hiring it "without even telling them about the class action." *Id*. at 1048. Conversely, the Court held "there is nothing inherently abusive about engaging clients who later end up members of a class." *Id.* at 1050, *accord Wayside Church v. Van Buren*

[14] If the Court was to order a new opt-out window for M&P's clients after curative notice, M&P would renew its motion for modification of the opt-out procedures to allow for electronic signing. *See* Doc. No. 1413 at 5 ("At a minimum, if the Court declines to allow a consolidated filing, it should allow electronic signatures.")

*Cnty,* Doc. No. 273, No. 14-cv-1274 (W.D. Mich, May 15, 2023) ("Because no class had been certified at the time Visser sent the solicitation letters, the Court finds that Visser was free to communicate with and engage clients, who later were identified as class members, but were unrepresented at the time.") M&P was up front about prospective clients' potential status as class members and kept them updated as to the class action settlements and their right to opt-out, and the option to pursue individual claims—as any competent counsel would do. And unlike Plaintiffs' Counsel, who have failed to provide class members any estimate of their expected recovery amount from the settlement fund, M&P provided a damage estimate based on an overcharge projection that proved remarkably close to what Plaintiffs' Counsel's experts have opined. *See* Doc. 1404 at 3–4 ("Estimated CBSA Overcharges"). Plaintiffs' Counsel nonetheless contend that M&P's communications were "misleading." [15] In this Circuit, however, pre-certification solicitations do not require disclosure of the appointment of Plaintiffs' Counsel, the risk and benefits of participating in a class settlement, or court supervision. *See Fox*, 35 F.4th at 1047 ("abusive communications" include misleading information, misrepresenting the nature of the class action, or coercing people to opt out). Recission of M&P's retainer agreements would be completely unsupported and warranted.[16]

---

[15] In the unlikely event this Court finds abuse tied to pre-certification conduct that support the remedy of rescission, as required by *Fox*, 35 F.4th at 1042, 1047 & 1050, rescission would still require that the class member seeking rescission state under oath that they entered into their contracts in reliance on the false or misleading statements. *See, e.g.*, *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, No. 1:05-md-1720 (E.D.N.Y.), ECF No. 6349 at 11.

[16] As for the town hall, setting aside the fact that less than 4% of the opt-outs participated in it, with the exception of one misstatement which will be corrected (the claims deadline), none of the quoted representations were misleading in context. For example, M&P is in fact the firm on the pleadings it filed in the MDL on behalf of its opt-out clients, *see* Doc. 1413 (Mot. to Intervene, filed May 29, 2026), meaning it was in fact involved in this case prior to the July 16 town hall.

**SUPPLEMENTAL NOTICE FROM THE COURT-APPOINTED SETTLEMENT ADMINISTRATOR**

*In re RealPage, Inc., Rental Software Antitrust Litigation (No. II)*, No. 3:23-md-03071 (M.D. Tenn.)

*A federal court ordered this notice. It is not a solicitation from any lawyer.*

**No request to exclude you (also referred to as "opting out") from these settlements will be valid unless you tell the Settlement Administrator yourself that you want to be excluded, and the transmission is received by 11:59 p.m. ET on September 15, 2026. If you do nothing, you remain a member of the Settlement Class.**

**Why you are receiving this notice**

The law firm Mason & Perry LLP (f/k/a Mason LLP) has communicated with you about this case. Mason & Perry LLP has informed the Court that it intends to ask the Settlement Administrator to exclude its clients from these settlements.

The Court has directed the Settlement Administrator to send this notice to everyone Mason & Perry LLP contacted about this case.

**What the Court has ordered**

No request to exclude you from these settlements will be valid unless the Settlement Administrator receives confirmation from you that you want to be excluded. This applies to any request already submitted, or that may be submitted on your behalf in the future.

To be valid, the confirmation must be a written record of your own decision, made after [DATE THIS NOTICE ISSUED], 2026. It can be submitted online, by email, or by mail. Your lawyer may send it for you, with your authorization. The Settlement Administrator must receive it by September 15, 2026.

