**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| JUDY JIEN, *et al.*, | ) | Civil Action No. 1:19-CV-2521 |
| | ) | |
| Plaintiffs, | ) | The Honorable Stephanie A. Gallagher |
| | ) | |
| v. | ) | |
| | ) | |
| PERDUE FARMS, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**WAYNE FARMS, LLC AND SANDERSON FARMS, LLC'S MEMORANDUM IN SUPPORT OF SECOND MOTION TO ENFORCE SETTLEMENT AGREEMENTS AND FINAL JUDGMENT AND TO AUTHORIZE LIMITED DISCOVERY**

**TABLE OF CONTENTS**


Page

I. PRELIMINARY STATEMENT ..... 1

II. FACTUAL BACKGROUND ..... 4

A. The Settlements, Final Judgment, and Opt-Out Process ..... 4

B. The First Motion to Enforce and Jinks Crow's Disclosure of the 54 Claimants ..... 5

C. The Court-Ordered Discovery Process and Jinks Crow's Withdrawal ..... 7

D. The October 9 Order ..... 8

E. Claims Distribution Remains Ongoing ..... 8

III. LEGAL STANDARD ..... 9

IV. ARGUMENT ..... 10

A. The Court Should Enforce the Settlement Agreements and Final Judgment Against All Purported Jinks Crow Opt-Outs Who Submitted Claims for or Received Settlement Benefits ..... 10

1. The Court Has Jurisdiction to Grant the Requested Relief ..... 10

2. Purported Opt-Outs Who Submitted Claims for or Received Settlement Benefits Are Bound by the Settlement Agreements and Final Judgment ..... 10

3. The Released Claims Are Barred by the Settlement Agreements and Final Judgment ..... 12

4. Jinks Crow's Representation That It Will Exclude Paid Claimants Is No Substitute for an Enforcement Order ..... 13

5. The Same Relief Should Extend to Additional Purported Opt-Outs Who Submitted Claims for or Received Settlement Benefits ..... 14

B. The Court Should Authorize Targeted, Staged Discovery Concerning Settlement Participation and Jinks Crow's Opt-Out Process ..... 15

1. Discovery Concerning Known and Additional Settlement Claimants Is Targeted and Necessary ..... 16

2. Discovery Is Needed to Identify Additional Jinks Crow Clients Who Submitted Claims or Received Payments ..... 18

3. The Existing Record Raises Substantial Questions About the Reliability of Jinks Crow's Bulk Opt-Out Process .................................. 19

4. The Requested Discovery Is Proportional and Should Proceed on Wayne-Sanderson's Proposed Schedule .................................................. 23

V. REQUESTED RELIEF ........................................................................................ 24

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Berry v. Schulman*,
807 F.3d 600 (4th Cir. 2015) ....................12

*Fairfax Countywide Citizens Ass'n v. Fairfax Cnty.*,
571 F.2d 1299 (4th Cir. 1978) ....................9, 10

*Hensley v. Alcon Lab'ys, Inc.*,
277 F.3d 535 (4th Cir. 2002) ....................9

*In re MI Windows & Doors, Inc., Prods. Liab. Litig.*,
860 F.3d 218 (4th Cir. 2017) ....................9, 10, 12, 14, 15

*In re Prudential Ins. Co. of Am. Sales Prac. Litig.*,
261 F.3d 355 (3d Cir. 2001)....................14

*J.O.P. v. U.S. Dep't of Homeland Sec.*,
779 F. Supp. 3d 570 (D. Md. 2025) ....................9, 10

*McKenzie v. Norfolk S. Ry. Co.*,
497 F. App'x 305 (4th Cir. 2012) ....................3, 11, 15

*Moulton v. U.S. Steel Corp.*,
581 F.3d 344 (6th Cir. 2009) ....................12

*Perrigo Institutional Inv. Grp. v. Papa*,
150 F.4th 206 (3d Cir. 2025) ....................12

*Rock River Commc'ns, Inc. v. Universal Music Grp., Inc.*,
745 F.3d 343 (9th Cir. 2014) ....................22

*Sharp Farms v. Speaks*,
917 F.3d 276 (4th Cir. 2019) ....................10, 19, 21

*TVPX ARS, Inc. v. Genworth Life & Annuity Ins. Co.*,
959 F.3d 1318 (11th Cir. 2020) ....................9

*Williams v. Pro. Transp., Inc.*,
388 F.3d 127 (4th Cir. 2004) ....................9

**STATUTES & RULES**

28 U.S.C. § 2283....................9

Fed. R. Civ. P. 23(d) ....................................................................................................9, 20

Fed. R. Civ. P. 26(b) ...............................................................................................9, 17, 23

Defendants Wayne Farms, LLC and Sanderson Farms, LLC (collectively, "Wayne-Sanderson") respectfully move to enforce the Settlement Agreements and Final Judgment against individuals whom Jinks Crow, P.C. ("Jinks Crow") purports to represent as opt-outs, but who submitted claims for or received payments from the *Jien* settlements, and to authorize discovery to identify the full scope of that group and determine whether Jinks Crow's bulk opt-out process reflected knowing, authorized, and individualized decisions. Jinks Crow's own submissions establish that at least 54 purported opt-outs claimed and redeemed settlement payments, including 52 individuals who were not addressed by the Court's October 9, 2026 Order. ECF No. 1072. But those 54 represent only a limited snapshot of settlement participation as of June 30, 2026. Wayne-Sanderson has identified additional evidence of payments to individuals Jinks Crow purports to represent, and settlement distributions have continued in the intervening months. The actual number of affected individuals may therefore be substantially greater. Meanwhile, Jinks Crow continues to assert or threaten Released Claims on behalf of purported opt-outs, and its conditional assurance that it will exclude a currently-unknown group of payment recipients from the Alabama litigation leaves an ongoing controversy over the enforcement of the Settlement Agreements and Final Judgment.

Wayne-Sanderson therefore seeks enforcement against the presently identified claimants and targeted discovery, beginning with A.B. Data, Ltd. ("A.B. Data"), to identify additional individuals who submitted claims or received settlement benefits and determine what further enforcement relief is warranted.

## I. PRELIMINARY STATEMENT

On October 9, 2026, this Court granted Wayne-Sanderson's Motion to Enforce Settlement Agreements and Final Judgment as to the 86 non-opt-out individuals identified in that motion.

ECF No. 1072. In the same order, the Court denied the Alabama plaintiffs' request to extend the claims deadline and "decline[d] to authorize additional discovery in the absence of any pending motion before this Court." *Id.* This is that motion.

The Court's October 9 Order resolved the status of the 86 individuals identified in the first enforcement motion. It did not resolve the concrete enforcement problem the briefing exposed. In opposing that motion, Jinks Crow filed a spreadsheet from the Court-appointed Settlement Administrator, A.B. Data identifying 54 Jinks Crow clients who claimed and redeemed *Jien* settlement payments. ECF No. 1050-1 ¶ 14; ECF Nos. 1050-6–1050-7. Two of those individuals, Cassandra Pilar Tompkins and Jerry Tyonia Baldwin Jr., were among the 86 and are addressed by the Court's October 9 Order. The remaining 52 (the "Paid Claimants," identified in Appendix A) accepted settlement proceeds from the very settlements Jinks Crow contends they left.

