# Exhibit A

IN THE CIRCUIT COURT OF BULLOCK COUNTY

STATE OF ALABAMA

JAMES HERBERT AYERS,
et al.,

Plaintiffs,

vs. CASE NO. 09-CV-2026-900001.80

AGRI STATS, INC.,
et al.,

Defendants.

October 19, 2026

Hearing

TAKEN BEFORE:

The Honorable Burt Smithart

On Behalf of the Plaintiffs:

MS. CHRISTINA CROW
Jinks Crow, P.C.
219 Prairie Street North
Union Springs, Alabama 36089
CHRISTY.CROW@JINKSCROW.COM

On Behalf of the Defendants:

MR. GERALD SWANN, JR.
Ball Ball Matthews & Novak, P.A.
445 Dexter Avenue, Suite 9045
Montgomery, Alabama 36104
GSWANN@BALL-BALL.COM

MR. JOHN GARLAND SMITH
Balch & Bingham, LLP
445 Dexter Avenue, Suite 8000
Montgomery, Alabama 36104
JGSMITH@BALCH.COM

MR. CHRIS WHITE
MR. SCOTT PEDIGO
Baker Donelson
One Eastover Center
100 Vision Drive, Suite 400
Jackson, Mississippi 39211
RCWHITE@BAKERDONELSON.COM
SPEDIGO@BAKERDONELSON.COM

MR. THOMAS FRANK KELLY, JR.
Attorney at Law
Post Office Box 605
Clayton, Alabama 36016
TFKELLY@BELLSOUTH.NET

Stephanie Mays
Official Court Reporter

* * * * * * * *

(Proceedings commenced at 11:01 a.m.)

THE COURT: CV-26-900001.80, Ayers and Wayne Farms, Wayne Sanderson, Agri Stats. All right. Motion for preliminary injunction.

MR. SMITH: Thank you, Your Honor.

As you know, I'm John Smith and I represent Wayne Sanderson Farms and Wayne Farms. And I think, Your Honor, there are three interrelated motions that are pending before the Court today, or rather several interrelated motions that are pending before the Court, and it's both in the Ayers, Anglin, and Adams cases. Ayers is pending here in the Circuit Court of Bullock County and the other two are pending in the Barbour County Circuit Court and Your Honor has combined them for purposes of this hearing today. So we appreciate the opportunity to address these issues.

What is pending before the Court today is my client's motion for preliminary injunction, a related motion to supplement that motion for preliminary injunction, the plaintiffs' motion to strike that motion in the Ayers case, although, I'm confident that Christy will tell you, and I won't dispute, that that motion to strike in the

Ayers case would also apply in Anglin and Adams. And then the final thing is a motion to clarify the Court's order appointing a special master in this. And I'm happy to take those up in any sequence the Court would like or if the Court just wants me to address them as I will, I can do that.

THE COURT: I've read everything or -- up until whatever they put on this morning. So did you file anything last night?

MS. CROW: The plaintiffs' response was filed last night.

THE COURT: Yeah. I saw your response. Rashawn went on and put that through.

MR. SMITH: Wayne Farms and Wayne Sanderson Farms has not filed anything since Friday afternoon.

THE COURT: Okay. All right. Go ahead.

MR. SMITH: So -- all right. Judge, just very briefly, as you know, there was a class action or is a class action in district court in Maryland called Jien, J-I-E-N. And in that case it concerned allegations that at least, factually, are similar to the allegations in the three lawsuits in the 3rd Judicial Circuit for Alabama. Those claims are that there was essentially price

rigging or a scheme among the defendants to deflate prices for workers in poultry plants. I'm simply -- I'm not agreeing to that. I'm simply saying those are the allegations, Your Honor. All right.

Well, in the Jien case, there was a May 27, 2025 exclusion date for someone to opt out of those cases. Final judgment has been entered in this case and all of the defendants that are the same defendants in these three cases, as originally filed, were settling parties in the Jien case. My client, Wayne Farms, paid almost $70 million to buy its peace in the Jien case. In December 2025 and January 2026, these three lawsuits were filed here in the 3rd Judicial Circuit. We removed the cases to federal court. They were remanded. Motions to dismiss have been filed. The plaintiffs, in the last week to 10 days, have filed amended motions and --

MS. CROW: Amended complaints.