A copy of the Court's Order is attached and may also be found on the Settlement Website: www.RealPageRentalSettlement.com. Please review the Order and other documents on the Settlement Website to ensure that you understand all your rights.

**If you do nothing**

You will remain a member of the Settlement Class. You will keep the right to submit a claim for a share of the settlements, which may be submitted online or otherwise received by January 29, 2027.

**If you do want to be excluded**

Send the Settlement Administrator a written statement that you want to be excluded from the settlements in *In re RealPage, Inc., Rental Software Antitrust Litigation (No. II)*. Include your

name, your address, and the address of the rental property. The Settlement Administrator must receive it by **11:59 p.m. ET on** September 15, 2026.

If you are excluded, you will not receive any money from these settlements and you will not be able to object to them. You will keep the right to sue the Settling Defendants on an individual basis.

**You can keep your lawyer and still take part in the settlements**

Remaining a member of the Settlement Class does not require you to end your relationship with Mason & Perry LLP or with any other lawyer, however they do not represent you in connection with the *RealPage* class action and are not Court-appointed in this matter.

If you want to end an agreement with any law firm, you may do so. That is your decision.

**Dates and facts about this case**

Settling Defendants have agreed to pay $359,925,000 into a settlement fund for the benefit of the Settlement Class. The Court has preliminarily approved the settlements and has not yet decided whether to approve them finally.

The Settlement Class covers people who paid rent on a multifamily residential lease from October 18, 2018 through November 21, 2025 on a property that licensed RealPage's revenue management software.

The deadline to submit a claim is January 29, 2027.

The final approval hearing is scheduled for October 15, 2026, before Judge Waverly D. Crenshaw, Jr., in Nashville, Tennessee. The date can change without further notice, so check the settlement website for updates.

The Settlement Website is www.RealPageRentalSettlement.com.

The Court appointed Scott+Scott Attorneys at Law LLP, Robins Kaplan LLP, and Hausfeld LLP to represent the Settlement Class ("Settlement Class Counsel"). They do not charge Settlement Class members.

**What it costs to take part**

Nothing. Settlement Class Counsel do not bill Settlement Class members. Any attorneys' fees and other costs in the Class case come out of the Settlement Fund, and only if the Court approves them.

To be eligible to receive a payment you must submit a claim form. The Settlement Website provides information on how to submit a claim.

**Arbitration**

Many residential leases require disputes to be resolved in arbitration rather than in court. As part of these Settlements, most Settling Defendants agreed not to enforce arbitration provisions, class action waivers, or jury trial waivers against Settlement Class members on the claims in this case.

That agreement protects Settlement Class members. If you are excluded, you are not a Settlement Class member, and a landlord may seek to enforce an arbitration provision in your lease against you if you file an individual lawsuit.

**If you are excluded and pursue your own case**

Under the retainer agreement Mason & Perry LLP uses in this matter, the firm's fee is 40% of any amount recovered, calculated before costs are deducted. Costs and expenses, including expert fees, are also paid out of any recovery. The firm advances those costs, and if there is no recovery you owe nothing.

An individual case may not succeed. There is no guarantee that it will produce a larger recovery than a claim made in the Settlements, or that it will be resolved sooner.

**This notice does not tell you what to do**

The Settlement Administrator is not your lawyer and does not advise you on whether to stay in the Settlement Class or to be excluded. This notice expresses no view about Mason & Perry LLP or any other law firm. Its purpose is to make sure that the choice is yours and that you have the dates and terms the Court approved.

**How to reach the Settlement Administrator**

Angeion Group, LLC is the Settlement Administrator appointed by the Court.

Online: www.RealPageRentalSettlement.com

Email: info@RealPageRentalSettlement.com

Phone: 1-888-995-4213

Mail: RealPage Rental Software Litigation, Settlement Administrator, P.O. Box 59, East Brunswick, NJ 08816-9998

---

A copy of the Court's Order is attached and may also be found on the Settlement Website: www.RealPageRentalSettlement.com. Please review the Order and other documents on the Settlement Website to ensure that you understand all your rights.