More importantly, there is substantial reason to believe that the 54 identified claimants represent only a subset of the affected individuals. The spreadsheet Jinks Crow produced was dated June 30, 2026, and identified only redeemed digital payments as of that date. It therefore did not capture subsequent settlement distributions or necessarily identify all Jinks Crow clients who submitted participation forms or claims. Indeed, Wayne-Sanderson has independently identified at least one additional individual, Glenn Brooks, who Jinks Crow purports to represent and who received *Jien* settlement funds despite appearing on the Court-filed exclusion list. Mr. Brooks, who swore that he had not communicated with anyone at an Alabama law firm and had not authorized anyone to assert or threaten any claim against Wayne-Sanderson, *see* Ex. A, Brooks Aff. ¶¶ 2–3, does not appear among the 54 payment recipients identified in Jinks Crow's disclosure, *see* ECF No. 1050-7 at 2–3. With thousands of individuals purportedly represented by

Jinks Crow, the actual number of affected individuals may be substantially greater. Discovery is necessary to determine the full extent of the problem.

These discrepancies also raise serious questions about the reliability of Jinks Crow's broader opt-out process. Jinks Crow maintains that approximately 3,500 individuals knowingly and voluntarily excluded themselves from the *Jien* settlements to pursue separate Alabama litigation. Yet the participation of purported opt-outs in the very settlements they supposedly elected to leave, coupled with evidence that at least one individual denies ever retaining Jinks Crow, calls into question whether these individuals understood the distinction between the *Jien* settlements and the Alabama litigation, knowingly authorized their exclusion requests, and made individualized decisions to forego settlement benefits.

Wayne-Sanderson therefore moves for two forms of relief. *First*, Wayne-Sanderson asks the Court to enforce the Settlement Agreements and Final Judgment against the 52 presently identified Paid Claimants and to establish a process for extending that enforcement to any additional purported Jinks Crow opt-outs whom discovery reveals to have submitted claims for or received settlement benefits. A class member who purportedly opts out but later participates in the settlement and receives payment remains bound by the class judgment. *McKenzie v. Norfolk S. Ry. Co.*, 497 F. App'x 305, 311 (4th Cir. 2012). Jinks Crow has effectively acknowledged as much, representing that it will exclude from the Alabama cases any individual whom A.B. Data confirms received a *Jien* payment. ECF No. 1070 at 3. But counsel's assurance is no substitute for an enforceable order. Jinks Crow has not established that all Released Claims asserted or preserved on behalf of settlement recipients have been withdrawn, nor has it identified an enforceable mechanism to prevent the continued pursuit of such claims. Wayne-Sanderson therefore seeks a ruling that the 52 Paid Claimants are bound by the Settlement Agreements and

Final Judgment, enforcement of the Final Judgment's permanent injunction against the assertion of Released Claims on their behalf, and a procedure for supplementing the record and obtaining equivalent relief as additional affected individuals are identified.

*Second*, Wayne-Sanderson also requests staged discovery addressing two related issues: whether additional Jinks Crow clients participated in the settlement and whether Jinks Crow's broader bulk opt-out process reliably reflected knowing, authorized, and individualized decisions. The existing spreadsheet is dated June 30, 2026, provides only a limited snapshot of settlement participation and cannot establish the full universe of Jinks Crow clients who submitted claims or received settlement funds. Meanwhile, settlement participation by 54 purported opt-outs, conflicting exclusion records, and sworn denials of authorization raise substantial questions about the reliability of Jinks Crow's process. Wayne-Sanderson therefore proposes an initial phase of discovery from A.B. Data concerning participation forms, claim submissions, payment approvals, and settlement distributions, together with identifying information from Jinks Crow sufficient to reconcile those records against its purported client roster. Following that phase, the parties would submit a status report addressing the additional claimants identified and the need for further discovery from Jinks Crow, its co-counsel, or individual claimants concerning the opt-out process and claimant authorization. That targeted process will permit the Court to determine whether additional enforcement relief or a court-supervised confirmation process is warranted.

## II. FACTUAL BACKGROUND

### A. The Settlements, Final Judgment, and Opt-Out Process

Wayne Farms and Sanderson Farms paid a combined $69.8 million to resolve the wage-suppression claims asserted against them in this action. ECF No. 1041-1 at 1; ECF No. 745-5, Wayne Farms Settlement Agreement ("WFSA") § II.A.1; ECF No. 745-4, Sanderson Farms Settlement Agreement ("SFSA") § II.A.1. The Settlement Class includes "[a]ll persons employed

by Defendant Processors, their subsidiaries, and/or related entities at poultry processing plants, poultry hatcheries, poultry feed mills, and/or poultry complexes in the continental United States from January 1, 2000 until July 20, 2021." WFSA § II.F.3; SFSA § II.F.3. A "Settlement Class Member" is "each member of the Settlement Class who is not timely and properly excluded from the Settlement Class." WFSA § I.B.36; SFSA § I.B.36. Settlement Class Members released all claims "arising out of or relating to" the alleged conspiracy to suppress compensation, and covenanted not to sue the Wayne and Sanderson Released Parties for that conduct. WFSA §§ II.B.2–3; SFSA §§ II.B.2–3. The releases apply "regardless of whether" a Settlement Class Member "made a claim upon the settlement fund." ECF No. 1041-1 at 4.

The Court granted final approval, enjoined Settlement Class Members from asserting Released Claims against the Settling Defendants' Released Parties, and expressly retained jurisdiction to enforce the Settlement Agreements, "including their administration and consummation." ECF No. 1011 at 8–9 ¶¶ 3–4, 8–10; ECF No. 1041-1 at 4. The deadline to request exclusion was May 27, 2025, and A.B. Data reported 3,347 exclusion requests, which it filed with the Court. ECF No. 1006-9 ¶¶ 35–36 & Ex. G. According to A.B. Data, those requests were submitted in bulk by "a conglomerate of three law firms." ECF No. 1050 at 3 (quoting ECF No. 1006-9 at n.1). Jinks Crow asserts that it submitted exclusion requests on behalf of 3,492 individuals. ECF No. 1050-1 ¶ 6.

**B. The First Motion to Enforce and Jinks Crow's Disclosure of the 54 Claimants**

On June 26, 2026, Wayne-Sanderson moved to enforce the Settlement Agreements and Final Judgment against 86 individuals on whose behalf Jinks Crow had sued, demanded, or threatened Released Claims, and who did not appear on the Court-filed exclusion list. ECF No.

1041; ECF No. 1041-1 at 5–7. Jinks Crow opposed, arguing that all 86 had validly opted out. ECF No. 1050 at 7–8.