MR. SMITH: Amended complaints. Thank you, Christy, for correcting me on that. We have filed motions in Maryland to enforce the Jien settlement. We have filed these motions that are pending before the Court today. Your Honor set

these and we supplemented based upon the motion -- or the order entered by the Jien court about a week ago. Now, as I understand it, even though we supplemented and that supplemental motion -- if the Court doesn't strike it -- has not been set. And I understand that Christy and the plaintiffs want to proceed with that today.

Am I right about that?

MS. CROW: That is correct.

MR. SMITH: Okay. Thank you.

What we're asking the Court to do, Judge, is to enjoin the distribution of funds that have been paid by four defendants who have settled their claim with the plaintiffs in the Ayers, Anglin, and Adams cases. Those are Peco Foods, Pilgrim's Pride Corporation, Tyson Foods, and Perdue Farms. We do not know -- or I don't know the amount of those payments, but there is some information that those payments will begin to be distributed in the near future.

Why are we asking for that, Your Honor? Well, it -- it's primarily because -- it's not primarily because, it is -- my clients are owed the benefit of the settlement in Jien, the peace that they bought for their settlement payment.

We're also -- in these lawsuits, if they proceed to verdict and there is ultimately a verdict taken against my clients, we're entitled, under Alabama law, to the benefit of the setoff of any payment that any settlement -- settling defendant makes. And it's precisely or primarily to prevent any double dipping. Because it would be improper -- and I don't think the plaintiffs dispute this. It would be improper for any plaintiff in the three cases pending before this Court to receive any payment in the Jien case. And what we have discovered, and what has been litigated in Jien and what is being litigated here, is there are two types or groups of people that, ostensibly, are or may be plaintiffs in this case, that were also plaintiffs in Jien. And those are twofold. One, there's a group of people who did not opt out of Jien. If they did not opt out in a timely manner, they are bound by that settlement and they are bound by the release of that settlement and they cannot bring a lawsuit in this court or any other court based on the conduct that was at issue in Jien, which is the same conduct at issue here. That's one group of folks. The second group of folks are those who did opt out in Jien, but, for

whatever reason, received, accepted, negotiated, and used a settlement payment in Jien. And that, we say, binds them to the Jien settlement, just as well as those people who did not opt out. Now --

THE COURT: So that second group, John, just to be sure I understand -- you have some information that shows you they opted out, but they still got Jien money?

MR. SMITH: Yes, sir. And that is before you. We have put that before the Court today in our supplemental motion. Okay? Now, to be clear about this, Your Honor, we raised these two categories both in our initial preliminary injunction motion and in our supplemental preliminary injunction motion. It is not that we have added the second category, that is the group of people who opted out but then accepted payments. It was raised in our first motion. In the Jien case, however, though, the enforcement action that's going on there, what Judge Gallagher, who is the judge that has jurisdiction over that case, has said, and this is what the letter ordered that we provided to the Court that Judge Gallagher says, is, look, the issue over the -- it's referred to as the 86 and the 54. The

86 are the ones who did not opt out. The 54 are the ones who opted out but received payment. Now, originally, it was -- if I'm remembering this correctly, there were 54, but two of those 54 fell into both categories. So, really, it's 52. Our papers state it more clearly than that, if I'm mistaken. But the point is this: We have raised before this Court both the 86 and the 54. Both categories are at issue. We did that from the beginning.

THE COURT: Uh-huh.

MR. SMITH: Judge Gallagher has now entered the order saying, well, the 86, the first group, that is those who did not opt out, have been addressed. We have now filed a motion with Judge Gallagher concerning the second group, saying those need to be addressed. And all we're asking the Court to do in this preliminary injunction -- and this is the basis for any preliminary injunction motion -- is to preserve the status quo, asking the Court to say that all of these individuals who are before this Court in the lawsuits that have been filed and in the lawsuits that have been threatened to be filed in Alabama, don't allow distributions until the

parties have determined who of those people have properly opted out, first; and, second, if they had opted out, that they have not received payment.

THE COURT: So you're wanting me to enjoin the distribution of the Perdue, Peco funds?