In support of its opposition, Jinks Crow submitted the declaration of its principal, Christina D. Crow. ECF No. 1050-1. Ms. Crow attached as Exhibit 6 "the OptOut (54) Redeemed Digital spreadsheet from A.B. Data received on 6/30/2026." *Id.* ¶ 14; ECF No. 1050-7. That spreadsheet identifies 54 individuals by name, A.B. Data identification number, and payment amount, with payments ranging from $33.88 to $1,626.19. ECF No. 1050-7 at 2–3. A.B. Data's June 30, 2026 correspondence, also filed by Jinks Crow, states: "We were able to determine that 54 of your clients claimed settlement funds." ECF No. 1050-6 at 2; *see* ECF No. 1067 at 6. Jinks Crow did not dispute that these individuals were paid; it argued instead that the payments showed "A.B. Data errors have resulted in opt out individuals receiving payment." ECF No. 1050 at 5.

Two of the 54 were among the 86 individuals at issue in the first motion: Cassandra Pilar Tompkins (ECF No. 1050-7, row 48), who appears as No. 81, "Cassandra Tompkins," on the list of 86; and Jerry Tyonia Baldwin Jr. (ECF No. 1050-7, row 34), who appears as No. 86, "Jerry Tirona Baldwin." ECF No. 1041-5 at 5. The remaining 52 Paid Claimants received a combined $30,151.40 in settlement payments. ECF No. 1050-7 at 2–3; *see* Appendix A. On reply, Wayne-Sanderson explained that "A.B. Data's records already show that 54 Jinks Crow clients claimed settlement funds," that this inconsistency "raises a broader risk of confusion while the claims process remains open," and that the Court "would be well within its rights to undertake an inquiry into the process used, and the representations made to, and the understandings of, each of the more than 3,500 'opt outs' Jinks Crow purports to represent." ECF No. 1054 at 9 & n.1. Wayne-Sanderson has also identified at least one additional payment recipient, Glenn Brooks, who Jinks

Crow purports to represent (*see* ECF No. 1041-4 at 9) but who was not included in the 54-person spreadsheet. *See* ECF No. 1050-7 at 2–3.

**C. The Court-Ordered Discovery Process and Jinks Crow's Withdrawal**

After a telephone conference on September 1, 2026, the Court directed the parties to provide "a joint update on a discovery plan and timetable as to ECF [1041]." ECF No. 1055. The parties exchanged competing proposals. ECF No. 1063; ECF No. 1067 at 3. Jinks Crow proposed that it draft Wayne-Sanderson's document requests and interrogatories and that depositions of the claimants be substantially limited. ECF No. 1067 at 3; ECF No. 1067-2. When the parties reached an impasse, Jinks Crow withdrew its opposition—while continuing to "maintain[] that the Individuals personally signed and timely submitted requests for exclusion"—and asked that the 86 be permitted to participate in the settlement after the claims deadline. ECF No. 1065 at 1–2. Wayne-Sanderson responded that the withdrawal rendered its motion unopposed but left unresolved the questions that led the Court to order discovery, including the status of the 54 claimants. ECF No. 1067 at 5–7.

At the direction of Magistrate Judge Aslan, the parties filed position statements on the need for and scope of discovery. ECF No. 1069. Jinks Crow argued that the status of the 54 claimants "is not properly before the Court on this Motion," but represented that it would exclude from the state-court cases any individual whom A.B. Data confirms received a *Jien* payment. ECF No. 1070 at 2–3. Jinks Crow alternatively proposed that any discovery include a Rule 45 subpoena to A.B. Data for "records of any settlement-fund claims or disbursements." *Id.* at 3. Jinks Crow also disclosed that on September 30, 2026, an Alabama circuit court appointed a special settlement master "to establish valuation criteria, determine eligibility, and compute individual allocations" for settlements Jinks Crow has reached with Peco Foods, Pilgrim's Pride, Tyson Foods, and Perdue Farms. *Id.* at 2–3. Wayne-Sanderson's position statement explained why discovery into the 86,

the 54, and claimant understanding remained necessary, and proposed a discovery schedule. ECF No. 1071 at 2–5; ECF No. 1071-11.

### D. The October 9 Order

On October 9, 2026, the Court granted Wayne-Sanderson's motion to enforce as unopposed, denied the Alabama plaintiffs' request to extend the time to submit claims "since it would upset the finality of the agreed settlement terms," and "decline[d] to authorize additional discovery in the absence of any pending motion before this Court." ECF No. 1072.

### E. Claims Distribution Remains Ongoing

Settlement distribution is not complete. According to Class Counsel, digital distributions for the first round began on May 15, 2026; checks were anticipated to begin mailing on August 14, 2026; and class members have 120 days to claim digital payments or cash checks, such that "the first round of distribution should be complete around December 13, 2026." ECF No. 1052 at 1. The Court also extended the deadline to submit participation forms for a second round of distributions to August 31, 2026, and Class Counsel will file a fourth status report on January 4, 2027, with "a schedule for the second round of distribution." *Id.* at 2; ECF No. 1051. The A.B. Data spreadsheet identifying the 54 claimants is dated June 30, 2026, and by its title captures only "Redeemed Digital" payments. ECF No. 1050-1 ¶ 14; ECF No. 1050-7. Accordingly, the June 30 spreadsheet cannot establish the complete universe of Jinks Crow clients who submitted participation forms or claims, received payments by check or other means, or participated in settlement distributions after that date. A complete accounting requires updated records from A.B. Data reflecting all methods and stages of settlement participation, including claims submitted but not yet paid.

## III. LEGAL STANDARD

A district court has inherent authority to enforce a settlement agreement in a case before it. *Williams v. Pro. Transp., Inc.*, 388 F.3d 127, 132 (4th Cir. 2004). Where, as here, "the parties reached a complete agreement" and the Court can "determine its terms and conditions," the Court may enforce it. *Hensley v. Alcon Lab'ys, Inc.*, 277 F.3d 535, 540–41 (4th Cir. 2002). A court retains jurisdiction to enforce a class settlement where the final approval order incorporates the agreement and reserves jurisdiction for enforcement. *J.O.P. v. U.S. Dep't of Homeland Sec.*, 779 F. Supp. 3d 570, 577 (D. Md. 2025) (citing *Fairfax Countywide Citizens Ass'n v. Fairfax Cnty.*, 571 F.2d 1299, 1303 n.8 (4th Cir. 1978)). And when a final judgment approving a class settlement contains a permanent injunction, a later order applying that injunction to a person bound by the judgment is "nothing more than an enforcement of the original injunction." *In re MI Windows & Doors, Inc., Prods. Liab. Litig.*, 860 F.3d 218, 223 (4th Cir. 2017). The Anti-Injunction Act's relitigation exception permits such an order to prevent state-court litigation of released claims. 28 U.S.C. § 2283; *MI Windows*, 860 F.3d at 224–25.

When adjudication of a pending enforcement-related motion turns on facts not established by the existing record, courts may permit targeted discovery to develop the necessary record. *See, e.g., TVPX ARS, Inc. v. Genworth Life & Annuity Ins. Co.*, 959 F.3d 1318, 1328 (11th Cir. 2020) (vacating an order enjoining a later action as barred by a prior class settlement and remanding for limited discovery because the existing record was insufficient); *see also* Fed. R. Civ. P. 26(b)(1) (parties may obtain discovery regarding any nonprivileged matter relevant to a claim or defense and proportional to the needs of the case). Rule 23(d) also gives the Court broad authority to protect absent class members and the integrity of the settlement process, including by regulating communications and ensuring that opt-out decisions are knowing and individualized. *See* ECF No. 1071-8 at 3 (*RealPage*, ECF No. 1486-1 at 1) (collecting authority). Because the right to opt

out belongs to each class member individually, an exclusion must reflect that individual's own knowing and individualized choice. *See Sharp Farms v. Speaks*, 917 F.3d 276, 298 (4th Cir. 2019).