MR. SMITH: Yes, sir. That have been paid and that is that the Court has appointed a special master over. And I'll come back to our motion to clarify in just a minute. That's what we're asking, Judge, until we can, that is the parties to this case, determine who is actually entitled to those monies. And the reason for that, Your Honor, is as I've stated, my clients bargained for and obtained a release in Maryland, in that case, and if individuals who purport to bring these three lawsuits in Alabama or threatened additional lawsuits in Alabama because they say they had opted out, if those people received monies, just as people who opted out, and received payments in Jien, which, in our argument, puts them back into the Jien settlement, they should not receive any monies. That deprives my clients of their settlement agreement, number one. And it also deprives my clients of the setoff that they would

get. It dilutes -- that's the word that we use. It would dilute the benefit of the setoff. If people in these lawsuits, the three lawsuits before this Court, receive payments of what I'll just call the Peco monies, if they receive those payments improperly, well, Your Honor, that money is not coming back. We would not be able to effectively give it back because it's been spent and would be gone. That would dilute, to some extent, the monies that would properly be paid to people who did opt out of Jien and did not accept payments in Jien but then brought these lawsuits, if, at the end of the day, those individuals get a verdict against my client. The setoff would be diluted by some extent, either greater or lesser. But it would, nonetheless, be diluted. And I don't think there is an argument that it would not be diluted.

MS. CROW: He cannot speak for me on that point, Judge. I have many arguments about that.

THE COURT: Okay.

MR. SMITH: Okay. Well, it would be diluted is our argument. So that brings me to this special master question, Your Honor. And we have simply asked that the Court clarify its special

master order to say that the special master is an agent of the Court, not of plaintiffs' counsel, and it's the special master who would determine whether someone receives any of the Peco payments. And I don't think that should be controversial in this case. That, to me, seems to be something that ought to be done. Christy has represented in her papers that plaintiffs' counsel will exclude people who are, for whatever reason, bound by the Jien settlement. What we think is appropriate is for the Court to say a special master makes that determination.

THE COURT: Okay.

MR. SMITH: So I -- I think I've covered this, but I want to be clear. There is no way for these monies, once paid, for my client to recover them for the purposes of both the release and the setoff. That fulfills both the irreparable harm element and the inadequate remedy of law element. I don't know that Alabama law would recognize a cause of action to -- for my client to sue whoever's saying you received monies from Peco and the other group are settling defendants. So that's why we say there is both irreparable harm and no adequate remedy of law. And we do have a

reasonable chance of success on the merits, both as to this underlying lawsuit -- I'm sorry -- the underlying lawsuits and on the question of are we entitled to a setoff if there is, ultimately, a verdict in these cases against my client.

Now, the final point is the hardship to the opposing party. We say that the benefit to my client is not outweighed by the prejudice to the requesting party. We have and we are prepared to deliver to the circuit clerk today a 50,000-dollar bond to cover any interest that might accrue on the payments, if they are delayed by this Court, pending resolution of the question over who is entitled to receive them.

THE COURT: Okay. Response?

MS. CROW: Judge, first, on the issue of the special master order, there is no question in the current order that the special master is the person who decides who receives money from the Peco settlements. The point they belabored is that in a brief we filed in federal court, we told the Court, as officers of the Court, we would make sure that if someone signed a release -- which they would have to do to receive money from the Jien settlement, we would make sure they didn't

get paid twice. Not because we have the authority to do that, but we would exclude them from the settlement class or the Peco settlement and the other settlements. That's -- so there is no need to amend the order. Second, Wayne Sanderson Farms has no standing to raise any of these issues. They're not entitled to any of this money. They're not entitled to give any of it back if somebody accidentally gets double paid. There is not a single party before this Court who is on the list of 87 or on the list of 54, all of the clients that we have that filed suit that we ultimately determined may have gotten a settlement payment from the Jien class have been dismissed. All of the clients that we represented that were not included on a list of AB Data, the settlement administrator for the Jien settlement, filed with the federal court have been dismissed. So you don't have any party in front of you that has the possibility of being double paid. Therefore, there's no way Wayne Sanderson Farms has standing to say they could be harmed by anything. If, through the litigation, AB Data finds another list of people that they've paid, which we don't think they will, and it turns out that there is a