## IV. ARGUMENT

### A. The Court Should Enforce the Settlement Agreements and Final Judgment Against All Purported Jinks Crow Opt-Outs Who Submitted Claims for or Received Settlement Benefits.

#### 1. The Court Has Jurisdiction to Grant the Requested Relief.

The Court approved the Wayne Farms and Sanderson Farms Settlement Agreements, entered Final Judgment, and expressly retained jurisdiction to enforce the settlements, including their administration and consummation. ECF No. 1011 at 8–9 ¶¶ 3–4, 8–10; WFSA § II.F.8; SFSA § II.F.9. The Court exercised that jurisdiction on October 9, 2026, when it granted the first motion to enforce. ECF No. 1072. The same authority supports the relief requested here. *See J.O.P.*, 779 F. Supp. 3d at 577; *Fairfax*, 571 F.2d at 1303 n.8. The Settlement Agreements independently provide that a breach may cause irreparable harm and that the Settling Parties may seek enforcement "by specific performance or injunction." WFSA § III.L; SFSA § III.L.

#### 2. Purported Opt-Outs Who Submitted Claims for or Received Settlement Benefits Are Bound by the Settlement Agreements and Final Judgment.

A class judgment binds each class member unless the member "elects timely to opt out." *MI Windows*, 860 F.3d at 223. The opt-out right belongs to each individual class member; "[t]here is no class action rule, statute, or case that allows a putative class plaintiff or counsel to exercise class rights en masse." *Sharp Farms*, 917 F.3d at 298. The decisions to opt out of a settlement and to participate in that same settlement are fundamentally inconsistent. An individual who affirmatively submits a claim or participation form seeking settlement proceeds invokes the rights and benefits available to Settlement Class Members and therefore elects to participate in the settlement. That election occurs upon submission of the claim, regardless of when A.B. Data

processes or distributes the requested payment. A claimant cannot seek the benefits of the Settlement Agreements while simultaneously maintaining that the claimant is excluded from the Settlement Class and free to pursue the very claims those agreements released. *McKenzie*, 497 F. App'x at 311 (affirming finding that appellant failed to opt out where the record showed that he submitted an opt-out form but later participated in the settlement and received payments).

Accordingly, Wayne-Sanderson seeks enforcement against purported Jinks Crow opt-outs who affirmatively submitted claims for settlement benefits, whether or not payment has yet been distributed. At a minimum, any purported opt-out who submitted a claim must be identified and the circumstances of that submission examined before Jinks Crow can continue asserting Released Claims on that individual's behalf.

The Paid Claimants fall squarely within that rule. A.B. Data identifies each as a Jinks Crow client who "claimed settlement funds," and each redeemed a digital settlement payment. ECF No. 1050-6 at 2; ECF No. 1050-7 at 2–3. Claiming those funds required submission of a claim through the Court-approved process. *See* ECF No. 1052 at 1. Thus, the Paid Claimants both sought and accepted settlement benefits, conduct that is irreconcilable with any purported election to opt out. Whatever paperwork Jinks Crow may have uploaded on their behalf, the Paid Claimants' own conduct establishes that they remained in, and took the benefit of, the Settlement Class. They are therefore Settlement Class Members bound by the releases, covenants not to sue, and Final Judgment. WFSA §§ I.B.36, II.B.2–3; SFSA §§ I.B.36, II.B.2–3; ECF No. 1011 at 8–9.

Jinks Crow does not dispute that these individuals received settlement payments; instead, it attributes those payments to administrator error. ECF No. 1050 at 5. But that theory is foreclosed by the record, which shows that the Paid Claimants *claimed* the funds, ECF No. 1050-6 at 2, and courts do not disregard settlement records based on unsupported assertions of

administrator or counsel error. *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 354 (6th Cir. 2009) (rejecting an asserted "clerical error" where counsel presented no record evidence that the missing exclusion requests had been mailed); *Perrigo Institutional Inv. Grp. v. Papa*, 150 F.4th 206, 212 n.3, 217–19 (3d Cir. 2025) (holding class member accountable for counsel's failure to submit and verify exclusion request).

Jinks Crow has since abandoned any opposition to a determination that the 86 are Settlement Class Members, ECF No. 1065 at 2, and has represented that it will exclude from the Alabama cases any individual whom A.B. Data confirms was paid. ECF No. 1070 at 3. The October 9 Order already binds Ms. Tompkins and Mr. Baldwin, two of the Paid Claimants. ECF No. 1072. There is no principled basis to treat the other 52 differently.[1] Nor should the outcome differ for additional purported opt-outs who knowingly and affirmatively claimed settlement benefits but whose payments remain pending. Discovery will identify those individuals and permit the Court to determine the appropriate enforcement relief.

**3. The Released Claims Are Barred by the Settlement Agreements and Final Judgment.**

Wayne-Sanderson demonstrated in its first motion that the Alabama lawsuits, demands, and threatened claims brought by Jinks Crow arise out of the same alleged compensation-suppression conspiracy, during the same period, as the claims released in this action, and that the releases and covenants not to sue bar them regardless of the state-law labels attached. ECF No. 1041-1 at 10–13 (citing *Berry v. Schulman*, 807 F.3d 600, 616 (4th Cir. 2015), and *MI Windows*, 860 F.3d at 225). Wayne-Sanderson incorporates that showing here. Jinks Crow never disputed

[1] The Settlement Class encompasses persons employed by any Defendant Processor, and every Settlement Class Member released the Wayne Farms and Sanderson Farms Released Parties. WFSA §§ II.B.2, II.F.3; SFSA §§ II.B.2, II.F.3. The requested relief is therefore appropriate as to each Paid Claimant whether or not Jinks Crow has yet asserted a Released Claim against Wayne-Sanderson on his or her behalf.

it. *See* ECF No. 1054 at 3–4 ("The Opposition does not argue that the Alabama claims arise from different conduct, seek recovery for a different injury, or fall outside the releases and covenants not to sue."). The same analysis applies to any Released Claim asserted, demanded, or threatened by or on behalf of any Jinks Crow client who is bound by the Settlement Agreements and Final Judgment, including the presently identified Paid Claimants and additional purported opt-outs shown through discovery to have submitted claims for or received settlement benefits.

#### 4. Jinks Crow's Representation That It Will Exclude Paid Claimants Is No Substitute for an Enforcement Order.

Jinks Crow's representation that it "will exclude" paid individuals from the state-court cases, ECF No. 1070 at 3, does not obviate the need for an order. That representation is conditional on future confirmation by A.B. Data, provides no mechanism for identifying all individuals who submitted claims or received settlement benefits, and is not enforceable by Wayne-Sanderson. It also says nothing about individuals who submitted claims but have not yet received payment, or demands and threatened claims that have not been filed. Nor does it address the risk of duplicate recovery that Jinks Crow's own filings make concrete.