plaintiff before you that has been paid out of the Jien settlement, they will be dismissed, as they should be. Because in order to receive that payment, they have to sign certain things, which includes a release of Wayne Sanderson Farms. Wayne Sanderson Farms is getting the benefit of their bargain in the Jien settlement. The remote possibility that somebody could get, I mean, a thousand dollars out of this case and a thousand dollars out of the Jien settlement and then they want a setoff from Joe Smith's settlement of his pro rata share of that, could be less than a dollar. I mean, we're talking about 3400 clients here. So the remote possibility that they might somehow be harmed down the road because somebody double dipped and, therefore, somebody else didn't get enough money is too far remote in time to allow for an injunction at this point. And, also, so minuscule that it's just very, very unlikely that it would affect anything that Wayne Sanderson had to pay as a result of a verdict in this case. The standing issue, we've briefed it extensively, but they have absolutely no right to any of the settlement funds, they have no right to stop the settlement funds. They are strangers to all those

agreements. And we are taking care of the issue that was identified, which is that AB Data, who is a settlement administrator, didn't do a good job on administering the settlement. That wasn't our fault, it's not our clients' fault, it's not Wayne Sanderson Farms' fault either, but we have taken care of that. We sent AB Data, several months ago, our clients' identifying information so they could crosscheck their list and we have a complete list of people that they say made claims and received payments. And we are dealing with that list. None of those people are before the Court. Because of that, we believe that their motion should be stricken from the record and there -- if it -- if you don't strike it, it should be denied.

MR. SMITH: And, Your Honor, if I can have a brief response.

THE COURT: Hold on just a second.

MR. SMITH: Yes, sir.

THE COURT: All right. Go ahead now, John.

MS. JOHNSON: All right. Brief response. We don't have a right in the monies, but we have a right in the setoff that the payment would give, Your Honor. And I don't think anybody disputes it. Christy says it would be miniscule. I don't

know if it would be miniscule or larger than miniscule, but there would be some effect. And that affects my client if there is ultimately a verdict against my client. And there is no mechanism by which my client could recover that money. There is no mechanism by which plaintiffs' counsel or the special master could say, Give it back. I say there's no mechanism. There's no enforceable mechanism by which they could say, Give it back, once it has been paid. And all we're saying, Your Honor, is let's just pump the brakes until these 3400 folks that Christy and her firm and Mr. Adams and his firm represent, determine who is going to be bound, for whichever of the two reasons that I gave the Court earlier, by the Jien class. Let's just pump the brakes on that for a relatively small period of time, until AB Data has done whatever look it's going to do, until whatever discovery the court in Maryland may order on that issue has been done. Because once the Peco settlement funds are gone, they're gone. And that affects my client.

THE COURT: All right. Anything else?

MS. CROW: If Wayne Sanderson Farms thinks $50,000 in a bond in Bullock County is an

appropriate measure, we'll be glad to put that into the Court so that if this issue about a setoff ever becomes a real issue, which it will not, there will be funds there to satisfy any issues related to setoff. This is -- they're trying to have a tempest in a teacup. And this is ridiculous. There are 3400 people who settled their claims and they are entitled to receive their money.

THE COURT: Any response, John?

MS. JOHNSON: Our clients have settled their claim, too, in the Jien case. And we're entitled to the benefit of that settlement.

MS. CROW: And they're getting it. I mean, the Jien case has settled. This has nothing to do with that. And we will adopt the same argument -- we haven't filed in the other two Barbour County cases, but we're going to file the same briefs in the Barbour County cases and will adopt this argument.

MR. SMITH: Yeah. And as I said earlier, I don't dispute that. There's no point for us to have to come back and make all these same arguments. We understand that. I'm simply saying, Your Honor, the thing that makes the most

sense is just to enter this for a limited period of time so discovery that the court has ordered or will order in Maryland is conducted so that we can determine who of these 3400 are bound by Jien or not.

THE COURT: All right. Thank y'all.

MS. CROW: Thank you, Judge.

MR. SMITH: Thank you, Judge.

(Proceedings were concluded at 11:25 a.m.)

* * * * * * * *

REPORTER'S CERTIFICATE

* * * * * * * *

STATE OF ALABAMA)
COUNTY OF LEE )

I, Stephanie Mays, Certified Court Reporter and Notary Public in and for the State of Alabama at Large, do hereby certify that I reported the above-referenced proceedings in the above-entitled action and that the foregoing 19 pages contains a true and accurate transcription of the aforementioned proceeding.

I further certify that I am neither of kin nor of counsel to the parties to said cause, nor in any manner interested in the results thereof.

This the 25th day of October, 2026.

____________________________

Stephanie Mays, CCR
ABCR No. 49, Expires 9/30/27