The risk is not hypothetical. On September 30, 2026, the Alabama court appointed a special settlement master to "compute individual allocations" for state-court settlements arising from the same alleged conduct. ECF No. 1070 at 2–3. Jinks Crow's stipulations dismissing Perdue in the Alabama actions "expressly reserve 'all claims filed and unfiled'" against the remaining defendants. ECF No. 1071 at 4–5; ECF Nos. 1071-5–1071-7. And Jinks Crow has told this Court that none of the 54 "has yet received a payment in the state court cases"—not that none will. ECF No. 1070 at 2.

Wayne-Sanderson bargained for releases, covenants not to sue, and finality—not for counsel's assurance that it presently intends to refrain from pursuing Released Claims on behalf

of individuals who have affirmatively sought settlement benefits or who have already been paid from the settlement fund. Allowing Settlement Class Members to claim or collect settlement proceeds while their counsel preserves the option to pursue the same Released Claims elsewhere would "allow an end run around the Class settlement by affording them . . . an opportunity for 'relitigation of the released claims.'" *In re Prudential Ins. Co. of Am. Sales Prac. Litig.*, 261 F.3d 355, 367 (3d Cir. 2001). An order enforcing the Settlement Agreements and Final Judgment against the presently identified Paid Claimants, together with discovery to identify additional purported opt-outs who submitted claims or received settlement benefits, is the narrowly tailored remedy the Settlement Agreements contemplate. WFSA § III.L; SFSA § III.L; *MI Windows*, 860 F.3d at 224–25.

#### 5. The Same Relief Should Extend to Additional Purported Opt-Outs Who Submitted Claims for or Received Settlement Benefits

The 52 Paid Claimants are not necessarily the full universe of Jinks Crow clients who participated in the *Jien* settlement. Indeed, there is already evidence that the 54 individuals identified by Jinks Crow represent an incomplete accounting. As discussed above, Wayne-Sanderson has identified at least one additional individual, Glenn Brooks, whom Jinks Crow purports to represent and who received settlement funds despite appearing on the Court-filed exclusion list. Mr. Brooks does not appear among the 54 individuals identified in Jinks Crow's June 30 spreadsheet. ECF No. 1050-7 at 2–3. Moreover, because claims processing and distributions remain ongoing, other Jinks Crow clients may have submitted claims or participation forms but not yet appeared on A.B. Data's list of redeemed payments. The number of individuals who sought or received settlement benefits while Jinks Crow purported to represent them as opt-outs may therefore be substantially greater than the 54 presently identified.

As explained above, an individual who knowingly and affirmatively submits a claim for settlement benefits manifests an election to participate in the settlement, regardless of whether the requested payment has yet been distributed. Submission of a claim or participation form is affirmative evidence of settlement participation and, at minimum, warrants inquiry into whether the claim was accepted, paid, or otherwise processed. *See McKenzie*, 497 F. App'x at 311 (affirming denial of Rule 60(b) relief from an injunction against state-court litigation where the plaintiff, despite submitting an opt-out form, later participated in the settlement and received payments). Because the current record already indicates that additional claimants may exist, discovery is necessary to identify all purported Jinks Crow opt-outs who submitted claims or participation forms and to determine the circumstances and consequences of those submissions.

Wayne-Sanderson therefore requests targeted discovery sufficient to identify the full universe of purported Jinks Crow opt-outs who submitted claims for or received settlement benefits, including individuals omitted from the June 30 spreadsheet. If discovery establishes that additional individuals affirmatively elected to participate in the settlement, Wayne-Sanderson requests leave to supplement the record and seek the same enforcement relief as to them. This request does not reach any valid opt-out who did not participate in the settlement, anyone outside the Settlement Class, or any claim outside the releases. *See* ECF No. 1054 at 14.

**B. The Court Should Authorize Targeted, Staged Discovery Concerning Settlement Participation and Jinks Crow's Opt-Out Process.**

The October 9 Order declined to authorize additional discovery "in the absence of any pending motion." ECF No. 1072. This motion places concrete enforcement issues before the Court and removes the procedural impediment identified in the October 9 Order. The need for discovery is particularly compelling because the known payment recipients represent only a portion of the individuals who may have participated in the settlement while Jinks Crow purported

to represent them as opt-outs. Moreover, the apparent inconsistencies between Jinks Crow's opt-out representations and the conduct of its purported clients raise substantial questions about whether those individuals knowingly and voluntarily authorized their exclusions. Wayne-Sanderson therefore proposes a staged approach, beginning with discovery from A.B. Data concerning the settlement claims and payment process, followed by additional discovery into Jinks Crow's opt-out process as necessary. The record supports targeted, staged discovery for three reasons.

**1. Discovery Concerning Known and Additional Settlement Claimants Is Targeted and Necessary.**

The record already identifies the known claimants. Jinks Crow's own declarant filed the A.B. Data spreadsheet identifying 54 Jinks Crow clients by name, A.B. Data identification number, and payment amount. ECF No. 1050-1 ¶ 14; ECF No. 1050-7 at 2–3. Jinks Crow attested that the spreadsheet is "a true and correct copy" of what A.B. Data provided, ECF No. 1050-1 ¶ 14, and A.B. Data's accompanying correspondence confirms that "54 of your clients claimed settlement funds," ECF No. 1050-6 at 2. Two of those individuals—Cassandra Pilar Tompkins and Jerry Tyonia Baldwin Jr.—were among the 86 individuals covered by the Court's October 9 Order. ECF No. 1072. The remaining 52 are the Paid Claimants at issue here. But, as explained above, those individuals are only the presently identified recipients. The record already establishes that the number is greater, and A.B. Data's June 30 spreadsheet provides no basis for determining the full universe of Jinks Crow clients who sought or received settlement benefits.

Discovery from A.B. Data is therefore the logical starting point. As the Court-appointed Settlement Administrator, A.B. Data maintains the records necessary to determine which individuals submitted participation forms or claims, when those submissions occurred, whether claims were accepted or rejected, whether payments were issued, and whether those payments

were redeemed. Those records will permit Wayne-Sanderson to identify additional Jinks Crow clients who participated in the settlements, reconcile their participation with the purported opt-out records, and determine the scope of additional enforcement relief that may be warranted. This discovery is plainly relevant and proportional to the needs of the case under Rule 26(b)(1).

That discovery is also necessary to establish the circumstances surrounding the presently identified Paid Claimants and other individuals whose records reflect potentially conflicting decisions to opt out and participate in the settlements. Further discovery may be necessary to determine whether and how each Paid Claimant purportedly authorized an opt-out; what standardized, nonprivileged materials Jinks Crow provided concerning the *Jien* settlement and the consequences of opting out; whether each understood that Jinks Crow was treating that individual as an opt-out while the individual was participating in the settlement; whether Jinks Crow has asserted, demanded, threatened, or reserved Released Claims on that person's behalf; and whether that person has received, or is slated to receive, proceeds from the Alabama settlements being administered by the state-court special master. *See* ECF No. 1071 at 3–5; ECF No. 1070 at 2–3.

Jinks Crow previously argued that the status of the 54 was "not properly before the Court" because the first enforcement motion concerned the 86. ECF No. 1070 at 2. This motion places the remaining 52 squarely before the Court. Moreover, Jinks Crow has acknowledged that A.B. Data "maintains records of which individuals claimed or received settlement-fund payments" and itself proposed that A.B. Data produce "records of any settlement-fund claims or disbursements." *Id.* at 3. That proposal confirms, at minimum, that discovery into these individuals' settlement claims and payments is targeted and proportional.

### 2. Discovery Is Needed to Identify Additional Jinks Crow Clients Who Submitted Claims or Received Payments.

The 54 individuals identified in Jinks Crow's exhibit are a floor, not a ceiling. The A.B. Data spreadsheet is a June 30, 2026 snapshot that, by its title, captures only "Redeemed Digital" payments. ECF No. 1050-1 ¶ 14; ECF No. 1050-7. Jinks Crow itself states that A.B. Data compiled the spreadsheet only for individuals for whom it had opt-out forms. ECF No. 1050 at 5. The spreadsheet therefore would not identify Jinks Crow clients whom A.B. Data did not associate with an opt-out form, nor could it capture settlement participation occurring after June 30. The circumstances concerning Mr. Brooks, discussed above, confirm that the spreadsheet does not capture the full universe of purported Jinks Crow clients who received settlement benefits.

The claims and distribution process continued well beyond that date. Check payments were expected to begin mailing on August 14, 2026; class members had 120 days to cash their checks or claim digital payments; and the second-round participation-form deadline was extended to August 31, 2026, with distribution to follow. ECF No. 1052 at 1–2; ECF No. 1051. Thus, additional Jinks Crow clients could have submitted participation forms, claimed digital payments, or cashed settlement checks after A.B. Data created the spreadsheet. As Wayne-Sanderson previously explained, "[a]s disbursements from the settlement fund continue, the number of Jinks Crow clients who claim or receive settlement payments may grow." ECF No. 1067 at 6. Given the thousands of individuals who Jinks Crow purports to represent, the actual number of clients who sought or received settlement benefits may be substantially greater than the 54 individuals identified in June. The existing record provides no reliable means of determining that number.

Targeted discovery from Jinks Crow and A.B. Data is the only way to identify every Jinks Crow client who has submitted a claim or participation form, every client who has received or is scheduled to receive a payment, and whether any such client continues to assert, demand, or

threaten Released Claims. That information is uniquely in Jinks Crow's and A.B. Data's possession, and it is essential to determine the full scope of the enforcement relief requested and to prevent duplicate recovery. *See* ECF No. 1067 at 6–7; ECF No. 1071 at 4–5.

### 3. The Existing Record Raises Substantial Questions About the Reliability of Jinks Crow's Bulk Opt-Out Process

Finally, for all the reasons Wayne-Sanderson has previously explained, there is substantial uncertainty regarding whether *any* individual Jinks Crow purports to represent knowingly and individually opted out of the Settlement Class. ECF No. 1054 at 1–2, 7–9; ECF No. 1067 at 3–7; ECF No. 1071 at 2–5. These questions extend beyond the individuals already identified as settlement claimants and provide important context for the requested discovery.

The record on this point is substantial and growing:

- ***Bulk submission***. Jinks Crow submitted exclusion requests "in bulk" for approximately 3,500 workers on the eve of the deadline, through counsel-created spreadsheets that A.B. Data instructed Jinks Crow to verify against the class definition. ECF No. 1054 at 1, 6; ECF No. 1050-1 ¶¶ 4–6. But the opt-out decision belongs to each class member, and counsel cannot exercise that right "en masse." *Sharp Farms*, 917 F.3d at 298. The relevant question is therefore whether each request reflected that individual's own choice.

- ***Settlement participation by purported opt-outs***. At least 54 individuals whom Jinks Crow treated as opt-outs later claimed settlement funds and redeemed digital payments. ECF No. 1050-6 at 2; ECF No. 1050-7. That conduct is "difficult to square with a clear election to leave the Settlement Class" and raises substantial questions about what those individuals understood and authorized. ECF No. 1054 at 1–2. Indeed, the fact that so many purported opt-outs affirmatively sought settlement benefits raises the possibility that they understood Jinks Crow to be assisting them in obtaining compensation through the *Jien* settlements, rather than representing them in separate litigation for which they would forgo those benefits. That possibility reinforces the need for discovery into what these individuals were told about Jinks Crow's role, the distinction between the *Jien* settlements and the Alabama litigation, and the consequences of opting out.

- ***Conflicting and incomplete records***. Jinks Crow asserts that it submitted exclusion requests for 3,492 individuals, while A.B. Data reported receiving 3,347 exclusion requests in total from all sources. ECF No. 1050-1 ¶ 6; ECF No. 1006-9 ¶ 36. Jinks Crow itself has identified "more inconsistencies throughout the A.B. Data data," including individuals for whom A.B. Data had no opt-out forms. ECF No. 1050 at 5–

6. Those discrepancies require reconciliation to assess the reliability and completeness of exclusion records.

- ***Sworn denial of authorization***. Jinks Crow identified Glenn Brooks as a client, and his name appears on the Court-filed opt-out list. *See* ECF No. 1041-4 at 9; ECF No. 1041-5 at 3. But Mr. Brooks swore that he never retained an Alabama law firm to assert or threaten any legal claim against Wayne-Sanderson. *See* Ex. A, Brooks Aff. ¶¶ 2–3. Mr. Brooks also received notice that a $111.97 *Jien* settlement payment was available for redemption, notwithstanding his appearance on the exclusion list. *See* Ex. A, Lowe Aff., Ex. 1 (May 29, 2026 email from Poultry Wages Settlement Administrator to Glenn Brooks). These circumstances raise substantial questions about whether Jinks Crow was authorized to submit an exclusion request on his behalf and further underscore the need to examine the reliability of its bulk opt-out process.

- ***Parallel settlement process extending beyond named Alabama plaintiffs.*** Jinks Crow has asserted claims and demanded compensation on behalf of approximately 3,500 purported *Jien* opt-outs, even though fewer than 300 have been yet named as plaintiffs in the Alabama lawsuits. Nevertheless, Jinks Crow has negotiated settlements with multiple defendants based on claims asserted on behalf of that larger group and established a process to determine how much each person will receive. *See* ECF No. 1070 at 2–3. That creates a serious problem. Most of these individuals are not plaintiffs in any Alabama lawsuit. Wayne-Sanderson therefore has no straightforward way in those proceedings to challenge whether they actually opted out of *Jien* or remain bound by this Court's Final Judgment. Yet those same individuals may receive payments through the Alabama settlement process without anyone ever determining whether they validly opted out of *Jien* in the first place. The evidence that dozens of these purported opt-outs also claimed and received *Jien* settlement proceeds makes that concern imminent. This Court has both the authority and the ability to address the problem. Rule 23(d) empowers the Court to protect absent class members and the integrity of the class-action process, including the procedures governing exclusion from the Settlement Class. *See* Fed. R. Civ. P. 23(d)(1); *see also* ECF Nos. 1071-8–1071-10 (*RealPage* orders). This Court supervised the *Jien* opt-out process, approved the Settlement Agreements, and expressly retained jurisdiction to enforce its Final Judgment. It is therefore uniquely positioned to determine whether Jinks Crow's purported clients validly opted out and whether additional individuals remain bound by the settlements.

- ***Evidence of claimant confusion***. Public-facing materials reflect confusion between the *Jien* settlement and the separate Alabama litigation. Social-media posts associate Jinks Crow's co-counsel with the *Jien* settlement, discuss settlement checks and missed claim deadlines, and describe the Alabama actions as though they were a class action; Jinks Crow and its co-counsel also established a claims website substantially similar to the *Jien* settlement website. ECF No. 1071 at 4; ECF Nos. 1071-1–1071-4. These communications reinforce the possibility that purported opt-outs understood Jinks Crow and its co-counsel to be facilitating participation in the *Jien* settlements rather than pursuing separate claims on their behalf.

- ***Counsel's unexplained change of position***. Jinks Crow withdrew its opposition to enforcement against the 86 shortly after the parties reached an impasse over discovery, but supplied no individual declarations or authorizations showing that the 86 were informed of or approved that change. Jinks Crow also declined to state whether it had informed them. ECF No. 1067 at 4; ECF No. 1071 at 3. This reinforces the need for objective evidence of individual authorization rather than reliance solely on counsel's aggregate representations.

*RealPage* is instructive. There, class counsel raised concerns that another firm intended to submit thousands of opt-outs without evidence that the absent class members had "received accurate or sufficient information to do so knowingly." ECF No. 1071-8 at 3 (*RealPage*, ECF No. 1486-1 at 1). Finding "grave concerns" that potential class members had received erroneous information, the court ordered supplemental notice requiring each class member to confirm personally any request for exclusion and subsequently required weekly reports concerning that notice. ECF No. 1071-9 at 2–3 (*RealPage*, ECF No. 1500); ECF No. 1071-10 at 2 (*RealPage*, ECF No. 1527).

The procedural posture here is different: the opt-out deadline has passed, and Final Judgment has been entered. Wayne-Sanderson therefore does not request the same pre-deadline corrective process imposed in *RealPage*. But that distinction explains why targeted fact development is now the appropriate first step. The record already contains settlement participation by purported opt-outs, direct denials of authorization, conflicting counts, and missing or defective documentation. Discovery is necessary to determine whether those irregularities are isolated or reflect broader deficiencies in Jinks Crow's process. *See Sharp Farms*, 917 F.3d at 298; *MI Windows*, 860 F.3d at 226. The appropriate scope of that examination should be informed by the initial discovery into settlement participation and the records underlying Jinks Crow's purported exclusions.

To be certain, Wayne-Sanderson does not ask the Court at this stage to authorize individualized discovery of approximately 3,500 purported opt-outs. Rather, it seeks a staged

process beginning with A.B. Data's centralized claims, payment, and exclusion records, together with the identifying information necessary to reconcile those records against Jinks Crow's purported client roster. Depending on what that initial discovery reveals, additional discovery concerning Jinks Crow's opt-out procedures, standardized communications, and individual authorizations may be warranted. The parties can address the necessity and appropriate scope of that additional discovery after the initial record has been developed.

Nor do Jinks Crow's earlier privilege objections justify denying appropriately tailored discovery. *See, e.g.*, ECF No. 1070 at 4. Much of the requested discovery—client identities; the existence and execution of opt-out forms; dates and methods of transmission; submission logs and metadata; settlement claims and payments; and standardized, nonprivileged solicitation, intake, and opt-out materials—concerns objective facts rather than privileged communications. Any legitimate privilege claims can be addressed document by document through an appropriate privilege log.

Moreover, Jinks Crow has represented to the Court that "it has communicated adequately with its clients." ECF No. 1070 at 4. If Jinks Crow asks the Court to credit that representation as evidence that its clients knowingly authorized their opt-outs, the privilege cannot simultaneously be invoked to prevent Wayne-Sanderson from testing that assertion. Any resulting waiver would extend only to communications concerning the clients' understanding of the *Jien* settlement, their decisions to opt out, and their authorization of the exclusion requests submitted on their behalf. *Rock River Commc'ns, Inc. v. Universal Music Grp., Inc.*, 745 F.3d 343, 353 (9th Cir. 2014) ("A party who affirmatively places its attorney-client communications at issue in a litigation implicitly waives the privilege" and may not use the privilege "both as a sword and shield").

**4. The Requested Discovery Is Proportional and Should Proceed on Wayne-Sanderson's Proposed Schedule.**

The requested discovery is relevant and proportional to the needs of the case under Fed. R. Civ. P. 26(b)(1) considering the importance of the issues at stake, the amount in controversy, the parties' relative access to relevant information, the importance of the discovery in resolving those issues, and whether its likely benefit outweighs its burden or expense. The stakes include the finality of settlements for which Wayne-Sanderson paid $69.8 million and the integrity of a Court-supervised process affecting thousands of class members. The existing record establishes that at least 54 purported opt-outs claimed and received settlement benefits, and that the actual number may be substantially greater. Determining the full scope of that problem is central to the enforcement sought. The relevant information is principally within the possession of Jinks Crow, the Johnny Adams Law Firm, LLC, the individuals they purport to represent, and A.B. Data, and the requested discovery is limited to settlement participation, class membership, and the validity of the purported opt-outs—not the merits of any Released Claim. *See* ECF No. 1054 at 10. Moreover, the initial discovery seeks centrally maintained administrative records rather than burdensome individualized discovery, and its substantial value to resolving the enforcement issues outweighs the burden of production.

The discovery should proceed in stages. Initially, Wayne-Sanderson seeks discovery from A.B. Data concerning claims and participation forms submitted by purported Jinks Crow clients, the status of those claims, and settlement disbursements, together with sufficient identifying information from Jinks Crow and its co-counsel to reconcile those records against the individuals they purport to represent. This initial discovery will permit Wayne-Sanderson and the Court to determine the full extent of settlement participation by purported opt-outs and assess what further discovery, if any, is necessary concerning Jinks Crow's opt-out process and claimant authorization.

Following that initial phase, the parties should submit a status report identifying any additional settlement participants, outstanding factual disputes, and the necessity and appropriate scope of further discovery. Any subsequent discovery from Jinks Crow, its co-counsel, or individual claimants should be tailored to the issues revealed by the initial production.

Wayne-Sanderson therefore requests entry of a staged discovery schedule, with deadlines running from the date of the Court's order and an initial status report following production of the relevant A.B. Data records. This sequencing will allow the Court to evaluate whether additional discovery, supplemental enforcement relief, or a court-supervised confirmation process is warranted, while ensuring that discovery proceeds no further than necessary. *See* ECF No. 1071 at 5; ECF No. 1071-11 at 2–3.

## V. REQUESTED RELIEF

Wayne-Sanderson respectfully requests that the Court enter an order:

(1) declaring that the 52 Paid Claimants identified in Appendix A who claimed and received settlement benefits did not validly opt out of the Settlement Class, are Settlement Class Members bound by the Settlement Agreements and Final Judgment, and are barred from asserting any Released Claims against Wayne Farms, Sanderson Farms, or their Released Parties;

(2) enjoining those individuals, and any counsel, agent, or other person acting on their behalf, from prosecuting, pursuing, threatening, demanding payment for, or otherwise asserting any Released Claims against Wayne Farms, Sanderson Farms, or their Released Parties in any forum;

(3) requiring Jinks Crow, the Johnny Adams Law Firm, LLC, and any other person subject to the injunction to cease prosecuting and take all necessary steps to dismiss

any pending Released Claims asserted on behalf of a Paid Claimant and to withdraw any related demands;

(4) authorizing targeted, staged discovery to identify the full universe of individuals whom Jinks Crow purports to represent as opt-outs who submitted claims for or received settlement benefits, beginning with appropriate Rule 45 discovery from A.B. Data concerning participation forms, claim submissions, claim processing, and settlement disbursements, together with identifying information from Jinks Crow and its co-counsel sufficient to reconcile those records against their purported client rosters and exclusion records;

(5) directing the parties, after the first stage of discovery, to file a status report identifying additional purported Jinks Crow opt-outs who submitted claims for or received settlement benefits, addressing any outstanding factual disputes, and assessing the necessity and appropriate scope of further discovery concerning Jinks Crow's opt-out process, claimant understanding, and individual authorization;

(6) permitting Wayne-Sanderson to supplement its motion and seek enforcement of the Settlement Agreements and Final Judgment, including the permanent injunction against Released Claims, as to additional individuals identified through discovery who submitted claims for or received settlement benefits, upon an appropriate factual showing; and

(7) granting such other and further relief as the Court deems appropriate.

Dated: October 16, 2026

Respectfully submitted,

*<u>/s/ Stephen R. Chuk</u>*
Christopher E. Ondeck
Stephen R. Chuk
Jared M. DuBosar (admitted *pro hac vice*)
Rucha A. Desai (admitted *pro hac vice*)
PROSKAUER ROSE LLP
1001 Pennsylvania Ave, NW, Suite 600S
Washington, DC 20004
Tel: (202) 416-5865
Fax: (202) 416-6899
condeck@proskauer.com
schuk@proskauer.com
jdubosar@proskauer.com
rdesai@proskauer.com

*Attorneys for Defendant Wayne Farms, LLC and Defendant Sanderson Farms, LLC*

## APPENDIX A

## PAID CLAIMANTS

The following 52 individuals are listed in the A.B. Data "OptOut (54) Redeemed Digital" spreadsheet filed by Jinks Crow as Exhibit 6 to the Declaration of Christina D. Crow, ECF No. 1050-7. Cassandra Pilar Tompkins (row 48) and Jerry Tyonia Baldwin Jr. (row 34), who were Nos. 81 and 86 of the 86 individuals addressed in the Court's October 9, 2026 Order, ECF No. 1072, are omitted. Names are reproduced as they appear in ECF No. 1050-7, including any apparent misspellings; A.B. Data identification numbers are omitted.

| No. | ECF No. 1050-7 Row | Name (as listed in ECF No. 1050-7) | Payment Amount |
|---|---|---|---|
| 1 | 2 | YASHICA LATASHA SMITH | $145.13 |
| 2 | 3 | KIMBERLY MICHELL ROGERS | $201.91 |
| 3 | 4 | ALYSSIA NICOLR BROWN | $123.99 |
| 4 | 5 | PATIENCE MONIQUE LOHMAN | $1013.92 |
| 5 | 6 | QUENTEZA MOSS | $47.05 |
| 6 | 7 | VALENCIA QUNA WARD | $1558.64 |
| 7 | 8 | CONTORIUS GERMANE CUNNINGHAM | $286.86 |
| 8 | 9 | QUINETTER SMITH | $164.31 |
| 9 | 10 | SAVION RUMEL BANKS | $467.18 |
| 10 | 11 | KAREN D. JACKSON | $1139.72 |
| 11 | 12 | DEBBIE ANDERSON | $107.05 |
| 12 | 13 | KENTRICE SELLERS | $33.88 |
| 13 | 14 | CALVIN COX | $305.22 |
| 14 | 15 | ROBERT LEASHON BURGESS | $1326.26 |
| 15 | 16 | SHANNON BURKS | $177.96 |
| 16 | 17 | KERRY DEVOSE | $628.22 |
| 17 | 18 | APRIAL LATRECE GRIMSLEY | $1132.87 |
| 18 | 19 | LOUIS MCCRAY | $652.12 |
| 19 | 20 | BRIAN HUBERT YOUNG | $94.48 |
| 20 | 21 | TAWANNA SANDIFER | $1308.68 |
| 21 | 22 | JESSICA LASHUN DAVIS | $1089.31 |
| 22 | 23 | CRYSTAL LATOURAL POPE | $862.19 |
| 23 | 24 | SHANNON LEAH GRANT | $592.96 |
| 24 | 25 | SHIMIKA JACKSON | $104.05 |
| 25 | 26 | SHELEKA DENISE RICHARDSON | $1001.96 |
| 26 | 27 | TREZA LESHELLE GLOVER | $787.54 |
| 27 | 28 | DIQUARIS RAHEM RICHARDSON | $467.18 |

| No. | ECF No. 1050-7 Row | Name (as listed in ECF No. 1050-7) | Payment Amount |
|---|---|---|---|
| 28 | 29 | KEYANA UPSHAW | $1600.05 |
| 29 | 30 | VANESSA JACKSON | $1347.65 |
| 30 | 31 | SHEMISE KIERRA MCLEOD | $409.44 |
| 31 | 32 | WHITNEY WARE | $733.11 |
| 32 | 33 | SHONDA SCREWS | $414.13 |
| 33 | 35 | ANJUANA SHANICE FULLER | $137.94 |
| 34 | 36 | KACEY WEBB | $1144.50 |
| 35 | 37 | DAVID LAJARIUS PAUL | $1256.73 |
| 36 | 38 | JUANITA WILLIAMS | $1626.19 |
| 37 | 39 | EMMANUEL W KING | $595.16 |
| 38 | 40 | CARDELL O'BRIAN | $581.23 |
| 39 | 41 | TONOA RICHARDSON | $229.40 |
| 40 | 42 | CHARLOTTE SMITH | $44.11 |
| 41 | 43 | RONALD WILLIAMS | $903.93 |
| 42 | 44 | SHAWN D JACKSON | $88.26 |
| 43 | 45 | KADEIDRA KIERRA JONES | $707.77 |
| 44 | 46 | NIQUAVE EFFORD | $359.48 |
| 45 | 47 | WILLIAM EARL HAZZARD | $67.10 |
| 46 | 49 | CHIMERRE VONSHAY DANIELS | $197.67 |
| 47 | 50 | CHIQUITA CHANTON PEARSON | $67.76 |
| 48 | 51 | JARMARICO THOMPSON | $310.17 |
| 49 | 52 | JACQUELINE WATKINS | $771.08 |
| 50 | 53 | JESSICA KERIA BAKER | $152.58 |
| 51 | 54 | KEITH BURKS | $188.58 |
| 52 | 55 | EBONIA COPES | $396.74 |
| | | **Total (52 Paid Claimants)** | **$30,151.40** |